UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>DIRECT MARKETING CONCEPTS, INC., )<br>ITV DIRECT, INC., DIRECT )<br>FULFILLMENT, LLC, DONALD )<br>BARRETT, and ROBERT MAIHOS, )<br><br>Defendants. ) | C.A. No. 05-11907-JLT |

## AFFIDAVIT OF SCOTT SILVERMAN

I, Scott A. Silverman, being duly sworn, do hereby depose and state that:

1.      My name is Scott A. Silverman, and I am an associate with the law firm of Gadsby Hannah LLP located in Boston, MA.  I am counsel for the Plaintiff, Cappseals, Inc. ("Cappseals").  I submit this Affidavit in Support of Cappseals Motion for Partial Summary Judgment.

2.      Attached hereto as Exhibit A is a true and accurate copy of the Court's July 20th, 2005 Memorandum filed in the matter of *ITV Direct, Inc. v. Healthy Solutions, LLC et al*, Civil Action No. 04-10421-JLT (Docket Entry #134).

3.      Attached hereto as Exhibit B is a true and accurate copy of the Affidavit of Robert Maihos filed in the matter of *Federal Trade Commission v. Direct Marketing Concepts, Inc. et al*, Civil Action No. 04-11136-GAO (Docket Entry #11).

4.    Attached hereto as Exhibit C is a true and accurate copy of the Joint Stipulations of Fact filed in the matter of *ITV Direct, Inc. v. Healthy Solutions, LLC et al*, Civil Action No. 04-10421-JLT (Docket Entry #113).

5.    Attached hereto as Exhibit D are true and accurate copies of Purchase Order No. 1101, bates numbered as SH-047; ITV00379 and ITV00324.  These documents were all produced in the matter *ITV Direct, Inc. v. Healthy Solutions, LLC et al*, Civil Action No. 04-10421-JLT.  The bates number prefix "SH" indicates the document was produced from the records of Healthy Solutions; the bates number prefix "ITV" indicates the document was produced from the records of ITV Direct, Inc. ("ITV").

6.    Attached hereto as Exhibit E are true and accurate copies of Invoices Numbered 21 through 26, bates numbered as ITV00312 through ITV00317.

7.    Attached hereto as Exhibit F is a true and accurate copy of an independent accounting report of Direct Marketing Concepts' ("DMC") finances relating to its sales of Supreme Greens with MSM.  This accounting report was prepared pursuant to Court Order in the matter *Federal Trade Commission v. Direct Marketing Concepts, Inc. et al*, Civil Action No. 04-11136-GAO.  The accounting report consists of documents bates numbered as ITV00517 through ITV00567.

8.    Attached hereto as Exhibit G is a true and accurate copy of a DMC internal accounting record labeled "find report for all transactions", bates numbered ITV00291.

9.    Attached hereto as Exhibit H is a true and accurate copy of the June 23, 2004 Preliminary Injunction Order as to defendants DMC, ITV and Donald W. Barrett filed in the matter of *Federal Trade Commission v. Direct Marketing Concepts, Inc. et al*, Civil Action No. 04-11136-GAO (Docket Entry #32).

10.    Attached hereto as Exhibit I are the relevant portions of ITV's general ledger that was produced during post-judgment discovery in the matter *ITV Direct, Inc. v. Healthy Solutions, LLC et al*, Civil Action No. 04-10421-JLT.  The portions of ITV's general ledger are bates numbered ITV00326 through ITV00354.

11.    Attached hereto as Exhibit J are true and accurate copies of ITV's May, June, July and August 2005 bank statements also produced during post-judgment discovery in the matter *ITV Direct, Inc. v. Healthy Solutions, LLC et al*, Civil Action No. 04-10421-JLT.  These bank statements are bates numbered ITV00165 through ITV00187.

12.    Attached hereto as Exhibit K is a true and accurate copy of the relevant portions of the transcript from the August 23, 2004 deposition of Donald Barrett in the matter *ITV Direct, Inc. v. Healthy Solutions, LLC et al*, Civil Action No. 04-10421-JLT.

13.    Attached hereto as Exhibit L is a true and accurate copy of the Complaint filed in the matter of *Direct Market Concepts, Inc. et al, v. The Federal Trade Commission*, Civil Action No. 05-11930-GAO (Docket Entry #1).


Sworn to under the pains and penalties of perjury this 10th day of November, 2005.

/s/ Scott A. Silverman
Scott A. Silverman

3

## CERTIFICATE OF SERVICE

I hereby certify that true and accurate copies of the foregoing *Affidavit of Scott Silverman* was served on the foregoing attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

Via electronic notification:

Peter S. Brooks            pbrooks@seyfarth.com

Susan W. Gelwick           sgelwick@seyfarth.com

Christopher F. Robertson       crobertson@seyfarth.com


/s/ Scott A. Silverman
Daniel J. Kelly BBO# 553926
dkelly@ghlaw.com
Scott A. Silverman, BBO #638087
ssilverman@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
DATED: November 10, 2005       (617) 345-7000

4

SXS0637v1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CAPPSEALS, INC.,                )
                            )
        Plaintiff,        )
                            )
v.                          )
                            )
DIRECT MARKETING CONCEPTS, INC., )
ITV DIRECT, INC., DIRECT       )    C.A. No. 05-11907-JLT
FULFILLMENT, LLC, DONALD     )
BARRETT, and ROBERT MAIHOS,   )
                            )
        Defendants.     )
                            )

## AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ITV DIRECT, INC.,                    *
   Plaintiff,            *
       *
 v.                              *
       *
HEALTHY SOLUTIONS, LLC et al.,       *
   Defendants.           *
       *     Civil Action No. 04-10421-JLT
_____*
CAPPSEALS, INC.,                     *
   Plaintiff-in-Intervention,   *
       *
 v.                              *
       *
HEALTHY SOLUTIONS, LLC, d/b/a        *
DIRECT BUSINESS CONCEPTS; ITV        *
DIRECT, INC.; and DIRECT             *
FULFILLMENT, LLC,                    *
   Intervenor-Defendants.   *

MEMORANDUM

July 20, 2005

TAURO, J.

   Between December 2003 and February 2004, Plaintiff ITV Direct, Inc. ("ITV") received

six shipments of a health supplement called "Supreme Greens" (hereinafter "goods") from

Defendant Healthy Solutions, LLC.[1] ITV accepted the goods, never claimed non-conformity, and

never suggested that Healthy Solutions acted improperly in any way regarding the actual sale or

delivery of the goods.  The price of the goods totals $1,821,864, and ITV has not paid the bill.[2]

---

   [1] See Joint Stipulations of Fact [#113] ¶ 34.

   [2] Id. ¶¶ 6, 9, 12, 15, 18, 21, 34.

ITV refuses to pay for the goods because it alleges that Healthy Solutions breached the parties' distribution agreement by failing to pay ITV royalties from web site sales, failing to withdraw a trademark application, failing to assign the domain name "supremegreens.com" to ITV, and failing to indemnify ITV in a lawsuit brought against ITV by the Federal Trade Commission.[3] Healthy Solutions denies these allegations and has brought a counterclaim against ITV for the price of the goods delivered and accepted.

Healthy Solutions, however, did not manufacture the goods. Rather, Healthy Solutions purchased the goods from Cappseals, Inc. Because ITV refuses to pay for the goods, Healthy Solutions has been unable to pay Cappseals. Seeking to ensure payment for the goods it manufactured, Cappseals intervened in this action and obtained a stipulated judgment against Healthy Solutions in the principal amount of $890,182.09.[4] Cappseals also brought a reach-and-apply claim against ITV. Cappseals has now moved for summary judgment with respect to its reach-and-apply claim.

For purposes of the instant motion for summary judgment, the issue to be decided is whether ITV's various claims against Healthy Solutions can set-off ITV's obligation to pay for the six shipments of goods manufactured by Cappseals and delivered by Healthy Solutions. If ITV cannot set-off its obligation to pay for the goods, then Cappseals would be entitled to

---

[3] See Am. Compl. ¶¶ 25, 31-32, 36-37, 38-42, 58-63. ITV also alleges that Healthy Solutions fraudulently induced ITV to enter into the Distribution Agreement by misrepresenting the reliability of scientific evidence supporting the health claims of Supreme Greens. See Am. Compl. ¶¶ 46-50. This, however, has not stopped ITV from selling the product. Joint Stipulations of Fact ¶¶ 30-31.

[4] J. Against Healthy Solutions, LLC [#91].

2

judgment as a matter of law on its statutory reach-and-apply claim.[5]

## Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and . . . the moving party [has demonstrated an] entitle[ment] to a judgment as a matter of law."[6] Under this standard, the "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[7] In deciding whether to allow a motion for summary judgment, a court "'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'"[8]

A.    UCC § 2-717

The parties agree that Massachusetts law governs this dispute. Because this case involves

---

[5]More precisely, if Healthy Solutions is entitled to summary judgment on its counterclaim for the price of the goods, then both Healthy Solutions' debt to Cappseals and ITV's debt to Healthy Solutions would be reduced to judgments. The existence of both debts, established beyond dispute, would entitle Cappseals to summary judgment on its statutory reach-and-apply claim. See Hunter v. Youthstream Media Networks, Inc., 241 F. Supp. 2d 52, 57-58 (D. Mass. 2002) (citing Mass. Gen. Laws ch. 214 § 3(6), (7)).

[6]Fed. R. Civ. P. 56(c).

[7]Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996) (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)).

[8]Mullin v. Raytheon Co., 164 F.3d 696, 698 (1st Cir. 1999) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

3

transactions in goods, the Massachusetts Uniform Commercial Code ("UCC") controls.[9]  ITV

argues that § 2-717 of the UCC allows ITV to withhold payment from Healthy Solutions, and

ultimately Cappseals, because Healthy Solutions allegedly breached the parties' distribution

agreement.  Under § 2-717, "[t]he buyer on notifying the seller of his intention so to do may

deduct all or any part of the damages resulting from any breach of the contract from any part of

the price still due under the same contract."[10]  ITV construes UCC § 2-717 too broadly.

Section 2-717 "is not a general set-off provision permitting a buyer of goods to adjust its

continuing contract obligations according to the equities perceived by the buyer."[11]  The buyer's

right to set-off under § 2-717 must "stem from a breach of the *same contract* under which the

seller is attempting to recover his price."[12]  Moreover, "in order for a buyer to invoke § 2-717, the

asserted breach must go to the *essence of the transaction* under which the seller seeks to recover

his price."[13]  For this reason, "it is well established that the buyer's obligation to pay for goods

tendered and accepted does not arise under the same contract as the alleged breach of an

exclusive dealing or distributorship arrangement by the seller."[14]

---

[9]Mass. Gen. Laws ch. 106, § 2-102.

[10]Mass. Gen. Laws ch. 106, § 2-717 displaces a buyer's right to set-off under the common law.  See Carlisle Corp. v. Uresco Const. Materials, Inc., 823 F. Supp. 271, 275 (M.D. Pa. 1993).

[11]C. R. Bard, Inc. v. Med. Elecs. Corp., 529 F. Supp. 1382, 1387 (D. Mass. 1982) (quoting Columbia Gas Transmission Corp. v. Larry H. Wright, Inc., 443 F. Supp. 14, 20 (S.D. Ohio 1977)).

[12]Travenol Labs., Inc. v. Zotal, Ltd., 474 N.E.2d 1070, 1072 (Mass. 1985) (emphasis added).

[13]C. R. Bard, 529 F. Supp. at 1387 (emphasis added).

[14]Travenol Labs., 474 N.E.2d at 1073 (internal citations and quotations omitted).

In light of the applicable case law, ITV may not rely on § 2-717 to avoid its obligation to pay for the goods it accepted from Healthy Solutions. None of ITV's various claims against Healthy Solutions go to the essence of the purchase-and-sale transaction. It is undisputed that ITV re-sold, and continues to sell, the goods.[15] It is also undisputed that ITV never rejected, or even complained about, any of the goods it accepted and re-sold.[16] Like the situation in *C.R. Bard v. Medical Electronics Corp.*, "there is no hint that seller acted improperly in any way regarding the actual sale or delivery of the goods."[17]

Moreover, the purchase order at issue does not incorporate the parties' distributorship agreement.[18] The purchase order, not the distributorship agreement, created ITV's obligation to pay for the specific goods purchased and accepted.[19] While the distribution agreement certainly contemplated future sales, the individual purchase orders specifically set forth the price, type, quantity of goods, and method of cancellation.[20] ITV, therefore, may not set-off its obligation to pay for the goods with damages stemming from remote claims that do not involve the seller's duty to deliver conforming goods under the specific purchase order.[21]

---

[15]Joint Stipulations of Fact ¶¶ 30-31.

[16]See id. ¶¶ 22-31.

[17]529 F. Supp. at 1387.

[18]Silverman Aff. [#123] Ex. B ("Purchase Order No. 1101").

[19]See Carlisle Corp. v. Uresco Const. Materials, Inc., 823 F. Supp. 271, 274 (M.D. Pa. 1993).

[20]See Purchase Order No. 1101.

[21]That the distribution agreement anticipated or even incorporated future purchase orders is irrelevant because the alleged breaches of the distribution agreement do not go to the essence of the particular purchase-and-sale transactions at issue.

5

B.     Final Judgment

ITV argues that even if Cappseals is entitled to summary judgment, this court should not enter final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure until ITV's claims against Healthy Solutions have been adjudicated.  This court disagrees.  There is "no just reason" to further delay payment for goods delivered, accepted, and re-sold.[22]  Because ITV's claims against Healthy Solutions are separate and distinct from the specific purchase-and-sale transactions at issue, the Court of Appeals would not have to "decide the same issues more than once even if there were subsequent appeals."[23]  Like other courts that have faced the issue, this court will not hesitate to enter final judgments pursuant to Rule 54(b) with respect to Healthy Solutions' counterclaim for the price of the goods and Cappseals' reach-and-apply claim.[24]

AN ORDER WILL ISSUE.

/s/ Joseph L. Tauro
United States District Judge

---

[22]Fed. R. Civ. P. 54(b).

[23]Carlisle Corp., 823 F. Supp. at 276 (internal citations omitted).

[24]See id.; C. R. Bard, Inc. v. Med. Elecs. Corp., 529 F. Supp. 1382, 1388 (D. Mass. 1982).

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CAPPSEALS, INC.,                                )
                                                )
                Plaintiff,                      )
                                                )
v.                                              )
                                                )
DIRECT MARKETING CONCEPTS, INC.,                )
ITV DIRECT, INC., DIRECT                        )    C.A. No. 05-11907-JLT
FULFILLMENT, LLC, DONALD                        )
BARRETT, and ROBERT MAIHOS,                     )
                                                )
                Defendants.                     )
                                                )

**<u>AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT</u>**

**<u>EXHIBIT B</u>**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>DIRECT MARKETING CONCEPTS, INC., et )<br>al., )<br><br>Defendants. ) | CIVIL ACTION NO. 04-CV-11136GAO |

## AFFIDAVIT OF ROBERT MAIHOS

I, ROBERT MAIHOS, declare as follows:

1.    I am a principal shareholder of defendants Direct Marketing Concepts, Inc. ("DMC") and ITV Direct, Inc. ("ITV"), and am responsible for the day-to-day operations of both companies.  I make this affidavit on the basis of my own personal knowledge of the facts set forth herein and could testify competently thereto if called to do so.

2.    DMC and ITV Direct, located in Beverly, Massachusetts, are media and marketing companies that collectively employ over 140 individuals in Massachusetts.

3.    DMC and ITV Direct have maintained accurate and complete books and records of its business since inception in 2001.  All transactions of the companies have been properly recorded in the books and records, including all payments to employees, salaries and benefits, all expenses and all distributions.  There have been no "secret" payments of any kind that are not recorded in the books of the company, nor does the company maintain any offshore or secret bank accounts.  Neither DMC nor ITV have secreted any assets or made any fraudulent transfers in anticipation of the FTC's civil action.

4.    In connection with ITV's production of an infomercial for Alex Guerrero and his product Supreme Greens with MSM, Guerrero stated to me personally that he is a doctor and

operates a clinic in California. He stated that he has cancer patients, AIDS patients, and patients

with MS, diabetes and Parkinson's disease. He stated that through his clinic he conducted a

study of over 200 of patients, all of whom were diagnosed as terminally ill, and that all but eight

of these patients are still alive. This study was also confirmed by fitness celebrity Tony Robbins,

who discussed Alex Guerrero and his clinic on one of his fitness shows.  A copy of the transcript

of that show is attached as Exhibit A.  On several occasions, when we requested that Guerrero

provide the scientific support and studies concerning these claims, Guerrero confirmed to me that

he possessed such documentary and clinical support.  He also stated this to our sales force in a

taped presentation.  A copy of that transcript is attached as Exhibit B.

     5.      In connection with the infomercials produced by ITV for Alex Guerrero's

Supreme Greens, ITV itself did not make any statements about the product.  Rather, all of the

statements were presented solely as the opinions of Guerrero and that fact was clearly disclosed

to viewers of the infomercials.  In addition, the infomercials and all other promotional materials

produced for these products had express disclaimers, clearly stating that results could vary and

that the product was not a cure for any disease.  Moreover, the infomercial disclosed that ITV

was not confirming or attesting that there existed scientific support for all of the claims made by

Guerrero.  Not only did ITV require these disclaimers throughout the infomercials, but the

networks running the infomercials also required them.

     6.      In addition to the disclaimers above, ITV also received indemnification from

Guerrero's company Healthy Solutions for the health claims made in the infomercial.  A copy of

the Distribution Agreement containing the indemnification clause is attached to the affidavit of

Donald Barrett as Exhibit E.  Thus, to the extent that the FTC is able to demonstrate that

Guerrero's claims violated any laws or regulations, ITV fully intends to seek complete

indemnification from Healthy Solutions.  Such a demand has already been made and is subject to

a pending action in the Boston federal court.

     7.      I have reviewed the Declaration of Scot Sarver submitted by the FTC in support

of its request for a receiver and an asset freeze.  That declaration is filled with untrue statements,

based on rank hearsay and lacking any factual support. Moreover, Sarver has a significant motive to lie about DMC, ITV and Donald Barrett. Specifically, and directly contrary to his declaration, Sarver was recently fired by ITV for violating his agreement not to compete with the business and stealing from the company. He established a separate business and was moving customers and opportunities to this new business. When confronted with these facts and his non-compete agreement, he admitted that he had broken into a secure location, obtained his employment agreement and shredded it in an effort to destroy evidence of his wrongful conduct. He was then terminated from his employment. Since his termination from ITV, we have become aware that Sarver is actively seeking to compete with ITV, by selling identical products, reaching out to ITV's distributors and contacting ITV's customers. He would personally greatly benefit from any damage done to the operations of DMC and ITV.

8.      In addition, Sarver has been the subject of several complaints of sexual harassment and officially reprimanded on one occasion. He was also caught on videotape engaged in improper sexual conduct in his office at ITV. Despite the fact that he was married at the time, we have become aware of at least five separate incidents of sexual conduct between Mr. Sarver and employees of ITV. These acts also contributed to the decision to terminate his employment and Mr. Sarver was very unhappy when these matters were brought to his attention.

10.     Subsequent to his termination from ITV, Sarver also attempted to defraud the Massachusetts unemployment bureau and sought ITV's assistance in his conspiracy by asking ITV to lie about his employment status. When ITV refused to do so and his unemployment claim was denied, he was extremely upset. Since his termination from ITV, several employees have reported to me that Sarver has publicly stated that he will do whatever is necessary to harm DMC, ITV, myself and Donald Barrett.

11.     Sarver's statements in his declaration about alleged secret payments and transfers of assets and funds of DMC, ITV and/or Direct Fulfillment are untrue. All of the transactions of these companies are reflected in each company's books and records and I am not aware of any transaction that has not been properly recorded. All funds paid by the company to myself or Mr.

3

Barrett are recorded properly and we have paid all required taxes on those amounts. All purchases of personal items for myself have been made by myself and are reflected in my personal tax returns. Neither I, Mr. Barrett, DMC, ITV nor Direct Fulfillment has made any fraudulent transfer of any asset, nor do the companies maintain offshore or secret bank accounts or similar arrangements for the secretion of assets or funds.

12.     Mr. Sarver's statements about DMC's and ITV's sales force are also untrue. DMC and ITV stress the importance of quality control to all our employees and require them to disclose the terms of any of our programs, including our autoship program fully and clearly. A new system purchased by the company in late-2003 also assures that sales personnel are monitored and adhere to the company's policies. Correspondence relating to these procedures is attached as Exhibit C. While any commission-based sales structure can lend itself to potential abuses by the sales staff, we seek to identify these abuses immediately and we take appropriate action, including terminating the offending employee.

13.     I have also read the affidavit of Richard Cushman submitted by the FTC. Mr. Cushman was hired by the company because he was the husband of Mr. Barrett's wife's sister. Since that time, she has filed for divorce and Mr. Cushman has been fired by the company. I am aware of numerous threats made by Mr. Cushman against DMC, ITV and Mr. Barrett, including threats made prior to the company's holiday party. I have also been told by employees that Mr. Cushman has vowed to "bring down" the company any way he can. Because of these threats, we sent Mr. Cushman a trespass letter, prohibiting him from entering any of the properties or facilities of DMC or ITV.

14.     Mr. Cushman's statements in his affidavit about the company's finances are untrue. No company funds have been secretly used for personal expenses. In addition, Mr. Barrett does not own a boat, jet-skis or a house in Florida. No assets of the company are being secreted and there have never been any fraudulent transfers of assets by myself or Mr. Barrett.

15.     Mr. Cushman's statements regarding the call center are also false. As noted above, all of ITV's sales representatives are educated in the policies of the company, which

4

include providing full disclosure to customers and obtaining the customer's express consent before any charges are made to any credit card account. These procedures have been significantly enhanced by new technologies, all acquired after Mr. Cushman had left the company. Thus, he is not competent to testify about the current policies and procedures employed by ITV to ferret out rogue sales personnel, which are substantial.

16.    Based upon the FTC's concerns with the infomercials for coral calcium and Supreme Greens with MSM, DMC and ITV have ceased running those infomercials completely. The coral calcium infomercial has not run in over a year, and all versions of the Supreme Greens infomercial were halted in April 2004. DMC and ITV have no intention of running either infomercial in the future.

17.    DMC and ITV have other profitable operations and business that is unrelated to coral calcium, Supreme Greens or any other ingestible dietary supplement. The profit from these operations, as well as any recovery on DMC's and ITV's indemnification claims, could be used to satisfy any ultimate judgment or settlement obtained by the FTC. The relief the FTC is currently seeking would prevent these avenues of recovery.

18.    The FTC also is not seeking emergency relief against the defendants Triad ML Marketing, Inc., King Media or Allen Stern. This does not make sense to me, since we informed the FTC months ago that Stern and his businesses possessed all of the merchant accounts for the coral calcium product and is the sole distributor of coral calcium to various retail outlets. Thus, all of the funds from the infomercial sales of coral calcium through the time that the infomercial was pulled from the air, as well as all the proceeds of current retail sales, are being received by Stern and his companies. Apparently, Triad is also still running a 30 second advertisement for Coral Calcium Daily, but the FTC is not seeking any emergency relief in connection with this advertisement. We are not currently running any media of any kind for coral calcium.

19.    Likewise, the FTC is not seeking the extraordinary relief of a receiver or an asset freeze against Healthy Solutions, or any of its officers or directors, including Guerrero. As recognized by the FTC, Healthy Solutions is still operating a website and selling Supreme

5

Greens with MSM, based upon the representations made by Guerrero "as seen on TV", and the false representation that he is a doctor. A copy of the current web page operated by Healthy Solutions through which it sells Supreme Greens with MSM is attached as Exhibit D. Based on recent data, the Supreme Greens website was one of the most popular Internet searches in the last month and we understand that Guerrero is working with new distributors and increasing his network for the product, all based upon the substantial media exposure he received through the airing of the infomercial by ITV. To the contrary, ITV has ceased running the infomercial, does not intend to buy any additional product from Healthy Solutions, and intends to focus its future energies and business on other products.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of June, 2004 at Beverly, Massachusetts.

_/s/ Robert Maihos_
ROBERT MAIHOS

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC.,                 ) | |
|              ) | |
|        Plaintiff,       ) | |
|              ) | |
| v.                    ) | |
|              ) | |
| DIRECT MARKETING CONCEPTS, INC., ) | |
| ITV DIRECT, INC., DIRECT       ) | C.A. No. 05-11907-JLT |
| FULFILLMENT, LLC, DONALD    ) | |
| BARRETT, and ROBERT MAIHOS,  ) | |
|              ) | |
|        Defendants.     ) | |
|              ) | |

## AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITV DIRECT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| HEALTHY SOLUTIONS, L.L.C., et al., ) | |
| ) | |
| Defendants. ) | |
| CAPPSEALS, INC., ) | Civil Action No.  04-CV-10421-JLT |
| ) | |
| Plaintiff-in-Intervention, ) | |
| ) | |
| v. ) | |
| ) | |
| HEALTHY SOLUTIONS, L.L.C., d/b/a ) | |
| DIRECT BUSINESS CONCEPTS; ITV ) | |
| DIRECT, INC.; and DIRECT ) | |
| FULFILLMENT, LLC, ) | |
| ) | |
| Intervenor-Defendants. ) | |

## JOINT STIPULATIONS OF FACT

The parties to the above-captioned action, by and through their counsel, do hereby stipulate and agree as follows:

1.    On October 8, 2003, ITV Direct, Inc. ("ITV") issued a "standing purchase order" to Healthy Solutions, L.L.C. ("Healthy Solutions") requesting shipment of 160,000 bottles of Supreme Greens per month to be shipped to Direct Fulfillment;

2.    On November 21, 2003, ITV issued a purchase order to Healthy Solutions, requesting shipments of 50,000 bottles of Supreme Greens per week;

3.    In or around December 19, 2003, Direct Fulfillment received 50,004 bottles of Supreme Greens;

4.    In or around December 29, 2003, Direct Fulfillment received 50,012 bottles of Supreme Greens;

5.    In or around December 31, 2003, ITV Direct Inc. received invoice #21 from Direct Business Concepts ("DBC") indicating that ITV owed $300,078.00 for the December 29, 2003 shipment of Supreme Greens;

6.    Neither ITV nor any of its related entities has paid Invoice #21;

7.    In or around January 5, 2004, Direct Fulfillment received 30,912 bottles of Supreme Greens;

8.    In or around January 9, 2004, ITV received Invoice #22 from Direct Business Concepts indicating that ITV owed $185,472.00 for the January 5, 2004 shipment of Supreme Greens;

9.    Neither ITV nor any of its related entities has paid Invoice #22;

10.    In or around January 14, 2004, Direct Fulfillment received 49,920 bottles of Supreme Greens capsules and 4,032 jars of Supreme Greens powder;

11.    In or around January 14, 2004, ITV received Invoice #23 from Direct Business Concepts indicating that ITV owed $323,712.00 for the January 14, 2004 shipment of Supreme Greens;

12.    Neither ITV nor any of its related entities has paid Invoice #23;

13.    In or around January 21, 2004, Direct Fulfillment received 57,600 bottles of Supreme Greens capsules and 5,091 jars of Supreme Greens powder;

14.    In or around January 21, 2004, ITV received Invoice #24 from Direct Business Concepts indicating that ITV owed $376,146.00 for the January 21, 2004 shipment of Supreme Greens;

15.    Neither ITV nor any of its related entities has paid Invoice #24;

16.    In or around January 29, 2004, Direct Fulfillment received 48,000 bottles of

Supreme Greens capsules and 5,036 jars of Supreme Greens powder;

17.    In or around January 29, 2004, ITV received Invoice #25 from Direct Business Concepts indicating that ITV owed $318,216.00 for the January 29, 2004 shipment of Supreme Greens;

18.    Neither ITV nor any of its related entities has paid Invoice #25;

19.    In or around February 5, 2004, Direct Fulfillment received 48,000 bottles of Supreme Greens capsules and 5,040 jars of Supreme Greens powder;

20.    In or around February 6, 2004, ITV received Invoice #26 from Direct Business Concepts indicating that ITV owed $318,240.00 for the February 5, 2004 shipment of Supreme Greens;

21.    Neither ITV nor any of its related entities has paid Invoice #26;

22.    For each of the Supreme Greens shipments between December 29, 2004 through February, 2004, upon delivery, Direct Fulfillment took physical custody of the goods and had a reasonable opportunity to inspect the Supreme Greens it received;

23.    ITV had a reasonable opportunity to inspect the Supreme Greens Direct Fulfillment received between December 29, 2004 through February, 2004;

24.    ITV never rejected any of the Supreme Greens contained in the six shipments Direct Fulfillment received between December 29, 2004 through February, 2004;

25.    Direct Fulfillment never rejected any of the Supreme Greens contained in the six shipments it received between December 29, 2004 through February, 2004;

26.    ITV never tendered back to Healthy Solutions or Cappseals any of the Supreme Greens contained in the six shipments Direct Fulfillment received between December 29, 2004 through February, 2004;

3

27.    Direct Fulfillment never tendered back to Healthy Solutions or Cappseals any of the Supreme Greens contained in the six shipments it received between December 29, 2004 through February, 2004;

28.    ITV did not provide notice to Healthy Solutions or Cappseals of its intent to reject any of the Supreme Greens contained in the six shipments Direct Fulfillment received between December 29, 2004 through February, 2004;

29.    Direct Fulfillment did not provide notice to Healthy Solutions or Cappseals of its intent to reject any of the Supreme Greens contained in the six shipments it received between December 29, 2004 through February, 2004;

30.    ITV has sold units of the Supreme Greens contained in the six shipments it received between December 29, 2004 through February, 2004;

31.    ITV continues to sell units of the Supreme Greens contained in the six shipments it received between December 29, 2004 through February, 2004;

32.    As of August 23, 2004 Donald Barrett was still taking Supreme Greens;

33.    In total, Direct Fulfillment received 284,444 bottles of Supreme Greens capsules and 19,199 jars of Supreme Greens powder between December 29, 2003 through around February 6, 2004;

34.    In total, ITV was invoiced $1,821,864.00 for the six shipments of Supreme Greens Direct Fulfillment received between December 29, 2003 through around February 6, 2004;

35.    As of February 13, 2004 Direct Fulfillment had 333,918 units of Supreme Greens in inventory;

36.    By August 23, 2004 Direct Fulfillment had less than 100,000 units of Supreme

4

Greens in inventory; and

    37.      Between February 13, 2004 and August 23, 2004 ITV sold more than 200,000

units of Supreme Greens.

                          Respectfully submitted,
                          CAPPSEALS, INC.
                          By its attorneys,

                          /s/ Scott A. Silverman
                          Daniel J. Kelly BBO# 553926
                          dkelly@ghlaw.com
                          Scott A. Silverman, BBO #638087
                          ssilverman@ghlaw.com
                          Gadsby Hannah LLP
                          225 Franklin Street
                          Boston, MA 02110
                          (617) 345-7000

                          - and -

                          HEALTHY SOLUTIONS, LLC, HEALTH
                          SOLUTIONS, INC., ALEJANDRO
                          GUERRERO, MICHAEL HOWELL,
                          and GREGORY GEREMESZ
                          By their attorney,

                          /s/ Becky V. Christensen
                          Becky v. Christensen, Esq. (State Bar No. 147013)
                          1920 Main Street, Suite 150
                          Irvine, California 92614
                          Telephone #: (949) 851-5000
                          Fax #: (949) 851-5051

                          - and -

ITV DIRECT, INC. and
DIRECT FULFILLMENT, LLC
By its attorneys,

/s/ Peter S. Brooks
Peter S. Brooks, BBO #058980
Christopher F. Robertson, BBO #642094
Susan W. Gelwick, BBO #567115
Seyfarth Shaw LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

Dated:  May 26, 2005

<u>Certificate of service</u>

I hereby certify that a true and accurate copy of the foregoing was served on the attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

<u>Via electronic notification:</u>

Peter S. Brooks              pbrooks@seyfarth.com

Susan W. Gelwick            sgelwick@seyfarth.com

Dustin F. Hecker            dhecker@pbl.com

Christopher F. Robertson      crobertson@seyfarth.com

Becky Christensen          bvc@ocmiplaw.com

/s/ Scott A. Silverman
Daniel J. Kelly BBO# 553926
dkelly@ghlaw.com
Scott A. Silverman, BBO #638087
ssilverman@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

DATED:  May 26, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC.,           ) | |
|                         ) | |
|        Plaintiff,      ) | |
|                         ) | |
| v.                    ) | |
|                         ) | |
| DIRECT MARKETING CONCEPTS, INC., ) | C.A. No. 05-11907-JLT |
| ITV DIRECT, INC., DIRECT      ) | |
| FULFILLMENT, LLC, DONALD    ) | |
| BARRETT, and ROBERT MAIHOS,   ) | |
|                         ) | |
|        Defendants.     ) | |

**AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**EXHIBIT D**

Mar 01 04 09:15a    HEALTH SOLUTIONS                6269631227              p.4

Direct Marketing Concepts, Inc.

900 Cummings Center
Suite B07-U
Beverly, MA 01915

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 11/21/2003 | 1101 |

| Vendor |
|--------|
| Healthy Solutions, Inc.<br>11272 Day Lily Street<br>Fontana, CA 92337<br>ATTN: GREG |

| Ship To |
|---------|
| Direct Fulfillment<br>100 Cummings Center<br>Suite 143H<br>Dock 144Q<br>Beverly, MA 01915 |

*For How long    60- 90 Dry Back Out* (handwritten)

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| Supreme Greens (... | SUPREME GREENS WITH MSM - (CAPSULES OR POWDERS)<br><br>PLEASE CONSIDER THIS PURCHASE ORDER A WEEKLY SHIPMENT OF 50,000 UNITS OF SUPREME GREENS WITH MSM<br><br>THIS WILL REPLACE PO NO. 1078<br><br>THIS PURCHASE ORDER IS SUBJECT TO CHANGE OR CANCELLATION UPON 30 DAY WRITTEN NOTICE | 50,000 | 6.50 | 325,000.00 |

*wants to order 3 weeks in 4 weeks to increase amount* (handwritten)

*Dec 5th* (handwritten)

Thank you,

| | Total | $325,000.00 |

| Phone # | Fax # |
|---------|-------|
| 978-299-2231 | 978-299-2589 |

SH-047

2/2.q        10:1 858 777 5548

Direct Marketing Concepts, Inc.

900 Cummings Center
Suite B07-U
Beverly, MA  01915

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 11/21/2003 | 1101 |

| Vendor |
|--------|
| Healthy Solutions, Inc.<br>11272 Day Lily Street<br>Fontana, CA 92337<br>ATTN:  GREG |

| Ship To |
|---------|
| Direct Fufillment<br>100 Cummings Center<br>Suite 143H<br>Dock 144Q<br>Beverly, MA  01915 |

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| Supreme Greens (... | SUPREME GREENS WITH MSM - (CAPSULES OR POWDERS)<br><br>PLEASE CONSIDER THIS PURCHASE ORDER A WEEKLY SHIPMENT OF 50,000 UNITS OF SUPREME GREENS WITH MSM<br><br>THIS WILL REPLACE PO NO. 1078<br><br>THIS PURCHASE ORDER IS SUBJECT TO CHANGE OR CANCELLATION UPON 30 DAY WRITTEN NOTICE | 50,000 | 6.50 | 325,000.00 |

Thank you.

**Total** $325,000.00

| Phone # | Fax # |
|---------|-------|
| 978-299-2231 | 978-299-2589 |

ITV 00379

ITV Direct, Inc.

# Purchase Order

900 Cummings Center
Suite B07-U
Beverly, MA 01915

| Date | P.O. No. |
|------|----------|
| 11/21/2003 | 1101 |

| Vendor | Ship To |
|--------|---------|
| Healthy Solutions, Inc.<br>11272 Day Lily Street<br>Fontana, CA 92337<br>ATTN: GREG | Direct Fufillment<br>100 Cummings Center<br>Suite 143H<br>Dock 144Q<br>Beverly, MA 01915 |

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| Supreme Greens (... | SUPREME GREENS WITH MSM - (CAPSULES OR POWDERS)<br><br>PLEASE CONSIDER THIS PURCHASE ORDER A WEEKLY SHIPMENT OF 50,000 UNITS OF SUPREME GREENS WITH MSM<br><br>THIS WILL REPLACE PO NO. 1078<br><br>THIS PURCHASE ORDER IS SUBJECT TO CHANGE OR CANCELLATION UPON 30 DAY WRITTEN NOTICE | 50,000 | 6.50 | 325,000.00 |

Thank you.

| **Total** | |
|-----------|--|
| | $325,000.00 |

| Phone # | Fax # |
|---------|-------|
| 978-299-2231 | 978-299-2589 |

ITV 00324

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CAPPSEALS, INC.,                              )
                                             )
                    Plaintiff,               )
                                             )
v.                                           )
                                             )
DIRECT MARKETING CONCEPTS, INC.,             )
ITV DIRECT, INC., DIRECT                     )     C.A. No. 05-11907-JLT
FULFILLMENT, LLC, DONALD                     )
BARRETT, and ROBERT MAIHOS,                  )
                                             )
                    Defendants.              )
                                             )

## AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## EXHIBIT E

# Direct Business Concepts

9528 Miramar Road, Suite 100
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/31/2003 | 21 |

| Bill To |
|---------|
| Direct Marketing Concepts/ ITV Direct<br>Bob Maihos<br>900 Cummings Center<br>Suite #B07-U<br>Beverly, MA 01915 |

| Ship To |
|---------|
| Direct Marketing Concepts/ ITV Direct<br>Bob Maihos<br>100 Cummings Center<br>Suite #143H, Dock #144Q<br>Beverly, MA 01915 |

| P.O. Number | Terms |
|-------------|-------|
| 1101 | Net 30 |

| Quantity | Description | Price Each | Amount |
|----------|-------------|------------|--------|
| ✓50,013 | Supreme Greens with MSM: Capsules<br>(SHIPPED ON 12-29-03) | 6.00 | 300,078.00 |

| | |
|---|---|
| Subtotal | $300,078.00 |
| Sales Tax (0.0%) | $0.00 |
| Total | $300,078.00 |
| Payments/Credits | $0.00 |
| Balance Due | $300,078.00 |

ITV 00312

# Direct Business Concepts

9528 Miramar Road, Suite 100
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/9/2004 | 22 |

| Bill To |
|---------|
| **Direct Marketing Concepts/ ITV Direct**<br>**Bob Maihos**<br>**900 Cummings Center**<br>**Suite #B07-U**<br>**Beverly, MA 01915** |

| Ship To |
|---------|
| **Direct Marketing Concepts/ ITV Direct**<br>**Bob Maihos**<br>**100 Cummings Center**<br>**Suite #143H, Dock #144Q**<br>**Beverly, MA 01915** |

| P.O. Number | Terms |
|-------------|-------|
| 1101 | Net 30 |

| Quantity | Description | Price Each | Amount |
|----------|-------------|------------|--------|
| √30,912 | Supreme Greens with MSM: Capsules (SHIPPED ON 1-5-04) | 6.00 | 185,472.00 |

| | |
|---|---|
| **Subtotal** | $185,472.00 |
| **Sales Tax  (0.0%)** | $0.00 |
| **Total** | $185,472.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $185,472.00 |

ITV 00313

# Direct Business Concepts

9528 Miramar Road, Suite 100
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/14/2004 | 23 |

| Bill To |
|---------|
| Direct Marketing Concepts/ ITV Direct<br>Bob Maihos<br>900 Cummings Center<br>Suite #B07-U<br>Beverly, MA 01915 |

| Ship To |
|---------|
| Direct Marketing Concepts/ ITV Direct<br>Bob Maihos<br>100 Cummings Center<br>Suite #143II, Dock #144Q<br>Beverly, MA 01915 |

| P.O. Number | Terms |
|-------------|-------|
| 1101 | Net 30 |

| Quantity | Description | Price Each | Amount |
|----------|-------------|------------|--------|
| 49,920 | Supreme Greens with MSM: Capsules | 6.00 | 299,520.00 |
| 4,032 | Supreme Greens with MSM: Powder | 6.00 | 24,192.00 |
| | **(SHIPPED ON 1-14-04)** | | |

| | |
|--|--|
| Subtotal | $323,712.00 |
| Sales Tax (0.0%) | $0.00 |
| Total | $323,712.00 |
| Payments/Credits | $0.00 |
| **Balance Due** | **$323,712.00** |

ITV 00314

# Direct Business Concepts

9528 Miramar Road, Suite 100
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/21/2004 | 24 |

| Bill To |
|---------|
| **Direct Marketing Concepts/ ITV Direct**<br>**Bob Maihos**<br>**900 Cummings Center**<br>**Suite #B07-U**<br>**Beverly, MA 01915** |

| Ship To |
|---------|
| **Direct Marketing Concepts/ ITV Direct**<br>**Bob Maihos**<br>**100 Cummings Center**<br>**Suite #143H, Dock #144Q**<br>**Beverly, MA 01915** |

| P.O. Number | Terms |
|-------------|-------|
| 1101 | Net 30 |

| Quantity | Description | Price Each | Amount |
|---------|-------------|-----------|--------|
| 57,600 | Supreme Greens with MSM: Capsules | 6.00 | 345,600.00 |
| 5,091 | Supreme Greens with MSM: Powder | 6.00 | 30,546.00 |
| | **(SHIPPED ON 1-21-04)** | | |

| | |
|---|---|
| Subtotal | $376,146.00 |
| Sales Tax  (0.0%) | $0.00 |
| **Total** | $376,146.00 |
| Payments/Credits | $0.00 |
| **Balance Due** | **$376,146.00** |

ITV 00315

# Direct Business Concepts

9528 Miramar Road, Suite 100
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/29/2004 | 25 |

| Bill To |
|---------|
| Direct Marketing Concepts/ ITV Direct<br>Bob Maihos<br>900 Cummings Center<br>Suite #B07-U<br>Beverly, MA 01915 |

| Ship To |
|---------|
| Direct Marketing Concepts/ ITV Direct<br>Bob Maihos<br>100 Cummings Center<br>Suite #143H, Dock #144Q<br>Beverly, MA 01915 |

| P.O. Number | Terms |
|-------------|-------|
| 1101 | Net 30 |

| Quantity | Description | Price Each | Amount |
|----------|-------------|------------|--------|
| 48,000 | Supreme Greens with MSM: Capsules | 6.00 | 288,000.00 |
| 5,036 | Supreme Greens with MSM: Powder<br>(SHIPPED ON 1-29-04) | 6.00 | 30,216.00 |

| | |
|---|---|
| Subtotal | $318,216.00 |
| Sales Tax (0.0%) | $0.00 |
| Total | $318,216.00 |
| Payments/Credits | $0.00 |
| Balance Due | $318,216.00 |

ITV 00316

# Direct Business Concepts

9528 Miramar Road, Suite 100
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/6/2004 | 26 |

| Bill To |
|---------|
| **Direct Marketing Concepts/ ITV Direct**<br>**Bob Maihos**<br>**900 Cummings Center**<br>**Suite #B07-U**<br>**Beverly, MA 01915** |

| Ship To |
|---------|
| **Direct Marketing Concepts/ ITV Direct**<br>**Bob Maihos**<br>**100 Cummings Center**<br>**Suite #143H, Dock #144Q**<br>**Beverly, MA 01915** |

| P.O. Number | Terms |
|-------------|-------|
| 1101 | Net 30 |

| Quantity | Description | Price Each | Amount |
|----------|-------------|------------|--------|
| 48,000 | Supreme Greens with MSM: Capsules | 6.00 | 288,000.00 |
| 5,040 | Supreme Greens with MSM: Powder | 6.00 | 30,240.00 |
| | **(SHIPPED ON 2-6-04)** | | |

| | |
|---|---|
| Subtotal | $318,240.00 |
| Sales Tax (0.0%) | $0.00 |
| **Total** | $318,240.00 |
| Payments/Credits | $0.00 |
| **Balance Due** | **$318,240.00** |

ITV 00317

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DIRECT MARKETING CONCEPTS, INC., ) | C.A. No. 05-11907-JLT |
| ITV DIRECT, INC., DIRECT ) | |
| FULFILLMENT, LLC, DONALD ) | |
| BARRETT, and ROBERT MAIHOS, ) | |
| ) | |
| Defendants. ) | |

**AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**EXHIBIT F:  PART ONE**

DIRECT MARKETING CONCEPTS, INC.

Report on Applying Agreed-Upon Procedures
to Specified Financial Statement Elements
for period January 1, 2003 through
June 30, 2004

ITV 00517



**PANNELL
KERR
FORSTER PC**

Certified Public Accountants

75 Federal Street
Boston, MA 02110

Tel: (617) 753-9985
Fax: (617) 753-9986

Independent Accountants' Report on Applying Agreed-Upon Procedures

To Direct Marketing Concepts, Inc.:

We have performed the procedures described in Attachment A, which were agreed to by Direct Marketing Concepts, Inc. and the Federal Trade Commission (the specified parties), solely to assist you with respect to ascertaining certain information about Supreme Greens with MSM contained in the accounting records of Direct Marketing Concepts, Inc. and a related entity ITV Direct, Inc. for the period January 1, 2003 through June 30, 2004, as specified in Section VI. B. 1. through 7. of the Preliminary Injunction Order dated June 23, 2004, entered by the United States District Court, District of Massachusetts on behalf of the Federal Trade Commission, as Plaintiff. This engagement to apply agreed-upon procedures was performed in accordance with standards established by the American Institute of Certified Public Accountants. The sufficiency of the procedures is solely the responsibility of the specified parties of the report. Consequently, we make no representation regarding the sufficiency of the procedures described below either for the purpose for which this report has been requested or for any other purpose.

Our procedures and findings are described in Attachment A.

We were not engaged to, and did not, perform an audit, the objective of which would be the expression of an opinion on the certain information about Supreme Greens with MSM contained in the accounting records of Direct Marketing Concepts, Inc. and a related entity ITV Direct, Inc. for the period January 1, 2003 through June 30, 2004, as specified in Section VI. B. 1. through 7. of the Preliminary Injunction Order dated June 23, 2004, entered by the United States District Court, District of Massachusetts on behalf of the Federal Trade Commission, as Plaintiff. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

This report is intended solely for the use of Direct Marketing Concepts, Inc. and the Federal Trade Commission and is not intended to be and should not be used by anyone other than these specified parties.

*Pannell Kerr Forster PC*

August 16, 2004

ITV 00518

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 1. | 24 | "[A]ll revenues collected and obtained by the Defendants, directly or through any other corporation, partnership, limited liability corporation, or other entity, in connection with the sale in the United States of Supreme Greens with MSM, and the location and/or transfer of all such revenues." | 1. We requested that Direct Marketing Concepts, Inc. provide to us reports summarizing, by month, the sales of Supreme Greens with MSM from the date of the first sale of the product through June 30, 2004.<br><br>2. We math checked 50% of the reports entitled "Shipped Orders by Call Source, Summary" by adding individual components of the "Total" column and compared the calculated grand total to the grand total printed on the report. [The individual amounts in the "Total" column represent the total individual sales, including the billed shipping and handling charge.] The periods we selected for testing were: May, 2004; March, 2004; January, 2004; November, 2003; September, 2003; and the period January 1, 2003 through August 31, 2003. | 1. We obtained from Direct Marketing Concepts, Inc. reports entitled "Shipped Orders by Call Source, Summary" (which summarize the sales recorded during the period specified for all categories of Supreme Greens with MSM – SGAA, SGBB, SGCC and SGRN) for the following periods: each month in the period September, 2003 through June, 2004; and the period January 1, 2003 through August 31, 2003 taken in its entirety. These reports were generated from the company's "salessystem." [The sales and refund databases are maintained in a database called Mysql. "Middleware" called Lasso allows the user to access the database and print out reports via Web pages.] Sales are recorded when the products are shipped to the customer.<br><br>2. We found our calculated totals to be in agreement with the grand totals printed on the reports for each of the periods selected for testing. |

Page 1 of 28

ITV 00519

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 1. cont'd | | | 3. We obtained from Direct Marketing Concepts, Inc. a report entitled "Shipped Orders by Call Source, Itemized" for the period January 1, 2003 through August 31, 2003 to determine the date when the first shipment (sale) was recorded for Supreme Greens with MSM. This report was also generated from the company's "Sales System." [Sales are recorded when the product is shipped to the customer.] | 3. We noted that the first sale was shipped and recorded on August 16, 2003. |
| | | | 4. We requested that Direct Marketing Concepts, Inc. provide to us a summary of the sales of Supreme Greens with MSM, by month of revenue. | 4. We obtained from Direct Marketing Concepts, Inc. a report entitled "Supreme Greens Revenues By Month for the period January 1, 2003 through June 2004." |
| | | | 5. We traced the Total of the sales for each of the periods for which reports entitled "Shipped Orders by Call Source, Summary" (which summarize the sales recorded during the period specified for all categories of Supreme Greens with MSM – SGAA, SGBB, SGCC and SGRN) were generated in #1 above and compared them to the listed total for each of the periods as summarized on the report entitled "Supreme Greens Revenues by Month". | 5. We found the totals for each period on the report entitled "Supreme Greens Revenues by Month" to be in agreement with the totals on the individual period reports entitled "Shipped Orders by Call Source, Summary." |
| | | | 6. We requested that Direct Marketing Concepts, Inc. provide to us a report detailing any sales of Supreme Greens with MSM which were not recorded through the "salessystem" but were recorded directly in the | 6. We obtained from Direct Marketing Concepts, Inc. a report entitled "Supreme Greens Sales 'Master-Distributors" (from General Ledger) August 16, 2003 through June 30, 2004." [August 16, 2003 was the date |

Page 2 of 28

ITV 00520

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 1. cont'd | | | Quickbooks general ledger system. | of the first sale of Supreme Greens with MSM.] |
| | | | 7. We traced the total of sales detailed on the report entitled "Supreme Greens Sales 'Master-Distributors'" (from General Ledger) August 16, 2003 through June 30, 2004" to the amount labeled "Adjustment to Account for Supreme Greens Sales recorded in the General Ledger but not recorded in the Sales System" on the report entitled "Supreme Greens Revenues by Month". | 7. We found the amounts to be in agreement. |
| | | | 8. We math checked the summary report entitled "Supreme Greens Sales by Month" for the period January 1, 2003 through June 30, 2004 (which was described in #4 immediately above) by adding individual components of the "Total" column and the "Adjustment" described in item #7 immediately above and compared the calculated grand total to the grand total printed on the report. | 8. We found that our calculated grand total of the individual period total sales amounts on the report entitled "Shipped Orders by Call Source, Summary" and the "Adjustment" described in item #7 immediately above agreed with the total printed on the report entitled "Supreme Greens Sales by Month". |
| VI. B. 2. | 24 | "[T]he amount of all refunds provided by the Defendants to consumers, directly or through any other corporation, partnership, limited liability corporation, or other entity, in connection with the sale of Supreme Greens with MSM." | 1. We requested that Direct Marketing Concepts, Inc. provide to us reports summarizing, by month, credit card refunds related to the sales of Supreme Greens with MSM from the date of the first sale of the product through June 30, 2004. | 1. We obtained from Direct Marketing Concepts, Inc. reports entitled "Refunds by Call Source, Summary" (which summarize the credit card refunds issued during the period specified for all categories of Supreme Greens with MSM – SGAA, SGBB, SGCC and SGRN) for the following periods: each month in the period September, 2003 through June, 2004; and the period |

Page 3 of 28

ITV 00521

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 2. cont'd | | | | January 1, 2003 through August 31, 2003 taken in its entirety. These reports were generated from the company's "salessystem." [The sales and refund databases are maintained in a database called Mysql. "Middleware" called Lasso allows the user to access the database and print out reports via Web pages.] Sales are recorded when the products are shipped to the customer. |
| | | | 2. We math checked 50% of the reports entitled "Refunds by Call Source, Summary" by adding individual components of the "Total" column and compared the calculated grand total to the grand total printed on the report. [The individual amounts in the "Total" column represent the total individual refunds issued.] The periods we selected for testing were: June, 2004; April, 2004; February, 2004; December, 2003; October, 2003; and the period January 1, 2003 through August 31, 2003. | 2. We found our calculated totals to be in agreement with the grand totals printed on the reports for each of the periods selected for testing. |
| | | | 3. We obtained from Direct Marketing Concepts, Inc. a report entitled "Refunds by Call Source, Itemized" for the period January 1, 2003 through August 31, 2003 to determine the date of the first refund issued related to a sale of Supreme Greens with MSM. This report was also generated from the company's "salessystem." | 3. We noted that the first refund was issued and recorded on August 18, 2003. |

Page 4 of 28

ITV 00522

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 2. cont'd | | | 4. We requested that Direct Marketing Concepts, Inc. provide to us a summary schedule of all refunds related to sales of Supreme Greens with MSM. | 4. We obtained from Direct Marketing Concepts, Inc. a summary schedule entitled "Supreme Greens Refunds by Month." |
| | | | 5. We traced the Total of the credit card refunds for each of the periods for which reports entitled "Refunds by Call Source, Summary" (which summarize the refunds issued during the period specified for all categories of Supreme Greens with MSM – SGAA, SGBB, SGCC and SGRN) were generated in #1 above and compared them to the listed total for the period as summarized on the summary report prepared by Direct Marketing Concepts, Inc. entitled "Supreme Greens Refunds by Month". | 5. We found the totals for each period on the report entitled "Supreme Greens Refunds by Month" to be in agreement with the totals on the individual period reports entitled "Refunds by Call Source, Summary." |
| | | | 6. We requested that Direct Marketing Concepts, Inc. provide to us reports showing the manual checks issued for refunds related to the sales of Supreme Greens with MSM from the date of the first sale of the product through June 30, 2004. | 6. We obtained from Direct Marketing Concepts, Inc. reports entitled "Customer refunds issued" for each refund date in the period September 19, 2003 (the first refund date which included a refund related to the sales of Supreme Greens with MSM) through June 17, 2004 (the last refund date prior to June 30, 2004 which included a refund related to the sales of Supreme Greens with MSM). [These reports are derived from Excel worksheets maintained by the Customer Services Department of Direct Marketing Concepts, Inc.] These reports had been formatted by Direct Marketing Concepts, Inc. so that the total of all refunds related to |

Page 5 of 28

ITV 00523

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 2. cont'd | | | 11. We traced the total of the summary report entitled "Supreme Greens Manual Check Refunds By Refund Check Date" to the summary report entitled "Supreme Greens Refunds by Month." | printed on the report.<br><br>11. We found that the total of the summary report entitled "Supreme Greens Manual Check Refunds By Refund Check Date" agreed with the amount labeled "Refunds granted by manual checks" on the summary report entitled "Supreme Greens Refunds by Month." |
| | | | 12. We math checked the report entitled "Supreme Greens Refunds by Month" which was described in #4 immediately above by adding individual components of the "Total Refund" column and compared the calculated grand total to the grand total printed on the report. | 12. We found that our calculated subtotal of credit card refunds on the report entitled "Supreme Greens Refunds by Month" agreed with the subtotal printed on the report, labeled "SubTotal Refunds." We also found our calculated grand total of "SubTotal Refunds" and "Refunds granted by manual checks" agreed with the "Grand Total Refunds" printed on the report. |
| VI. B. 3. | 24 | "[I]nformation sufficient to show the flows of all monies received by the Defendants, directly or indirectly, from the sale in the United States of Supreme Greens with MSM."<br><br>This was interpreted to be "net sales" per a conference call discussion on 7/2/04 with Daniel Kaufman, a lawyer with the Federal Trade Commission. | 1. We requested that Direct Marketing Concepts, Inc. provide to us a report that would summarize the aggregate total sales of, and aggregate total refunds related to, Supreme Greens with MSM from the date of the first sale of the product through June 30, 2004, with the two totals netting to net sales of Supreme Greens with MSM for that period.<br><br>2. We compared the amounts labeled "Total Revenues" and "Total Refunds" on the report entitled "Supreme Greens Net Revenue" to the respective grand totals on | 1. We obtained from Direct Marketing Concepts, Inc. a report entitled "Supreme Greens Net Revenue" that summarized the grand total of gross revenue (from Item VI. B. 1. above) and the grand total of refunds (from Item VI. B. 2. above) both for Supreme Greens with MSM from the date of the first sale of the product through June 30, 2004.<br><br>2. We found the amounts labeled "Total Revenues" and "Total Refunds" on the report entitled "Supreme Greens Net Revenue" to be in agreement with the |

Page 7 of 28

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 3. cont'd | | | the reports "Supreme Greens Revenues by Month" and "Supreme Greens Refunds by Month" (discussed above). | respective grand totals on the reports "Supreme Greens Revenues by Month" and "Supreme Greens Refunds by Month" (discussed above). |
| | | | 3. We math checked the report entitled "Supreme Greens Net Revenue" which was described in #2 immediately above. | 3. When we recalculated the net of item labeled "Total Revenues" less the item labeled "Total Refunds," we found that our net total agreed with the amount labeled "Net Revenues" which was printed on the report entitled "Supreme Greens Net Revenues." |
| VI. B. 4. | 25 | "[A]ll costs and expenses incurred by the Defendants, directly or through any other corporation, partnership, limited liability corporation, or other entity, in connection with the sale or marketing of Supreme Greens with MSM in the United States." | A. Cost of Product Sold<br>1. We requested that Direct Marketing Concepts, Inc. provide to us a report summarizing all purchases of Supreme Greens with MSM by Direct Marketing Concepts, Inc. from the date of the first purchase of the product through June 30, 2004. | 1. We obtained from Direct Marketing Concepts, Inc. a report entitled "Cost of Supreme Greens Product Sold" This report summarizes the purchases of Supreme Greens with MSM during the period specified and then subtracts the inventory of Supreme Greens with MSM on hand at 6/30/04, to arrive at the net cost of Supreme Greens with MSM products sold during the specified period. These data were extracted from the databases of reconciled transactions in the Quickbooks general ledger systems utilized by Direct Marketing Concepts, Inc. |
| | | | 2. We traced the individual purchases for which the invoices had been paid through June 30, 2004 to the Direct Marketing Concepts, Inc. report "Credits to ALL Cash Accounts, January 1, 2003 through June 30, | 2. We found that all individual purchases listed on the report "Cost of Supreme Greens Product Sold" for which the invoices had been paid by June 30, 2004 were also on the report "Credits to ALL Cash |

Page 8 of 28

ITV 00526

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | 2004," a report showing all credits recorded in all cash accounts (i. e., all cash disbursements and transfers) for the period January 1, 2003 through June 30, 2004, sorted by pay date, in ascending date order from January 1, 2003. [This report is more completely described in Order Section VI. B. 6. below.] | Accounts, January 1, 2003 through June 30, 2004," and in the same amounts. Since the report "Credits to ALL Cash Accounts, January 1, 2003 through June 30, 2004" does not detail the product being purchased, the latter report could not be reviewed for possible additional purchases not listed on "Cost of Supreme Greens Product Sold." It was noted, however, that there were no additional purchases on the report "Credits to ALL Cash Accounts, January 1, 2003 through June 30, 2004" from Direct Business Concepts, the prime vendor for Supreme Greens with MSM. |
| | | | 3. We requested the Direct Marketing Concepts, Inc. provide to us a report showing all invoices for the purchase of Supreme Greens with MSM which remained unpaid at June 30, 2004. | 3. We obtained from Direct Marketing Concepts, Inc. a report entitled "Unpaid Bills for Supreme Greens Product As of June 30, 2004" which listed six invoices to Direct Business Concepts that remained unpaid at June 30, 2004. |
| | | | 4. We traced the individual purchases on the report entitled "Cost of Supreme Greens Product Sold For the Period January 2003 through June 2004" that had not yet been paid as of June 30, 2004 to the report entitled "Unpaid Bills for Supreme Greens Product As of June 30, 2004." | 4. We found, with one exception, that all individual purchases listed on the report "Cost of Supreme Greens Product Sold For the Period January 2003 through June 2004" that had not yet been paid for by June 30, 2004 were also on the report "Unpaid Bills for Supreme Greens Product As of June 30, 2004." The one exception involved an invoice dated 12/31/03 for a purchase from Direct Business Concepts. It was listed on the report "Cost of Supreme Greens Product Sold |

ITV 00527

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | | For the Period January 2003 through June 2004" at $300,078.00 and on the report "Unpaid Bills for Supreme Greens Product As of June 30, 2004" at $298,691.89, for a difference of $1,386.11. |
| | | | 5. We requested that Direct Marketing Concepts, Inc. provide to us an inventory report which showed the inventory of Supreme Greens with MSM on hand at 6/30/04. | 5. We obtained a report from Direct Marketing Concepts, Inc. entitled "Inventory Report" as of July 1, 2004. This report showed the number of units on hand at 6/30/04 of Supreme Green Caps and Supreme Green Powder. [The "Inventory Report" is an Excel worksheet. The only portion provided to us was the section that included Supreme Greens with MSM.] |
| | | | 6. We math checked the total count for Supreme Greens with MSM on the "Inventory Report" and the cost extension at $6 per unit, the unit cost figure provided to us by Direct Marketing Concepts, Inc. | 6. We found that when we totaled the units of Supreme Green Caps and Supreme Green Powder on the "Inventory Report" our total agreed with the total printed on the report. We also found that when we multiplied the total units on the "Inventory Report" by the $6 unit cost, our result agreed with the total dollar amount printed on the report. [We noted on invoices dated 1/29/04 and 2/6/04 from Direct Business Concepts that the total cost per unit for both Supreme Greens with MSM capsules and powder was $6.] |
| | | | 7. We math checked the report entitled "Cost of Supreme Greens Product Sold." | 7. We found that when we totaled the individual purchases listed on the report "Cost of Supreme Greens Product Sold" our Total Supreme Purchases agreed |

Page 10 of 28

ITV 00528

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | **B. Media Costs** **PAX Network** 1. We requested from Direct Marketing Concepts, Inc. and ITV Direct, Inc. a report showing the charges for all media airings on the PAX network for the period from the week beginning July 28, 2003 through the week beginning April 26, 2004. [There were no airings before 7/28/03 or after May 2, 2004.] | with the total printed on the report. We also found that the "Ending Inventory 6/30/2004" on the report "Cost of Supreme Greens Product Sold." Agreed with the dollar total cost of Supreme Greens with MSM in inventory at 6/30/04 on the "Inventory Report." Finally, we found that when we subtracted the 6/30/04 inventory of Supreme Greens with MSM from the total purchases of Supreme Greens with MSM for the period our result agreed with the Net Supreme Greens Product Cost printed on the report "Cost of Supreme Greens Product Sold." 1. We obtained from Direct Marketing Concepts, Inc. and ITV Direct, Inc. weekly reports entitled "ITV Direct Wire Transfer Sent a/b/c For Week of x/y/z," where a/b/c represents the date of the wire transfer and x/y/z represents the beginning of the week during which the media aired. We also obtained a summary report entitled "Supreme Greens Media Costs By Month for PAX Network Only For the Period January 1, 2003 through June 30, 2004." [This report was extracted from an Excel spreadsheet for all PAX network media airings maintained by the Media Department of Direct Marketing Concepts, Inc.] |

Page 11 of 28

ITV 00529

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | 2. We scanned the weekly reports to verify that the media airings were only for Supreme Greens with MSM (product codes SGRN, SGAA, SGBB and SGCC). | 2. We found that the only airings included in the dollar totals on the weekly reports were for product codes SGRN, SGAA, SGBB and SGCC. |
| | | | 3. We math checked the weekly reports for selected weeks, those beginning: 8/18/03; 8/25/03; 9/8/03; 10/6/03; 11/10/03; 12/22/03; 2/9/04; 3/15/04; and 3/29/04. | 3. We found that when we totaled the selected weekly reports our total agreed with the totals printed on the reports selected for testing. |
| | | | 4. We traced all the individual weekly amounts on the summary report, "Supreme Greens Media Costs By Month for PAX Network Only For the Period January 1, 2003 through June 30, 2004," back to the total on the individual weeks' reports. | 4. We found each of the weekly amounts on the summary report to be in agreement with the totals on the individual weekly reports. |
| | | | 5. We math checked the total of the summary report, "Supreme Greens Media Costs By Month for PAX Network Only For the Period January 1, 2003 through June 30, 2004." | 5. We found that our total agreed with the printed total on the report. |
| | | | **All Other Media**<br>1. We requested from Direct Marketing Concepts, Inc. and ITV Direct, Inc. reports showing the monthly charges for all media airings on all other media outlets (i. e., all media outlets other than the PAX Network discussed above) for the months January 2003 through | 1. We obtained from Direct Marketing Concepts, Inc. and ITV Direct, Inc. monthly reports entitled "Supreme Greens Media Costs: x 200y" where x represents the month of the airing and y represents specific year. [This media database is maintained in a database called |

Page 12 of 28

ITV 00530

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | June 2004. | Mysql. "Middleware" called Lasso allows the user to access the database and print out reports via Web pages.] |
| | | | 2. We scanned the monthly reports to verify that the media airings were only for Supreme Greens with MSM (product codes SGRN, SGAA, SGBB and SGCC). | 2. We found that the only media airings included in the dollar totals on the weekly reports were for product codes SGRN, SGAA, SGBB and SGCC. |
| | | | 3. We math checked the monthly reports for the following months: January and March 2003 (see note); May 2003; July 2003; September 2003; and March 2004. | 3. We found that when we totaled the selected monthly reports our total agreed with the totals printed on the reports. [We were told by Direct Marketing Concepts, Inc. and ITV Direct, Inc. that the costs listed in the database, and in the report, for the months of January 2003 through April 2003 were, in fact, for January 2004 through April 2004;; the year had been input into the system incorrectly. Since the period of the report covered the entire period January 2003 through June 2004, however, the dates for these three months were left unchanged on the summary report.] |
| | | | Summary of all Media Costs 1. We requested from Direct Marketing Concepts, Inc. and ITV Direct, Inc. a summary report showing the charges for all media airings for the months January 2003 through June 2004. | 1. We obtained from Direct Marketing Concepts, Inc. and ITV Direct, Inc. a summary report entitled "Supreme Greens Media Costs By Month (paid by ITV Direct, Inc.). |

Page 13 of 28

ITV 00531

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | 2. We traced the individual monthly amounts for "all other media" from monthly reports entitled "Supreme Greens Media Costs: x 200y" to the monthly amounts listed on the summary report entitled "Supreme Greens Media Costs By Month (paid by ITV Direct, Inc.). | 2. We found the individual monthly amounts for "all other media" listed on the summary report entitled "Supreme Greens Media Costs By Month (paid by ITV Direct, Inc.) to be in agreement with the monthly total on the monthly reports entitled "Supreme Greens Media Costs: x 200y." |
| | | | 3. We also traced the individual monthly amounts for PAX Network media from summary report "Supreme Greens Media Costs By Month for PAX Network Only For the Period January 1, 2003 through June 30, 2004" to the monthly amounts listed on the summary report entitled "Supreme Greens Media Costs By Month (paid by ITV Direct, Inc.). | 3. We found that the individual monthly amounts for PAX Network media listed on the summary report entitled "Supreme Greens Media Costs By Month (paid by ITV Direct, Inc.) agreed with the individual monthly totals listed on the summary report "Supreme Greens Media Costs By Month for PAX Network Only For the Period January 1, 2003 through June 30, 2004" to the monthly amounts listed on the summary report entitled "Supreme Greens Media Costs By Month (paid by ITV Direct, Inc.). |
| | | | 4. We math checked the totals of the "PAX Media" and "ALL Others" columns on the summary report entitled "Supreme Greens Media Costs By Month (paid by ITV Direct, Inc.) as well as the grand total, all on the summary report entitled "Supreme Greens Media Costs By Month (paid by ITV Direct, Inc.). | 4. We found that our calculated totals of the "PAX Media" and "ALL Others" columns on the summary report entitled "Supreme Greens Media Costs By Month (paid by ITV Direct, Inc.) to be in agreement with the printed totals. We also found that the grand total, as printed, agreed with the totals of the "PAX Media" and "ALL Others" columns. |

ITV 00532

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | C. Packaging Costs<br>1. We requested that Direct Marketing Concepts, Inc. provide to us a report showing the individual packaging costs incurred during the period from August 16, 2003, the date of the first sale of Supreme Greens with MSM, through June 30, 2004. | 1. We obtained from Direct Marketing Concepts, Inc. a report entitled "Packaging Costs August 16, 2003 through June 2004." [This report was extracted from the Quickbooks general ledger system maintained by Direct Marketing Concepts, Inc.] |
| | | | 2. We math checked the report entitled "Packaging Costs August 16, 2003 through June 2004." | 2. We found that the grand total of the report we calculated agreed with the grand total printed on the last page of the report. |
| | | | 3. We requested that Direct Marketing Concepts, Inc. provide to us a report showing the allocation of packaging costs to the sales of Supreme Greens with MSM for the period August 16, 2003 through June 30, 2004. | 3. We obtained from Direct Marketing Concepts, Inc. a report entitled "Supreme Greens Packaging Expense For the Period January 1, 2003 through June 30, 2004." [In reality, the report covered only the period August 16, 2003 through June 30, 2004.] This report related total packaging costs for the period August 16, 2003 through June 30, 2004 to the total net revenues recorded by Direct Marketing Concepts, Inc. for the same period. An allocation rate was calculated and then applied to the net sales of Supreme Greens with MSM during the same period to arrive at the packaging costs allocated to the sales of Supreme Greens with MSM. |
| | | | 4. We requested that Direct Marketing Concepts, Inc. and ITV Direct, Inc. each provide to us a trial balance that combined the activity for each of the entities for | 4. We obtained from Direct Marketing Concepts, Inc. and ITV Direct, Inc. reports entitled "Adjusted Trial Balance Combined Activity For the Period August, 16, |

Page 15 of 28

ITV 00533

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI.B.4. cont'd | | | the period August 16, 2003 through June 30, 2004. | 2003 through June 30, 2004." These reports were prepared by Direct Marketing Concepts, Inc. and ITV Direct, Inc. by generating adjusted trial balances for each company as of August 15, 2003 (the day before the first sale of Supreme Greens with MSM), December 31, 2003 and June 30, 2004. The "Adjusted Trial Balance Combined Activity For the Period August, 16, 2003 through June 30, 2004" was then prepared by subtracting the August 15, 2003 adjusted trial balance from the December 31, 2003 adjusted trial balance (to get the activity for the period August 16, 2003 through December 31, 2003) and adding in the June 30, 2004 adjusted trial balance. |
| | | | 5. We requested the Direct Marketing Concepts, Inc. provide to us a schedule of the adjusting journal entries for the period August 16, 2003 through June 30, 2004. [It was noted that there were no adjusting entries for ITV Direct.] | 5. We obtained from Direct Marketing Concepts, Inc. a report entitled "Adjusting Journal Entries August 16, 2003 through June 30, 2004." We reviewed the entries and noted that the entries broke down into two categories: corrections of misclassified postings to revenue and expense items (with no net effect on net income); and adjustments to previous estimated depreciation entries. |
| | | | 6. We traced the three input components of the report entitled "Supreme Greens Packaging Expense" to other reports and recalculated the results. | 6. We traced the item labeled "Total Net Revenues, from Trial Balance" ("item 1") to the "Adjusted Trial Balance Combined Activity For the Period August 16, 2003 through June 30, 2004," which had a subtotal for |

Page 16 of 28

ITV 00534

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | **D. Shipping Costs**<br><br>1. We requested that Direct Marketing Concepts, Inc. provide to us a report showing the individual shipping costs incurred during the period from August 16, 2003, the date of the first sale of Supreme Greens with MSM, through June 30, 2004.<br><br>2. We requested that Direct Marketing Concepts, Inc. provide to us a report showing the allocation of shipping costs to the sales of Supreme Greens with | net revenue and found the amounts to be in agreement. We traced the item labeled "Total Packaging Expenses from Trial Balance" ("item 2") to the grand total on the report "Packaging Costs" and found the amounts to be in agreement. We traced the item labeled "Supreme Greens Net Revenue" ("item 3") to the "Net Revenues" total on the report "Supreme Greens Net Revenues" and found the amounts to be in agreement. We then recalculated the percentage of item 2 divided by item 1 and found that the percentage we obtained agreed with the percentage printed on the report. We then multiplied item 3 by that percentage and found the amount we calculated to be in agreement with the amount printed on the report as "Packaging Expense Applied to Supreme Greens Net Revenues, at above percentage rate."<br><br>1. We obtained from Direct Marketing Concepts, Inc. a report entitled "Total Shipping Costs August 16, 2003 through June 2004." [This report was extracted from the Quickbooks general ledger system maintained by Direct Marketing Concepts, Inc.]<br><br>2. We obtained from Direct Marketing Concepts, Inc. a report entitled "Supreme Greens Shipping Expenses For the Period January 1, 2003 through June 30, 2004." |

ITV 00535

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | MSM for the period August 16, 2003 through June 30, 2004.<br><br>3. We traced the three input components of the report "Supreme Greens Shipping Expenses" to other reports and recalculated the results. | [In reality, the report covered only the period August 16, 2003 through June 30, 2004.] This report related total shipping costs for the period August 16, 2003 through June 30, 2004 to the total net revenues recorded by Direct Marketing Concepts, Inc. for the same period. An allocation rate was calculated and then applied to the net sales of Supreme Greens with MSM during the same period to arrive at the shipping costs allocated to the sales of Supreme Greens with MSM.<br><br>3. We traced the item labeled "Total Net Revenues, from Trial Balance" ("item 1") to the "Adjusted Trial Balance Combined Activity For the Period August 16, 2003 through June 30, 2004," which had a subtotal for net revenue and found the amounts to be in agreement. We traced the item labeled "Total Shipping Expenses from Trial Balance" ("item 2") to the grand total on the report "Total Shipping Costs" and found the amounts to be in agreement. We traced the item labeled "Supreme Greens Net Revenue" ("item 3") to the "Net Revenues" total on the report "Supreme Greens Net Revenues" and found the amounts to be in agreement. We then recalculated the percentage of item 2 divided by item 1 and found that the percentage we obtained agreed with the percentage printed on the report. We then multiplied item 3 by that percentage and found the amount we calculated to be in agreement with the |

Page 18 of 28

ITV 00536

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | | amount printed on the report as "Shipping Expense Applied to Supreme Greens Net Revenues, at above percentage rate." |
| | | | **E. Development Costs** 1. We requested from Direct Marketing Concepts, Inc. and ITV Direct, Inc. a report showing all the costs of developing the infomercials related to Supreme Greens with MSM, from the date of the first incurred cost through June 30, 2004. | 1. We obtained from ITV Direct, Inc. a report entitled "Supreme Greens Accounting, Development Costs January 1, 2003 through June 30, 2004. [This report was extracted from the Quickbooks general ledger system maintained by ITV Direct, Inc.] |
| | | | 2. We math checked the report entitled "Supreme Greens Accounting, Development Costs January 1, 2003 through June 30, 2004. | 2. We found that the grand total of the report we calculated agreed with the grand total printed on the last page of the report. |
| | | | **F. Summary of All Sales and Marketing Costs** 1. We requested that Direct Marketing Concepts, Inc. and ITV Direct, Inc. provide to us a summary report showing all costs incurred in connection with the sales and marketing of Supreme Greens with MSM. | 1. We obtained from Direct Marketing Concepts, Inc. a summary report entitled "Supreme Greens Direct Costs" which shows all of the direct costs related to the sale and marketing of Supreme Greens with MSM during the period from the date of the first sale through June 30, 2004. |
| | | | 2. We traced the five components of the report to other reports. | 2. We traced the media costs to the report entitled "Supreme Greens Media Costs By Month (paid by ITV Direct, Inc.) and found that the grand total of that report agreed with the amount printed on the line |

Page 19 of 28

ITV 00537

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | 3. We math checked the report entitled "Supreme Greens Direct Costs." | labeled "Media Costs" on the report entitled "Supreme Greens Direct Costs." We traced the product costs to the report entitled "Cost of Supreme Greens Product Sold" and found that the grand total of that report agreed with the amount printed on the line labeled "Product Costs." We traced the shipping costs to the report entitled "Supreme Greens Shipping Expenses For the Period January 1, 2003 through June 30, 2004." and found that the calculated shipping costs allocated to the sales of Supreme Greens with MSM on that report agreed with the amount printed on the line labeled "Shipping Costs." We traced the packaging costs to the report entitled "Supreme Greens Packaging Expense" and found that the calculated packaging costs allocated to the sales of Supreme Greens with MSM on that report agreed with the amount printed on the line labeled "Packaging Costs." We traced the development costs to the report entitled "Supreme Greens Accounting, Development Costs January 1, 2003 through June 30, 2004" and found that the grand total of that report agreed with the amount printed on the line labeled "Development Costs." <br><br> 3. We added up the dollar amounts associated with the five components of the report and found that our calculated total was one cent higher than the printed amount of "Total Direct Costs." This discrepancy was |

Page 20 of 28

ITV 00538

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 4. cont'd | | | | caused by the packaging and shipping costs being carryover calculated amount rather than being input amounts, as were the others. The difference, then, was due to rounding. |
| VI. B. 5. | 25 | "[A]ll net profits collected and obtained directly or through any other corporation, partnership, limited liability corporation, or other entity, in connection with the sales in the United States of Supreme Greens with MSM."<br><br>This was interpreted to be net of an allocation of overhead to the sales of Supreme Greens with MSM per a conference call discussion on 7/2/04 with Daniel Kaufman, a lawyer with the Federal Trade Commission. | 1. We requested that Direct Marketing Concepts, Inc. and ITV Direct, Inc. provide to us a summary report showing the net profits derived from the sale of Supreme Greens with MSM during the period from the first sale through June 30, 2004.<br><br>2. We requested that Direct Marketing Concepts, Inc. provide to us a report showing the allocation of overhead to the sales of Supreme Greens with MSM for the period August 16, 2003 through June 30, 2004.<br><br>3. We traced the three input components of the report "Supreme Greens Overhead Application" to other reports and recalculated the results. | 1. We obtained from Direct Marketing Concepts, Inc. and ITV Direct, Inc. a summary report showing the net profits derived from the sale of Supreme Greens with MSM during the period from the first sale through June 30, 2004, entitled "Supreme Greens Accounting Net Profit (Loss) For the period January 1, 2003 through June 30, 2004."<br><br>2. We obtained from Direct Marketing Concepts, Inc. a report entitled "Supreme Greens Overhead Allocation For the Period January 1, 2003 through June 30, 3004.<br><br>3. We traced the item labeled "Total Net Revenues," from Trial Balance" ("item 1") to the "Adjusted Trial Balance Combined Activity For the Period August 16, 2003 through June 30, 2004," which had a subtotal for net revenue and found the amounts to be in agreement. We traced the item labeled "Total Selling, General & Administrative Expenses, from Trial Balance" ("item 2") to the "Adjusted Trial Balance Combined Activity For the Period August 16, 2003 through June 30, |

Page 21 of 28

ITV 00539

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 5. cont'd | | | | 2004," which had a subtotal for Selling, General & Administrative Expenses and found the amounts to be in agreement. [We noted that the Selling, General & Administrative Expenses on the "Adjusted Trial Balance Combined Activity For the Period August 16, 2003 through June 30, 2004" did not include any of the direct costs detailed in the information provided for Order Section VI. B. 4. above.] We traced the item labeled "Supreme Greens Net Revenue" ("item 3") to the "Net Revenues" total on the report "Supreme Greens Net Revenues" and found the amounts to be in agreement. We then recalculated the percentage of item 2 divided by item 1 and found that the percentage we obtained agreed with the percentage printed on the report. We then multiplied item 3 by that percentage and found the amount we calculated to be in agreement with the amount printed on the report as "Overhead Applied to Supreme Greens Net Revenues, at above percentage rate." |
| VI. B. 6. | 25 | "[A]ll transfers of assets between the Defendants and any related or affiliated corporate entities or individuals in excess of Ten thousand and 00/100 dollars ($10,000) since January 2003." | 1. We requested from Direct Marketing Concepts, Inc. and ITV Direct, Inc. reports showing all credits recorded in all cash accounts (i. e., all cash disbursements and transfers) for the period January 1, 2003 through June 30, 2004, exclusive of payroll, sorted by pay date, in ascending date order from January 1, 2003. | 1. We obtained from Direct Marketing Concepts, Inc. a report entitled "Credits to ALL Cash Accounts, January 1, 2003 through June 30, 2004" and from ITV Direct, Inc. a report entitled "All Credits to All Cash Accounts, January 2003 through June 2004." These data were extracted from the databases of reconciled transactions in the Quickbooks general ledger systems utilized by |

ITV 00540

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 6. cont'd | | | 2. We requested from Direct Marketing Concepts, Inc. and ITV Direct, Inc. reports showing all credits to all cash accounts (i. e., all cash disbursements and transfers) over $10,000 for the period January 1, 2003 through June 30, 2004, exclusive of payroll, sorted by payment date, in ascending date order from January 1, 2003, with a verification total of all payments listed on this schedule. We requested that a verification total of all items be printed on each report. | both companies. The data were then "frozen" by the companies and converted into an Excel format so that the data could be sorted by date and by payee. [These reports represented disbursements exclusive of payroll.] We received from both Direct Marketing Concepts, Inc. and ITV Direct, Inc. printouts of all disbursements, exclusive of payroll, generated from the each company's Quickbooks system, with a verification total, as well as the Excel versions entitled "Credits to ALL Cash Accounts, January 1, 2003 through June 30, 2004" (Direct Marketing Concepts, Inc.) and "All Credits to All Cash Accounts, January 2003 through June 2004" (ITV Direct, Inc.). We found the verification totals of each version to be in agreement for each company. 2. We obtained from Direct Marketing Concepts, Inc. a report entitled "Credits > $10,000 to ALL Cash Accounts, January 1, 2003 through June 30, 2004" and from ITV Direct, Inc. a report entitled "Credits > $10K to All Cash Accounts, January 2003 through June 2004," both sorted by payment date. Each of the two reports had a verification total. [These reports represented disbursements exclusive of payroll.] As indicated above, these reports were extracted from the reports entitled "Credits to ALL Cash Accounts, January 1, 2003 through June 30, 2004" (Direct |

Page 23 of 28

ITV 00541

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 6. cont'd | | | 3. We compared each of the two reports showing all credits to all cash accounts (i. e., all cash disbursements and transfers) over $10,000 for the period January 1, 2003 through June 30, 2004, exclusive of payroll (as described in #2 immediately above) to the respective complete reports showing all credits to all cash accounts (i. e., all cash disbursements and transfers) for the period January 1, 2003 through June 30, 2004, exclusive of payroll (as described in #1 immediately above) to verify that all payments over $10,000 on the complete list (#1 above) were also on the respective lists of payments over $10,000 (#2 above), except for the transfers between cash accounts within each company. | Marketing Concepts, Inc.) and "All Credits to All Cash Accounts, January 2003 through June 2004" (ITV Direct, Inc.) by sorting the data to list only those credits over $10,000. Transfers between cash accounts within each company were excluded. Transfers between the two companies were included. 3. We found that all payments on each of the two reports of all credits to all cash accounts (i. e., all cash disbursements and transfers) over $10,000 for the period January 1, 2003 through June 30, 2004, exclusive of payroll (as described in #2 immediately above) were also on the respective complete reports of all credits to all cash accounts (i. e., all cash disbursements and transfers) for the period January 1, 2003 through June 30, 2004, exclusive of payroll (as described in #1 immediately above), except for the transfers between cash accounts within each company. We also found that all payments over $10,000 on either of the two complete reports of all credits to all cash accounts (i. e., all cash disbursements and transfers) for the period January 1, 2003 through June 30, 2004 (as described in #1 immediately above) were also on either of the respective reports of all credits to all cash accounts (i. e., all cash disbursements and transfers) over $10,000 for the period January 1, 2003 through June 30, 2004 (as described in #2 immediately above). |

Page 24 of 28

ITV 00542

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 6. cont'd | | | | again, exclusive of payroll and except for the transfers between cash accounts within each company. |
| | | | 4. We requested from Direct Marketing Concepts, Inc. and ITV Direct, Inc. reports showing all credits to all cash accounts (i. e., all cash disbursements and transfers) over $10,000 for the period January 1, 2003 through June 30, 2004, exclusive of payroll, with a primary sort by payee name and a secondary sort by payment date within the payee name sort, again with a verification total of payments shown on this schedule. | 4. We obtained from Direct Marketing Concepts, Inc. a report entitled "Credits > $10,000 to ALL Cash Accounts, January 1, 2003 through June 30, 2004" and from ITV Direct, Inc. a report entitled "Credits > $10K to All Cash Accounts, January 2003 through June 2004," both with a primary sort by payee name and a secondary sort by payment date within the payee name sort. [These reports represented disbursements exclusive of payroll.] |
| | | | 5. We compared the verification totals of each of the two reports described in items #2 and #4 immediately above (one sorted by payee and one sorted by date) to determine if they were in agreement and, therefore, that the databases were identical. | 5. We found the verification totals on each of the two versions of "Credits > $10,000 to ALL Cash Accounts, January 1, 2003 through June 30, 2004" (from Direct Marketing Concepts, Inc.), one sorted by payee and the other by date, to be in agreement. We also found and the verification totals on each of the two versions of "Credits > $10K to All Cash Accounts, January 2003 through June 2004" (from ITV Direct, Inc.), one sorted by payee and the other by date, to be in agreement. We also compared the individual items for "the Defendants and any related or affiliated corporate entities or individuals" listed on each of the two versions of "Credits > $10,000 to ALL Cash Accounts, January 1, 2003 through June 30, 2004" (from Direct Marketing |

ITV 00543

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI.B. 6. cont'd | | | | Concepts, Inc.) and each of the two versions of "Credits > $10K to All Cash Accounts, January 2003 through June 2004" (from ITV Direct, Inc.) and found that all such individual listings were identical on each of the two sets of lists and that there were no other listings for "the Defendants and any related or affiliated corporate entities or individuals" on either list sorted by payee that were not also on the other list sorted by date. [These reports represented disbursements exclusive of payroll.] |
| | | | 6. We requested that Direct Marketing Concepts, Inc. and ITV Direct, Inc. review the respective reports showing all credits to all cash accounts (i. e., all cash disbursements and transfers) over $10,000 for the period January 1, 2003 through June 30, 2004, exclusive of payroll, with a primary sort by payee name and a secondary sort by payment date within the payee name sort, and remove all payees other than "the Defendants and any related or affiliated corporate entities or individuals" from the report. | 6. We received from Direct Marketing Concepts, Inc. and ITV Direct, Inc. reports entitled "Credits > $10,000 to ALL Cash Accounts, January 1, 2003 through June 30, 2004 – to 'the Defendants and any related or affiliated corporate entities or individuals'" (from Direct Marketing Concepts, Inc.) and "Credits > $10K to All Cash Accounts, January 2003 through June 2004 – to 'the Defendants and any related or affiliated corporate entities or individuals'" (from ITV Direct, Inc.). [These reports represented disbursements exclusive of payroll.] |
| | | | 7. We compared the listing of all credits to all cash accounts (i. e., all cash disbursements and transfers) over $10,000 for the period January 1, 2003 through June 30, 2004, exclusive of payroll, made to "the | 7. We found that the payments listed on the reports "Credits > $10,000 to ALL Cash Accounts, January 1, 2003 through June 30, 2004 – to 'the Defendants and any related or affiliated corporate entities or |

Page 26 of 28

ITV 00544

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 6. cont'd | | | Defendants and any related or affiliated corporate entities or individuals" (as described in #6 immediately above) to the complete listing of all credits to all cash accounts (i. e., all cash disbursements and transfers) over $10,000 for the period January 1, 2003 through June 30, 2004 (as described in #4 immediately above) to verify that all payments over $10,000 to any of "the Defendants and any related or affiliated corporate entities or individuals" on the complete list (#4 above) were also on the list of payments over $10,000 to "the Defendants and any related or affiliated corporate entities or individuals" (#6 above). | individuals'" (from Direct Marketing Concepts, Inc.) and "Credits > $10K to All Cash Accounts, January 2003 through June 2004 – to 'the Defendants and any related or affiliated corporate entities or individuals'" (from ITV Direct, Inc.) comprised all payments over $10,000, exclusive of payroll, to the parties listed on page 1 of the Preliminary Injunction Order as to Defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., and Donald W. Barrett and to any other "related or affiliated corporate entities or individuals" known to us at this time. We also found that there were no other payments over $10,000, exclusive of payroll to "the Defendants and any related or affiliated corporate entities or individuals" that were on the complete reports of "Credits > $10,000 to ALL Cash Accounts, January 1, 2003 through June 30, 2004" (from Direct Marketing Concepts, Inc.) or "Credits > $10K to All Cash Accounts, January 2003 through June 2004" (from ITV Direct, Inc.) that were not also on the reports "Credits > $10,000 to ALL Cash Accounts, January 1, 2003 through June 30, 2004 – to 'the Defendants and any related or affiliated corporate entities or individuals'" (from Direct Marketing Concepts, Inc.) or "Credits > $10K to All Cash Accounts, January 2003 through June 2004 – to 'the Defendants and any related or affiliated corporate entities or individuals'" (from ITV Direct, Inc.) [Again, |

Page 27 of 28

ITV 00545

ATTACHMENT A

DIRECT MARKETING CONCEPTS, INC.
AGREED-UPON PROCEDURES AND FINDINGS
PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2004

| Order Section | Order Page | Description of information requested by the Preliminary Injunction Order dated June 23, 2004 | Procedures | Findings |
|---|---|---|---|---|
| VI. B. 6. cont'd | | | | these reports represented disbursements exclusive of payroll.] |
| VI. B. 7. | 25 | "[T]he location and amount of all assets of the Defendants, including all assets held either (1) by any Defendant in this action, (2) for Barrett's, Direct Marketing Concepts, Inc.'s or ITV's benefit, or (3) under any Defendants' direct or indirect control, jointly or severally."<br><br>For the purposes of this engagement, this was interpreted to be compiled balance sheets, without disclosures (i. e., footnotes) of Direct Marketing Concepts, Inc. and ITV Direct, Inc., both as of 6/30/04 per a conference call discussion on 7/2/04 with Daniel Kaufman, a lawyer with the Federal Trade Commission. | 1. We requested that Direct Marketing Concepts, Inc. and ITV Direct, Inc. provide to us balance sheets for each of the two entities as of June 30, 2004, prepared from each company's general ledger.<br><br>2. We requested that Direct Marketing Concepts, Inc. and ITV Direct, Inc. provide to us trial balances as of June 30, 2004.<br><br>3. We traced the June 30, 2004 asset and liability balances on the each balance sheet to the respective Adjusted Trial Balance as of June 30, 2004. | 1. We obtained from Direct Marketing Concepts, Inc. and ITV Direct, Inc. balance sheets for each of the two entities as of June 30, 2004. These balance sheets were derived from the Quickbooks general ledger systems utilized by Direct Marketing Concepts, Inc.<br><br>2. We obtained from each of Direct Marketing Concepts, Inc. and ITV Direct, Inc. an Adjusted Trial Balance as of June 30, 2004. [See above discussion about adjusting entries.]<br><br>3. We found the amounts on each of the two reports for each of the companies to be in agreement. [It should be noted that while there is a line item on the ITV Direct, Inc. balance sheet labeled "Due to Direct Marketing Concept" in the amount of $8,329,970.00, there is no corresponding line item on the balance sheet of Direct Marketing Concepts, Inc. reflecting a due from ITV Direct, Inc. The corresponding amount on the financial statements of Direct Marketing Concepts, Inc. is included in cost of sales.] |

Page 28 of 28

ITV 00546

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DIRECT MARKETING CONCEPTS, INC., | ) |
| ITV DIRECT, INC., DIRECT | )   C.A. No. 05-11907-JLT |
| FULFILLMENT, LLC, DONALD | ) |
| BARRETT, and ROBERT MAIHOS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**EXHIBIT F:  PART TWO**

CONFIDENTIAL

**DIRECT MARKETING CONCEPTS, INC.**

**APPENDIX TO REPORT ON AGREED-UPON PROCEDURES**

ITV 00547

## SCHEDULES

1.    Supreme Greens Revenues By Month

2.    Supreme Greens Refunds By Month

3.    Supreme Greens Net Revenues

4.    Supreme Greens Direct Costs

5.    Supreme Greens Media Costs By Month

6.    Cost of Supreme Greens Product Sold

7.    Inventory Report

8.    Supreme Greens Shipping Expenses

9.    Supreme Greens Packaging Expense

10.    Supreme Greens Net Profit (Loss)

11.    Supreme Greens Overhead Allocation

12.    Transfers Over $10K – Direct Marketing

13.    Transfers Over $10K – ITV Direct

14.    Balance Sheet – Direct Marketing

15.    Balance Sheet – ITV Direct

ITV 00548

1

**Direct Marketing Concepts, Inc.**
**Supreme Greens Accounting**
**Prepared by: Wayne P. Callahan**
**8/12/2004**

**Supreme Greens Revenues By Month**

**For the Period January 1, 2003 through June 30, 2004**

| Month of Revenue | Count | Product Revenue SubTotal | Shipping Revenue | Total Revenue |
|---|---|---|---|---|
| Jun-04 | 1536 | $ 173,450.49 | $16,173.25 | $ 189,623.74 |
| May-04 | 1979 | 210,294.80 | 20,621.29 | 230,916.09 |
| Apr-04 | 8013 | 826,250.87 | 87,737.84 | 913,988.71 |
| Mar-04 | 14318 | 1,513,532.74 | 161,521.87 | 1,675,054.61 |
| Feb-04 | 22611 | 1,521,839.23 | 166,259.49 | 1,688,098.72 |
| Jan-04 | 29257 | 2,309,192.20 | 265,927.46 | 2,575,119.66 |
| Dec-03 | 21954 | 2,248,110.22 | 244,340.70 | 2,492,450.92 |
| Nov-03 | 35156 | 2,144,203.25 | 245,905.72 | 2,390,108.97 |
| Oct-03 | 23049 | 2,178,456.34 | 276,611.64 | 2,455,067.98 |
| Sep-03 | 9380 | 853,464.65 | 110,516.19 | 963,980.84 |
| Jan - Aug 03 | 431 | 28,648.51 | 3,684.74 | 32,333.25 |
| Subtotal | 167684 | $ 14,007,443.30 | $ 1,599,300.19 | $ 15,606,743.49 |

Adjustment to Account for Supreme Greens Sales recorded in the
General Ledger but not recorded in the Sales System                446,057.00

**TOTAL SUPREME GREENS REVENUES**                           $    16,052,800.49

Revenue recognizition is upon product shipment.

ITV 00549

2

**Direct Marketing Concepts, Inc.**
**Supreme Greens Accounting**
**Prepared by: Wayne P. Callahan**
**7/29/2004**

**Supreme Greens Refunds by Month**

For the Period January 1, 2003 through June 30, 2004

| Month of Refund | Count | Product Refund | Shipping Refund | Total Refund |
|---|---|---|---|---|
| Jun-04 | 240 | $ (22,054.07) | ($723.44) $ | (22,777.51) |
| May-04 | 544 | (47,805.75) | (314.05) | (48,119.80) |
| Apr-04 | 1182 | (106,937.49) | (1,915.84) | (108,853.33) |
| Mar-04 | 2073 | (177,240.86) | (3,580.33) | (180,821.19) |
| Feb-04 | 1907 | (158,692.80) | (4,976.34) | (163,669.14) |
| Jan-04 | 2600 | (240,651.96) | (6,709.07) | (247,361.03) |
| Dec-03 | 1987 | (188,115.97) | (7,676.24) | (195,792.21) |
| Nov-03 | 2057 | (193,427.12) | (8,198.95) | (201,626.07) |
| Oct-03 | 1428 | (136,027.14) | (6,790.70) | (142,817.84) |
| Sep-03 | 451 | (43,936.35) | (4,272.17) | (48,208.52) |
| Jan - Aug 03 | 11 | (1,409.23) | (166.85) | (1,576.08) |
| **SubTotal Refunds** | **14480** | **$ (1,316,298.74)** | **$    (45,323.98)** | **$ (1,361,622.72)** |

Refunds granted by manual checks                                      $      (7,741.53)

**Grand Total Refunds**                                        $ (1,369,364.25)

ITV 00550

3

**Direct Marketing Concepts, Inc.**
**Supreme Greens Accounting**
**Prepared by: Wayne P. Callahan**
**8/12/2004**

**Supreme Greens Accounting**
**Supreme Greens Net Revenues**
For the Period January 1, 2003 through June 30, 2004

| | | |
|---|---|---|
| **Total Gross Sales** | $ | 16,052,800.49 |
| **Total Refunds** | | (1,369,364.25) |
| **Net Revenues** | $ | 14,683,436.24 |

ITV 00551

4

**Direct Marketing Concepts, Inc.**
**Supreme Greens Accounting**
**Prepared by: Wayne P. Callahan**
**8/13/2004**

**Supreme Greens Direct Costs**

For the Period January 1, 2003 through June 30, 2004

| | |
|---|---|
| **Media Costs** | $7,881,870.90 |
| **Product Costs** | 3,975,452.61 |
| **Shipping Costs** | 1,029,071.21 |
| **Packaging Costs** | 97,236.14 |
| **Development Costs** | 38,045.95 |
| **Total Direct Costs** | $13,021,676.80 |

ITV 00552

5

**Direct Marketing Concepts, Inc.**
**Supreme Greens Accounting**
**Prepared by: Wayne P. Callahan**
**8/9/2004**

## Supreme Greens Media Costs By Month (paid by ITV Direct, Inc.)

### For the Period January 1, 2003 through June 30, 2004

| Month of Media Cost | PAX Media | ALL Others | TOTAL |
|---|---|---|---|
| Jun-04 | $0.00 | $0.00 | $0.00 |
| May-04 | 0.00 | 0.00 | $0.00 |
| Apr-04 | 57,927.50 | 284,582.47 | $342,509.97 |
| Mar-04 | 270,703.75 | 453,283.02 | $723,986.77 |
| Feb-04 | 215,411.25 | 642,293.64 | $857,704.89 |
| Jan-04 | 181,623.75 | 938,167.72 | $1,119,791.47 |
| Dec-03 | 371,587.70 | 1,016,920.43 | $1,388,508.13 |
| Nov-03 | 349,371.25 | 939,614.97 | $1,288,986.22 |
| Oct-03 | 402,453.75 | 825,877.28 | $1,228,331.03 |
| Sep-03 | 430,333.75 | 417,315.29 | $847,649.04 |
| Aug-03 | 41,395.00 | 28,728.38 | $70,123.38 |
| Jul-03 | 0.00 | 2,040.00 | $2,040.00 |
| Jun-03 | 0.00 | 2,040.00 | $2,040.00 |
| May-03 | 0.00 | 2,550.00 | $2,550.00 |
| Apr-03 | 0.00 | 2,040.00 | $2,040.00 |
| Mar-03 | 0.00 | 2,040.00 | $2,040.00 |
| Feb-03 | 0.00 | 1,530.00 | $1,530.00 |
| Jan-03 | 0.00 | 2,040.00 | $2,040.00 |
| **Total Supreme Greens Media Costs** | $2,320,807.70 | $5,561,063.20 | $7,881,870.90 |

Accrual Basis

The costs listed above for the months of January 2003 through April 2003 were, in fact, for the months of January 2004 through April 2004. The dates had been entered into the system incorrectly. They have been left on this report wth their recorded dates since, in any case, the costs were incurred during the period January 1, 2003 through June 30, 2004, the period covered by the report.

ITV 00553

6

# Direct Marketing Concepts, Inc.
## Supreme Greens Accounting
## Cost of Supreme Greens Product Sold
### Prepared by Wayne P. Callahan 8-9-2004
### For the Period January 2003 through June 2004

| Trans # | Type | Date | Num | Name | Debit |
|---|---|---|---|---|---|
| 9,284 | Check | 06/17/2003 | WIRE | Healthy Solutions, Inc. | 16,250.00 |
| 11,721 | Check | 08/19/2003 | 3953 | Healthy Solutions, Inc. | 1,095.00 |
| 11,934 | Bill | 08/19/2003 | 1057 | Healthy Solutions, Inc. | 81,250.00 |
| 12,860 | Check | 09/26/2003 | WIRE | Direct Business Concepts | 83,382.00 |
| 13,635 | Bill | 09/26/2003 | 2 | Direct Business Concepts | 74,490.00 |
| 13,639 | Bill | 09/26/2003 | 3 | Direct Business Concepts | 13,000.00 |
| 13,638 | Bill | 10/03/2003 | 4 | Direct Business Concepts | 91,260.00 |
| 13,637 | Bill | 10/08/2003 | 5 | Direct Business Concepts | 9,750.00 |
| 13,637 | Bill | 10/08/2003 | 5 | Direct Business Concepts | 3,250.00 |
| 13,636 | Bill | 10/10/2003 | 6 | Direct Business Concepts | 128,609.00 |
| 13,636 | Bill | 10/10/2003 | 6 | Direct Business Concepts | 19,565.00 |
| 14,607 | Bill | 10/17/2003 | 10 | Direct Business Concepts | 65,520.00 |
| 13,716 | Bill | 10/20/2003 | 7 | Direct Business Concepts | 8,502.11 |
| 14,880 | Bill | 10/21/2003 | 11 | Direct Business Concepts | 13,000.00 |
| 14,609 | Bill | 10/24/2003 | 12 | Direct Business Concepts | 265,356.00 |
| 14,610 | Bill | 11/03/2003 | 13 | Direct Business Concepts | 124,020.00 |
| 14,608 | Bill | 11/03/2003 | 9 | Direct Business Concepts | 7,500.00 |
| 14,611 | Bill | 11/07/2003 | 14 | Direct Business Concepts | 158,385.50 |
| 14,788 | Bill | 11/18/2003 | 15 | Direct Business Concepts | 246,480.00 |
| 14,788 | Bill | 11/18/2003 | 15 | Direct Business Concepts | 31,460.00 |
| 14,701 | Check | 11/18/2003 | 4445 | Direct Business Concepts | 98,174.00 |
| 15,081 | Bill | 11/25/2003 | 16 | Direct Business Concepts | 287,400.00 |
| 15,082 | Bill | 12/03/2003 | 17 | Direct Business Concepts | 241,920.00 |
| 15,430 | Bill | 12/08/2003 | 18 | Direct Business Concepts | 214,272.00 |
| 15,859 | Bill | 12/12/2003 | 19 | Direct Business Concepts | 241,920.00 |
| 15,858 | Bill | 12/19/2003 | 20 | Direct Business Concepts | 300,024.00 |
| 16,690 | Bill | 12/31/2003 | 21 | Direct Business Concepts | 300,078.00 |
| 16,691 | Bill | 01/09/2004 | 22 | Direct Business Concepts | 185,472.00 |
| 16,692 | Bill | 01/14/2004 | 23 | Direct Business Concepts | 299,520.00 |
| 16,692 | Bill | 01/14/2004 | 23 | Direct Business Concepts | 24,192.00 |
| 16,693 | Bill | 01/21/2004 | 24 | Direct Business Concepts | 345,600.00 |
| 16,693 | Bill | 01/21/2004 | 24 | Direct Business Concepts | 30,546.00 |
| 16,997 | Bill | 01/29/2004 | 25 | Direct Business Concepts | 288,000.00 |
| 16,997 | Bill | 01/29/2004 | 25 | Direct Business Concepts | 30,216.00 |
| 17,074 | Bill | 02/06/2004 | 26 | Direct Business Concepts | 288,000.00 |
| 17,074 | Bill | 02/06/2004 | 26 | Direct Business Concepts | 30,240.00 |

Total Supreme Green Purchases     4,647,698.61

Ending Inventory 6/30/2004     (672,246.00)

Net Supreme Greens Product Cost     3,975,452.61

ITV 00554

**7**

Date:7-1-4                    Inventory Report

| Product | with phone# | w/o phone# |
|---|---|---|
| Alka Slim | xxxxx | 11,072 |
| Calcium Caps | 64,910 | 14,090 |
| Calcium Gels | 49,384 | 11,302 |
| Calcium Supreme Caps | xxxxx | 3,948 |
| Children Calcium Caps | 1,449 | xxxxx |
| E-8 Daily Caps | 97,550 | xxxxx |
| Green Tea | 34,510 | xxxxx |
| Kilos of Calcium | 67 | xxxxx |
| Liquid Essential | 15,418 | xxxxx |
| P.H.Test Kits | 23,600 | 10,100 |
| P.H.Test Samples | 32,000 | xxxxx |
| Silver from the Sea | xxxxx | 8,867 |
| Supreme Green Caps | 103,607 | 42 |
| Supreme Green Powder | 7,777 | 615 |
| T-Bag "1 month supply" | 72,240 | xxxxx |
| | | |
| *Dr.Day Products* | | |
| Dr Day workbook | 23,130 | xxxxx |
| Dr.Day"Confusion"cassette | 5 | xxxxx |
| Dr.Day "Diseases" video | 20,827 | xxxxx |
| Dr.Day "Cancer" video | 3,549 | xxxxx |
| Dr.Day"God" video | 19,058 | xxxxx |
| Dr.Day"Light" video | 2 | xxxxx |
| Dr.Day"AltMed" video | - | xxxxx |
| Dr.Day"He Loves Me" video | 124 | xxxxx |
| Dr.Day"Drugs" video | 97 | xxxxx |
| Dr.Day"DoubleBlind" video | 146 | xxxxx |
| Dr.Day"Believing" video | 140 | xxxxx |
| Dr.Day"Cancer" DVD | 9,942 | xxxxx |
| Dr.Day"Interview"video | 13,019 | xxxxx |
| Dr.Day"Interview"DVD | 4,759 | xxxxx |

112,041   Total Count SG

$ 672,246.00   Total Cost @ $6.00 cost per unit

ITV 00555

8

**Direct Marketing Concepts, Inc.**
**Supreme Greens Accounting**
**Prepared by: Wayne P. Callahan**
**8/12/2004**

**Supreme Greens Shipping Expenses**

**For the Period January 1, 2003 through June 30, 2004**

| | |
|---|---|
| Total Net Revenues, from Trial Balance | $36,202,461.55 |
| Total Shipping Expenses from Trial Balance | 2,537,206.56 |
| Shipping Expense as percentage of Total Net Revenues | 7.01% |
| Supreme Greens Net Revenues | $ 14,683,436.24 |
| Shipping Expense Allocated to Supreme Greens Net Revenues, at above percentage rate. | $ 1,029,071.21 |

ITV 00556

9

**Direct Marketing Concepts, Inc.**
**Supreme Greens Accounting**
**Prepared by: Wayne P. Callahan**
**8/13/2004**

**Supreme Greens Packaging Expense**

For the Period January 1, 2003 through June 30, 2004

| | | |
|---|---|---|
| Total Net Revenues, from Trial Balance | $ | 36,202,461.55 |
| Total Packaging Expenses from Trial Balance | $ | 239,738.67 |
| Packaging Expense as percentage of Total Net Revenues | | 0.66% |
| Supreme Greens Net Revenues | $ | 14,683,436.24 |
| Packaging Expense Applied to Supreme Greens Net Revenues, at above percentage rate. | $ | 97,236.14 |

ITV 00557

10

**Direct Marketing Concepts, Inc.**
**Supreme Greens Accounting**
**Prepared by: Wayne P. Callahan**
**8/13/2004**

**Supreme Greens Accounting**
**Net Profit (Loss)**

**For the Period January 1, 2003 through June 30, 2004**

| | | |
|---|---|---:|
| **Total Gross Supreme Greens Revenues** | $ | 16,052,800.49 |
| **Total Supreme Greens Refunds** | | (1,369,364.25) |
| **Net Supreme Greens Revenues** | $ | 14,683,436.24 |
| **Less Supreme Greens Direct Costs** | | (13,021,676.80) |
| **Net Revenues Less Direct Costs** | $ | 1,661,759.44 |
| **Overhead Allocated to Net Supreme Greens Revenues** | | (4,138,687.91) |
| **Net Loss on Sales of Supreme Greens** | $ | (2,476,928.47) |

ITV 00558

**11**

**Direct Marketing Concepts, Inc.**
**Supreme Greens Accounting**
**Prepared by: Wayne P. Callahan**
**8/12/2004**

**Supreme Greens Overhead Allocation**

**For the Period January 1, 2003 through June 30, 2004**

| | | |
|---|---|---:|
| Total Net Revenues, from Trial Balance | $ | 36,202,461.55 |
| Total Selling, General & Administrative Expenses, from Trial Balance | | 10,204,061.73 |
| Overhead Rate as percentage of Total Net Revenues | | 28.19% |
| Supreme Greens Net Revenues | $ | 14,683,436.24 |
| Overhead Allocated to Supreme Greens Net Revenues, at above percentage rate. | $ | 4,138,687.91 |

ITV 00559

12

Direct Marketing Concepts, Inc.

# Transfers > $10,000 to the Defendants and Any Related or Affiliated Corporate Entities or Individuals

### January 1 2003 through June 30 2004

| Trans #<br>Jan '03 - Jun 04 | Date | Check # | Payee | Credit |
|---|---|---|---|---|
| 8611 | 06/03/2003 | WIRE | Direcgt Fulfillment | 25,000.00 |
| 12860 | 09/26/2003 | | Direct Business Concepts | 83,382.00 |
| 13943 | 10/10/2003 | 4421 | Direct Business Concepts | 58,502.11 |
| 13652 | 10/28/2003 | WIRE | Direct Business Concepts | 87,490.00 |
| 13783 | 11/03/2003 | WIRE | Direct Business Concepts | 104,260.00 |
| 14029 | 11/13/2003 | 4445 | Direct Business Concepts | 98,174.00 |
| 14701 | 11/21/2003 | | Direct Business Concepts | 98,174.00 |
| 14847 | 12/01/2003 | 4558 | Direct Business Concepts | 265,356.00 |
| 14628 | 12/01/2003 | WIRE | Direct Business Concepts | 65,520.00 |
| 14881 | 12/01/2003 | 4561 | Direct Business Concepts | 13,000.00 |
| 14848 | 12/06/2003 | 4559 | Direct Business Concepts | 124,020.00 |
| 15079 | 12/16/2003 | 4622 | Direct Business Concepts | 158,385.50 |
| 15268 | 12/22/2003 | 4666 | Direct Business Concepts | 277,940.00 |
| 15644 | 01/02/2004 | 4772 | Direct Business Concepts | 287,400.00 |
| 16100 | 01/12/2004 | 4809 | Direct Business Concepts | 241,920.00 |
| 16251 | 01/19/2004 | 4867 | Direct Business Concepts | 214,272.00 |
| 16618 | 01/26/2004 | 4925 | Direct Business Concepts | 241,920.00 |
| 16763 | 02/05/2004 | 5001 | Direct Business Concepts | 300,024.00 |
| 4594 | 02/13/2003 | 1013 | Direct Fulfillment, LLC | 65,000.00 |
| 4624 | 02/20/2003 | 1040 | Direct Fulfillment, LLC | 65,000.00 |
| 4666 | 02/26/2003 | 1066 | Direct Fulfillment, LLC | 25,000.00 |
| 4678 | 03/03/2003 | 1072 | Direct Fulfillment, LLC | 50,000.00 |
| 6007 | 03/04/2003 | Wire | Direct Fulfillment, LLC | 50,000.00 |
| 6015 | 03/07/2003 | Wire | Direct Fulfillment, LLC | 15,000.00 |
| 6024 | 03/10/2003 | Wire | Direct Fulfillment, LLC | 35,000.00 |
| 6026 | 03/11/2003 | Wire | Direct Fulfillment, LLC | 20,000.00 |
| 6029 | 03/13/2003 | Wire | Direct Fulfillment, LLC | 60,000.00 |
| 6030 | 03/13/2003 | Wire | Direct Fulfillment, LLC | 50,000.00 |
| 6035 | 03/18/2003 | Wire | Direct Fulfillment, LLC | 50,000.00 |
| 6036 | 03/18/2003 | Wire | Direct Fulfillment, LLC | 50,000.00 |
| 6037 | 03/19/2003 | Wire | Direct Fulfillment, LLC | 85,000.00 |
| 6043 | 03/27/2003 | Wire | Direct Fulfillment, LLC | 60,000.00 |
| 6048 | 04/01/2003 | Wire | Direct Fulfillment, LLC | 35,000.00 |
| 6051 | 04/03/2003 | Wire | Direct Fulfillment, LLC | 60,000.00 |
| 6053 | 04/08/2003 | Wire | Direct Fulfillment, LLC | 50,000.00 |
| 6057 | 04/10/2003 | Wire | Direct Fulfillment, LLC | 50,000.00 |
| 6060 | 04/15/2003 | Wire | Direct Fulfillment, LLC | 50,000.00 |
| 7197 | 04/18/2003 | | Direct Fulfillment, LLC | 85,504.56 |
| 6334 | 04/18/2003 | Wire | Direct Fulfillment, LLC | 35,000.00 |
| 7785 | 05/07/2003 | WIRE | Direct Fulfillment, LLC | 80,000.00 |
| 8006 | 05/12/2003 | WIRE | Direct Fulfillment, LLC | 15,000.00 |
| 7966 | 05/14/2003 | WIRE | Direct Fulfillment, LLC | 50,000.00 |
| 8297 | 05/23/2003 | WIRE | Direct Fulfillment, LLC | 75,000.00 |
| 11250 | 07/28/2003 | | Direct Fulfillment, LLC | 25,000.00 |
| 16545 | 01/21/2004 | 4920 | Donald W. Barrett | 25,000.00 |
| 17100 | 02/13/2004 | 5079 | Donald W. Barrett | 25,000.00 |
| 17286 | 02/20/2004 | 5169 | Donald W. Barrett | 100,000.00 |
| 18021 | 03/18/2004 | 5368 | Donald W. Barrett | 50,000.00 |
| 13006 | 10/06/2003 | 4227 | Eileen Barrett | 63,500.00 |
| 10842 | 07/15/2003 | 3699 | Health Solutions | 25,250.00 |
| 14829 | 12/01/2003 | 4557 | Health Solutions | 25,250.00 |
| 9284 | 06/17/2003 | WIRE | Healthy Solutions, Inc. | 16,250.00 |
| 11935 | 08/19/2003 | WIRE | Healthy Solutions, Inc. | 81,250.00 |
| 5339 | 03/20/2003 | 1461 | ITV Direct | 20,000.00 |
| 5391 | 03/20/2003 | 1476 | ITV Direct | 15,000.00 |
| 5528 | 03/31/2003 | 1543 | ITV Direct | 20,000.00 |
| 5612 | 04/04/2003 | 1437 | ITV Direct | 35,000.00 |

ITV 000560

Direct Marketing Concepts, Inc.

## Transfers > $10,000 to the Defendants and Any Related or Affiliated Corporate Entities or Individuals

### January 1 2003 through June 30 2004

| Trans # | Date | Check # | Payee | Credit |
|---|---|---|---|---|
| 6359 | 04/16/2003 | JE-164 | ITV Direct | 30,000.00 |
| 6336 | 04/18/2003 | 1756 | ITV Direct | 150,000.00 |
| 6596 | 04/23/2003 | | ITV Direct | 100,000.00 |
| 7401 | 04/29/2003 | WIRE | ITV Direct | 60,000.00 |
| 7501 | 04/30/2003 | WIRE | ITV Direct | 40,000.00 |
| 7786 | 05/07/2003 | WIRE | ITV Direct | 50,000.00 |
| 8005 | 05/12/2003 | WIRE | ITV Direct | 100,000.00 |
| 8136 | 05/16/2003 | WIRE | ITV Direct | 100,000.00 |
| 8252 | 05/20/2003 | WIRE | ITV Direct | 75,000.00 |
| 8610 | 06/03/2003 | WIRE | ITV Direct | 75,000.00 |
| 8827 | 06/09/2003 | WIRE | ITV Direct | 75,000.00 |
| 9279 | 06/17/2003 | | ITV Direct | 140,000.00 |
| 10483 | 07/08/2003 | WIRE | ITV Direct | 120,000.00 |
| 10818 | 07/13/2003 | WIRE | ITV Direct | 50,000.00 |
| 10823 | 07/17/2003 | WIRE | ITV Direct | 30,000.00 |
| 11006 | 07/18/2003 | WIRE | ITV Direct | 30,000.00 |
| 11047 | 07/21/2003 | | ITV Direct | 30,000.00 |
| 11212 | 07/25/2003 | | ITV Direct | 124,000.00 |
| 11251 | 07/28/2003 | | ITV Direct | 150,000.00 |
| 11411 | 08/01/2003 | | ITV Direct | 38,000.00 |
| 11453 | 08/05/2003 | | ITV Direct | 105,000.00 |
| 11595 | 08/12/2003 | | ITV Direct | 150,000.00 |
| 11710 | 08/19/2003 | | ITV Direct | 165,000.00 |
| 12017 | 08/25/2003 | | ITV Direct | 120,000.00 |
| 12089 | 08/28/2003 | WIRE | ITV Direct | 70,000.00 |
| 12103 | 09/02/2003 | | ITV Direct | 230,000.00 |
| 12282 | 09/08/2003 | WIRE | ITV Direct | 200,000.00 |
| 12560 | 09/17/2003 | WIRE-2 | ITV Direct | 188,000.00 |
| 12699 | 09/19/2003 | WIRE | ITV Direct | 20,000.00 |
| 12638 | 09/23/2003 | WIRE | ITV Direct | 180,000.00 |
| 12799 | 09/23/2003 | WIRE | ITV Direct | 43,781.00 |
| 12912 | 10/01/2003 | WIRE | ITV Direct | 170,000.00 |
| 12991 | 10/01/2003 | WIRE | ITV Direct | 80,000.00 |
| 13005 | 10/02/2003 | WIRE | ITV Direct | 13,000.00 |
| 13021 | 10/06/2003 | WIRE | ITV Direct | 200,000.00 |
| 13251 | 10/07/2003 | WIRE | ITV Direct | 101,390.00 |
| 13244 | 10/14/2003 | WIRE | ITV Direct | 255,000.00 |
| 13371 | 10/15/2003 | WIRE | ITV Direct | 200,000.00 |
| 13455 | 10/20/2003 | | ITV Direct | 250,000.00 |
| 13498 | 10/22/2003 | WIRE | ITV Direct | 50,000.00 |
| 13601 | 10/24/2003 | WIRE | ITV Direct | 255,000.00 |
| 13615 | 10/27/2003 | WIRE | ITV Direct | 250,000.00 |
| 13629 | 10/29/2003 | WIRE | ITV Direct | 100,000.00 |
| 13765 | 11/03/2003 | WIRE | ITV Direct | 220,000.00 |
| 13924 | 11/07/2003 | WIRE | ITV Direct | 100,000.00 |
| 14013 | 11/17/2003 | WIRE | ITV Direct | 370,000.00 |
| 14669 | 11/19/2003 | WIRE | ITV Direct | 16,300.00 |
| 14698 | 11/24/2003 | WIRE | ITV Direct | 205,000.00 |
| 14748 | 11/25/2003 | WIRE | ITV Direct | 90,000.00 |
| 14813 | 12/01/2003 | WIRE | ITV Direct | 350,000.00 |
| 14979 | 12/08/2003 | WIRE | ITV Direct | 230,000.00 |
| 15067 | 12/08/2003 | WIRE | ITV Direct | 50,000.00 |
| 15110 | 12/10/2003 | WIRE | ITV Direct | 95,000.00 |
| 15219 | 12/15/2003 | WIRE | ITV Direct | 200,000.00 |
| 15194 | 12/17/2003 | WIRE | ITV Direct | 200,000.00 |
| 15453 | 12/23/2003 | WIRE | ITV Direct | 200,000.00 |
| 15482 | 12/29/2003 | WIRE | ITV Direct | 270,000.00 |
| 15629 | 01/05/2004 | WIRE | ITV Direct | 190,000.00 |

Prepared by Wayne P. Callahan

Dated: 8-7-2004

ITV 000561

Direct Marketing Concepts, Inc.

## Transfers > $10,000 to the Defendants and Any Related or Affiliated Corporate Entities or Individuals
### January 1 2003 through June 30 2004

| Trans # | Date | Check # | Payee | Credit |
|---|---|---|---|---|
| 15897 | 01/09/2004 | WIRE | ITV Direct | 220,000.00 |
| 16237 | 01/13/2004 | WIRE | ITV Direct | 230,000.00 |
| 16274 | 01/20/2004 | WIRE | ITV Direct | 275,000.00 |
| 16526 | 01/26/2004 | WIRE | ITV Direct | 350,000.00 |
| 16783 | 02/02/2004 | WIRE | ITV Direct | 35,000.00 |
| 16784 | 02/03/2004 | WIRE | ITV Direct | 100,000.00 |
| 16831 | 02/04/2004 | WIRE | ITV Direct | 200,000.00 |
| 16849 | 02/09/2004 | WIRE | ITV Direct | 275,000.00 |
| 17040 | 02/12/2004 | WIRE | ITV Direct | 225,000.00 |
| 17098 | 02/17/2004 | | ITV Direct | 275,000.00 |
| 17244 | 02/23/2004 | WIRE | ITV Direct | 250,000.00 |
| 17371 | 02/25/2004 | WIRE | ITV Direct | 50,000.00 |
| 17377 | 03/02/2004 | WIRE | ITV Direct | 350,000.00 |
| 17655 | 03/10/2004 | WIRE | ITV Direct | 100,000.00 |
| 17768 | 03/16/2004 | WIRE | ITV Direct | 200,000.00 |
| 18071 | 03/22/2004 | WIRE | ITV Direct | 150,000.00 |
| 18102 | 03/23/2004 | WIRE | ITV Direct | 50,000.00 |
| 18219 | 03/25/2004 | WIRE | ITV Direct | 175,000.00 |
| 18467 | 03/30/2004 | WIRE | ITV Direct | 300,000.00 |
| 18644 | 04/09/2004 | WIRE | ITV Direct | 100,000.00 |
| 18694 | 04/13/2004 | WIRE | ITV Direct | 275,000.00 |
| 18845 | 04/19/2004 | WIRE | ITV Direct | 175,000.00 |
| 18962 | 04/23/2004 | WIRE | ITV Direct | 100,000.00 |
| 18964 | 04/26/2004 | WIRE | ITV Direct | 180,000.00 |
| 19031 | 04/28/2004 | | ITV Direct | 100,000.00 |
| 19216 | 05/04/2004 | WIRE | ITV Direct | 175,000.00 |
| 19237 | 05/10/2004 | | ITV Direct | 135,000.00 |
| 19236 | 05/13/2004 | WIRE | ITV Direct | 75,000.00 |
| 19445 | 05/17/2004 | WIRE | ITV Direct | 275,000.00 |
| 19638 | 05/24/2004 | | ITV Direct | 150,000.00 |
| 19720 | 06/01/2004 | WIRE | ITV Direct | 160,000.00 |
| 19907 | 06/08/2004 | | ITV Direct | 75,000.00 |
| 20048 | 06/10/2004 | WIRE | ITV Direct | 50,000.00 |
| 20088 | 06/14/2004 | | ITV Direct | 200,000.00 |
| 20098 | 06/14/2004 | WIRE | ITV Direct | 50,000.00 |
| 20183 | 06/18/2004 | WIRE | ITV Direct | 100,000.00 |
| 20255 | 06/21/2004 | WIRE | ITV Direct | 190,000.00 |
| 20361 | 06/29/2004 | WIRE | ITV Direct | 250,000.00 |
| 6452 | 02/21/2003 | WAGE | Maihos | 13,751.69 |
| 7404 | 04/29/2003 | 3057 | Robert A Maihos | 275,000.00 |
| 12455 | 09/10/2003 | 4119 | Robert A Maihos | 50,000.00 |
| 12456 | 09/11/2003 | 4120 | Robert A Maihos | 30,000.00 |
| 12497 | 09/15/2003 | 4127 | Robert A Maihos | 38,000.00 |
| 16544 | 01/21/2004 | 4919 | Robert A Maihos | 25,000.00 |
| 17101 | 02/13/2004 | 5080 | Robert A Maihos | 25,000.00 |
| 17376 | 03/01/2004 | 5175 | Robert A Maihos | 100,000.00 |
| 18020 | 03/18/2004 | 5367 | Robert A Maihos | 50,000.00 |
| 18726 | 04/15/2004 | 5452 | Robert A Maihos | 200,000.00 |
| 20114 | 06/15/2004 | 5852 | Robert A Maihos | 40,000.00 |
| 20119 | 06/16/2004 | 5853 | Robert A Maihos | 60,000.00 |
| 4682 | 03/03/2003 | 1073 | Robert Maihos | 25,000.00 |
| 5607 | 04/03/2003 | 1586 | Robert Maihos | 100,000.00 |
| 5611 | 04/04/2003 | 1585 | Robert Maihos | 430,000.00 |

ITV 000562

**13**

# ITV Direct

## Transfers > $10,000 to the Defendants and Any Related or Affiliated Corporate Entities or Individuals

### January 1 2003 through June 30 2004

| Trans # | Date | Check # | Payee | Credit |
|---|---|---|---|---|
| **Jan '03 - Jun 04** | | | | |
| 1073 | 08/06/2003 | WIRE | Direct Marketing Concepts, Inc. | 50,000.00 |
| 1387 | 09/18/2003 | WIRE | Direct Marketing Concepts, Inc. | 70,000.00 |
| 1702 | 10/17/2003 | WIRE | Direct Marketing Concepts, Inc. | 122,000.00 |
| 2218 | 12/05/2003 | WIRE | Direct Marketing Concepts, Inc. | 80,000.00 |
| 331 | 04/23/2003 | | Healthy Solutions | 16,250.00 |
| 7 | 03/20/2003 | 1007 | Robert Maihos | 15,000.00 |
| 33 | 03/28/2003 | 1030 | Robert Maihos | 20,000.00 |

ITV 000563

Prepared by Wayne P. Callahan          Dated: 8-7-2004          Page 1 of 1

14

12:20 PM
08/13/04
Accrual Basis

# Direct Marketing Concepts, Inc.
## Balance Sheet
### As of June 30, 2004

| | Jun 30, 04 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| Cash | 175,153.20 |
| **Total Checking/Savings** | 175,153.20 |
| **Accounts Receivable** | |
| Accounts Receivable | 341,801.09 |
| **Total Accounts Receivable** | 341,801.09 |
| **Other Current Assets** | |
| Credit Card Sales Receivable | 340,363.69 |
| Employee Advances - Receivable | 1,700.00 |
| Product Inventory | 1,945,450.00 |
| **Total Other Current Assets** | 2,287,513.69 |
| **Total Current Assets** | 2,804,467.98 |
| **Fixed Assets** | |
| Computer Equipment | 332,017.93 |
| Office Equipment | 219,574.49 |
| Automobiles | 78,758.23 |
| Machinery & Equipment | 37,567.65 |
| Furniture & Office Equipment | 63,764.39 |
| Leasehold Improvements | 7,425.00 |
| Accumulated Depreciation | -371,931.00 |
| **Total Fixed Assets** | 367,176.69 |
| **Other Assets** | |
| Prepaid Media Buys | 344,248.74 |
| Deposits & Intangible Assets | 1,119,484.81 |
| **Total Other Assets** | 1,463,733.55 |
| **TOTAL ASSETS** | 4,635,378.22 |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| Accounts Payable | 2,323,460.13 |
| **Total Accounts Payable** | 2,323,460.13 |
| **Credit Cards** | |
| Credit Cards Payable | -2,430.47 |
| **Total Credit Cards** | -2,430.47 |
| **Total Current Liabilities** | 2,321,029.66 |

ITV 000564

Prepared by Wayne P. Callahan

12:20 PM
08/13/04
Accrual Basis

# Direct Marketing Concepts, Inc.
## Balance Sheet
### As of June 30, 2004

|  | Jun 30, 04 |
|---|---|
| **Long Term Liabilities** | |
| Notes Payable | 73,497.36 |
| **Total Long Term Liabilities** | 73,497.36 |
| **Total Liabilities** | 2,394,527.02 |
| **Equity** | |
| Capital Stock | 200.00 |
| Retained Earnings | 1,866,628.37 |
| Sub-S Corp Property Distrib. | -2275863.04 |
| Net Income | 2,649,885.87 |
| **Total Equity** | 2,240,851.20 |
| **TOTAL LIABILITIES & EQUITY** | 4,635,378.22 |

ITV 000565

**Prepared by Wayne P. Callahan**

Page 2

15

12:37 PM
08/13/04
Accrual Basis

**ITV Direct**
**Balance Sheet**
As of June 30, 2004

Page 1

|  | Jun 30, 04 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| Checking - Beverly National | -149,090.28 |
| **Total Checking/Savings** | -149,090.28 |
| **Accounts Receivable** | |
| Accounts Receivable | 6,784.50 |
| **Total Accounts Receivable** | 6,784.50 |
| **Total Current Assets** | -142,305.78 |
| **Fixed Assets** | |
| Computer Equipment | 41,822.93 |
| Studio Equipment -Telepromter | 7,032.50 |
| **Total Fixed Assets** | 48,855.43 |
| **TOTAL ASSETS** | **-93,450.35** |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| Accounts Payable | 300.00 |
| **Total Accounts Payable** | 300.00 |
| **Other Current Liabilities** | |
| Due to Direct Marketing Concept | 8,329,970.00 |
| **Total Other Current Liabilities** | 8,329,970.00 |
| **Total Current Liabilities** | 8,330,270.00 |

Prepared by Wayne P. Callahan

ITV 000566

12:37 PM
08/13/04
Accrual Basis

**ITV Direct**
**Balance Sheet**
As of June 30, 2004

| | Jun 30, 04 |
|---|---|
| **Total Liabilities** | 8,330,270.00 |
| **Equity** | |
| Retained Earnings | -1,409,677.55 |
| Net Income | -7,014,042.80 |
| **Total Equity** | -8,423,720.35 |
| **TOTAL LIABILITIES & EQUITY** | -93,450.35 |

Page 2

Prepared by Wayne P. Callahan

ITV 000567

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DIRECT MARKETING CONCEPTS, INC., ) | |
| ITV DIRECT, INC., DIRECT ) | C.A. No. 05-11907-JLT |
| FULFILLMENT, LLC, DONALD ) | |
| BARRETT, and ROBERT MAIHOS, ) | |
| ) | |
| Defendants. ) | |

**AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**EXHIBIT G**

2:12 PM
06/21/04
Accrual Basis

# Direct Marketing Concepts, Inc.
## Find Report
### All Transactions

| Type | Date | Num | Name | Memo | Amount | |
|------|------|-----|------|------|--------|--|
| Bill | 02/06/2004 | 26 | Direct Business Concepts | PO 1101 | -318,240.00 | not paid |
| Bill | 01/29/2004 | 25 | Direct Business Concepts | PO 1101 | -318,216.00 | not paid |
| Bill | 01/21/2004 | 24 | Direct Business Concepts | PO 1101 | -376,146.00 | not paid |
| Bill | 01/14/2004 | 23 | Direct Business Concepts | PO 1101 | -323,712.00 | not paid |
| Bill | 01/09/2004 | 22 | Direct Business Concepts | PO 1101 | -185,472.00 | not paid |
| Bill | 12/31/2003 | 21 | Direct Business Concepts | PO 1101 | -300,078.00 | not paid |
| Bill | 12/19/2003 | 20 | Direct Business Concepts | PO 1101 | -300,024.00 | |
| Bill | 12/12/2003 | 19 | Direct Business Concepts | PO 1078 | -241,920.00 | |
| Bill | 12/08/2003 | 18 | Direct Business Concepts | | -214,272.00 | |
| Bill | 12/03/2003 | 17 | Direct Business Concepts | | -241,920.00 | |
| Bill | 11/25/2003 | 16 | Direct Business Concepts | | -287,400.00 | |
| Bill | 11/18/2003 | 15 | Direct Business Concepts | | -277,940.00 | |
| Bill | 11/07/2003 | 14 | Direct Business Concepts | PO 1078 | -158,385.50 | |
| Bill | 11/03/2003 | 9 | Direct Business Concepts | | -7,500.00 | |
| Bill | 11/03/2003 | 13 | Direct Business Concepts | PO 1078 | -124,020.00 | |
| Bill | 10/24/2003 | 12 | Direct Business Concepts | PO 1073 and 1078 | -265,356.00 | |
| Bill | 10/21/2003 | 11 | Direct Business Concepts | PO 1076 | -13,000.00 | |
| Bill | 10/20/2003 | 7 | Direct Business Concepts | Freight charges for shipping through 10-10-0: | -8,502.11 | |
| Bill | 10/17/2003 | 10 | Direct Business Concepts | PO 1071 & 1073 | -65,520.00 | |
| Bill | 10/10/2003 | 6 | Direct Business Concepts | PO 1071 | -148,174.00 | |
| Bill | 10/08/2003 | 5 | Direct Business Concepts | Cheng | -13,000.00 | |
| Bill | 10/03/2003 | 4 | Direct Business Concepts | PO 1063 | -91,260.00 | |
| Bill | 09/26/2003 | 2 | Direct Business Concepts | PO 1063 | -74,490.00 | |
| Bill | 09/26/2003 | 3 | Direct Business Concepts | PO 1071 | -13,000.00 | |
| Bill | 08/19/2003 | 1057 | Healthy Solutions, Inc. | 50% down on PO 1057 | -81,250.00 | |
| Bill | 07/15/2003 | 8 | Health Solutions | PO # 1041 50% down | -50,500.00 | |
| Bill | 04/08/2003 | | Healthy Solutions, Inc. | Reimbursement for air travel April 9-12 | -1,806.00 | |
| Check | 12/29/2003 | WIRE | Direct Business Concepts | | -4,000.00 | |
| Check | 12/23/2003 | WIRE | Direct Business Concepts | | -4,000.00 | |
| Check | 11/21/2003 | | Direct Business Concepts | | -98,174.00 | |
| Check | 09/26/2003 | | Direct Business Concepts | | -83,382.00 | |
| Check | 08/19/2003 | 3953 | Healthy Solutions, Inc. | Invoice 08010 | -1,095.00 | |
| Check | 06/17/2003 | WIRE | Healthy Solutions, Inc. | | -16,250.00 | |

-4,708,004.61

ITV 00291

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DIRECT MARKETING CONCEPTS, INC., ITV DIRECT, INC., DIRECT FULFILLMENT, LLC, DONALD BARRETT, and ROBERT MAIHOS, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 05-11907-JLT |

**AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**EXHIBIT H**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>Plaintiff,<br><br>v.<br><br>DIRECT MARKETING CONCEPTS, INC., d/b/a<br>TODAY'S HEALTH and DIRECT FULFILLMENT;<br>ITV DIRECT, INC., d/b/a DIRECT FULFILLMENT;<br>DONALD W. BARRETT;<br>HEALTHY SOLUTIONS, LLC d/b/a DIRECT<br>BUSINESS CONCEPTS;<br>HEALTH SOLUTIONS, INC.;<br>ALEJANDRO GUERRERO, a/k/a ALEX GUERRERO;<br>MICHAEL HOWELL; GREG GEREMESZ;<br>TRIAD ML MARKETING, INC.; KING MEDIA, INC.;<br>and ALLEN STERN,<br>Defendants. | CIVIL ACTION<br>NO. 04-11136-GAO |

**PRELIMINARY INJUNCTION ORDER
AS TO DEFENDANTS DIRECT MARKETING
CONCEPTS, INC., ITV DIRECT, INC., AND DONALD W. BARRETT**

June 23, 2004

The Federal Trade Commission ("FTC" or "Commission") filed a complaint against the above listed defendants pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and moved for a preliminary injunction with other equitable relief against defendants Direct Marketing Concepts, Inc. ("DMC"), ITV Direct, Inc. ("ITV"), and Donald W. Barrett ("Barrett") (collectively, the "Defendants") pursuant to Fed. R. Civ. P. 65. The Court having considered the pleadings, declarations and exhibits filed in support of and opposing said motion, and after hearing on the motion, enters the following order:

## Findings of Fact

On the basis of the affidavits presented, the Court finds the following facts:

1. The FTC is an independent agency of the United States Government created by the FTC Act, 15 U.S.C. §§ 41-58. The Commission is charged, among other things, with enforcement of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, which respectively prohibit deceptive acts or practices in or affecting commerce, and false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce.

2. DMC and ITV are both Massachusetts corporations with their principal places of business in Saugus and Beverly Massachusetts, respectively. Barrett is the President and a director of both DMC and ITV, and he directs, controls, formulates, or participates in the acts and practices of both entities. Since at least August 2003, Barrett, DMC and ITV have advertised, promoted, offered for sale, and/or distributed a dietary supplement product called Supreme Greens with MSM ("Supreme Greens").

3. Barrett, DMC and ITV produced and widely disseminated a thirty-minute "infomercial" for Supreme Greens shown on cable television stations. Additionally, the Defendants marketed Supreme Greens on their website, www.todayshealth.com.

4. The infomercial features Donald Barrett and Alejandro Guerrero a/k/a Alex Guerrero discussing the health benefits of Supreme Greens – in a setting that mimics a conventional talk show – and includes the following passages:

BARRETT:    Dr. Guerrero claims that most chronic degenerative diseases – such

as cancer, arthritis, diabetes, even the number one killer out there,

heart disease – can and are being cured and there are natural healing

2

techniques being suppressed in this country.  We have a very

controversial show, so stay with us.

Complaint Ex. 6 at 3-4.

BARRETT:    And now here's the question: If I alkalize my body, am I going to

come up with one of these chronic degenerative diseases?

GUERRERO: No.

BARRETT:    Such as cancer, arthritis –

GUERRERO: No.

BARRETT:    How can you say that so confidently?

GUERRERO: I'm very confident in saying that, primarily because of the clinical

studies we've done.  I've seen it in my – in my – in my clinical

practice.  I've seen it every day in my clinical practice.

BARRETT:    Tell me about –

GUERRERO: I treat patients that have conditions –

BARRETT:    – the studies – tell me about a study that you've done with – with

chronic disease.

GUERRERO: Well, based on acid alkaline principles we wanted to take groups of

people that had degenerative conditions – and, to me, it didn't really

matter what their degenerative condition was and I preferred them

to have a variety of conditions.  So I certainly just didn't want to

have a base of liver cancer or bone cancer or prostate cancer or

breast cancer.  I wanted to, you know, lump them into a group and

3

see what the response would be over time.  Well, now it's been –
you know, now we're going into, you know, eight years and within
a five-year period of time we took 200 people that had a variety of
degenerative conditions.  They weren't all the same conditions,
they –

BARRETT:    Were they terminal?

GUERRERO:  They were diagnosed as terminal.

BARRETT:    Two hundred people – now, eight years later, how many of them
are still alive?

GUERRERO:  Well, I've got – out of that – out of those 200 people that were
terminal we lost eight.  Eight passed away.

BARRETT:    And that's amazing.  People must have been amazed by those
studies.

GUERRERO:  Yeah.  I mean, it was – it was really exciting to see at the time.
And that's really what solidified, for me, this – you know, the
concepts of acid and alkaline balance.  And so, now, over the years
I've just been afraid to deviate from what has worked for me in my
clinic.

Complaint Ex. 6 at 11-13.

BARRETT:    Now, explain.  When a patient comes to your office – whether they
have cancer or arthritis, diabetes, you start them on a few standard
supplements.

4

GUERRERO: Right.

BARRETT:    One being a product called Supreme Greens, the other one being a coral calcium type product.

GUERRERO: Yes.

Complaint Ex. 6 at 15.

BARRETT:    Okay. Alex, why do so many people lose weight on the product? I know that a lot of people get on the product to either help with their diabetes or maybe their heart disease or even cancer, but they lose weight as a byproduct. How come?

Complaint Ex. 6 at 22.

GUERRERO: It's great for women that are pregnant because it certainly applies –

BARRETT:    So she can take it when she's pregnant?

GUERRERO: No question. My wife took it, my wife took it through all of her pregnancies.

BARRETT:    And you have five children?

GUERRERO: We have five children.

BARRETT:    Okay.

GUERRERO: And she took it through all of her pregnancies, never had to deal with, you know, prenatal vitamins, never got morning sickness.

Complaint Ex. 6 at 22.

BARRETT:    What are the other nutrients in there and does it interfere with any medication?

5

GUERRERO: Because I have, you know, a wide range of patients in different conditions, I needed to ensure that the formula was synergistic with all medications. And so, you know, the Supreme Greens with MSM is synergistic with medication. There is no contra-indication.

BARRETT: So anybody out – anybody –

GUERRERO: (Inaudible).

BARRETT: – anybody out there basically on any type of medication, they can take the Supreme Greens product?

GUERRERO: Yes.

Complaint Ex. 6 at 29-30.

5. The Defendants' website made the following statements about Supreme Greens:

If you or someone you love is suffering from Cancer, Arthritis, Osteoporosis, Fibromyalgia, Heart Disease, Diabetes, Heartburn, Fatigue, Excess Weight, or simply the everyday ravages of aging – it's time to start down the path to a healthier lifestyle . . .

A number of health problems and degenerative conditions have been linked to highly acidic cell pH:

- Cancer
- Arthritis

    *      *      *

- High Blood Pressure
- High Cholesterol

    *      *      *

- Diabetes

6

\*      \*      \*

- Endometriosis

\*      \*      \*

- Overweight
- Heart Disease

**So How Do You Rebalance Your Cells pH Levels and Get the Minerals and Nutrients You Need?**

According to Health professionals, supplements are needed to give the body what it needs.  But where most supplements either provide vitamins or proteins, Supreme Greens works to help rebalance your cell pH.

\*      \*      \*

Supreme Greens was formulated by Dr. Alex Guerrero, a renowned physician who has focused his career on working with people with various degenerative and chronic ailments.  His breakthrough supplement has already helped thousands of people with cancer, diabetes, arthritis, lupus, fibromyalgia, chronic fatigue syndrome, and many others.

Complaint Ex. 7 at 2-3.

6.  The Commission has alleged that through the above representations, and others, the Defendants have falsely or without substantiation represented that Supreme Greens can cure, treat or prevent cancer, diabetes, arthritis and heart disease, and that Supreme Greens can be safely used by pregnant women, children, and consumers taking any medications.

7.  The Commission has provided the declarations of two experts: Barrie Cassileth, Ph.D, Chief of the Integrative Medicine Service of the Memorial Sloan-Kettering Cancer Center and Landon King, M.D., Associate Professor of Medicine and Biological Chemistry at the

7

John Hopkins University School of Medicine. Together, their declarations express the opinions that the above claims are either false or not supported by reliable scientific evidence.

8. The Defendants have not proffered any experts to contradict the opinions of Drs. Cassileth and King.

**Continuity Program**

9. The Defendants have at times caused consumers to incur unauthorized charges on their credit and debit cards by enrolling them in an automatic shipment program for a supplement called E-8 Daily – without their prior approval – when they ordered Supreme Greens. The Defendants maintain they have taken steps to prevent recurrence of such unauthorized charges, but do not dispute that they occurred in the past.

**Danger of Recurrence**

10. In the Fall of 2003, the FTC contacted counsel for the Defendants and informed them that the Supreme Greens infomercial made claims that were false and/or unsubstantiated. Shortly thereafter, the Defendants agreed to withdraw the infomercial and replace it with a substantially modified version that did not make the above challenged claims.

11. Notwithstanding their above promise to withdraw the original infomercial, the Defendants continued to run the original version of the Supreme Greens infomercial at least through April 2004.

**Consumer Injury**

12. Although the Court has not yet seen any specific sales figures, the Defendants have not disputed the Commission's contention that sales through the infomercial likely totaled in the tens of millions of dollars. Additionally, it is undisputed that the bulk of the sales revenues went to DMC, ITV and Barrett, and not to the remaining defendants in this litigation.

8

## Asset Dissipation & Potential Document Destruction

13.    Two individuals who have engaged in business transactions with DMC and/or ITV have provided documentary evidence, in the form of bank records, that demonstrates that although the declarants' companies had contracted with DMC, Defendant Barrett requested that declarants' companies send hundreds of thousands of dollars directly to Barrett instead of to DMC. Additionally, one of the declarants says that he, at Barrett's request, forwarded hundreds of thousands of dollars to a separate company controlled by Barrett rather than to DMC.

14.    Three former employees of DMC have provided declarations stating that they witnessed corporate funds at DMC and ITV being used to pay for non-business purchases, such as home furnishings and personal vehicles.

15.    Two declarants provided declarations stating that in or about June 2003, after Barrett learned that the FTC had concerns about one of his earlier infomercials – for a product called Coral Calcium Daily – Barrett withdrew funds from certain accounts and distributed the funds to close relatives.

16.    One declarant stated that in or about June 2003, at Barrett's direction, he removed approximately 40-50 boxes relating to Coral Calcium Daily from DMC's warehouse to his own storage facility because Barrett stated that he was concerned about the FTC pursuing him with respect to the product.

17.    Defendants contend that the declarants relied on by the FTC are biased and untrustworthy and that their statements are false. It is difficult to make a credibility assessment on the basis of affidavits alone. Defendants make a plausible showing of bias. Nevertheless, even disregarding the most accusatory assertions, some of which are conclusory, the statements do

9

show at least an ability on the part of Defendants to move assets among related entities and/or persons.

## Conclusions of Law

18.   This Court has jurisdiction over the subject matter of this case and over these Defendants.

19.   Venue in this District is proper under 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b) and (c).

20.   The acts and practices of the Defendants are or have been in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

21.   This Court has authority to grant a preliminary injunction and other appropriate relief pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) and Rule 65 of the Federal Rules of Civil Procedure.  FTC v. Gem Merch. Corp., 87 F.3d 466, 468-69 (11th Cir. 1996); FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1025-26 (7th Cir. 1988).

22.   Section 13(b) authorizes the issuance of such preliminary relief upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest.  15 U.S.C. § 53(b); FTC v. Patriot Alcohol Testers, Inc., No. 91-11812-C, 1992 WL 27334, at *3 (D. Mass. Feb. 13, 1992).

## Likelihood of Success on the Merits

23.   The Commission has demonstrated a likelihood of success on the merits.  Section 5(a) of the FTC Act prohibits deceptive acts and practices in or affecting commerce.  Section 12 prohibits the dissemination of false advertising in order to induce the purchase of foods, drugs, devices, or cosmetics. To prevail under Sections 5(a) and 12, the FTC must demonstrate that

"first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." FTC v. Pantron I Corp., 33 F.3d 1088, 1095 (9th Cir. 1994) (citing Cliffdale Assocs., Inc., 103 F.T.C. 110, 164-65 (1984)). The FTC has established all three of these sufficiently for the Court to grant a preliminary injunction.

24. As demonstrated by the infomercial and website excerpts above, and despite the use of infrequent and/or inconspicuous disclaimers, the Defendants have made the claims that Supreme Greens can cure, treat or prevent cancer, diabetes, arthritis and heart disease, and that Supreme Greens can be safely used by pregnant women, children, and consumers taking any medications.

25. The Commission is likely to prevail in demonstrating the falsity and/or lack of substantiation of these claims, based on the uncontradicted declarations of Drs. Cassileth and King.

26. The Defendants' misrepresentations are likely to mislead reasonable consumers. Consumers have no obligation to doubt the veracity of express claims, and false or unsubstantiated claims are inherently "likely to mislead." In re Thompson Med. Co., 104 F.T.C. 648, 788, 818-19 (1984) (discussing with approval FTC's Policy Statement on Deception (Oct. 14, 1983)), aff'd 791 F.2d 189 (D.C. Cir. 1986).

27. Given the express nature and importance of the challenged claims, and the fact that they go to the core reasons why consumers buy Supreme Greens, they are presumed to be material. FTC v. SlimAmerica, Inc., 77 F. Supp.2d 1263, 1272 (S.D. Fla. 1999) ("Express claims or deliberately-made implied claims used to induce the purchase of a particular product or service are presumed to be material.").

11

28. In addition, the airing of the infomercial for Supreme Greens in a talk-show format with only limited disclaimers before and after the broadcast is likely to mislead consumers and constitute a deceptive act or practice in violation of Section 5.

29. Further, the Defendants' practice of causing charges for automatic shipments of E-8 Daily dietary supplement to be billed to consumers' credit or debit cards without the consumers' authorization has caused or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits to consumers or competition. Therefore, this practice likely constitutes an unfair practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

30. The Commission is also likely to succeed in holding the Defendants jointly and severally liable for these violations of the FTC Act. DMC and ITV produced and disseminated the Supreme Greens infomercial. Their purported reliance upon co-defendant Alex Guerrero's representations regarding the product – even if true – is not a valid defense to a violation of the FTC Act. Moreover, as early as the Fall of 2003, the Defendants were on notice from the Commission as to the suspect nature of the Supreme Greens claims.

31. Individuals such as Barrett may be liable for corporate practices if they have "participated directly in the practices or acts or had authority to control them," and had some knowledge of the practices. FTC v. Amy Travel Serv., Inc., 875 F.2d 564, 573 (7th Cir. 1989). Authority to control can be evidenced by "active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." Id.

32. The information presented indicates that Barrett knew as early as the Fall of 2003 that the Supreme Greens claims were suspect, based on the concerns raised by the FTC, yet he

continued to actively participate in making the challenged claims as President and a director of DMC and ITV.

**Balance of Equities**

33. The Commission brought this action to halt and prevent further violations of federal law and to protect consumers from the marketing of products claimed to prevent and cure life threatening diseases. In such statutory enforcement cases, the government proceeds "not as an ordinary litigant, but as a statutory guardian charged with safeguarding the public interest in enforcing the . . . laws." SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 808 (2d Cir. 1975) (securities laws context).

34. The Commission's interest in protecting consumers outweighs the Defendants' interests that would be infringed by the requested injunction. The Defendants have no legitimate interest in engaging in practices that likely violate the FTC Act.

**Injunctive Relief is in the Public Interest**

35. Immediate injunctive relief is necessary to protect the public from the financial and/or physical harm that results from the Defendants' practices. Consumers suffering from cancer, heart disease, arthritis and diabetes are injured if they purchase Supreme Greens in lieu of pursuing treatments that may offer them real health benefits. In addition, direct economic injury arises from purchasing Supreme Greens under false pretenses and from the Defendants' imposition of charges to consumers' credit or debit cards without their knowledge or authorization.

**Necessity for Preliminary Relief**

36. There is good cause to believe that immediate and irreparable harm to consumers will result from ongoing violations of Sections 5(a) and 12 of the FTC Act by the Defendants unless they are preliminarily enjoined by order of this Court.

37. Where, as in this case, business operations are permeated by deceptive practices, and there is evidence of on-going transfers of business assets to unknown businesses, Barrett and his relatives, there is a possibility that assets may be dissipated during the pendency of the legal proceedings. An accounting and a restriction on the dissipation of the Defendants' assets is appropriate at this time to ensure the enforceability of any judgment that may be entered. However, should the accounting reveal that the Defendants have, presently are, or are likely to conceal or place assets beyond the Court's reach pending final resolution of this case, the Court will consider additional requests from the Commission for further relief necessary to ensure the enforceability of any judgment, including a freeze of the Defendants' assets and the appointment of a receiver.

38. Weighing the equities and considering the Commission's likelihood of ultimate success, a preliminary injunction is in the public interest, and it is hereby ordered that:

## DEFINITIONS

For the purpose of this order, the following definitions shall apply:

1. "DMC" means Direct Marketing Concepts, Inc., d/b/a "Today's Health" and "Direct Fulfillment," a Massachusetts corporation with its principal place of business at 20 Oakpoint Ext., Saugus, MA 01906, and also doing business at 100 Cummings Center, Suite 139F, Beverly, MA 01915, and its divisions, subsidiaries, successors, assigns, and its officers, agents, representatives, and employees.

14

2. "ITV" means ITV Direct, Inc., d/b/a "Direct Fulfillment," a Massachusetts corporation with its principal place of business at 100 Cummings Center, Suite 506E, Beverly, MA 01915, and its divisions, subsidiaries, successors, assigns, and its officers, agents, representatives, and employees.

3. "Barrett" means Donald W. Barrett, individually and as an officer and director of DMC and ITV.

4. "Defendants" shall mean DMC, ITV, and Barrett, whether acting individually or through any corporation, subsidiary, division, or other entity.

5. "FTC" or "Commission" or "Plaintiff" means the Federal Trade Commission.

6. "Advertising" means any written or verbal statement, illustration or depiction that is designed to effect a sale or create interest in the purchasing of goods or services, whether it appears in a brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert, free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of purchase display, packaging, package insert, label, film, slide, radio, television or cable television, audio program transmitted over a telephone system, program-length commercial ("infomercial"), the Internet, email, or in any other medium.

7. "Promotion" means any written or verbal statement, illustration, or depiction that is designed to effect a sale or create interest in the purchasing of goods or services that is not "advertising," including but not limited to video news releases and press releases.

8. "Endorsement" has the meaning set forth in 16 C.F.R. § 255.0(b).

9. "Substantially similar product" means any dietary supplement containing one or more of the ingredients contained in the proprietary blend of Supreme Greens with MSM.

15

10. "Assets" means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), and all cash, wherever located.

11. "Continuity program" shall mean any plan, arrangement, or system pursuant to which a consumer receives periodic shipments of products without prior notification by the seller before each shipment or service period, regardless of any trial or approval period allowing the consumer to return or be reimbursed for the product.

12. "Assisting others" means knowingly providing any of the following services to any person or entity: (a) performing customer service functions for any person or entity, including but not limited to, receiving or responding to customer complaints; (b) formulating or providing or arranging for the formulation or provision of any telephone sales script or any other advertising or marketing material for any person or entity; or (c) performing advertising or marketing services of any kind for any person or entity.

13. "Commerce" has the meaning set forth in Section 4 of the FTC Act, 15 U.S.C. § 44.

14. "Competent and reliable scientific evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

16

## PROHIBITED BUSINESS ACTIVITIES

### I.

IT IS ORDERED that the Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of Supreme Greens with MSM or any substantially similar product, in or affecting commerce, are hereby preliminarily enjoined from making, or assisting others in making, directly or by implication, including through the use of endorsements or trade names, any representation that such product:

A. Is an effective treatment, cure, or preventative for cancer;

B. Is an effective treatment, cure, or preventative for heart disease;

C. Is an effective treatment, cure, or preventative for diabetes;

D. Is an effective treatment, cure, or preventative for arthritis; or

E. Can be taken safely by pregnant women, by infants and children, or by any person taking any type of medication.

### II.

IT IS FURTHER ORDERED that the Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert or participation with any of them who

17

receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of Supreme Greens with MSM or any substantially similar product, in or affecting commerce, are hereby preliminarily enjoined from making, or assisting others in making, directly or by implication, including through the use of endorsements or the product name, any representation that such product can prevent, treat, or cure any disease unless, at the time the representation is made, the Defendants possess and rely upon competent and reliable scientific evidence that substantiates the representation.

## FORMATTING FOR BROADCAST ADVERTISING

### III.

IT IS FURTHER ORDERED that the Defendants, directly or through any corporation, subsidiary, division, or other device, in connection with the labeling, advertising, promotion, offering for sale, sale, or distribution of any product, program, or service, in or affecting commerce, do forthwith cease and desist from creating, producing, selling, or disseminating:

A. Any advertisement that misrepresents, expressly or by implication, that it is not a paid advertisement; and

B. Any commercial or other video advertisement fifteen (15) minutes in length or longer or intended to fill a broadcasting or cablecasting time slot of fifteen (15) minutes in length or longer that does not display visually in the same language as the predominant language that is used in the advertisement, in a clear and prominent manner, and for a length of time sufficient for

an ordinary consumer to read, within the first thirty (30) seconds of the commercial and immediately before each presentation of ordering instructions for the product or service, the following disclosure:

"THE PROGRAM YOU ARE WATCHING IS A PAID ADVERTISEMENT FOR [THE PRODUCT, PROGRAM, OR SERVICE]."

(For the purposes of this provision, the oral or visual presentation of a telephone number or address through which viewers may obtain more information or place an order for the product, program, or service shall be deemed a presentation of ordering instructions so as to require the display of the disclosure provided herein); and

C.  Any radio advertisement fifteen (15) minutes in length or longer or intended to fill a time slot of fifteen (15) minutes in length or longer that does not state in the same language as the predominant language that is used in the advertisement, in a clear and prominent manner, and in a volume and cadence sufficient for an ordinary consumer to hear, within the first thirty (30) seconds of the commercial and immediately before each presentation of ordering instructions for the product, program, or service, the following disclosure:

"THE PROGRAM YOU ARE LISTENING TO IS A PAID ADVERTISEMENT FOR [THE PRODUCT, PROGRAM, OR SERVICE]."

(For the purposes of this provision, the presentation of a telephone number or address through which listeners may obtain more information or place an order for the product, program, or service shall be deemed a presentation of ordering instructions so as to require the stating of the disclosure provided herein.).

19

# CONTINUITY PROGRAM

## IV.

IT IS FURTHER ORDERED that:

A. The Defendants, directly or through any corporation, subsidiary, division, trade name, or other entity, and their officers, agents, servants, employees, and all persons and entities in active concert with them who receive actual notice of this Order by personal service or otherwise, including by facsimile, in connection with the manufacturing, labeling, promotion, offering for sale, sale, or distribution of any product, program, or service, in or affecting commerce, are hereby preliminarily enjoined from:

    1.  Selling or distributing or causing to be sold or distributed products, programs, or services, by means of a Continuity Program without first obtaining the express, informed consent of consumers to participate in that program before any shipment is made; *Provided*, that the consumer's consent will be deemed to be informed for the purpose of this Part IV only if the Defendants clearly and conspicuously disclose, before the consumer consents to any purchase, all material terms and conditions of the Continuity Program, including but not limited to:

        a.     the fact that periodic shipments will occur without further action by the consumer;

        b.     a description of each good or type of good to be included in each shipment;

20

c.    the approximate interval between each shipment;

d.    a description of the billing procedure to be employed, including the total cost to be charged to the subscriber's credit or debit card, or otherwise billed to the subscriber, for each shipment;

e.    the minimum number of purchases required under the program, if any;

f.    all material terms and conditions of a guarantee, refund, or return policy if any representation is made about such a policy, or, if the Defendants have a policy of not making refunds or accepting returns, a statement that this is the Defendants' policy; and

g.    a description of the terms and conditions under which, and the procedures by which, a subscriber may cancel further shipments, as set forth in Part IV.C below. Provided further, that the consumer's consent will be deemed to be express for the purpose of this Part IV only if the Defendants obtained the informed consent in a manner which clearly evidences that the consumer is consenting to the terms of the Continuity Program.

2. Making any representation, in any manner, expressly or by implication, that consumers owe money for Continuity Program merchandise shipped to consumers, unless the Defendants have obtained consumers' express, informed consent to receive and pay for the merchandise.

B. The Defendants shall convey the terms and conditions of the Continuity Program to the consumer in the following manner:

1. For any solicitation initiated or completed by telephone, the terms and conditions set forth in Part IV.A above shall be disclosed during that conversation in clear and understandable language;

2. For any solicitation by a print advertisement, direct mail, electronic mail, or by the Internet, the terms and conditions set forth in Part IV.A above shall be disclosed in a clear and prominent manner in close proximity to the ordering instructions, provided that, if the advertisement or mailing contains an order form or coupon on a separate page or document from the advertising material, the disclosure shall be made both in the advertising materials and on the order form or coupon.

C. The Defendants shall provide, in conjunction with each shipment made pursuant to any Continuity Program, a clear and conspicuous description of the terms and conditions under which, and the procedures by which, the subscriber may cancel future shipments.

D. The Defendants shall not ship any product, program, or service to, or mail any bill or dunning communication to, or bill the credit or debit card of any subscriber who, having once subscribed to a Continuity Program and having fulfilled any minimum purchase requirement to which the subscriber has given express informed consent, notifies the Defendants of the subscriber's cancellation of further shipments.

## MAINTENANCE OF RECORDS

### V.

IT IS FURTHER ORDERED that the Defendants, and their officers, agents, directors, employees, salespersons, independent contractors, subsidiaries, affiliates, successors, assigns and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, including by facsimile, whether acting directly or through any corporation, subsidiary, division or other device, are hereby preliminarily enjoined from:

1.   failing to create and maintain books, records, accounts, bank statements, current accountants' reports, and any other data which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Defendants;

2.   destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any books, records, tapes, discs, accounting data, checks (fronts and backs), correspondence, forms, advertisements, brochures, manuals, electronically stored data, banking records, customer lists, customer files, invoices, telephone records, ledgers, payroll records, or other documents of any kind, including information stored in computer-maintained form (such as electronic mail), in their possession, and other documents or records of any kind that relate to the business practices or finances of the Defendants; and

3.   failing to maintain complete records of any consumer complaints and disputes, whether coming from the consumer or any intermediary, such as a government agency or Better Business Bureau, and any responses made to those complaints or disputes.

23

## ACCOUNTING

### VI.

IT IS FURTHER ORDERED that:

A. For the purpose of conducting an accounting relating to the Defendants' sale and marketing of Supreme Greens with MSM, and the assets of Barrett, DMC and ITV and related and affiliated corporate entities, within ten (10) days after entry of this Order the Defendants shall retain an accountant and/or accounting firm (hereinafter "accounting firm") to be selected or approved by the Commission. The Defendants shall bear the costs and fees incurred by the accounting firm in conducting this accounting.

B. In this accounting, the accounting firm shall attempt to ascertain, within sixty (60) days from the date of entry of this Order, the following information, whether the information is located in the United States or outside the territorial United States, and shall prepare a report for the Plaintiff and the Defendants describing:

1. all revenues collected and obtained by the Defendants, directly or through any other corporation, partnership, limited liability corporation, or other entity, in connection with the sale in the United States of Supreme Greens with MSM, and the location and/or transfer of all such revenues;

2. the amount of all refunds provided by the Defendants to consumers, directly or through any other corporation, partnership, limited liability corporation, or other entity, in connection with the sale of Supreme Greens with MSM;

3. information sufficient to show the flows of all monies received by the Defendants, directly or indirectly, from the sale in the United States of Supreme Greens with MSM;

4. all costs and expenses incurred by the Defendants, directly or through any other corporation, partnership, limited liability corporation, or other entity, in connection with the sale or marketing of Supreme Greens with MSM in the United States;

5. all net profits collected and obtained by the Defendants, directly or through any other corporation, partnership, limited liability corporation, or other entity, in connection with the sale in the United States of Supreme Greens with MSM;

6. all transfers of assets between the Defendants and any related or affiliated corporate entities or individuals in excess of Ten thousand and 00/100 dollars ($10,000) since January 2003; and

7. the location and amount of all assets of the Defendants, including all assets held either (1) by any Defendant in this action, (2) for Barrett's, DMC's or ITV's benefit, or (3) under any Defendants' direct or indirect control, jointly or severally.

C. Such information gathered by and reports prepared by the accounting firm shall be designated as confidential information.

D. The Defendants and any other person or entity served with a copy of this Order, by personal service, facsimile, or otherwise, shall not interfere with the accounting firm's functions and shall fully cooperate and assist the accounting firm in accomplishing the purposes set forth in this Section, including providing access to documents and information located outside the territorial United States and including the gathering and preserving of documents relating to the Defendants' assets.

E. Should the accounting reveal that the Defendants have concealed, presently are concealing, or are likely to conceal or place assets beyond the Court's reach pending final resolution of this case, the Court will consider additional requests from the Commission for further relief necessary to ensure the enforceability of any judgment, including a freeze of the Defendants' assets and the appointment of a receiver.

## FINANCIAL STATEMENTS

### VII.

IT IS FURTHER ORDERED that:

A. The Defendants each shall prepare and provide to the Commission, within twenty (20) days from entry of this Order, a complete and accurate financial statement, signed under penalty of perjury, on the form attached to this Order as Attachment A (for Barrett) or Attachment B (for DMC and ITV). Barrett also shall include a list of all corporate entities that he has controlled, directly or indirectly, at any point since January 2002 until the present.

B. The Defendants each shall provide the Commission with access to records and documents pertaining to assets of each Defendant that are held by financial institutions outside the territory of the United States, by signing a document entitled "Consent to Release of Financial Records" in the form attached to this Order as Attachment C.

## RESTRICTION ON DISSIPATION OF CORPORATE ASSETS

### VIII.

IT IS FURTHER ORDERED that DMC and ITV and any of their officers, directors, agents, servants, employees, salespersons, distributors, corporations, subsidiaries, affiliates, successors, assigns, and those persons or entities in active concert or participation with them who

26

receive actual notice of this Order by personal service, facsimile, or otherwise, are hereby preliminarily enjoined from directly or indirectly selling, liquidating, assigning, transferring, converting, loaning, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any funds, real, personal, or intellectual property, or other assets or any interest therein, wherever located, including any assets outside the territorial United States, which are owned and controlled by, or held for the benefit of, in whole or in part, or in the possession of DMC and/or ITV, or any other corporation owned or controlled by DMC and/or ITV, other than those transfers for actual and necessary business operations and expenses that such corporations will reasonably incur, including legal fees associated with ITV Direct, Inc. v. Healthy Solutions, LLC, 04-CV-10421-JLT (D. Mass.); Trudeau v. Direct Mktg. Concepts, Inc., CV 02-02707 (C.D. Cal.); Triad ML Mktg., Inc. v. Direct Mktg. Concepts, Inc., C.A. 03-CV-4321 (E.D. Pa.); HBA Mktg. v. Marine Coral Calcium, C.A. 03-5995 (E.D. Pa.); Triad ML Mktg. v. MXM Essential Formulas, C.A. 03-6047 (E.D. Pa.); and the instant action, FTC v. Direct Mktg. Concepts, Inc., 04-CV-11136-GAO (D. Mass.). DMC and ITV shall not purchase or acquire, in whole or in part, directly or indirectly, any real property without prior permission from the Commission.

DMC and ITV shall maintain copies of documents reflecting such transfers or expenditures for actual and necessary business operations, including but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, and bank records (including monthly statements, canceled checks, records of wire transfers, and check registers). These documents shall be produced to the Commission monthly (by the tenth day of the following month) with respect to transfers or expenditures over Five thousand and 00/100

27

dollars ($5,000) from the date of entry of this Order. The funds, property and assets affected by

this Paragraph shall include both existing assets and assets acquired after the date of entry of this

Order, including without limitation, those acquired by loan or gift.

## RESTRICTION ON DISSIPATION OF BARRETT'S ASSETS

### IX.

IT IS FURTHER ORDERED that Barrett and his agents, servants, employees,

salespersons, distributors, corporations, subsidiaries, affiliates, successors, assigns, and those

persons or entities in active concert or participation with him who receive actual notice of this

Order by personal service, facsimile, or otherwise, are hereby preliminarily enjoined from directly

or indirectly selling, liquidating, assigning, transferring, converting, loaning, encumbering,

pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing or any funds,

real, personal, or intellectual property, or other assets or any interest therein, wherever located,

including any assets outside the territorial United States, which are owned and controlled by, or

held for the benefit of, in whole or in part, or in the possession of Barrett, other than those

expenditures or transfers for actual and necessary business operations and business and personal

expenses that he will reasonably incur, including legal fees associated with ITV Direct, Inc. v.

Healthy Solutions, LLC, 04-CV-10421-JLT (D. Mass.); Trudeau v. Direct Mktg. Concepts, Inc.,

CV 02-02707 (C.D. Cal.); Triad ML Mktg., Inc. v. Direct Mktg. Concepts, Inc., C.A. 03-CV-4321

(E.D. Pa.); HBA Mktg. v. Marine Coral Calcium, C.A. 03-5995 (E.D. Pa.); Triad ML Mktg. v.

MXM Essential Formulas, C.A. 03-6047 (E.D. Pa.); and the instant action, FTC v. Direct Mktg.

Concepts, Inc., 04-CV-11136-GAO (D. Mass.). Barrett shall not purchase or acquire, in whole or

in part, directly or indirectly, any real property or pay for any significant home improvements or landscaping without prior permission from the Commission.

Barrett shall maintain copies of documents reflecting such transfers or expenditures for actual and necessary business operations and business and personal expenses, including but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, and bank records (including monthly statements, canceled checks, records of wire transfers, and check registers). These documents shall be produced to the Commission monthly (by the tenth day of the following month) with respect to transfers or expenditures over Two thousand five hundred and 00/100 dollars ($2,500) from the date of entry of this Order. The funds, property and assets affected by this Paragraph shall include both existing assets and assets acquired after the date of entry of this Order, including, without limitation, those acquired by loan or gift.

## EXPEDITED DISCOVERY

### X.

IT IS FURTHER ORDERED that the Commission is granted leave at any time after service of this Order to depose or demand the production of documents from any person or entity relating to the nature, status, extent, location or other relevant information relating to the Defendants' assets, income, personal or business financial records, or the location of any Defendant or potential Defendant. Seven (7) days shall be deemed sufficient for any such production of documents from the Defendants, and ten (10) days shall be deemed sufficient for any such production of documents from any other person or entity, including but not limited to any bank, savings and loan, financial or brokerage institution, fund, escrow agent, or trustee. The

29

production of documents submitted pursuant to this provision shall not in any way waive Plaintiff's rights to seek the production of additional documents.

## RIGHT OF IMMEDIATE ACCESS

### XI.

IT IS FURTHER ORDERED that the Defendants and any other person who receives actual notice of this Order by personal service or otherwise, including by facsimile, shall permit the Commission's employees, agents, and assistants immediate access to any business premises and storage facilities, whether owned, controlled or used by the Defendants, in whole or in part, including but not limited to the offices located at 100 Cummings Center, Beverly, MA 01915 or at 20 Oakpoint Ext., Saugus, MA 01906. The purpose of this access shall be to inspect, copy and inventory documents referring or relating to:

A. advertising or marketing, including issues relating to safety, of Supreme Greens with MSM;

B. any business relationship between any of the Defendants and any other business entity;

C. the financial status of the Defendants, including but not limited to the nature or location of any bank account, safe deposit box, or other asset of the Defendants;

D. any transaction, correspondence or other communication by or between any consumer and any of the Defendants or any representatives, employees, agents, officers, servants, or assistants of the Defendants; and

E.   any action, correspondence or other communication by or between any law enforcement agency, consumer group, or Better Business Bureau and the Defendants, or any representatives, employees, agents, officers, servants, or assistants of the Defendants.

The Commission's representatives may remove original documents from the business premises of the Defendants to make photocopies, provided that the originals are returned within a reasonable period of time.  The Defendants shall provide Commission employees, agents and assistants with any necessary means of access to these documents, including but not limited to keys and lock combinations, computer access codes, and storage access information.  The Defendants, and their officers, agents, directors, employees, salespersons, independent contractors, subsidiaries, affiliates, successors, assigns and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, including by facsimile, are hereby preliminarily enjoined from interfering with the Commission's right of access described herein.

## CONSUMER REPORTS

### XII.

IT IS FURTHER ORDERED that the Commission may obtain consumer reports concerning any of the Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the Commission.

31

**DISTRIBUTION OF ORDER BY DEFENDANTS**

**XIII.**

IT IS FURTHER ORDERED that the Defendants shall immediately provide a copy of this Order to each affiliate, partner, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, agent, attorney, fulfillment house, call center, and representative of the Defendants, and within ten (10) days following entry of this Order, shall provide the Commission with an affidavit identifying the names, titles, addresses, and telephone numbers of the persons and entities that the Defendants have served with a copy of this Order in compliance with this provision.

**SERVICE OF THIS ORDER BY PLAINTIFF**

**XIV.**

IT IS FURTHER ORDERED that copies of this Order may be served by facsimile transmission, personal or overnight delivery, or U.S. Mail, by agents and employees of the Commission or any state or federal law enforcement agency, on (1) any Defendant in this action, or (2) any other person or entity that may be subject to any provision of this Order. Service upon any branch or office of any entity shall effect service upon the entire entity.

**RIGHT TO INVESTIGATE AND ADD ADDITIONAL PARTIES AND CLAIMS**

**XV.**

Nothing in this Order shall be construed as limiting or restricting the Commission's right or ability to investigate, take discovery from, add to this action, or bring further actions against any persons or entities not specifically named herein as a Defendant who may be in active concert or participation with any of the Defendants.

## RETENTION OF JURISDICTION

### XVI.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all purposes.

It is SO ORDERED.

_June 23, 2004_
_____
DATE

_____
DISTRICT JUDGE

Attachments A-C

33

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC.,                ) | |
|                    ) | |
|         Plaintiff,      ) | |
|                    ) | |
| v.                    ) | |
|                    ) | |
| DIRECT MARKETING CONCEPTS, INC., ) | |
| ITV DIRECT, INC., DIRECT     ) | C.A. No. 05-11907-JLT |
| FULFILLMENT, LLC, DONALD     ) | |
| BARRETT, and ROBERT MAIHOS,   ) | |
|                    ) | |
|         Defendants.    ) | |

**AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**EXHIBIT I**

**ITV Direct Business Transactions**
**5/2005-7/2005**

| Month | # of Transactions |
|---|---|
| May 2005 | 593 |
| June 2005 | 306 |
| July 2005 | 294 |

B0436640v1

**ITV Direct**
**General Ledger**
As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|------|------|-----|------|-------|-------|--------|---------|
| Check | 4/29/2005 | 7415 | WKMG | -SPLIT- | | 8,627.50 | -890,913.60 |
| Check | 4/29/2005 | 7416 | WKRN-TV | -SPLIT- | | 106.25 | -891,019.85 |
| Check | 4/29/2005 | 7417 | WLNS | -SPLIT- | | 127.50 | -891,147.35 |
| Check | 4/29/2005 | 7418 | WLNY-TV | -SPLIT- | | 2,465.00 | -893,612.35 |
| Check | 4/29/2005 | 7419 | WMCN | -SPLIT- | | 2,805.00 | -896,417.35 |
| Check | 4/29/2005 | 7420 | Fairway Media | -SPLIT- | | 595.00 | -897,012.35 |
| Check | 4/29/2005 | 7421 | WNFM | -SPLIT- | | 382.50 | -897,394.85 |
| Check | 4/29/2005 | 7422 | WNLV | -SPLIT- | | 935.00 | -898,329.85 |
| Check | 4/29/2005 | 7423 | WNYO | -SPLIT- | | 1,296.25 | -899,626.10 |
| Check | 4/29/2005 | 7424 | WOFL | -SPLIT- | | 340.00 | -899,966.10 |
| Check | 4/29/2005 | 7425 | WPLG | -SPLIT- | | 1,317.50 | -901,283.60 |
| Check | 4/29/2005 | 7426 | WPTA | -SPLIT- | | 42.50 | -901,326.10 |
| Check | 4/29/2005 | 7427 | WPWR | -SPLIT- | | 935.00 | -902,261.10 |
| Check | 4/29/2005 | 7428 | WRBW | -SPLIT- | | 1,253.75 | -903,514.85 |
| Check | 4/29/2005 | 7429 | Fairway Media | -SPLIT- | | 1,020.00 | -904,534.85 |
| Check | 4/29/2005 | 7430 | WSMH | -SPLIT- | | 1,530.00 | -906,064.85 |
| Check | 4/29/2005 | 7431 | Fairway Media | -SPLIT- | | 1,615.00 | -907,679.85 |
| Check | 4/29/2005 | 7432 | WTGS | -SPLIT- | | 552.50 | -908,232.35 |
| Check | 4/29/2005 | 7433 | WTHI | -SPLIT- | | 127.50 | -908,359.85 |
| Check | 4/29/2005 | 7434 | Fairway Media | -SPLIT- | 0.00 | | -908,359.85 |
| Check | 4/29/2005 | 7435 | Fairway Media | -SPLIT- | | 4,420.00 | -912,779.85 |
| Check | 4/29/2005 | 7436 | Fairway Media | -SPLIT- | | 2,635.00 | -915,414.85 |
| Check | 4/29/2005 | 7437 | WTOL | -SPLIT- | | 255.00 | -915,669.85 |
| Check | 4/29/2005 | 7438 | WTTA | -SPLIT- | | 2,040.00 | -917,709.85 |
| Check | 4/29/2005 | 7439 | Fairway Media | -SPLIT- | | 2,252.50 | -919,962.35 |
| Check | 4/29/2005 | 7440 | WTTG | -SPLIT- | | 1,466.25 | -921,428.60 |
| Check | 4/29/2005 | 7441 | WTVK | -SPLIT- | | 1,487.50 | -922,916.10 |
| Check | 4/29/2005 | 7442 | WUHF | -SPLIT- | | 510.00 | -923,426.10 |
| Check | 4/29/2005 | 7443 | Fairway Media | -SPLIT- | | 318.75 | -923,744.85 |
| Check | 4/29/2005 | 7444 | Fairway Media | -SPLIT- | | 1,530.00 | -925,274.85 |
| Check | 4/29/2005 | 7445 | WUTV | -SPLIT- | | 1,020.00 | -926,294.85 |
| Check | 4/29/2005 | 7446 | WWNY | -SPLIT- | | 5,100.00 | -931,394.85 |
| Check | 4/29/2005 | 7447 | WWOR | -SPLIT- | | 3,697.50 | -935,092.35 |
| Check | 4/29/2005 | 7448 | XUPN | PAX | | 66,966.00 | -1,002,058.35 |
| Deposit | 5/2/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 150,000.00 | | -852,058.35 |
| Deposit | 5/4/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 175,000.00 | | -677,058.35 |
| Deposit | 5/4/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 150,000.00 | | -527,058.35 |
| Check 1 | 5/4/2005 | 7449 | KCOP | Direct Marketing Concepts,... | | 1,232.50 | -528,290.85 |
| Check | 5/4/2005 | 7450 | Response TV Network Inc. | -SPLIT- | | 319.00 | -528,609.85 |
| Check | 5/6/2005 | 7567 | ACTN | -SPLIT- | | 8,287.52 | -536,897.37 |
| Check | 5/6/2005 | 7568 | AUCT | -SPLIT- | | 1,402.50 | -538,299.87 |
| Check | 5/6/2005 | 7569 | BFAS | -SPLIT- | | 531.25 | -538,831.12 |
| Check | 5/6/2005 | 7570 | CCMA | -SPLIT- | | 2,465.00 | -541,296.12 |

ITV00326

**ITV Direct**
**General Ledger**
**As of September 30, 2005**

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|------|------|-----|------|-------|-------|--------|---------|
| Check | 5/6/2005 | 7571 | CCNE | -SPLIT- | | 2,125.00 | -543,421.12 |
| Check | 5/6/2005 | 7572 | CCOX | -SPLIT- | | 510.00 | -543,931.12 |
| Check | 5/6/2005 | 7573 | CORT | -SPLIT- | | 20,655.00 | -564,586.12 |
| Check | 5/6/2005 | 7574 | CSPA | -SPLIT- | | 680.00 | -565,266.12 |
| Check | 5/6/2005 | 7575 | CTLG | -SPLIT- | | 935.00 | -566,201.12 |
| Check | 5/6/2005 | 7576 | DISC | -SPLIT- | | 31,705.00 | -597,906.12. |
| Check | 5/6/2005 | 7577 | FSAZ | -SPLIT- | | 913.75 | -598,819.87 |
| Check | 5/6/2005 | 7578 | FSCO | -SPLIT- | | 956.25 | -599,776.12 |
| Check | 5/6/2005 | 7579 | FSFL | -SPLIT- | | 5,100.00 | -604,876.12 |
| Check | 5/6/2005 | 7580 | FSNE | -SPLIT- | | 4,250.00 | -609,126.12 |
| Check | 5/6/2005 | 7581 | FSNM | -SPLIT- | | 5,695.00 | -614,821.12 |
| Check | 5/6/2005 | 7582 | FSNO | -SPLIT- | | 1,232.50 | -616,053.62 |
| Check | 5/6/2005 | 7583 | FSNP | -SPLIT- | | 1,360.00 | -617,413.62 |
| Check | 5/6/2005 | 7584 | FSM2 | -SPLIT- | | 5,482.50 | -622,896.12 |
| Check | 5/6/2005 | 7585 | FSME | -SPLIT- | | 6,502.50 | -629,398.62 |
| Check | 5/6/2005 | 7586 | GOOD | -SPLIT- | | 1,572.50 | -630,971.12 |
| Check | 5/6/2005 | 7557 | HGTV | -SPLIT- | | 6,545.00 | -637,516.12 |
| Check | 5/6/2005 | 7558 | HLCC | -SPLIT- | | 2,358.75 | -639,874.87 |
| Check | 5/6/2005 | 7559 | INSP | -SPLIT- | | 8,075.00 | -647,949.87 |
| Check | 5/6/2005 | 7560 | KACY | -SPLIT- | | 595.00 | -648,544.87 |
| Check | 5/6/2005 | 7561 | KASY | -SPLIT- | | 595.00 | -649,139.87 |
| Check | 5/6/2005 | 7562 | Fairway Media | -SPLIT- | | 3,570.00 | -652,709.87 |
| Check | 5/6/2005 | 7563 | KBHK | -SPLIT- | | 1,190.00 | -653,899.87 |
| Check | 5/6/2005 | 7564 | KCOP | -SPLIT- | | 1,147.50 | -655,047.37 |
| Check | 5/6/2005 | 7565 | KOFI | -SPLIT- | | 2,125.00 | -657,172.37 |
| Check | 5/6/2005 | 7566 | KDVR | -SPLIT- | | 510.00 | -657,682.37 |
| Check | 5/6/2005 | 7451 | Fairway Media | -SPLIT- | | 850.00 | -658,532.37 |
| Check | 5/6/2005 | 7452 | KEVN | -SPLIT- | | 191.25 | -658,723.62 |
| Check | 5/6/2005 | 7453 | Fairway Media | -SPLIT- | | 1,423.75 | -660,147.37 |
| Check | 5/6/2005 | 7454 | KGMC | -SPLIT- | | 616.25 | -660,763.62 |
| Check | 5/6/2005 | 7455 | KHIZ | -SPLIT- | | 170.00 | -660,933.62 |
| Check | 5/6/2005 | 7456 | KHON | -SPLIT- | | 599.45 | -661,533.07 |
| Check | 5/6/2005 | 7457 | KIMA | -SPLIT- | | 255.00 | -661,788.07 |
| Check | 5/6/2005 | 7458 | KJRH | -SPLIT- | | 170.00 | -661,958.07 |
| Check | 5/6/2005 | 7459 | KJTV | -SPLIT- | | 106.25 | -662,064.32 |
| Check | 5/6/2005 | 7460 | KLAV | -SPLIT- | | 501.50 | -662,565.82 |
| Check | 5/6/2005 | 7461 | Fairway Media | -SPLIT- | | 148.75 | -662,714.57 |
| Check | 5/6/2005 | 7462 | KMTV | -SPLIT- | | 2,061.25 | -664,775.82 |
| Check | 5/6/2005 | 7463 | KMVU | -SPLIT- | | 170.00 | -664,945.82 |
| Check | 5/6/2005 | 7464 | KNIN | -SPLIT- | | 1,041.25 | -665,987.07 |
| Check | 5/6/2005 | 7465 | KNIN | -SPLIT- | | 382.50 | -666,369.57 |
| Check | 5/6/2005 | 7466 | KOBB | -SPLIT- | | 1,530.00 | -667,899.57 |
| Check | 5/6/2005 | 7467 | Fairway Media | -SPLIT- | | 616.25 | -668,515.82 |

ITV00327

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|------|------|-----|------|-------|-------|--------|---------|
| Check | 5/6/2005 | 7468 | KOIN | -SPLIT- | | 892.50 | -669,408.32 |
| Check | 5/6/2005 | 7469 | KPNZ | -SPLIT- | | 1,487.50 | -670,895.82 |
| Check | 5/6/2005 | 7470 | KPRC | -SPLIT- | | 765.00 | -671,660.82 |
| Check | 5/6/2005 | 7471 | Fairway Media | -SPLIT- | | 191.25 | -671,852.07 |
| Check | 5/6/2005 | 7472 | Fairway Media | -SPLIT- | | 212.50 | -672,064.57 |
| Check | 5/6/2005 | 7473 | Fairway Media | -SPLIT- | | 63.75 | -672,128.32 |
| Check | 5/6/2005 | 7474 | KRON-TV | -SPLIT- | | 4,590.00 | -676,718.32 |
| Check | 5/6/2005 | 7475 | KRRT | -SPLIT- | | 297.50 | -677,015.82 |
| Check | 5/6/2005 | 7476 | KSAS | -SPLIT- | | 127.50 | -677,143.32 |
| Check | 5/6/2005 | 7477 | Fairway Media | -SPLIT- | | 935.00 | -678,078.32 |
| Check | 5/6/2005 | 7478 | KSCC | -SPLIT- | | 233.75 | -678,312.07 |
| Check | 5/6/2005 | 7479 | KSEE | -SPLIT- | | 1,530.00 | -679,842.07 |
| Check | 5/6/2005 | 7480 | KSHV | -SPLIT- | | 255.00 | -680,097.07 |
| Check | 5/6/2005 | 7481 | KTBU | -SPLIT- | | 3,612.50 | -683,709.57 |
| Check | 5/6/2005 | 7482 | Fairway Media | -SPLIT- | | 2,210.00 | -685,919.57 |
| Check | 5/6/2005 | 7483 | Fairway Media | -SPLIT- | | 276.25 | -686,195.82 |
| Check | 5/6/2005 | 7484 | KTLA (WB) | -SPLIT- | | 4,760.00 | -690,955.82 |
| Check | 5/6/2005 | 7485 | KTSM | -SPLIT- | | 765.00 | -691,720.82 |
| Check | 5/6/2005 | 7486 | KTTV | -SPLIT- | | 3,060.00 | -694,780.82 |
| Check | 5/6/2005 | 7487 | KTVN | -SPLIT- | | 106.25 | -694,887.07 |
| Check | 5/6/2005 | 7488 | KTWO | -SPLIT- | 0.00 | | -694,887.07 |
| Check | 5/6/2005 | 7489 | KUSI | -SPLIT- | | 3,187.50 | -698,074.57 |
| Check | 5/6/2005 | 7490 | KUTP | -SPLIT- | | 1,083.75 | -699,158.32 |
| Check | 5/6/2005 | 7491 | KUWB | -SPLIT- | | 1,742.50 | -700,900.82 |
| Check | 5/6/2005 | 7492 | Fairway Media | -SPLIT- | | 637.50 | -701,538.32 |
| Check | 5/6/2005 | 7493 | Fairway Media | -SPLIT- | | 106.25 | -701,644.57 |
| Check | 5/6/2005 | 7494 | KXLY | -SPLIT- | | 3,400.00 | -705,044.57 |
| Check | 5/6/2005 | 7495 | KZTV | -SPLIT- | | 1,062.50 | -706,107.07 |
| Check | 5/6/2005 | 7496 | MALL | -SPLIT- | | 510.00 | -706,617.07 |
| Check | 5/6/2005 | 7497 | OXYG | -SPLIT- | | 2,635.00 | -709,252.07 |
| Check | 5/6/2005 | 7498 | PCNC | -SPLIT- | | 318.75 | -709,570.82 |
| Check | 5/6/2005 | 7499 | PPN | -SPLIT- | | 15,632.35 | -725,203.17 |
| Check | 5/6/2005 | 7500 | SPKE | -SPLIT- | | 14,777.25 | -739,980.42 |
| Check | 5/6/2005 | 7501 | STUF | -SPLIT- | | 212.50 | -740,192.92 |
| Check | 5/6/2005 | 7502 | SUNS | -SPLIT- | | 6,460.00 | -746,652.92 |
| Check | 5/6/2005 | 7503 | TRAV | -SPLIT- | | 16,320.00 | -762,972.92 |
| Check | 5/6/2005 | 7504 | TTLC | -SPLIT- | | 21,675.00 | -784,647.92 |
| Check | 5/6/2005 | 7505 | TTMC | -SPLIT- | | 403.75 | -785,051.67 |
| Check | 5/6/2005 | 7506 | TVSS | -SPLIT- | | 4,500.16 | -789,551.83 |
| Check | 5/6/2005 | 7507 | W100 | -SPLIT- | | 2,550.00 | -792,101.83 |
| Check | 5/6/2005 | 7508 | Fairway Media | -SPLIT- | | 114.75 | -792,216.58 |
| Check | 5/6/2005 | 7509 | WBDT | -SPLIT- | | 2,720.00 | -794,936.58 |
| Check | 5/6/2005 | 7510 | WBFS-Miami | -SPLIT- | | 1,530.00 | -796,466.58 |

ITV00328

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 5/6/2005 | 7511 | Fairway Media | -SPLIT- | | 1,700.00 | -798,166.58 |
| Check | 5/6/2005 | 7512 | WBUW | -SPLIT- | | 807.50 | -798,974.08 |
| Check | 5/6/2005 | 7513 | WCIU-Fairway | -SPLIT- | | 892.50 | -799,866.58 |
| Check | 5/6/2005 | 7514 | WCOV | -SPLIT- | | 276.25 | -800,142.83 |
| Check | 5/6/2005 | 7515 | WDCA | -SPLIT- | | 2,465.00 | -802,607.83 |
| Check | 5/6/2005 | 7516 | WDIV | -SPLIT- | | 595.00 | -803,202.83 |
| Check | 5/6/2005 | 7517 | WEMT | -SPLIT- | | 977.50 | -804,180.33 |
| Check | 5/6/2005 | 7518 | WENT | -SPLIT- | | 13,302.50 | -817,482.83 |
| Check | 5/6/2005 | 7519 | WFLX | -SPLIT- | | 1,147.50 | -818,630.33 |
| Check | 5/6/2005 | 7520 | WFGX | -SPLIT- | | 807.50 | -819,437.83 |
| Check | 5/6/2005 | 7521 | WFTX | -SPLIT- | | 2,847.50 | -822,285.33 |
| Check | 5/6/2005 | 7522 | Zephyr Media | -SPLIT- | | 7,500.00 | -829,785.33 |
| Check | 5/6/2005 | 7523 | WINK | -SPLIT- | | 595.00 | -830,380.33 |
| Check | 5/6/2005 | 7524 | WIWB | -SPLIT- | | 276.25 | -830,656.58 |
| Check | 5/6/2005 | 7525 | WIZE | -SPLIT- | | 8,000.16 | -838,656.74 |
| Check | 5/6/2005 | 7526 | Fairway Media | -SPLIT- | | 531.25 | -839,187.99 |
| Check | 5/6/2005 | 7527 | WKBT | -SPLIT- | | 63.75 | -839,251.74 |
| Check | 5/6/2005 | 7528 | WKEF | -SPLIT- | | 488.75 | -839,740.49 |
| Check | 5/6/2005 | 7529 | WKMG | -SPLIT- | | 3,400.00 | -843,140.49 |
| Check | 5/6/2005 | 7530 | WLNS | -SPLIT- | | 255.00 | -843,395.49 |
| Check | 5/6/2005 | 7531 | WLNY-TV | -SPLIT- | | 7,225.00 | -850,620.49 |
| Check | 5/6/2005 | 7532 | Fairway Media | -SPLIT- | | 595.00 | -851,215.49 |
| Check | 5/6/2005 | 7533 | WNFM | -SPLIT- | | 382.50 | -851,597.99 |
| Check | 5/6/2005 | 7534 | WNUV | -SPLIT- | | 1,870.00 | -853,467.99 |
| Check | 5/6/2005 | 7535 | WNYO | -SPLIT- | | 595.00 | -854,062.99 |
| Check | 5/6/2005 | 7536 | WPLG | -SPLIT- | | 1,742.50 | -855,805.49 |
| Check | 5/6/2005 | 7537 | WPWR | -SPLIT- | | 20.00 | -855,825.49 |
| Check | 5/6/2005 | 7538 | WRBW | -SPLIT- | | 1,020.00 | -856,845.49 |
| Check | 5/6/2005 | 7539 | Fairway Media | -SPLIT- | | 1,572.50 | -858,397.99 |
| Check | 5/6/2005 | 7540 | WSMH | -SPLIT- | | 297.50 | -858,695.49 |
| Check | 5/6/2005 | 7541 | Fairway Media | -SPLIT- | | 1,530.00 | -860,225.49 |
| Check | 5/6/2005 | 7542 | WTGS | -SPLIT- | | 1,615.00 | -861,840.49 |
| Check | 5/6/2005 | 7543 | WTHI | -SPLIT- | | 552.50 | -862,392.99 |
| Check | 5/6/2005 | 7544 | WTOL | -SPLIT- | | 1,062.50 | -863,455.49 |
| Check | 5/6/2005 | 7545 | WTTA | -SPLIT- | | 5,270.00 | -868,725.49 |
| Check | 5/6/2005 | 7546 | Fairway Media | -SPLIT- | | 255.00 | -868,980.49 |
| Check | 5/6/2005 | 7547 | WTTG | -SPLIT- | | 1,020.00 | -870,000.49 |
| Check | 5/6/2005 | 7548 | WTVK | -SPLIT- | | 1,870.00 | -871,870.49 |
| Check | 5/6/2005 | 7549 | WTXF | -SPLIT- | | 765.00 | -872,635.49 |
| Check | 5/6/2005 | 7550 | WUHF | -SPLIT- | | 425.00 | -873,060.49 |
| Check | 5/6/2005 | 7551 | Fairway Media | -SPLIT- | | 1,402.50 | -874,462.99 |
| Check | 5/6/2005 | 7552 | Fairway Media | -SPLIT- | | 255.00 | -874,717.99 |
| Check | 5/6/2005 | 7553 | WUTV | -SPLIT- | | 420.75 | -875,138.74 |
| | | | | | | 1,105.00 | -876,243.74 |

ITV00329

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 5/6/2005 | 7554 | WWOR | -SPLIT- | | 1,742.50 | -877,986.24 |
| Check | 5/6/2005 | 7555 | XUPN | -SPLIT- | | 1,423.75 | -879,409.99 |
| Check | 5/6/2005 | 7556 | PAX | -SPLIT- | | 68,386.75 | -947,796.74 |
| Deposit | 5/10/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 125,000.00 | | -822,796.74 |
| Deposit | 5/12/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 125,000.00 | | -697,796.74 |
| Check | 5/12/2005 | 7587 | Chief Media, LLC | -SPLIT- | | 6,321.00 | -704,117.74 |
| Check | 5/12/2005 | 7588 | Chief Media, LLC | -SPLIT- | | 983.00 | -705,100.74 |
| Check | 5/12/2005 | 7589 | Broadcast Response, Inc. | -SPLIT- | | 34,363.50 | -739,464.24 |
| Check | 5/13/2005 | 7590 | Direct Marketing Concepts, ... | Media Purchases | | 1,000.00 | -740,464.24 |
| Check | 5/13/2005 | 7591 | ACTN | -SPLIT- | | 8,287.52 | -748,751.76 |
| Check | 5/13/2005 | 7592 | AUCT | -SPLIT- | | 1,402.50 | -750,154.26 |
| Check | 5/13/2005 | 7593 | BFAS | -SPLIT- | | 531.25 | -750,685.51 |
| Check | 5/13/2005 | 7594 | COMA | -SPLIT- | | 2,252.50 | -752,938.01 |
| Check | 5/13/2005 | 7595 | CONE | -SPLIT- | | 3,825.00 | -756,763.01 |
| Check | 5/13/2005 | 7596 | CORT | -SPLIT- | | 19,524.50 | -776,287.51 |
| Check | 5/13/2005 | 7597 | CTLG | -SPLIT- | | 1,190.00 | -777,477.51 |
| Check | 5/13/2005 | 7598 | DISC | -SPLIT- | | 26,520.00 | -803,997.51 |
| Check | 5/13/2005 | 7599 | FITV | -SPLIT- | | 170.00 | -804,167.51 |
| Check | 5/13/2005 | 7600 | GOOD | -SPLIT- | | 1,572.50 | -805,740.01 |
| Check | 5/13/2005 | 7601 | HLCC | -SPLIT- | | 1,402.50 | -807,142.51 |
| Check | 5/13/2005 | 7602 | ISHO | -SPLIT- | | 212.50 | -807,355.01 |
| Check | 5/13/2005 | 7603 | KAQY | -SPLIT- | | 595.00 | -807,950.01 |
| Check | 5/13/2005 | 7604 | Fairway Media | -SPLIT- | | 1,020.00 | -808,970.01 |
| Check | 5/13/2005 | 7605 | Fairway Media | -SPLIT- | 0.00 | | -808,970.01 |
| Check | 5/13/2005 | 7606 | KASY | -SPLIT- | | 935.00 | -809,905.01 |
| Check | 5/13/2005 | 7607 | Fairway Media | -SPLIT- | | 3,973.75 | -813,878.76 |
| Check | 5/13/2005 | 7608 | KBHK | -SPLIT- | | 595.00 | -814,473.76 |
| Check | 5/13/2005 | 7609 | KBTX | -SPLIT- | | 191.25 | -814,665.01 |
| Check | 5/13/2005 | 7610 | KBWB | -SPLIT- | | 42.50 | -814,707.51 |
| Check | 5/13/2005 | 7611 | KCOP | -SPLIT- | | 935.00 | -815,642.51 |
| Check | 5/13/2005 | 7612 | KDFI | -SPLIT- | | 340.00 | -815,982.51 |
| Check | 5/13/2005 | 7613 | KDFX | -SPLIT- | | 42.50 | -816,025.01 |
| Check | 5/13/2005 | 7614 | KDOC TV | -SPLIT- | | 1,700.00 | -817,725.01 |
| Check | 5/13/2005 | 7615 | KDVR | -SPLIT- | | 425.00 | -818,150.01 |
| Check | 5/13/2005 | 7616 | Fairway Media | -SPLIT- | | 1,700.00 | -819,850.01 |
| Check | 5/13/2005 | 7617 | KEVN | -SPLIT- | 0.00 | | -819,850.01 |
| Check | 5/13/2005 | 7618 | Fairway Media | -SPLIT- | | 191.25 | -820,041.26 |
| Check | 5/13/2005 | 7619 | KGMC | -SPLIT- | | 1,700.00 | -821,741.26 |
| Check | 5/13/2005 | 7620 | Fairway Media | -SPLIT- | | 1,700.00 | -823,441.26 |
| Check | 5/13/2005 | 7621 | KHIZ | -SPLIT- | | 170.00 | -823,611.26 |
| Check | 5/13/2005 | 7622 | KIMO | -SPLIT- | | 425.00 | -824,036.26 |
| Check | 5/13/2005 | 7623 | KKFX | -SPLIT- | | 212.50 | -824,248.76 |
| Check | 5/13/2005 | 7624 | KLAV | -SPLIT- | | 501.50 | -824,750.26 |

ITV00330

Accrual Basis

# ITV Direct
## General Ledger
### As of September 30, 2005

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 5/13/2005 | 7625 | KLFY-TV | -SPLIT- | | 595.00 | -825,345.26 |
| Check | 5/13/2005 | 7626 | Fairway Media | -SPLIT- | | 148.75 | -825,494.01 |
| Check | 5/13/2005 | 7627 | | -SPLIT- | | 85.00 | -825,579.01 |
| Check | 5/13/2005 | 7628 | KMSS | -SPLIT- | | 2,061.25 | -827,640.26 |
| Check | 5/13/2005 | 7629 | KMTV | -SPLIT- | | 85.00 | -827,725.26 |
| Check | 5/13/2005 | 7630 | KMVU | -SPLIT- | | 658.75 | -828,384.01 |
| Check | 5/13/2005 | 7631 | KNIN | -SPLIT- | | 807.50 | -829,191.51 |
| Check | 5/13/2005 | 7632 | KNSD | -SPLIT- | | 297.50 | -829,489.01 |
| Check | 5/13/2005 | 7633 | Fairway Media | -SPLIT- | | 255.00 | -829,744.01 |
| Check | 5/13/2005 | 7634 | KOBB | -SPLIT- | | 616.25 | -830,360.26 |
| Check | 5/13/2005 | 7635 | Fairway Media | -SPLIT- | | 297.50 | -830,657.76 |
| Check | 5/13/2005 | 7636 | KOIN | -SPLIT- | | 106.25 | -830,764.01 |
| Check | 5/13/2005 | 7637 | KOLN | -SPLIT- | | 616.25 | -831,380.26 |
| Check | 5/13/2005 | 7638 | KPNZ | -SPLIT- | | 1,062.50 | -832,442.76 |
| Check | 5/13/2005 | 7639 | KPRC | -SPLIT- | | 2,295.00 | -834,737.76 |
| Check | 5/13/2005 | 7640 | Fairway Media | -SPLIT- | | 191.25 | -834,929.01 |
| Check | 5/13/2005 | 7641 | Fairway Media | -SPLIT- | | 212.50 | -835,141.51 |
| Check | 5/13/2005 | 7642 | KRIV | -SPLIT- | | 208.25 | -835,349.76 |
| Check | 5/13/2005 | 7643 | Fairway Media | -SPLIT- | | 765.00 | -836,114.76 |
| Check | 5/13/2005 | 7644 | KRON-TV | -SPLIT- | | 212.50 | -836,327.26 |
| Check | 5/13/2005 | 7645 | KRRT | -SPLIT- | | 4,590.00 | -840,917.26 |
| Check | 5/13/2005 | 7646 | KSAS | -SPLIT- | | 148.75 | -841,066.01 |
| Check | 5/13/2005 | 7647 | Fairway Media | -SPLIT- | | 255.00 | -841,321.01 |
| Check | 5/13/2005 | 7648 | KSCC | -SPLIT- | | 2,975.00 | -844,296.01 |
| Check | 5/13/2005 | 7649 | Fairway Media | -SPLIT- | | 233.75 | -844,529.76 |
| Check | 5/13/2005 | 7650 | KSEE | -SPLIT- | | 765.00 | -845,294.76 |
| Check | 5/13/2005 | 7651 | KSHV | -SPLIT- | | 255.00 | -845,549.76 |
| Check | 5/13/2005 | 7652 | KSTU | -SPLIT- | | 297.50 | -845,847.26 |
| Check | 5/13/2005 | 7653 | KTBU | -SPLIT- | | 2,953.75 | -848,801.01 |
| Check | 5/13/2005 | 7654 | Fairway Media | -SPLIT- | | 276.25 | -849,077.26 |
| Check | 5/13/2005 | 7655 | KTLA (WB) | -SPLIT- | | 5,440.00 | -854,517.26 |
| Check | 5/13/2005 | 7656 | KTSM | -SPLIT- | 0.00 | | -854,517.26 |
| Check | 5/13/2005 | 7657 | KTTV | -SPLIT- | | 1,190.00 | -855,707.26 |
| Check | 5/13/2005 | 7658 | Fairway Media | -SPLIT- | | 85.00 | -855,792.26 |
| Check | 5/13/2005 | 7659 | KTVZ | -SPLIT- | | 170.00 | -855,962.26 |
| Check | 5/13/2005 | 7660 | KTWO | -SPLIT- | | 127.50 | -856,089.76 |
| Check | 5/13/2005 | 7661 | KUSI | -SPLIT- | | 1,615.00 | -857,704.76 |
| Check | 5/13/2005 | 7662 | KUTP | -SPLIT- | | 1,466.25 | -859,171.01 |
| Check | 5/13/2005 | 7663 | KUWB | -SPLIT- | | 743.75 | -859,914.76 |
| Check | 5/13/2005 | 7664 | Fairway Media | -SPLIT- | | 212.50 | -860,127.26 |
| Check | 5/13/2005 | 7665 | Fairway Media | -SPLIT- | | 106.25 | -860,233.51 |
| Check | 5/13/2005 | 7666 | KXGN | -SPLIT- | | 170.00 | -860,403.51 |
| Check | 5/13/2005 | 7667 | KXLY | -SPLIT- | | 3,400.00 | -863,803.51 |

ITV00331

**ITV Direct**
**General Ledger**
As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 5/13/2005 | 7668 | Fairway Media | -SPLIT- | | 148.75 | -863,952.26 |
| Check | 5/13/2005 | 7669 | KZTV | -SPLIT- | | 807.50 | -864,759.76 |
| Check | 5/13/2005 | 7670 | MALL | -SPLIT- | | 510.00 | -865,269.76 |
| Check | 5/13/2005 | 7671 | NEON | -SPLIT- | 0.00 | | -865,269.76 |
| Check | 5/13/2005 | 7672 | PPN | -SPLIT- | | 15,632.35 | -880,902.11 |
| Check | 5/13/2005 | 7673 | SPKE | -SPLIT- | | 9,367.00 | -890,269.11 |
| Check | 5/13/2005 | 7674 | STUF | -SPLIT- | | 467.50 | -890,736.61 |
| Check | 5/13/2005 | 7675 | STYL | -SPLIT- | | 616.25 | -891,352.86 |
| Check | 5/13/2005 | 7676 | TTMC | -SPLIT- | | 403.75 | -891,756.61 |
| Check | 5/13/2005 | 7677 | TVSS | -SPLIT- | | 4,500.16 | -896,256.77 |
| Check | 5/13/2005 | 7678 | UP14 | -SPLIT- | | 127.50 | -896,384.27 |
| Check | 5/13/2005 | 7679 | W100 | -SPLIT- | | 2,550.00 | -898,934.27 |
| Check | 5/13/2005 | 7680 | WACH | -SPLIT- | | 361.25 | -899,295.52 |
| Check | 5/13/2005 | 7681 | WACY | -SPLIT- | | 297.50 | -899,593.02 |
| Check | 5/13/2005 | 7682 | Fairway Media | -SPLIT- | | 680.00 | -900,273.02 |
| Check | 5/13/2005 | 7683 | Fairway Media | -SPLIT- | | 114.75 | -900,387.77 |
| Check | 5/13/2005 | 7684 | WBAY | -SPLIT- | | 127.50 | -900,515.27 |
| Check | 5/13/2005 | 7685 | WBDT | -SPLIT- | | 2,061.25 | -902,576.52 |
| Check | 5/13/2005 | 7686 | WBFS-Miami | -SPLIT- | | 510.00 | -903,086.52 |
| Check | 5/13/2005 | 7687 | WBUW | -SPLIT- | | 340.00 | -903,426.52 |
| Check | 5/13/2005 | 7688 | WCOV | -SPLIT- | | 276.25 | -903,702.77 |
| Check | 5/13/2005 | 7689 | WDCA | -SPLIT- | | 2,805.00 | -906,507.77 |
| Check | 5/13/2005 | 7690 | WDIV | -SPLIT- | | 595.00 | -907,102.77 |
| Check | 5/13/2005 | 7691 | Fairway Media | -SPLIT- | | 714.00 | -907,816.77 |
| Check | 5/13/2005 | 7692 | WEMT | -SPLIT- | | 531.25 | -908,348.02 |
| Check | 5/13/2005 | 7693 | WENT | -SPLIT- | | 19,741.25 | -928,089.27 |
| Check | 5/13/2005 | 7694 | WFLD | -SPLIT- | 0.00 | | -928,089.27 |
| Check | 5/13/2005 | 7695 | WFLX | -SPLIT- | | 2,295.00 | -930,384.27 |
| Check | 5/13/2005 | 7696 | WFQX | -SPLIT- | | 1,062.50 | -931,446.77 |
| Check | 5/13/2005 | 7697 | WFTX | -SPLIT- | | 3,315.00 | -934,761.77 |
| Check | 5/13/2005 | 7698 | Zephyr Media | -SPLIT- | | 3,000.00 | -937,761.77 |
| Check | 5/13/2005 | 7699 | WMK | -SPLIT- | | 595.00 | -938,356.77 |
| Check | 5/13/2005 | 7700 | WNK | -SPLIT- | | 8,000.16 | -946,356.93 |
| Check | 5/13/2005 | 7701 | WIZE | -SPLIT- | | 573.75 | -946,930.68 |
| Check | 5/13/2005 | 7702 | Fairway Media | -SPLIT- | | 531.25 | -947,461.93 |
| Check | 5/13/2005 | 7703 | WKBT | -SPLIT- | | 127.50 | -947,589.43 |
| Check | 5/13/2005 | 7704 | WKEF | -SPLIT- | | 488.75 | -948,078.18 |
| Check | 5/13/2005 | 7705 | WKMG | -SPLIT- | | 5,950.00 | -954,028.18 |
| Check | 5/13/2005 | 7706 | WLNS | -SPLIT- | | 106.25 | -954,134.43 |
| Check | 5/13/2005 | 7707 | WLNY-TV | -SPLIT- | | 2,890.00 | -957,024.43 |
| Check | 5/13/2005 | 7708 | Fairway Media | -SPLIT- | | 595.00 | -957,619.43 |
| Check | 5/13/2005 | 7709 | WNFM | -SPLIT- | | 382.50 | -958,001.93 |
| Check | 5/13/2005 | 7710 | WNLV | -SPLIT- | | 935.00 | -958,936.93 |

ITV00332

Accrual Basis

# ITV Direct
## General Ledger
### As of September 30, 2005

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 5/13/2005 | 7710 | WNYO | -SPLIT- | | 701.25 | -959,638.18 |
| Check | 5/13/2005 | 7711 | WNYW | -SPLIT- | | 4,080.00 | -963,718.18 |
| Check | 5/13/2005 | 7712 | WOFL | -SPLIT- | | 2,061.25 | -965,779.43 |
| Check | 5/13/2005 | 7713 | WPLG | -SPLIT- | | 1,615.00 | -967,394.43 |
| Check | 5/13/2005 | 7714 | WPWR | -SPLIT- | | 2,252.50 | -969,646.93 |
| Check | 5/13/2005 | 7715 | WRBW | -SPLIT- | | 2,125.00 | -971,771.93 |
| Check | 5/13/2005 | 7716 | Fairway Media | -SPLIT- | | 2,040.00 | -973,811.93 |
| Check | 5/13/2005 | 7717 | WSMH | -SPLIT- | | 1,530.00 | -975,341.93 |
| Check | 5/13/2005 | 7718 | Fairway Media | -SPLIT- | | 1,615.00 | -976,956.93 |
| Check | 5/13/2005 | 7719 | Fairway Media | -SPLIT- | | 3,570.00 | -980,526.93 |
| Check | 5/13/2005 | 7720 | WTGS | -SPLIT- | | 552.50 | -981,079.43 |
| Check | 5/13/2005 | 7721 | WTHI | -SPLIT- | | 127.50 | -981,206.93 |
| Check | 5/13/2005 | 7722 | Fairway Media | -SPLIT- | | 446.25 | -981,653.18 |
| Check | 5/13/2005 | 7723 | WTTA | -SPLIT- | | 255.00 | -981,908.18 |
| Check | 5/13/2005 | 7724 | WTTG | -SPLIT- | | 1,317.50 | -983,225.68 |
| Check | 5/13/2005 | 7725 | WTVK | -SPLIT- | | 1,402.50 | -984,628.18 |
| Check | 5/13/2005 | 7726 | WUHF | -SPLIT- | | 1,487.50 | -986,115.68 |
| Check | 5/13/2005 | 7727 | Fairway Media | -SPLIT- | | 352.75 | -986,468.43 |
| Check | 5/13/2005 | 7728 | WUTV | -SPLIT- | | 1,530.00 | -987,998.43 |
| Check | 5/20/2005 | 7729 | WVNY | -SPLIT- | | 1,020.00 | -989,018.43 |
| Check | 5/20/2005 | | WWOR | -SPLIT- | 0.00 | | -989,018.43 |
| Check | 5/19/2005 | 7730 | XUPN | -SPLIT- | | 17,935.00 | -1,006,953.43 |
| Check | 5/19/2005 | 7731 | Response TV Network Inc. | -SPLIT- | | 2,273.75 | -1,009,227.18 |
| Check | 5/18/2005 | 7732 | PAX | -SPLIT- | | 150.00 | -1,009,377.18 |
| Check | 5/18/2005 | 7733 | KGMB | -SPLIT- | | 101,753.50 | -1,111,130.68 |
| Check | 5/17/2005 | 7734 | Direct Marketing Concepts, ... | -SPLIT- | | 733.52 | -1,111,864.20 |
| Deposit | 5/16/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concepts, ... | 175,000.00 | | -936,864.20 |
| Deposit | 5/13/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concepts, ... | 75,000.00 | | -861,864.20 |
| Deposit | 5/13/2005 | | | Due to Direct Marketing Concept | 150,000.00 | | -711,864.20 |
| Check | 5/13/2005 | 7886 | WIZE | -SPLIT- | | 10,599.84 | -722,464.04 |
| Check | 5/13/2005 | 7868 | WTEN-TV | -SPLIT- | | 1,615.00 | -724,079.04 |
| Deposit | 5/13/2005 | | | Due to Direct Marketing Concept | 160,000.00 | | -564,079.04 |
| Check | 5/20/2005 | 7735 | AUCT | -SPLIT- | | 8,287.50 | -572,365.54 |
| Check | 5/20/2005 | 7736 | ACTN | -SPLIT- | | 1,190.00 | -573,556.54 |
| Check | 5/20/2005 | 7737 | BFAS | -SPLIT- | | 531.25 | -574,087.79 |
| Check | 5/20/2005 | 7738 | COMA | -SPLIT- | | 6,250.00 | -580,337.79 |
| Check | 5/20/2005 | 7739 | BRAV-Zephyr | -SPLIT- | | 2,465.00 | -582,802.79 |
| Check | 5/20/2005 | 7740 | CONE | -SPLIT- | | 2,125.00 | -584,927.79 |
| Check | 5/20/2005 | 7741 | CORT | -SPLIT- | | 12,580.00 | -597,507.79 |
| Check | 5/20/2005 | 7742 | CTLG | -SPLIT- | | 1,190.00 | -598,697.79 |
| Check | 5/20/2005 | 7743 | DISC | -SPLIT- | | 46,325.00 | -645,022.79 |
| Check | 5/20/2005 | 7744 | FITV | -SPLIT- | | 212.50 | -645,235.29 |
| Check | 5/20/2005 | 7745 | FSAZ | -SPLIT- | | 4,866.25 | -650,101.54 |

ITV00333

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|------|------|-----|------|-------|-------|--------|---------|
| Check | 5/20/2005 | 7746 | FSCO | -SPLIT- | | 5,533.50 | -655,635.04 |
| Check | 5/20/2005 | 7747 | FSDT | -SPLIT- | | 3,952.50 | -659,587.54 |
| Check | 5/20/2005 | 7748 | FSRL | -SPLIT- | | 9,350.00 | -668,937.54 |
| Check | 5/20/2005 | 7749 | FSRM | -SPLIT- | | 1,211.25 | -670,148.79 |
| Check | 5/20/2005 | 7750 | FSSW | -SPLIT- | | 12,367.50 | -682,516.29 |
| Check | 5/20/2005 | 7751 | FSW2 | -SPLIT- | | 4,717.50 | -687,233.79 |
| Check | 5/20/2005 | 7752 | FSWE | -SPLIT- | | 5,015.00 | -692,248.79 |
| Check | 5/20/2005 | 7753 | GOOD | -SPLIT- | | 1,275.00 | -693,523.79 |
| Check | 5/20/2005 | 7754 | HLCC | -SPLIT- | | 1,402.50 | -694,926.29 |
| Check | 5/20/2005 | 7755 | ISHO | -SPLIT- | | 212.50 | -695,138.79 |
| Check | 5/20/2005 | 7756 | KAQY | -SPLIT- | | 297.50 | -695,436.29 |
| Check | 5/20/2005 | 7757 | Fairway Media | -SPLIT- | | 1,020.00 | -696,456.29 |
| Check | 5/20/2005 | 7758 | KASY | -SPLIT- | | 1,020.00 | -697,476.29 |
| Check | 5/20/2005 | 7759 | Fairway Media | -SPLIT- | | 3,973.75 | -701,450.04 |
| Check | 5/20/2005 | 7760 | KBHK | -SPLIT- | | 467.50 | -701,917.54 |
| Check | 5/20/2005 | 7761 | KBTX | -SPLIT- | | 191.25 | -702,108.79 |
| Check | 5/20/2005 | 7762 | KCLO | -SPLIT- | | 127.50 | -702,236.29 |
| Check | 5/20/2005 | 7763 | KCOP | -SPLIT- | | 807.50 | -703,043.79 |
| Check | 5/20/2005 | 7765 | Fairway Media | -SPLIT- | | 1,275.00 | -704,318.79 |
| Check | 5/20/2005 | 7766 | KEVN | -SPLIT- | | 191.25 | -704,510.04 |
| Check | 5/20/2005 | 7767 | Fairway Media | -SPLIT- | | 1,423.75 | -705,933.79 |
| Check | 5/20/2005 | 7768 | KGMB | -SPLIT- | | 2,213.52 | -708,147.31 |
| Check | 5/20/2005 | 7769 | KHIZ | -SPLIT- | | 170.00 | -708,317.31 |
| Check | 5/20/2005 | 7770 | KHON | -SPLIT- | | 783.90 | -709,101.21 |
| Check | 5/20/2005 | 7771 | KLAV | -SPLIT- | | 501.50 | -709,602.71 |
| Check | 5/20/2005 | 7772 | KLFY-TV | -SPLIT- | | 595.00 | -710,197.71 |
| Check | 5/20/2005 | 7773 | Fairway Media | -SPLIT- | | 148.75 | -710,346.46 |
| Check | 5/20/2005 | 7774 | KMTV | -SPLIT- | | 3,761.25 | -714,107.71 |
| Check | 5/20/2005 | 7775 | KMVU | -SPLIT- | | 340.00 | -714,447.71 |
| Check | 5/20/2005 | 7776 | KNIN | -SPLIT- | | 743.75 | -715,191.46 |
| Check | 5/20/2005 | 7777 | KOBB | -SPLIT- | | 85.00 | -715,276.46 |
| Check | 5/20/2005 | 7778 | Fairway Media | -SPLIT- | | 616.25 | -715,892.71 |
| Check | 5/20/2005 | 7779 | KOIN | -SPLIT- | | 1,572.50 | -717,465.21 |
| Check | 5/20/2005 | 7780 | KOIN | -SPLIT- | | 255.00 | -717,720.21 |
| Check | 5/20/2005 | 7781 | KOLN | -SPLIT- | | 850.00 | -718,570.21 |
| Check | 5/20/2005 | 7782 | KOLD | -SPLIT- | | 616.25 | -719,186.46 |
| Check | 5/20/2005 | 7783 | Fairway Media | -SPLIT- | | 1,317.50 | -720,503.96 |
| Check | 5/20/2005 | 7784 | KPNZ | -SPLIT- | | 765.00 | -721,268.96 |
| Check | 5/20/2005 | 7785 | KPRC | -SPLIT- | | 144.50 | -721,413.46 |
| Check | 5/20/2005 | 7786 | KRNZ | -SPLIT- | | 212.50 | -721,625.96 |
| Check | 5/20/2005 | 7787 | KRON-TV | -SPLIT- | | 208.25 | -721,834.21 |
| Check | 5/20/2005 | 7788 | KRRT | -SPLIT- | | 4,590.00 | -726,424.21 |

0.00

ITV00334

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 5/20/2005 | 7789 | Fairway Media | -SPLIT- | | 531.25 | -726,955.46 |
| Check | 5/20/2005 | 7790 | Fairway Media | -SPLIT- | | 467.50 | -727,422.96 |
| Check | 5/20/2005 | 7791 | KSCC | -SPLIT- | | 233.75 | -727,656.71 |
| Check | 5/20/2005 | 7792 | KSHV | -SPLIT- | | 3,166.25 | -730,822.96 |
| Check | 5/20/2005 | 7793 | KTBU | -SPLIT- | | 2,210.00 | -733,032.96 |
| Check | 5/20/2005 | 7794 | Fairway Media | -SPLIT- | | 276.25 | -733,309.21 |
| Check | 5/20/2005 | 7795 | Fairway Media | -SPLIT- | | 4,080.00 | -737,389.21 |
| Check | 5/20/2005 | 7796 | KTLA (WB) | -SPLIT- | | 3,145.00 | -740,534.21 |
| Check | 5/20/2005 | 7797 | Fairway Media | -SPLIT- | | 1,190.00 | -741,724.21 |
| Check | 5/20/2005 | 7798 | KTTV | -SPLIT- | | 3,655.00 | -745,379.21 |
| Check | 5/20/2005 | 7799 | Fairway Media | -SPLIT- | | 340.00 | -745,719.21 |
| Check | 5/20/2005 | 7800 | Fairway Media | -SPLIT- | | 531.25 | -746,250.46 |
| Check | 5/20/2005 | 7801 | KTVN | -SPLIT- | 0.00 | | -746,250.46 |
| Check | 5/20/2005 | 7802 | KTVZ | -SPLIT- | | 1,062.50 | -747,312.96 |
| Check | 5/20/2005 | 7803 | KUSI | -SPLIT- | | 1,275.00 | -748,587.96 |
| Check | 5/20/2005 | 7804 | KUTP | -SPLIT- | | 1,742.50 | -750,330.46 |
| Check | 5/20/2005 | 7805 | KUWB | -SPLIT- | 0.00 | 765.00 | -751,095.46 |
| Check | 5/20/2005 | 7806 | Fairway Media | -SPLIT- | | 106.25 | -751,201.71 |
| Check | 5/20/2005 | 7807 | Fairway Media | -SPLIT- | | | -751,201.71 |
| Check | 5/20/2005 | 7808 | KXGN | -SPLIT- | 0.00 | | -751,201.71 |
| Check | 5/20/2005 | 7809 | KXLY | -SPLIT- | | 3,400.00 | -754,601.71 |
| Check | 5/20/2005 | 7810 | KZTV | -SPLIT- | | 148.75 | -754,750.46 |
| Check | 5/20/2005 | 7811 | KZTV | -SPLIT- | | 1,062.50 | -755,812.96 |
| Check | 5/20/2005 | 7812 | MALL | -SPLIT- | | 255.00 | -756,067.96 |
| Check | 5/20/2005 | 7813 | NECN | -SPLIT- | 0.00 | 2,953.75 | -759,021.71 |
| Check | 5/20/2005 | 7814 | OVTN | -SPLIT- | | 306.00 | -759,327.71 |
| Check | 5/20/2005 | 7815 | PCNC | -SPLIT- | | 1,572.50 | -760,900.21 |
| Check | 5/20/2005 | 7816 | PPN | -SPLIT- | | 15,632.35 | -776,532.56 |
| Check | 5/20/2005 | 7817 | STUF | -SPLIT- | | 467.50 | -777,000.06 |
| Check | 5/20/2005 | 7839 | STYL | -SPLIT- | | 616.25 | -777,616.31 |
| Check | 5/20/2005 | 7840 | SUNS | -SPLIT- | | 8,202.50 | -785,818.81 |
| Check | 5/20/2005 | 7841 | TRAV | -SPLIT- | | 4,590.00 | -790,408.81 |
| Check | 5/20/2005 | 7842 | TTLC | -SPLIT- | | 10,200.00 | -800,608.81 |
| Check | 5/20/2005 | 7843 | TTMC | -SPLIT- | | 403.75 | -801,012.56 |
| Check | 5/20/2005 | 7844 | TVSS | -SPLIT- | | 8,500.00 | -809,512.56 |
| Check | 5/20/2005 | 7845 | W100 | -SPLIT- | | 2,550.00 | -812,062.56 |
| Check | 5/20/2005 | 7846 | WACH | -SPLIT- | | 361.25 | -812,423.81 |
| Check | 5/20/2005 | 7847 | WACY | -SPLIT- | | 297.50 | -812,721.31 |
| Check | 5/20/2005 | 7848 | WBAY | -SPLIT- | | 114.75 | -812,836.06 |
| Check | 5/20/2005 | 7849 | Fairway Media | -SPLIT- | | 807.50 | -813,643.56 |
| Check | 5/20/2005 | 7850 | WBDT | -SPLIT- | | 722.50 | -814,366.06 |
| Check | 5/20/2005 | 7851 | WBFF | -SPLIT- | | 722.50 | -815,088.56 |
| Check | 5/20/2005 | 7852 | WBFS-Miami | -SPLIT- | | 510.00 | -815,598.56 |

ITV00335

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 5/20/2005 | 7853 | Fairway Media | -SPLIT- | | 340.00 | -815,938.56 |
| Check | 5/20/2005 | 7854 | WBUI | -SPLIT- | | 2,800.00 | -818,738.56 |
| Check | 5/20/2005 | 7855 | WBLW | -SPLIT- | | 340.00 | -819,078.56 |
| Check | 5/20/2005 | 7856 | WCOV | -SPLIT- | | 276.25 | -819,354.81 |
| Check | 5/20/2005 | 7857 | WDIV | -SPLIT- | | 11,645.00 | -830,999.81 |
| Check | 5/20/2005 | 7858 | Fairway Media | -SPLIT- | | 714.00 | -831,713.81 |
| Check | 5/20/2005 | 7859 | WEAL | -SPLIT- | | 340.00 | -832,053.81 |
| Check | 5/20/2005 | 7860 | Fairway Media | -SPLIT- | | 892.50 | -832,946.31 |
| Check | 5/20/2005 | 7861 | WEMT | -SPLIT- | 0.00 | | -832,946.31 |
| Check | 5/20/2005 | 7862 | WENT | -SPLIT- | | 13,515.00 | -846,461.31 |
| Check | 5/20/2005 | 7863 | WFOX | -SPLIT- | | 403.75 | -846,865.06 |
| Check | 5/20/2005 | 7864 | WFTX | -SPLIT- | | 2,847.50 | -849,712.56 |
| Check | 5/20/2005 | 7865 | Tower Media | -SPLIT- | | 3,300.00 | -853,012.56 |
| Check | 5/20/2005 | 7866 | WINK | -SPLIT- | | 318.75 | -853,331.31 |
| Check | 5/20/2005 | 7867 | Fairway Media | -SPLIT- | | 595.00 | -853,926.31 |
| Check | 5/20/2005 | 7869 | WKBT | -SPLIT- | | 531.25 | -854,457.56 |
| Check | 5/20/2005 | 7870 | Fairway Media | -SPLIT- | | 722.50 | -855,180.06 |
| Check | 5/20/2005 | 7871 | WKEF | -SPLIT- | | 191.25 | -855,371.31 |
| Check | 5/20/2005 | 7872 | WKMG | -SPLIT- | | 6,587.50 | -861,958.81 |
| Check | 5/20/2005 | 7873 | WLNS | -SPLIT- | | 1,593.75 | -863,552.56 |
| Check | 5/20/2005 | 7874 | WLNY-TV | -SPLIT- | | 4,420.00 | -867,972.56 |
| Check | 5/20/2005 | 7875 | Fairway Media | -SPLIT- | | 701.25 | -868,673.81 |
| Check | 5/20/2005 | 7876 | WNFM | -SPLIT- | | 382.50 | -869,056.31 |
| Check | 5/20/2005 | 7877 | WNYO | -SPLIT- | 0.00 | | -869,056.31 |
| Check | 5/20/2005 | 7878 | WNYW | -SPLIT- | | 3,867.50 | -872,923.81 |
| Check | 5/20/2005 | 7879 | WOFL | -SPLIT- | | 2,167.50 | -875,091.31 |
| Check | 5/20/2005 | 7880 | WPLG | -SPLIT- | | 1,955.00 | -877,046.31 |
| Check | 5/20/2005 | 7881 | WRBW | -SPLIT- | | 2,635.00 | -879,681.31 |
| Check | 5/20/2005 | 7882 | WSDM | -SPLIT- | | 255.00 | -879,936.31 |
| Check | 5/20/2005 | 7883 | WSMH | -SPLIT- | 0.00 | | -879,936.31 |
| Check | 5/20/2005 | 7884 | Fairway Media | -SPLIT- | | 1,615.00 | -881,551.31 |
| Check | 5/20/2005 | 7885 | WSBK | -SPLIT- | 0.00 | | -881,551.31 |
| Check | 5/20/2005 | 7886 | WTGS | -SPLIT- | | 467.50 | -882,018.81 |
| Check | 5/20/2005 | 7887 | WTHI | -SPLIT- | | 1,062.50 | -883,081.31 |
| Check | 5/20/2005 | 7888 | Fairway Media | -SPLIT- | | 722.50 | -883,803.81 |
| Check | 5/20/2005 | 7889 | Fairway Media | -SPLIT- | | 892.50 | -884,696.31 |
| Check | 5/20/2005 | 7890 | WTOL | -SPLIT- | | 2,210.00 | -886,906.31 |
| Check | 5/20/2005 | 7891 | WTTA | -SPLIT- | | 255.00 | -887,161.31 |
| Check | 5/20/2005 | 7892 | WTTG | -SPLIT- | | 680.00 | -887,841.31 |
| Check | 5/20/2005 | 7893 | WTVK | -SPLIT- | | 765.00 | -888,606.31 |
| Check | 5/20/2005 | 7894 | WTVC | -SPLIT- | | 318.75 | -888,925.06 |
| Check | 5/20/2005 | 7896 | WTXF | -SPLIT- | | 212.50 | -889,137.56 |
| Check | 5/20/2005 | 7897 | WUHF | -SPLIT- | | 2,592.50 | -891,730.06 |

ITV00336

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 5/20/2005 | 7898 | Fairway Media | -SPLIT- | | 255.00 | -891,985.06 |
| Check | 5/20/2005 | 7899 | Fairway Media | -SPLIT- | | 352.75 | -892,337.81 |
| Check | 5/20/2005 | 7900 | WUTV | -SPLIT- | | 1,105.00 | -893,442.81 |
| Check | 5/20/2005 | 7901 | WNNY | -SPLIT- | | 680.00 | -894,122.81 |
| Check | 5/20/2005 | 7902 | WWOR | -SPLIT- | | 13,430.00 | -907,552.81 |
| Check | 5/20/2005 | 7903 | XUPN | -SPLIT- | | 1,423.75 | -908,976.56 |
| Check | 5/20/2005 | 7904 | Response TV Network Inc. | -SPLIT- | | 48.00 | -909,024.56 |
| Check | 5/20/2005 | 7905 | PAX | -SPLIT- | | 51,838.75 | -960,863.31 |
| Deposit | 5/24/2005 | | | Media Purchases | 7,757.62 | | -953,105.69 |
| Deposit | 5/25/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 180,000.00 | | -773,105.69 |
| Deposit | 5/25/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 200,000.00 | | -573,105.69 |
| Deposit | 5/27/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 75,000.00 | | -498,105.69 |
| Check | 5/27/2005 | 7908 | WDCA | -SPLIT- | | 680.00 | -498,785.69 |
| Check | 5/27/2005 | 7909 | ACTN | -SPLIT- | | 8,287.52 | -507,073.21 |
| Check | 5/27/2005 | 7910 | AUCT | -SPLIT- | | 1,402.50 | -508,475.71 |
| Check | 5/27/2005 | 7911 | BFAS | -SPLIT- | | 531.25 | -509,006.96 |
| Check | 5/27/2005 | 7912 | CCMA | -SPLIT- | | 2,465.00 | -511,471.96 |
| Check | 5/27/2005 | 7913 | CCNE | -SPLIT- | | 3,825.00 | -515,296.96 |
| Check | 5/27/2005 | 7914 | CORT | -SPLIT- | | 14,705.00 | -530,001.96 |
| Check | 5/27/2005 | 7915 | CTLG | -SPLIT- | | 1,190.00 | -531,191.96 |
| Check | 5/27/2005 | 7916 | DISC | -SPLIT- | | 48,875.00 | -580,066.96 |
| Check | 5/27/2005 | 7917 | FITV | -SPLIT- | | 2,082.50 | -582,149.46 |
| Check | 5/27/2005 | 7918 | FOXN | -SPLIT- | | 3,060.00 | -585,209.46 |
| Check | 5/27/2005 | 7919 | FSAZ | -SPLIT- | | 2,847.50 | -588,056.96 |
| Check | 5/27/2005 | 7920 | FSCO | -SPLIT- | | 2,868.75 | -590,925.71 |
| Check | 5/27/2005 | 7921 | FSDT | -SPLIT- | | 1,976.25 | -592,901.96 |
| Check | 5/27/2005 | 7922 | FSFL | -SPLIT- | | 4,675.00 | -597,576.96 |
| Check | 5/27/2005 | 7923 | FSNE | -SPLIT- | | 5,865.00 | -603,441.96 |
| Check | 5/27/2005 | 7924 | FSNM | -SPLIT- | | 7,395.00 | -610,836.96 |
| Check | 5/27/2005 | 7925 | FSSO | -SPLIT- | | 3,060.00 | -613,896.96 |
| Check | 5/27/2005 | 7926 | FSSW | -SPLIT- | | 7,055.00 | -620,951.96 |
| Check | 5/27/2005 | 7927 | FSW2 | -SPLIT- | | 2,465.00 | -623,416.96 |
| Check | 5/27/2005 | 7928 | FSWE | -SPLIT- | | 3,145.00 | -626,561.96 |
| Check | 5/27/2005 | 7929 | GOOD | -SPLIT- | | 212.50 | -626,774.46 |
| Check | 5/27/2005 | 7930 | HLCC | -SPLIT- | | 1,402.50 | -628,176.96 |
| Check | 5/27/2005 | 7931 | ISHO | -SPLIT- | | 212.50 | -628,389.46 |
| Check | 5/27/2005 | 7932 | KACY | -SPLIT- | | 595.00 | -628,984.46 |
| Check | 5/27/2005 | 7933 | KASY | -SPLIT- | | 595.00 | -629,579.46 |
| Check | 5/27/2005 | 7934 | Fairway Media | -SPLIT- | | 4,483.75 | -634,063.21 |
| Check | 5/27/2005 | 7935 | KBHK | -SPLIT- | | 467.50 | -634,530.71 |
| Check | 5/27/2005 | 7936 | KBTX | -SPLIT- | | 191.25 | -634,721.96 |
| Check | 5/27/2005 | 7937 | KBWB | -SPLIT- | | 255.00 | -634,976.86 |
| Check | 5/27/2005 | 7938 | KCLO | -SPLIT- | | 63.75 | -635,040.71 |

ITV00337

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|------|------|-----|------|-------|-------|--------|---------|
| Check | 5/27/2005 | 7939 | KDFI | -SPLIT- | | 1,678.75 | -636,719.46 |
| Check | 5/27/2005 | 7940 | KDFX | -SPLIT- | | 191.25 | -636,910.71 |
| Check | 5/27/2005 | 7941 | KDSM | -SPLIT- | | 743.75 | -637,654.46 |
| Check | 5/27/2005 | 7942 | KDVR | -SPLIT- | | 170.00 | -637,824.46 |
| Check | 5/27/2005 | 7943 | Fairway Media | -SPLIT- | | 1,275.00 | -639,099.46 |
| Check | 5/27/2005 | 7944 | KEVN | -SPLIT- | | 191.25 | -639,290.71 |
| Check | 5/27/2005 | 7945 | Fairway Media | -SPLIT- | | 1,423.75 | -640,714.46 |
| Check | 5/27/2005 | 7946 | KGMB | -SPLIT- | | 2,213.52 | -642,927.98 |
| Check | 5/27/2005 | 7947 | Fairway Media | -SPLIT- | | 4,590.00 | -647,517.98 |
| Check | 5/27/2005 | 7948 | KHIZ | -SPLIT- | | 170.00 | -647,687.98 |
| Check | 5/27/2005 | 7949 | KHON | -SPLIT- | | 599.45 | -648,287.43 |
| Check | 5/27/2005 | 7950 | KITV | -SPLIT- | | 929.67 | -649,217.10 |
| Check | 5/27/2005 | 7951 | KJRH | -SPLIT- | | 1,317.50 | -650,534.60 |
| Check | 5/27/2005 | 7952 | KJTV | -SPLIT- | | 212.50 | -650,747.10 |
| Check | 5/27/2005 | 7953 | KLFY-TV | -SPLIT- | | 1,190.00 | -651,937.10 |
| Check | 5/27/2005 | 7954 | Fairway Media | -SPLIT- | | 148.75 | -652,085.85 |
| Check | 5/27/2005 | 7955 | KLTV | -SPLIT- | | 1,360.00 | -653,445.85 |
| Check | 5/27/2005 | 7956 | KMTV | -SPLIT- | | 2,061.25 | -655,507.10 |
| Check | 5/27/2005 | 7957 | KMVU | -SPLIT- | | 743.75 | -656,250.85 |
| Check | 5/27/2005 | 7958 | KNIN | -SPLIT- | | 233.75 | -656,484.60 |
| Check | 5/27/2005 | 7959 | Fairway Media | -SPLIT- | | 2,805.00 | -659,289.60 |
| Check | 5/27/2005 | 7960 | Fairway Media | -SPLIT- | | 233.75 | -659,523.35 |
| Check | 5/27/2005 | 7961 | KOIN | -SPLIT- | | 637.50 | -660,160.85 |
| Check | 5/27/2005 | 7962 | KOLN | -SPLIT- | | 913.75 | -661,074.60 |
| Check | 5/27/2005 | 7963 | Fairway Media | -SPLIT- | | 616.25 | -661,690.85 |
| Check | 5/27/2005 | 7964 | KPNZ | -SPLIT- | | 170.00 | -661,860.85 |
| Check | 5/27/2005 | 7965 | KPRC | -SPLIT- | | 765.00 | -662,625.85 |
| Check | 5/27/2005 | 7966 | Fairway Media | -SPLIT- | | 212.50 | -662,838.35 |
| Check | 5/27/2005 | 7967 | Fairway Media | -SPLIT- | | 208.25 | -663,046.60 |
| Check | 5/27/2005 | 7968 | KRON-TV | -SPLIT- | | 4,590.00 | -667,636.60 |
| Check | 5/27/2005 | 7969 | Fairway Media | -SPLIT- | | 106.25 | -667,742.85 |
| Check | 5/27/2005 | 7970 | KSAS | -SPLIT- | | 127.50 | -667,870.35 |
| Check | 5/27/2005 | 7971 | Fairway Media | -SPLIT- | | 467.50 | -668,337.85 |
| Check | 5/27/2005 | 7972 | KSCC | -SPLIT- | | 233.75 | -668,571.60 |
| Check | 5/27/2005 | 7973 | KTBU | -SPLIT- | | 3,463.75 | -672,035.35 |
| Check | 5/27/2005 | 7974 | Fairway Media | -SPLIT- | | 276.25 | -672,311.60 |
| Check | 5/27/2005 | 7975 | KTLA (WB) | -SPLIT- | | 4,760.00 | -677,071.60 |
| Check | 5/27/2005 | 7976 | Fairway Media | -SPLIT- | | 2,805.00 | -679,876.60 |
| Check | 5/27/2005 | 7977 | Fairway Media | -SPLIT- | | 340.00 | -680,216.60 |
| Check | 5/27/2005 | 7978 | KTVN | -SPLIT- | | 106.25 | -680,322.85 |
| Check | 5/27/2005 | 7979 | KUWB | -SPLIT- | | 446.25 | -680,769.10 |
| Check | 5/27/2005 | 7980 | Fairway Media | -SPLIT- | | 765.00 | -681,534.10 |
| Check | 5/27/2005 | 7981 | Fairway Media | -SPLIT- | | 106.25 | -681,640.35 |

Page 151

ITV00338

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 5/27/2005 | 7982 | KXLY | -SPLIT- | | 3,400.00 | -685,040.35 |
| Check | 5/27/2005 | 7983 | Fairway Media | -SPLIT- | | 148.75 | -685,189.10 |
| Check | 5/27/2005 | 7984 | KZTV | -SPLIT- | | 1,317.50 | -686,506.60 |
| Check | 5/27/2005 | 7985 | NESN | -SPLIT- | | 3,145.00 | -689,651.60 |
| Check | 5/27/2005 | 7986 | OVTN | -SPLIT- | | 174.25 | -689,825.85 |
| Check | 5/27/2005 | 7987 | OXYG | -SPLIT- | | 20,315.00 | -710,140.85 |
| Check | 5/27/2005 | 7988 | PQNC | -SPLIT- | | 1,338.75 | -711,479.60 |
| Check | 5/27/2005 | 7989 | PPN | -SPLIT- | | 26,963.70 | -738,443.30 |
| Check | 5/27/2005 | 7990 | STUF | -SPLIT- | | 467.50 | -738,910.80 |
| Check | 5/27/2005 | 7991 | STYL | -SPLIT- | | 1,296.25 | -740,207.05 |
| Check | 5/27/2005 | 7992 | SLNS | -SPLIT- | | 4,101.25 | -744,308.30 |
| Check | 5/27/2005 | 7993 | TRAV | -SPLIT- | | 23,800.00 | -768,108.30 |
| Check | 5/27/2005 | 7994 | TTLC | -SPLIT- | | 5,100.00 | -773,208.30 |
| Check | 5/27/2005 | 7995 | TTMC | -SPLIT- | | 403.75 | -773,612.05 |
| Check | 5/27/2005 | 7996 | TVSS | -SPLIT- | | 8,500.00 | -782,112.05 |
| Check | 5/27/2005 | 7997 | UP14 | -SPLIT- | | 127.50 | -782,239.55 |
| Check | 5/27/2005 | 7998 | W100 | -SPLIT- | | 2,550.00 | -784,789.55 |
| Check | 5/27/2005 | 7999 | WACH | -SPLIT- | | 361.25 | -785,150.80 |
| Check | 5/27/2005 | 8000 | WACY | -SPLIT- | | 297.50 | -785,448.30 |
| Check | 5/27/2005 | 8001 | Fairway Media | -SPLIT- | | 114.75 | -785,563.05 |
| Check | 5/27/2005 | 8002 | WBAY | -SPLIT- | | 255.00 | -785,818.05 |
| Check | 5/27/2005 | 8003 | WBDT | -SPLIT- | | 722.50 | -786,540.55 |
| Check | 5/27/2005 | 8004 | WBFF | -SPLIT- | | 1,275.00 | -787,815.55 |
| Check | 5/27/2005 | 8005 | WBFS-Miami | -SPLIT- | | 510.00 | -788,325.55 |
| Check | 5/27/2005 | 8006 | Fairway Media | -SPLIT- | | 1,020.00 | -789,345.55 |
| Check | 5/27/2005 | 8007 | WBUW | -SPLIT- | | 340.00 | -789,685.55 |
| Check | 5/27/2005 | 8008 | WCOV | -SPLIT- | | 276.25 | -789,961.80 |
| Check | 5/27/2005 | 8009 | WDCA | -SPLIT- | | 977.50 | -790,939.30 |
| Check | 5/27/2005 | 8010 | Fairway Media | -SPLIT- | | 595.00 | -791,534.30 |
| Check | 5/27/2005 | 8011 | WENT | -SPLIT- | | 11,538.75 | -803,073.05 |
| Check | 5/27/2005 | 8012 | WFLX | -SPLIT- | 0.00 | | -803,073.05 |
| Check | 5/27/2005 | 8013 | WFOX | -SPLIT- | | 722.50 | -803,795.55 |
| Check | 5/27/2005 | 8014 | WFTX | -SPLIT- | | 3,272.50 | -807,068.05 |
| Check | 5/27/2005 | 8015 | WINK | -SPLIT- | | 595.00 | -807,663.05 |
| Check | 5/27/2005 | 8016 | WMB | -SPLIT- | 0.00 | | -807,663.05 |
| Check | 5/27/2005 | 8017 | WIZE | -SPLIT- | | 18,600.00 | -826,263.05 |
| Check | 5/27/2005 | 8018 | Fairway Media | -SPLIT- | | 531.25 | -826,794.30 |
| Check | 5/27/2005 | 8019 | WKBT | -SPLIT- | | 446.25 | -827,240.55 |
| Check | 5/27/2005 | 8020 | WKMG | -SPLIT- | | 2,975.00 | -830,215.55 |
| Check | 5/27/2005 | 8021 | WLNS | -SPLIT- | | 956.25 | -831,171.80 |
| Check | 5/27/2005 | 8022 | WLNY-TV | -SPLIT- | | 2,890.00 | -834,061.80 |
| Check | 5/27/2005 | 8023 | Fairway Media | -SPLIT- | | 786.25 | -834,848.05 |
| Check | 5/27/2005 | 8024 | WNFM | -SPLIT- | | 382.50 | -835,230.55 |

ITV00339

**ITV Direct**

**General Ledger**

As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 5/27/2005 | 8025 | WNYW | -SPLIT- | | 5,695.00 | -840,925.55 |
| Check | 5/27/2005 | 8026 | WPLG | -SPLIT- | | 1,615.00 | -842,540.55 |
| Check | 5/27/2005 | 8027 | WPWR | -SPLIT- | | 1,296.25 | -843,836.80 |
| Check | 5/27/2005 | 8028 | WRBW | -SPLIT- | | 1,742.50 | -845,579.30 |
| Check | 5/27/2005 | 8029 | WSDM | -SPLIT- | | 170.00 | -845,749.30 |
| Check | 5/27/2005 | 8030 | Fairway Media | -SPLIT- | | 1,615.00 | -847,364.30 |
| Check | 5/27/2005 | 8031 | Fairway Media | -SPLIT- | | 1,785.00 | -849,149.30 |
| Check | 5/27/2005 | 8032 | WTGS | -SPLIT- | | 552.50 | -849,701.80 |
| Check | 5/27/2005 | 8033 | WTHI | -SPLIT- | | 766.00 | -850,466.80 |
| Check | 5/27/2005 | 8034 | Fairway Media | -SPLIT- | | 595.00 | -851,061.80 |
| Check | 5/27/2005 | 8035 | WTOL | -SPLIT- | | 2,635.00 | -853,696.80 |
| Check | 5/27/2005 | 8036 | WTTA | -SPLIT- | | 255.00 | -853,951.80 |
| Check | 5/27/2005 | 8037 | Fairway Media | -SPLIT- | | 1,020.00 | -854,971.80 |
| Check | 5/27/2005 | 8038 | Fairway Media | -SPLIT- | | 552.50 | -855,524.30 |
| Check | 5/27/2005 | 8039 | WTVK | -SPLIT- | | 1,466.25 | -856,990.55 |
| Check | 5/27/2005 | 8040 | WTWC | -SPLIT- | | 85.00 | -857,075.55 |
| Check | 5/27/2005 | 8041 | WUHF | -SPLIT- | | 1,487.50 | -858,563.05 |
| Check | 5/27/2005 | 8042 | Fairway Media | -SPLIT- | | 255.00 | -858,818.05 |
| Check | 5/27/2005 | 8043 | Fairway Media | -SPLIT- | | 352.75 | -859,170.80 |
| Check | 5/27/2005 | 8044 | WUTV | -SPLIT- | | 1,105.00 | -860,275.80 |
| Check | 5/27/2005 | 8045 | WNY | -SPLIT- | | 1,020.00 | -861,295.80 |
| Check | 5/27/2005 | 8046 | WWOR | -SPLIT- | | 8,670.00 | -869,965.80 |
| Check | 5/27/2005 | 8047 | XUPN | -SPLIT- | | 2,273.75 | -872,239.55 |
| Check | 5/27/2005 | 8048 | PAX | -SPLIT- | | 59,402.25 | -931,641.80 |
| Check | 5/27/2005 | 8049 | PAX | -SPLIT- | | 44,285.00 | -975,926.80 |
| Deposit | 6/1/2005 | | Due to Direct Marketing Concept | 100,000.00 | | -875,926.80 |
| Check | 6/2/2005 | 8050 | Direct Marketing Concepts, ... | -SPLIT- | | 21,590.00 | -897,516.80 |
| Check | 6/2/2005 | 8051 | CORT | -SPLIT- | | 4,500.00 | -902,016.80 |
| Check | 6/2/2005 | 8052 | Zephyr Media | -SPLIT- | | 3,400.00 | -905,416.80 |
| Check | 6/2/2005 | 8053 | FSRM | -SPLIT- | | 425.00 | -905,841.80 |
| Check | 6/2/2005 | | KQFI | -SPLIT- | | | -845,841.80 |
| Deposit | 6/3/2005 | | Direct Marketing Concepts, ... | 60,000.00 | | -845,841.80 |
| Deposit | 6/3/2005 | | Due to Direct Marketing Concept | 20,400.00 | | -825,441.80 |
| Deposit | 6/3/2005 | | Lifetime | Media Purchases | | 20.00 | -825,461.80 |
| Check | 6/3/2005 | 8054 | ACTN | Bank Service Charges | | 16,575.04 | -842,036.84 |
| Check | 6/3/2005 | 8055 | AUCT | -SPLIT- | | 1,402.50 | -843,439.34 |
| Check | 6/3/2005 | 8056 | BFAS | -SPLIT- | | 531.25 | -843,970.59 |
| Check | 6/3/2005 | 8057 | COMA | -SPLIT- | | 2,465.00 | -846,435.59 |
| Check | 6/3/2005 | 8058 | CONE | -SPLIT- | | 2,125.00 | -848,560.59 |
| Check | 6/3/2005 | 8060 | CTLG | -SPLIT- | | 1,190.00 | -849,750.59 |
| Check | 6/3/2005 | 8061 | DISC | -SPLIT- | | 25,925.00 | -875,675.59 |
| Check | 6/3/2005 | 8062 | FITV | -SPLIT- | | 382.50 | -876,058.09 |
| Check | 6/3/2005 | 8063 | FOXN | -SPLIT- | | 1,530.00 | -877,588.09 |
| Check | 6/3/2005 | 8064 | FSAZ | -SPLIT- | | 2,698.75 | -880,286.84 |

ITV00340

**Accrual Basis**

# ITV Direct
## General Ledger
### As of September 30, 2005

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 6/3/2005 | 8065 | FSCO | -SPLIT- | | 2,868.75 | -883,155.59 |
| Check | 6/3/2005 | 8066 | FSDT | -SPLIT- | | 1,976.25 | -885,131.84 |
| Check | 6/3/2005 | 8067 | FSFL | -SPLIT- | | 4,845.00 | -889,976.84 |
| Check | 6/3/2005 | 8068 | FSNE | -SPLIT- | | 3,400.00 | -893,376.84 |
| Check | 6/3/2005 | 8069 | FSNM | -SPLIT- | | 2,465.00 | -895,841.84 |
| Check | 6/3/2005 | 8070 | FSSO | -SPLIT- | | 1,020.00 | -896,861.84 |
| Check | 6/3/2005 | 8071 | FSSW | -SPLIT- | | 5,673.75 | -902,535.59 |
| Check | 6/3/2005 | 8072 | FSW2 | -SPLIT- | | 2,252.50 | -904,788.09 |
| Check | 6/3/2005 | 8073 | FSWE | -SPLIT- | | 1,870.00 | -906,658.09 |
| Check | 6/3/2005 | 8074 | GOOD | -SPLIT- | | 1,147.50 | -907,805.59 |
| Check | 6/3/2005 | 8075 | HLCC | -SPLIT- | | 1,402.50 | -909,208.09 |
| Check | 6/3/2005 | 8076 | ISHO | -SPLIT- | | 212.50 | -909,420.59 |
| Check | 6/3/2005 | 8077 | KAAY | -SPLIT- | | 595.00 | -910,015.59 |
| Check | 6/3/2005 | 8078 | KASY | -SPLIT- | | 1,020.00 | -911,035.59 |
| Check | 6/3/2005 | 8079 | KBHK | -SPLIT- | | 467.50 | -911,503.09 |
| Check | 6/3/2005 | 8080 | KCOP | -SPLIT- | | 807.50 | -912,310.59 |
| Check | 6/3/2005 | 8081 | KDFI | -SPLIT- | | 340.00 | -912,650.59 |
| Check | 6/3/2005 | 8082 | KDFX | -SPLIT- | | 616.25 | -913,266.84 |
| Check | 6/3/2005 | 8083 | KDSM | -SPLIT- | | 297.50 | -913,564.34 |
| Check | 6/3/2005 | 8084 | KDVR | -SPLIT- | | 340.00 | -913,904.34 |
| Check | 6/3/2005 | 8085 | KEVN | -SPLIT- | | 191.25 | -914,095.59 |
| Check | 6/3/2005 | 8086 | KGMB | -SPLIT- | | 2,213.52 | -916,309.11 |
| Check | 6/3/2005 | 8087 | KHIZ | -SPLIT- | | 170.00 | -916,479.11 |
| Check | 6/3/2005 | 8088 | KHON | -SPLIT- | | 599.45 | -917,078.56 |
| Check | 6/3/2005 | 8089 | KITV | -SPLIT- | | 619.78 | -917,698.34 |
| Check | 6/3/2005 | 8090 | KJRH | -SPLIT- | | 807.50 | -918,505.84 |
| Check | 6/3/2005 | 8091 | KJTV | -SPLIT- | | 1,062.50 | -919,568.34 |
| Check | 6/3/2005 | 8092 | KLFY-TV | -SPLIT- | | 595.00 | -920,163.34 |
| Check | 6/3/2005 | 8093 | KMTV | -SPLIT- | | 2,061.25 | -922,224.59 |
| Check | 6/3/2005 | 8094 | KMVU | -SPLIT- | | 212.50 | -922,437.09 |
| Check | 6/3/2005 | 8095 | KNIN | -SPLIT- | | 1,615.00 | -924,052.09 |
| Check | 6/3/2005 | 8096 | KOBB | -SPLIT- | | 255.00 | -924,307.09 |
| Check | 6/3/2005 | 8097 | KOIN | -SPLIT- | | 892.50 | -925,199.59 |
| Check | 6/3/2005 | 8098 | KOLN | -SPLIT- | | 850.00 | -926,049.59 |
| Check | 6/3/2005 | 8099 | KPNZ | -SPLIT- | | 595.00 | -926,644.59 |
| Check | 6/3/2005 | 8100 | KPRC | -SPLIT- | | 765.00 | -927,409.59 |
| Check | 6/3/2005 | 8101 | KRIV | -SPLIT- | | 212.50 | -927,622.09 |
| Check | 6/3/2005 | 8102 | KRON-TV | -SPLIT- | | 4,590.00 | -932,212.09 |
| Check | 6/3/2005 | 8103 | KSAS | -SPLIT- | | 63.75 | -932,275.84 |
| Check | 6/3/2005 | 8104 | KSCC | -SPLIT- | | 233.75 | -932,509.59 |
| Check | 6/3/2005 | 8105 | KTBU | -SPLIT- | | 3,591.25 | -936,100.84 |
| Check | 6/3/2005 | 8106 | KTLA (WB) | -SPLIT- | | 5,440.00 | -941,540.84 |
| Check | 6/3/2005 | 8107 | KTTV | -SPLIT- | | 1,912.50 | -943,453.34 |

ITV00341

**ITV Direct**
**General Ledger**
As of September 30, 2005

| Accrual Basis | Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|
| | Check | 6/3/2005 | 8108 | KTVN | -SPLIT- | | 1,126.25 | -944,579.59 |
| | Check | 6/3/2005 | 8109 | KUSI | -SPLIT- | | 765.00 | -945,344.59 |
| | Check | 6/3/2005 | 8110 | KUTP | -SPLIT- | | 1,466.25 | -946,810.84 |
| | Check | 6/3/2005 | 8111 | KUWB | -SPLIT- | | 573.75 | -947,384.59 |
| | Check | 6/3/2005 | 8112 | KXLY | -SPLIT- | | 2,210.00 | -949,594.59 |
| | Check | 6/3/2005 | 8113 | KZTV | -SPLIT- | | 1,062.50 | -950,657.09 |
| | Check | 6/3/2005 | 8114 | NESN | -SPLIT- | | 1,445.00 | -952,102.09 |
| | Check | 6/3/2005 | 8115 | OVTN | -SPLIT- | | 216.75 | -952,318.84 |
| | Check | 6/3/2005 | 8116 | OXYG | -SPLIT- | | 8,840.00 | -961,158.84 |
| | Check | 6/3/2005 | 8117 | PCNC | -SPLIT- | | 871.25 | -962,030.09 |
| | Check | 6/3/2005 | 8118 | PPN | -SPLIT- | | 31,264.70 | -993,294.79 |
| | Check | 6/3/2005 | 8119 | STLF | -SPLIT- | | 467.50 | -993,762.29 |
| | Check | 6/3/2005 | 8120 | STYL | -SPLIT- | | 616.25 | -994,378.54 |
| | Check | 6/3/2005 | 8121 | SUNS | -SPLIT- | | 4,101.25 | -998,479.79 |
| | Check | 6/3/2005 | 8122 | TTLC | -SPLIT- | | 5,100.00 | -1,003,579.79 |
| | Check | 6/3/2005 | 8123 | TTNC | -SPLIT- | | 403.75 | -1,003,983.54 |
| | Check | 6/3/2005 | 8124 | W100 | -SPLIT- | | 2,550.00 | -1,006,533.54 |
| | Check | 6/3/2005 | 8125 | WACH | -SPLIT- | | 361.25 | -1,006,894.79 |
| | Check | 6/3/2005 | 8126 | WACY | -SPLIT- | | 297.50 | -1,007,192.29 |
| | Check | 6/3/2005 | 8127 | WBAY | -SPLIT- | | 127.50 | -1,007,319.79 |
| | Check | 6/3/2005 | 8128 | WBDT | -SPLIT- | | 3,102.50 | -1,010,422.29 |
| | Check | 6/3/2005 | 8129 | WBFF | -SPLIT- | | 1,275.00 | -1,011,697.29 |
| | Check | 6/3/2005 | 8130 | WBFS-Miami | -SPLIT- | | 510.00 | -1,012,207.29 |
| | Check | 6/3/2005 | 8131 | WBUW | -SPLIT- | | 935.00 | -1,013,142.29 |
| | Check | 6/3/2005 | 8132 | WENT | -SPLIT- | | 18,870.00 | -1,032,012.29 |
| | Check | 6/3/2005 | 8133 | WFOX | -SPLIT- | | 3,931.25 | -1,035,943.54 |
| | Check | 6/3/2005 | 8134 | WFTX | -SPLIT- | | 3,272.50 | -1,039,216.04 |
| | Check | 6/3/2005 | 8135 | Tower Media | -SPLIT- | | 3,500.00 | -1,042,716.04 |
| | Check | 6/3/2005 | 8136 | WINK | -SPLIT- | | 595.00 | -1,043,311.04 |
| | Check | 6/3/2005 | 8137 | WIZE | -SPLIT- | | 9,300.00 | -1,052,611.04 |
| | Check | 6/3/2005 | 8138 | WKBT | -SPLIT- | | 743.75 | -1,053,354.79 |
| | Check | 6/3/2005 | 8139 | WKEF | -SPLIT- | | 488.75 | -1,053,843.54 |
| | Check | 6/3/2005 | 8140 | WKMG | -SPLIT- | | 3,400.00 | -1,057,243.54 |
| | Check | 6/3/2005 | 8141 | WLNS | -SPLIT- | | 680.00 | -1,057,923.54 |
| | Check | 6/3/2005 | 8142 | WLNY-TV | -SPLIT- | | 4,420.00 | -1,062,343.54 |
| | Check | 6/3/2005 | 8143 | WNFM | -SPLIT- | | 488.75 | -1,062,832.29 |
| | Check | 6/3/2005 | 8144 | WNYW | -SPLIT- | | 8,075.00 | -1,070,907.29 |
| | Check | 6/3/2005 | 8145 | WOFL | -SPLIT- | | 106.25 | -1,071,013.54 |
| | Check | 6/3/2005 | 8146 | WPLG | -SPLIT- | | 1,317.50 | -1,072,331.04 |
| | Check | 6/3/2005 | 8147 | WPWR | -SPLIT- | | 1,275.00 | -1,073,606.04 |
| | Check | 6/3/2005 | 8148 | WRBW | -SPLIT- | | 2,040.00 | -1,075,646.04 |
| | Check | 6/3/2005 | 8149 | WSDM | -SPLIT- | | 255.00 | -1,075,901.04 |
| | Check | 6/3/2005 | 8150 | WTGS | -SPLIT- | | 552.50 | -1,076,453.54 |

ITV00342

**ITV Direct**
**General Ledger**
As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 6/3/2005 | 8152 | WTHI | -SPLIT- | | 1,062.50 | -1,077,516.04 |
| Check | 6/3/2005 | 8153 | WTOL | -SPLIT- | | 2,635.00 | -1,080,151.04 |
| Check | 6/3/2005 | 8154 | WTTA | -SPLIT- | | 255.00 | -1,080,406.04 |
| Check | 6/3/2005 | 8155 | WTTG | -SPLIT- | | 765.00 | -1,081,171.04 |
| Check | 6/3/2005 | 8156 | WTVK | -SPLIT- | | 1,466.25 | -1,082,637.29 |
| Check | 6/3/2005 | 8157 | WTVC | -SPLIT- | | 170.00 | -1,082,807.29 |
| Check | 6/3/2005 | 8158 | WTXF | -SPLIT- | | 1,020.00 | -1,083,827.29 |
| Check | 6/3/2005 | 8159 | WUHF | -SPLIT- | | 1,402.50 | -1,085,229.79 |
| Check | 6/3/2005 | 8160 | WUTB | -SPLIT- | | 361.25 | -1,085,591.04 |
| Check | 6/3/2005 | 8161 | WUTV | -SPLIT- | | 1,105.00 | -1,086,696.04 |
| Check | 6/3/2005 | 8162 | WVNY | -SPLIT- | | 680.00 | -1,087,376.04 |
| Check | 6/3/2005 | 8163 | WWOR | -SPLIT- | | 12,750.00 | -1,100,126.04 |
| Check | 6/3/2005 | 8164 | Fairway Media | -SPLIT- | | 36,167.50 | -1,136,293.54 |
| Deposit | 6/6/2005 | | Direct Marketing Concepts,... | -SPLIT- | 150,000.00 | | -986,293.54 |
| Deposit | 6/6/2005 | | Direct Marketing Concepts,... | -SPLIT- | 150,000.00 | | -786,293.54 |
| Deposit | 6/7/2005 | | Direct Marketing Concepts,... | Media Purchases | 42.50 | | -786,251.04 |
| Deposit | 6/8/2005 | | Direct Marketing Concepts, ... | -SPLIT- | 100,000.00 | | -686,251.04 |
| Deposit | 6/9/2005 | | PAX | -SPLIT- | | 72,254.25 | -758,505.29 |
| Deposit | 6/9/2005 | 8216 | Direct Marketing Concepts,... | -SPLIT- | | 81,227.50 | -739,732.79 |
| Check | 6/10/2005 | 8217 | PAX | -SPLIT- | 150,000.00 | | -589,732.79 |
| Check | 6/10/2005 | 8166 | AUCT | Due to Direct Marketing Concept | | 2,847.50 | -592,580.29 |
| Check | 6/10/2005 | 8167 | BFAS | Due to Direct Marketing Concept | | 595.00 | -593,175.29 |
| Check | 6/10/2005 | 8168 | CORT | Due to Direct Marketing Concept | | 32,555.00 | -625,730.29 |
| Check | 6/10/2005 | 8169 | CTLG | -SPLIT- | | 2,252.50 | -627,982.79 |
| Check | 6/10/2005 | 8170 | DISC | -SPLIT- | | 5,440.00 | -633,422.79 |
| Check | 6/10/2005 | 8171 | FSEL | -SPLIT- | | 6,545.00 | -639,967.79 |
| Check | 6/10/2005 | 8172 | GOOD | -SPLIT- | | 2,677.50 | -642,645.29 |
| Check | 6/10/2005 | 8173 | HLCC | -SPLIT- | | 2,380.00 | -645,025.29 |
| Check | 6/10/2005 | 8174 | KBHK | -SPLIT- | | 276.25 | -645,301.54 |
| Check | 6/10/2005 | 8175 | KDFX | -SPLIT- | | 510.00 | -645,811.54 |
| Check | 6/10/2005 | 8176 | KDVR | -SPLIT- | | 467.50 | -646,279.04 |
| Check | 6/10/2005 | 8177 | KEVN | -SPLIT- | | 63.75 | -646,342.79 |
| Check | 6/10/2005 | 8178 | KGBT | -SPLIT- | | 850.00 | -647,192.79 |
| Check | 6/10/2005 | 8179 | KGMC | -SPLIT- | | 786.25 | -647,979.04 |
| Check | 6/10/2005 | 8180 | KLTV | -SPLIT- | | 1,190.00 | -649,169.04 |
| Check | 6/10/2005 | 8181 | KNIN | -SPLIT- | | 637.50 | -649,806.54 |
| Check | 6/10/2005 | 8182 | KOBB | -SPLIT- | | 510.00 | -650,316.54 |
| Check | 6/10/2005 | 8183 | KOIN | -SPLIT- | | 340.00 | -650,656.54 |
| Check | 6/10/2005 | 8184 | KPRC | -SPLIT- | | 6,205.00 | -656,861.54 |
| Check | 6/10/2005 | 8178 | KRPC | -SPLIT- | | 1,381.25 | -658,242.79 |
| Check | 6/10/2005 | 8185 | KSAS | -SPLIT- | | 1,381.25 | -658,242.79 |
| Check | 6/10/2005 | 8186 | KSCC | -SPLIT- | | 191.25 | -658,434.04 |
| Check | 6/10/2005 | 8187 | KSTU | -SPLIT- | | 382.50 | -658,816.54 |

ITV00343

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 6/10/2005 | 8188 | KTLA (WB) | -SPLIT- | | 4,526.25 | -663,342.79 |
| Check | 6/10/2005 | 8189 | KUSI | -SPLIT- | | 3,017.50 | -666,360.29 |
| Check | 6/10/2005 | 8190 | MALL | -SPLIT- | | 170.00 | -666,530.29 |
| Check | 6/10/2005 | 8191 | OXYG | -SPLIT- | | 3,825.00 | -670,355.29 |
| Check | 6/10/2005 | 8192 | STUF | -SPLIT- | | 850.00 | -671,205.29 |
| Check | 6/10/2005 | 8193 | SUNS | -SPLIT- | | 5,843.75 | -677,049.04 |
| Check | 6/10/2005 | 8194 | TTMC | -SPLIT- | | 573.75 | -677,622.79 |
| Check | 6/10/2005 | 8195 | WAKA | -SPLIT- | | 1,275.00 | -678,897.79 |
| Check | 6/10/2005 | 8196 | WBDT | -SPLIT- | | 850.00 | -679,747.79 |
| Check | 6/10/2005 | 8197 | WDCA | -SPLIT- | | 297.50 | -680,045.29 |
| Check | 6/10/2005 | 8198 | WENT | -SPLIT- | | 12,240.00 | -692,285.29 |
| Check | 6/10/2005 | 8199 | WFOX | -SPLIT- | | 1,381.25 | -693,666.54 |
| Check | 6/10/2005 | 8200 | WHBO | -SPLIT- | | 212.50 | -693,879.04 |
| Check | 6/10/2005 | 8201 | WNK | -SPLIT- | | 1,190.00 | -695,069.04 |
| Check | 6/10/2005 | 8202 | WKMG | -SPLIT- | | 14,450.00 | -709,519.04 |
| Check | 6/10/2005 | 8203 | WLNY-TV | -SPLIT- | | 7,565.00 | -717,084.04 |
| Check | 6/10/2005 | 8204 | WMCN | -SPLIT- | | 2,443.75 | -719,527.79 |
| Check | 6/10/2005 | 8205 | WNYW | -SPLIT- | | 6,630.00 | -726,157.79 |
| Check | 6/10/2005 | 8206 | WPLG | -SPLIT- | | 3,665.00 | -729,812.79 |
| Check | 6/10/2005 | 8207 | WTOL | -SPLIT- | | 510.00 | -730,322.79 |
| Check | 6/10/2005 | 8208 | WTVK | -SPLIT- | | 340.00 | -730,662.79 |
| Check | 6/10/2005 | 8209 | WUHF | -SPLIT- | | 2,592.50 | -733,255.29 |
| Check | 6/10/2005 | 8210 | WUTB | -SPLIT- | | 361.25 | -733,616.54 |
| Check | 6/10/2005 | 8211 | WUTV | -SPLIT- | | 1,870.00 | -735,486.54 |
| Check | 6/10/2005 | 8212 | WWNY | -SPLIT- | | 680.00 | -736,166.54 |
| Check | 6/10/2005 | 8213 | WWOR | -SPLIT- | | 5,100.00 | -741,266.54 |
| Check | 6/10/2005 | 8214 | XUPN | -SPLIT- | | 3,187.50 | -744,454.04 |
| Check | 6/10/2005 | 8215 | Fairway Media | -SPLIT- | | 14,182.25 | -758,636.29 |
| Check | 6/10/2005 | 8059 | CORT | Uncategorized Expenses | 0.00 | | -758,636.29 |
| Check | 6/10/2005 | 8132 | WDCA | Uncategorized Expenses | 0.00 | | -758,636.29 |
| Deposit | 6/13/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 135,000.00 | | -623,636.29 |
| Deposit | 6/15/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 150,000.00 | | -473,636.29 |
| Check | 6/15/2005 | 8218 | CORT... | Bank Service Charges | | 20.00 | -473,656.29 |
| Check | 6/16/2005 | 8219 | WDCA | -SPLIT- | | 31,705.00 | -505,361.29 |
| Check | 6/16/2005 | | | -SPLIT- | | 4,441.25 | -509,802.54 |
| Check | 6/16/2005 | | | Bank Service Charges | | 20.00 | -509,822.54 |
| Deposit | 6/16/2005 | | | Bank Service Charges | | 20.00 | -509,842.54 |
| Deposit | 6/17/2005 | 8220 | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 300,000.00 | | -209,842.54 |
| Check | 6/17/2005 | 8221 | AUCT | -SPLIT- | | 1,423.75 | -211,266.29 |
| Check | 6/17/2005 | 8222 | BFAS | -SPLIT- | | 297.50 | -211,563.79 |
| Check | 6/17/2005 | 8223 | CORT | -SPLIT- | | 20,400.00 | -231,963.79 |
| Check | 6/17/2005 | 8224 | CTLG | -SPLIT- | | 1,232.50 | -233,196.29 |
| Check | 6/17/2005 | | FSAZ | -SPLIT- | | 3,463.75 | -236,660.04 |

ITV00344

Accrual Basis

## ITV Direct
## General Ledger
### As of September 30, 2005

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 6/17/2005 | 8225 | FSCO | -SPLIT- | | 4,398.75 | -241,058.79 |
| Check | 6/17/2005 | 8226 | FSFL | -SPLIT- | | 3,485.00 | -244,543.79 |
| Check | 6/17/2005 | 8227 | FSNE | -SPLIT- | | 5,780.00 | -250,323.79 |
| Check | 6/17/2005 | 8228 | FSSD | -SPLIT- | | 5,270.00 | -255,593.79 |
| Check | 6/17/2005 | 8229 | FSSW | -SPLIT- | | 9,605.00 | -265,198.79 |
| Check | 6/17/2005 | 8230 | FSW2 | -SPLIT- | | 6,715.00 | -271,913.79 |
| Check | 6/17/2005 | 8231 | FSWE | -SPLIT- | | 8,670.00 | -280,583.79 |
| Check | 6/17/2005 | 8232 | GOOD | -SPLIT- | | 1,572.50 | -282,156.29 |
| Check | 6/17/2005 | 8233 | HLCC | -SPLIT- | | 1,190.00 | -283,346.29 |
| Check | 6/17/2005 | 8234 | INSP | -SPLIT- | | 9,435.00 | -292,781.29 |
| Check | 6/17/2005 | 8235 | KASY | -SPLIT- | | 1,020.00 | -293,801.29 |
| Check | 6/17/2005 | 8236 | KBHK | -SPLIT- | | 318.75 | -294,120.04 |
| Check | 6/17/2005 | 8237 | KDFX | -SPLIT- | | 297.50 | -294,417.54 |
| Check | 6/17/2005 | 8238 | KDVR | -SPLIT- | | 382.50 | -294,800.04 |
| Check | 6/17/2005 | 8239 | KLFY-TV | -SPLIT- | | 2,210.00 | -297,010.04 |
| Check | 6/17/2005 | 8240 | KMVU | -SPLIT- | | 1,190.00 | -298,200.04 |
| Check | 6/17/2005 | 8241 | KNIN | -SPLIT- | | 510.00 | -298,710.04 |
| Check | 6/17/2005 | 8242 | KOBB | -SPLIT- | | 255.00 | -298,965.04 |
| Check | 6/17/2005 | 8243 | KOLD | -SPLIT- | | 5,695.00 | -304,660.04 |
| Check | 6/17/2005 | 8244 | KOLN | -SPLIT- | | 318.75 | -304,978.79 |
| Check | 6/17/2005 | 8245 | KPNZ | -SPLIT- | | 1,912.50 | -306,891.29 |
| Check | 6/17/2005 | 8246 | KRON-TV | -SPLIT- | | 12,240.00 | -319,131.29 |
| Check | 6/17/2005 | 8247 | KSAS | -SPLIT- | | 1,317.50 | -320,448.79 |
| Check | 6/17/2005 | 8248 | KSCC | -SPLIT- | | 127.50 | -320,576.29 |
| Check | 6/17/2005 | 8249 | KSTU | -SPLIT- | | 127.50 | -320,703.79 |
| Check | 6/17/2005 | 8250 | KTBU | -SPLIT- | | 9,137.50 | -329,841.29 |
| Check | 6/17/2005 | 8251 | KTLA (WB) | -SPLIT- | | 3,017.50 | -332,858.79 |
| Check | 6/17/2005 | 8252 | KTVN | -SPLIT- | | 595.00 | -333,453.79 |
| Check | 6/17/2005 | 8253 | KUSI | -SPLIT- | | 2,932.50 | -336,386.29 |
| Check | 6/17/2005 | 8254 | KUTP | -SPLIT- | | 2,040.00 | -338,426.29 |
| Check | 6/17/2005 | 8255 | KUWB | -SPLIT- | | 1,147.50 | -339,573.79 |
| Check | 6/17/2005 | 8256 | KWBQ | -SPLIT- | | 2,167.50 | -341,741.29 |
| Check | 6/17/2005 | 8257 | KXLY | -SPLIT- | | 1,105.00 | -342,846.29 |
| Check | 6/17/2005 | 8258 | PCNC | -SPLIT- | | 2,040.00 | -344,886.29 |
| Check | 6/17/2005 | 8259 | PPIN | -SPLIT- | | 24,528.45 | -369,414.74 |
| Check | 6/17/2005 | 8260 | SUNS | -SPLIT- | | 4,398.75 | -373,813.49 |
| Check | 6/17/2005 | 8261 | TTMC | -SPLIT- | | 382.50 | -374,195.99 |
| Check | 6/17/2005 | 8262 | WACY | -SPLIT- | | 63.75 | -374,259.74 |
| Check | 6/17/2005 | 8263 | WAKA | -SPLIT- | | 765.00 | -375,024.74 |
| Check | 6/17/2005 | 8264 | WBDT | -SPLIT- | | 3,973.75 | -378,998.49 |
| Check | 6/17/2005 | 8265 | WBNS | -SPLIT- | | 2,380.00 | -381,378.49 |
| Check | 6/17/2005 | 8266 | WDAF | -SPLIT- | | 2,550.00 | -383,928.49 |
| Check | 6/17/2005 | 8267 | WDCA | -SPLIT- | | 255.00 | -384,183.49 |

ITV00345

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 6/17/2005 | 8268 | WENT | -SPLIT- | | 6,991.25 | -391,174.74 |
| Check | 6/17/2005 | 8269 | WFOX | -SPLIT- | | 531.25 | -391,705.99 |
| Check | 6/17/2005 | 8270 | WFTX | -SPLIT- | | 5,610.00 | -397,315.99 |
| Check | 6/17/2005 | 8271 | WGBA | -SPLIT- | | 1,785.00 | -399,100.99 |
| Check | 6/17/2005 | 8272 | WGHP | -SPLIT- | | 2,231.25 | -401,332.24 |
| Check | 6/17/2005 | 8273 | WNK | -SPLIT- | 0.00 | | -401,332.24 |
| Check | 6/17/2005 | 8274 | WITI | -SPLIT- | | 1,827.50 | -403,159.74 |
| Check | 6/17/2005 | 8275 | WKBT | -SPLIT- | | 1,551.25 | -404,710.99 |
| Check | 6/17/2005 | 8276 | WKWG | -SPLIT- | 0.00 | | -404,710.99 |
| Check | 6/17/2005 | 8277 | WKRN-TV | -SPLIT- | | 106.25 | -404,817.24 |
| Check | 6/17/2005 | 8278 | WLNS | -SPLIT- | | 1,742.50 | -406,559.74 |
| Check | 6/17/2005 | 8279 | WLNY-TV | -SPLIT- | | 4,760.00 | -411,319.74 |
| Check | 6/17/2005 | 8280 | WMCN | -SPLIT- | | 786.25 | -412,105.99 |
| Check | 6/17/2005 | 8281 | WNYW | -SPLIT- | | 765.00 | -412,870.99 |
| Check | 6/17/2005 | 8282 | WRIC | -SPLIT- | | 1,126.25 | -413,997.24 |
| Check | 6/17/2005 | 8283 | WTOL | -SPLIT- | | 510.00 | -414,507.24 |
| Check | 6/17/2005 | 8284 | WTVK | -SPLIT- | | 1,020.00 | -415,527.24 |
| Check | 6/17/2005 | 8285 | WTXF | -SPLIT- | | 1,870.00 | -417,397.24 |
| Check | 6/17/2005 | 8286 | WUHF | -SPLIT- | | 595.00 | -417,992.24 |
| Check | 6/17/2005 | 8287 | WWOR | -SPLIT- | | 25,925.00 | -443,917.24 |
| Check | 6/17/2005 | 8288 | XLPN | -SPLIT- | | 2,082.50 | -445,999.74 |
| Check | 6/17/2005 | 8289 | Fairway Media | -SPLIT- | | 20,166.25 | -466,165.99 |
| Check | 6/17/2005 | 8290 | PAX | -SPLIT- | | 56,285.00 | -522,450.99 |
| Deposit | 6/20/2005 | 8291 | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 215,000.00 | | -307,450.99 |
| Check | 6/20/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | | 1,360.00 | -308,810.99 |
| Deposit | 6/23/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 150,000.00 | | -158,810.99 |
| Deposit | 6/23/2005 | | Direct Marketing Concepts, ... | -SPLIT- | 160,000.00 | | 1,189.01 |
| Check | 6/24/2005 | 8293 | ACTN | -SPLIT- | | 16,575.00 | -15,385.99 |
| Check | 6/24/2005 | 8294 | Zephyr Media. | -SPLIT- | | 29,000.00 | -44,385.99 |
| Check | 6/24/2005 | 8295 | CCNA | -SPLIT- | | 1,989.00 | -46,374.99 |
| Check | 6/24/2005 | 8296 | CCNE | -SPLIT- | | 6,077.50 | -52,452.49 |
| Check | 6/24/2005 | 8297 | CCOX | -SPLIT- | | 1,181.50 | -53,633.99 |
| Check | 6/24/2005 | 8298 | CORT | -SPLIT- | | 21,250.00 | -74,883.99 |
| Check | 6/24/2005 | 8299 | DISC | -SPLIT- | | 49,300.00 | -124,183.99 |
| Check | 6/24/2005 | 8300 | FITV | -SPLIT- | | 1,317.50 | -125,501.49 |
| Check | 6/24/2005 | 8301 | FSDT | -SPLIT- | | 4,760.00 | -130,261.49 |
| Check | 6/24/2005 | 8302 | FSNM | -SPLIT- | | 2,826.25 | -133,087.74 |
| Check | 6/24/2005 | 8303 | FSRM | -SPLIT- | | 1,785.00 | -134,872.74 |
| Check | 6/24/2005 | 8304 | KEVN | -SPLIT- | | 765.00 | -135,637.74 |
| Check | 6/24/2005 | 8305 | KGMB | -SPLIT- | | 5,976.51 | -141,614.25 |
| Check | 6/24/2005 | 8306 | KGMC | -SPLIT- | | 297.50 | -141,911.75 |
| Check | 6/24/2005 | 8307 | KITV | -SPLIT- | | 309.89 | -142,221.64 |
| Check | 6/24/2005 | 8308 | KLTV | -SPLIT- | | 1,572.50 | -143,794.14 |

ITV00346

**ITV Direct**
**General Ledger**
As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 6/24/2005 | 8309 | KOIN | -SPLIT- | | 1,912.50 | -145,706.64 |
| Check | 6/24/2005 | 8310 | KTBU | -SPLIT- | | 340.00 | -146,046.64 |
| Check | 6/24/2005 | 8311 | KTVN | -SPLIT- | | 488.75 | -146,535.39 |
| Check | 6/24/2005 | 8312 | KTXH | -SPLIT- | | 255.00 | -146,790.39 |
| Check | 6/24/2005 | 8313 | KZTV | -SPLIT- | | 1,742.50 | -148,532.89 |
| Check | 6/24/2005 | 8314 | OXYG | -SPLIT- | | 21,250.00 | -169,782.89 |
| Check | 6/24/2005 | 8315 | PPN | -SPLIT- | | 15,632.35 | -185,415.24 |
| Check | 6/24/2005 | 8316 | SHPL | -SPLIT- | | 9,250.00 | -194,665.24 |
| Check | 6/24/2005 | 8317 | Zephyr Media | -SPLIT- | | 42,000.00 | -236,665.24 |
| Check | 6/24/2005 | 8318 | STUF | -SPLIT- | | 425.00 | -237,090.24 |
| Check | 6/24/2005 | 8319 | SUNS | -SPLIT- | | 4,101.25 | -241,191.49 |
| Check | 6/24/2005 | 8320 | TVSS | -SPLIT- | | 10,500.00 | -251,691.49 |
| Check | 6/24/2005 | 8321 | WBFS-Miami | -SPLIT- | | 2,890.00 | -254,581.49 |
| Check | 6/24/2005 | 8322 | WDCA | -SPLIT- | | 2,975.00 | -257,556.49 |
| Check | 6/24/2005 | 8323 | WDIV | -SPLIT- | | 425.00 | -257,981.49 |
| Check | 6/24/2005 | 8324 | WIZE | -SPLIT- | | 17,000.00 | -274,981.49 |
| Check | 6/24/2005 | 8325 | WJBK | -SPLIT- | | 10,710.00 | -285,691.49 |
| Check | 6/24/2005 | 8326 | WOTV | -SPLIT- | | | -285,691.49 |
| Check | 6/24/2005 | 8327 | WPLG | -SPLIT- | | 637.50 | -286,328.99 |
| Check | 6/24/2005 | 8328 | WPTA | -SPLIT- | | 127.50 | -286,456.49 |
| Check | 6/24/2005 | 8329 | WPWR | -SPLIT- | | 2,167.50 | -288,623.99 |
| Check | 6/24/2005 | 8330 | WSDM | -SPLIT- | | 331.50 | -288,955.49 |
| Check | 6/24/2005 | 8331 | WTOL | -SPLIT- | | 255.00 | -289,210.49 |
| Check | 6/24/2005 | 8332 | WUTV | -SPLIT- | | 6,035.00 | -295,245.49 |
| Check | 6/24/2005 | 8333 | WWNY | -SPLIT- | | 680.00 | -295,925.49 |
| Check | 6/24/2005 | 8334 | YYES | -SPLIT- | | 1,402.50 | -297,327.99 |
| Check | 6/24/2005 | 8335 | Fairway Media | -SPLIT- | | 18,657.50 | -315,985.49 |
| Check | 6/24/2005 | 8336 | Fairway Media | -SPLIT- | | 6,630.00 | -322,615.49 |
| Check | 6/24/2005 | 8337 | PAX | -SPLIT- | | 57,035.00 | -379,650.49 |
| Deposit | 6/30/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 125,000.00 | | -254,650.49 |
| Deposit | 7/1/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 125,000.00 | | -129,650.49 |
| Check | 7/1/2005 | 8338 | ACTN | -SPLIT- | | 8,287.50 | -137,937.99 |
| Check | 7/1/2005 | 8339 | AUCT | -SPLIT- | | 1,423.75 | -139,361.74 |
| Check | 7/1/2005 | 8340 | BFAS | -SPLIT- | | 297.50 | -139,659.24 |
| Check | 7/1/2005 | 8341 | Zephyr Media | -SPLIT- | | 11,500.00 | -151,159.24 |
| Check | 7/1/2005 | 8342 | COMA | -SPLIT- | | 892.50 | -152,051.74 |
| Check | 7/1/2005 | 8343 | CONE | -SPLIT- | | 3,315.00 | -155,366.74 |
| Check | 7/1/2005 | 8344 | COOX | -SPLIT- | | 607.75 | -155,974.49 |
| Check | 7/1/2005 | 8345 | CORT | -SPLIT- | | 34,000.00 | -189,974.49 |
| Check | 7/1/2005 | 8346 | CTLG | -SPLIT- | | 1,232.50 | -191,206.99 |
| Check | 7/1/2005 | 8347 | DISC | -SPLIT- | | 39,100.00 | -230,306.99 |
| Check | 7/1/2005 | 8348 | FITV | -SPLIT- | | 318.75 | -230,625.74 |
| Check | 7/1/2005 | 8349 | FSAZ | -SPLIT- | | 1,253.75 | -231,879.49 |

Page 160

ITV00347

Accrual Basis

# ITV Direct
## General Ledger
### As of September 30, 2005

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 7/1/2005 | 8350 | FSCO | -SPLIT- | | 1,593.75 | -233,473.24 |
| Check | 7/1/2005 | 8351 | FSDT | -SPLIT- | | 3,655.00 | -237,128.24 |
| Check | 7/1/2005 | 8352 | FSFL | -SPLIT- | | 3,910.00 | -241,038.24 |
| Check | 7/1/2005 | 8353 | FSNE | -SPLIT- | | 2,210.00 | -243,248.24 |
| Check | 7/1/2005 | 8354 | FSNM | -SPLIT- | | 1,955.00 | -245,203.24 |
| Check | 7/1/2005 | 8355 | FSRM | -SPLIT- | | 892.50 | -246,095.74 |
| Check | 7/1/2005 | 8356 | FSSO | -SPLIT- | | 1,955.00 | -248,050.74 |
| Check | 7/1/2005 | 8357 | FSSW | -SPLIT- | | 2,231.25 | -250,281.99 |
| Check | 7/1/2005 | 8358 | FSW2 | -SPLIT- | | 2,337.50 | -252,619.49 |
| Check | 7/1/2005 | 8359 | FSWE | -SPLIT- | | 3,400.00 | -256,019.49 |
| Check | 7/1/2005 | 8360 | GOOD | -SPLIT- | | 1,572.50 | -257,591.99 |
| Check | 7/1/2005 | 8361 | HLCC | -SPLIT- | | 1,190.00 | -258,781.99 |
| Check | 7/1/2005 | 8362 | INSP | -SPLIT- | | 3,145.00 | -261,926.99 |
| Check | 7/1/2005 | 8363 | KASY | -SPLIT- | | 510.00 | -262,436.99 |
| Check | 7/1/2005 | 8364 | KBHK | -SPLIT- | | 318.75 | -262,755.74 |
| Check | 7/1/2005 | 8365 | KCOP | -SPLIT- | | 5,652.50 | -268,408.24 |
| Check | 7/1/2005 | 8366 | KDFX | -SPLIT- | | 297.50 | -268,705.74 |
| Check | 7/1/2005 | 8367 | KDVR | -SPLIT- | | 382.50 | -269,088.24 |
| Check | 7/1/2005 | 8368 | KEVN | -SPLIT- | | 382.50 | -269,470.74 |
| Check | 7/1/2005 | 8369 | KGMB | -SPLIT- | | 1,992.17 | -271,462.91 |
| Check | 7/1/2005 | 8370 | KGMC | -SPLIT- | | 297.50 | -271,760.41 |
| Check | 7/1/2005 | 8371 | KITV | -SPLIT- | | 309.89 | -272,070.30 |
| Check | 7/1/2005 | 8372 | KLTV | -SPLIT- | | 85.00 | -272,155.30 |
| Check | 7/1/2005 | 8373 | KMVU | -SPLIT- | | 127.50 | -272,282.80 |
| Check | 7/1/2005 | 8374 | KNIN | -SPLIT- | | 510.00 | -272,792.80 |
| Check | 7/1/2005 | 8375 | KNSD | -SPLIT- | | 382.50 | -273,175.30 |
| Check | 7/1/2005 | 8376 | KOBB | -SPLIT- | | 255.00 | -273,430.30 |
| Check | 7/1/2005 | 8377 | KOIN | -SPLIT- | | 850.00 | -274,280.30 |
| Check | 7/1/2005 | 8378 | KPNZ | -SPLIT- | | 722.50 | -275,002.80 |
| Check | 7/1/2005 | 8379 | KPRC | -SPLIT- | | 12,750.00 | -287,752.80 |
| Check | 7/1/2005 | 8380 | KRON-TV | -SPLIT- | | 6,120.00 | -293,872.80 |
| Check | 7/1/2005 | 8381 | KSAS | -SPLIT- | | 722.50 | -294,595.30 |
| Check | 7/1/2005 | 8382 | KSCC | -SPLIT- | | 127.50 | -294,722.80 |
| Check | 7/1/2005 | 8383 | KSTU | -SPLIT- | | 361.25 | -295,084.05 |
| Check | 7/1/2005 | 8384 | KTBU | -SPLIT- | | 3,145.00 | -298,229.05 |
| Check | 7/1/2005 | 8385 | KTLA (WB) | -SPLIT- | | 3,017.50 | -301,246.55 |
| Check | 7/1/2005 | 8386 | KTVN | -SPLIT- | | 488.75 | -301,735.30 |
| Check | 7/1/2005 | 8387 | KTXH | -SPLIT- | | 255.00 | -301,990.30 |
| Check | 7/1/2005 | 8388 | KUSI | -SPLIT- | | 4,675.00 | -306,665.30 |
| Check | 7/1/2005 | 8389 | KUTP | -SPLIT- | | 1,190.00 | -307,855.30 |
| Check | 7/1/2005 | 8390 | KUWB | -SPLIT- | | 701.25 | -308,556.55 |
| Check | 7/1/2005 | 8391 | KWBQ | -SPLIT- | | 722.50 | -309,279.05 |
| Check | 7/1/2005 | 8392 | KZTV | -SPLIT- | | 1,657.50 | -310,936.55 |

ITV00348

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 7/1/2005 | 8393 | MALL | -SPLIT- | | 212.50 | -311,149.05 |
| Check | 7/1/2005 | 8394 | OXYG | -SPLIT- | | 8,372.50 | -319,521.55 |
| Check | 7/1/2005 | 8395 | PQNC | -SPLIT- | | 786.25 | -320,307.80 |
| Check | 7/1/2005 | 8396 | PPN | -SPLIT- | | 15,632.35 | -335,940.15 |
| Check | 7/1/2005 | 8397 | Zephyr Media | -SPLIT- | | 16,000.00 | -351,940.15 |
| Check | 7/1/2005 | 8398 | STUF | -SPLIT- | | 425.00 | -352,365.15 |
| Check | 7/1/2005 | 8399 | SUNS | -SPLIT- | | 3,761.25 | -356,126.40 |
| Check | 7/1/2005 | 8400 | TRAV | -SPLIT- | | 5,270.00 | -361,396.40 |
| Check | 7/1/2005 | 8401 | TTMC | -SPLIT- | | 382.50 | -361,778.90 |
| Check | 7/1/2005 | 8402 | TVSS | -SPLIT- | | 10,500.00 | -372,278.90 |
| Check | 7/1/2005 | 8403 | WAKA | -SPLIT- | 0.00 | | -372,278.90 |
| Check | 7/1/2005 | 8404 | WBDT | -SPLIT- | | 1,636.25 | -373,915.15 |
| Check | 7/1/2005 | 8405 | WBNS | -SPLIT- | | 2,380.00 | -376,295.15 |
| Check | 7/1/2005 | 8406 | WBUI | -SPLIT- | | 850.00 | -377,145.15 |
| Check | 7/1/2005 | 8407 | WCIU | -SPLIT- | | 1,615.00 | -378,760.15 |
| Check | 7/1/2005 | 8408 | WDAF | -SPLIT- | | 1,275.00 | -380,035.15 |
| Check | 7/1/2005 | 8409 | WENT | -SPLIT- | | 3,187.50 | -383,222.65 |
| Check | 7/1/2005 | 8410 | WFOX | -SPLIT- | | 531.25 | -383,753.90 |
| Check | 7/1/2005 | 8411 | WFTX | -SPLIT- | | 1,105.00 | -384,858.90 |
| Check | 7/1/2005 | 8412 | WGBA | -SPLIT- | | 1,062.50 | -385,921.40 |
| Check | 7/1/2005 | 8413 | WGHP | -SPLIT- | | 382.50 | -386,303.90 |
| Check | 7/1/2005 | 8414 | WMT | -SPLIT- | | 9,900.00 | -396,203.90 |
| Check | 7/1/2005 | 8415 | Tower Media | -SPLIT- | | 233.75 | -396,437.65 |
| Check | 7/1/2005 | 8416 | WIT | -SPLIT- | | 8,500.00 | -404,937.65 |
| Check | 7/1/2005 | 8417 | WIZE | -SPLIT- | | 5,100.00 | -410,037.65 |
| Check | 7/1/2005 | 8418 | WJBK | -SPLIT- | | 170.00 | -410,207.65 |
| Check | 7/1/2005 | 8419 | WJWW | -SPLIT- | | 403.75 | -410,611.40 |
| Check | 7/1/2005 | 8420 | WKBT | -SPLIT- | | 255.00 | -410,866.40 |
| Check | 7/1/2005 | 8421 | WLNS | -SPLIT- | | 5,355.00 | -416,221.40 |
| Check | 7/1/2005 | 8422 | WLNY-TV | -SPLIT- | | 1,275.00 | -417,496.40 |
| Check | 7/1/2005 | 8423 | WMCN | -SPLIT- | | 1,020.00 | -418,516.40 |
| Check | 7/1/2005 | 8424 | WNYW | -SPLIT- | | 1,211.25 | -419,727.65 |
| Check | 7/1/2005 | 8425 | WOTV | -SPLIT- | 0.00 | | -419,727.65 |
| Check | 7/1/2005 | 8426 | WPLG | -SPLIT- | | 2,401.25 | -422,128.90 |
| Check | 7/1/2005 | 8427 | WPMR | -SPLIT- | | 1,020.00 | -423,148.90 |
| Check | 7/1/2005 | 8428 | WRIC | -SPLIT- | | 221.00 | -423,369.90 |
| Check | 7/1/2005 | 8429 | WSDM | -SPLIT- | | 340.00 | -423,709.90 |
| Check | 7/1/2005 | 8430 | WTVK | -SPLIT- | | 595.00 | -424,304.90 |
| Check | 7/1/2005 | 8431 | WUHF | -SPLIT- | | 2,805.00 | -427,109.90 |
| Check | 7/1/2005 | 8432 | WUTV | -SPLIT- | | 12,750.00 | -439,859.90 |
| Check | 7/1/2005 | 8433 | WVOR | -SPLIT- | | 2,082.50 | -441,942.40 |
| Check | 7/1/2005 | 8434 | YYES | -SPLIT- | | 382.50 | -442,324.90 |
| Check | 7/1/2005 | 8435 | Fairway Media | -SPLIT- | | 24,543.75 | -466,868.65 |

ITV00349

Accrual Basis

# ITV Direct
# General Ledger
## As of September 30, 2005

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 7/1/2005 | 8436 | PAX | -SPLIT- | | 56,822.50 | -523,691.15 |
| Deposit | 7/8/2005 | 8437 | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 175,000.00 | | -348,691.15 |
| Check | 7/8/2005 | 8438 | ACTN | -SPLIT- | | 8,287.50 | -356,978.65 |
| Check | 7/8/2005 | 8439 | AUCT | -SPLIT- | | 1,423.75 | -358,402.40 |
| Check | 7/8/2005 | 8440 | BFAS | -SPLIT- | | 297.50 | -358,699.90 |
| Check | 7/8/2005 | 8441 | Zephyr Media | -SPLIT- | | 28,000.00 | -386,699.90 |
| Check | 7/8/2005 | 8442 | COMA | -SPLIT- | | 1,317.50 | -388,017.40 |
| Check | 7/8/2005 | 8443 | CONE | -SPLIT- | | 4,080.00 | -392,097.40 |
| Check | 7/8/2005 | 8444 | CCOX | -SPLIT- | | 599.25 | -392,696.65 |
| Check | 7/8/2005 | 8445 | CORT | -SPLIT- | | 15,300.00 | -407,996.65 |
| Check | 7/8/2005 | 8446 | CTLG | -SPLIT- | | 977.50 | -408,974.15 |
| Check | 7/8/2005 | 8447 | DISC | -SPLIT- | | 29,920.00 | -438,894.15 |
| Check | 7/8/2005 | 8448 | DIYN | -SPLIT- | | 998.75 | -439,892.90 |
| Check | 7/8/2005 | 8449 | FSAZ | -SPLIT- | | 1,381.25 | -441,274.15 |
| Check | 7/8/2005 | 8450 | FSCO | -SPLIT- | | 1,593.75 | -442,867.90 |
| Check | 7/8/2005 | 8451 | FSFL | -SPLIT- | | 4,845.00 | -447,712.90 |
| Check | 7/8/2005 | 8452 | FSNE | -SPLIT- | | 2,210.00 | -449,922.90 |
| Check | 7/8/2005 | 8453 | FSNM | -SPLIT- | | 4,250.00 | -454,172.90 |
| Check | 7/8/2005 | 8454 | FSRM | -SPLIT- | | 2,932.50 | -457,105.40 |
| Check | 7/8/2005 | 8455 | FSSO | -SPLIT- | | 1,955.00 | -459,060.40 |
| Check | 7/8/2005 | 8456 | FSSW | -SPLIT- | | 2,231.25 | -461,291.65 |
| Check | 7/8/2005 | 8457 | FSWE | -SPLIT- | | 2,231.25 | -463,522.90 |
| Check | 7/8/2005 | 8458 | FSW2 | -SPLIT- | | 3,570.00 | -467,092.90 |
| Check | 7/8/2005 | 8459 | GOOD | -SPLIT- | | 1,572.50 | -468,665.40 |
| Check | 7/8/2005 | 8460 | HLCC | -SPLIT- | | 1,190.00 | -469,855.40 |
| Check | 7/8/2005 | 8461 | INSP | -SPLIT- | | 3,145.00 | -473,000.40 |
| Check | 7/8/2005 | 8462 | KASY | -SPLIT- | | 510.00 | -473,510.40 |
| Check | 7/8/2005 | 8463 | KCOP | -SPLIT- | | 1,445.00 | -474,955.40 |
| Check | 7/8/2005 | 8464 | KDFX | -SPLIT- | | 297.50 | -475,252.90 |
| Check | 7/8/2005 | | KDOC TV | -SPLIT- | 0.00 | | -475,252.90 |
| Check | 7/8/2005 | 8465 | KQBB | -SPLIT- | | 255.00 | -475,507.90 |
| Check | 7/8/2005 | 8466 | KDN | -SPLIT- | | 637.50 | -476,145.40 |
| Check | 7/8/2005 | 8467 | KOLD | -SPLIT- | | 1,445.00 | -477,590.40 |
| Check | 7/8/2005 | 8468 | KOTV | -SPLIT- | | 3,060.00 | -480,650.40 |
| Check | 7/8/2005 | 8469 | KPNZ | -SPLIT- | | 722.50 | -481,372.90 |
| Check | 7/8/2005 | 8470 | KPRC | -SPLIT- | | 4,250.00 | -485,622.90 |
| Check | 7/8/2005 | 8471 | KRIS | -SPLIT- | | 765.00 | -486,387.90 |
| Check | 7/8/2005 | 8472 | KRON-TV | -SPLIT- | | 6,120.00 | -492,507.90 |
| Check | 7/8/2005 | 8473 | KSAS | -SPLIT- | | 1,317.50 | -493,825.40 |
| Check | 7/8/2005 | 8474 | KSCC | -SPLIT- | | 127.50 | -493,952.90 |
| Check | 7/8/2005 | 8475 | KTBU | -SPLIT- | | 3,485.00 | -497,437.90 |
| Check | 7/8/2005 | 8476 | KTLA (WB) | -SPLIT- | | 3,867.50 | -501,305.40 |
| Check | 7/8/2005 | 8477 | KTVN | -SPLIT- | | 488.75 | -501,794.15 |

ITV00350

**ITV Direct**
**General Ledger**
As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|------|------|-----|------|-------|-------|--------|---------|
| Check | 7/8/2005 | 8478 | KUSI | -SPLIT- | | 1,380.00 | -503,154.15 |
| Check | 7/8/2005 | 8479 | KUTP | -SPLIT- | | 1,147.50 | -504,301.65 |
| Check | 7/8/2005 | 8480 | KWBQ | -SPLIT- | | 722.50 | -505,024.15 |
| Check | 7/8/2005 | 8481 | KZTV | -SPLIT- | | 807.50 | -505,831.65 |
| Check | 7/8/2005 | 8482 | MALL | -SPLIT- | | 722.50 | -506,554.15 |
| Check | 7/8/2005 | 8483 | OXYG | -SPLIT- | | 6,290.00 | -512,844.15 |
| Check | 7/8/2005 | 8484 | PQNC | -SPLIT- | | 786.25 | -513,630.40 |
| Check | 7/8/2005 | 8485 | PPN | -SPLIT- | | 15,632.35 | -529,262.75 |
| Check | 7/8/2005 | 8486 | Zephyr Media | -SPLIT- | | 16,000.00 | -545,262.75 |
| Check | 7/8/2005 | 8487 | STUF | -SPLIT- | | 425.00 | -545,687.75 |
| Check | 7/8/2005 | 8488 | TRAV | -SPLIT- | | 2,040.00 | -547,727.75 |
| Check | 7/8/2005 | 8489 | TTMC | -SPLIT- | | 382.50 | -548,110.25 |
| Check | 7/8/2005 | 8490 | TVSS | -SPLIT- | | 1,000.00 | -569,110.25 |
| Check | 7/8/2005 | 8491 | WAKA | -SPLIT- | | 21,000.00 | -569,110.25 |
| Check | 7/8/2005 | 8492 | WBDT | -SPLIT- | | 1,636.25 | -570,746.50 |
| Check | 7/8/2005 | 8493 | WBNS | -SPLIT- | | 2,380.00 | -573,126.50 |
| Check | 7/8/2005 | 8494 | WBUI | -SPLIT- | | 212.50 | -573,339.00 |
| Check | 7/8/2005 | 8495 | WCIU | -SPLIT- | | 1,615.00 | -574,954.00 |
| Check | 7/8/2005 | 8496 | WDAF | -SPLIT- | | 1,275.00 | -576,229.00 |
| Check | 7/8/2005 | 8497 | WDCA | -SPLIT- | | 2,040.00 | -578,269.00 |
| Check | 7/8/2005 | 8498 | WENT | -SPLIT- | | 5,503.75 | -583,772.75 |
| Check | 7/8/2005 | 8499 | WFQX | -SPLIT- | | 531.25 | -584,304.00 |
| Check | 7/8/2005 | 8500 | WFTX | -SPLIT- | | 1,870.00 | -586,174.00 |
| Check | 7/8/2005 | 8501 | WGBA | -SPLIT- | | 1,062.50 | -587,236.50 |
| Check | 7/8/2005 | 8502 | WGHP | -SPLIT- | | 212.50 | -587,449.00 |
| Check | 7/8/2005 | 8503 | WHBQ | -SPLIT- | | 212.50 | -587,661.50 |
| Check | 7/8/2005 | 8504 | WTI | -SPLIT- | | 1,508.75 | -589,170.25 |
| Check | 7/8/2005 | 8505 | WIZE | -SPLIT- | | 8,500.00 | -597,670.25 |
| Check | 7/8/2005 | 8506 | WJBK | -SPLIT- | | 5,610.00 | -603,280.25 |
| Check | 7/8/2005 | 8507 | WWW | -SPLIT- | | 170.00 | -603,450.25 |
| Check | 7/8/2005 | 8508 | WLNS | -SPLIT- | | 1,360.00 | -604,810.25 |
| Check | 7/8/2005 | 8509 | WLNY-TV | -SPLIT- | | 4,760.00 | -609,570.25 |
| Check | 7/8/2005 | 8510 | WMCN | -SPLIT- | | 1,275.00 | -610,845.25 |
| Check | 7/8/2005 | 8511 | WOFL | -SPLIT- | | 1,615.00 | -612,460.25 |
| Check | 7/8/2005 | 8512 | WOGX | -SPLIT- | | 956.25 | -613,416.50 |
| Check | 7/8/2005 | 8513 | WOTV | -SPLIT- | | 1,211.25 | -614,627.75 |
| Check | 7/8/2005 | 8514 | WPLG | -SPLIT- | | 318.75 | -614,946.50 |
| Check | 7/8/2005 | 8515 | WPWR | -SPLIT- | | 233.75 | -615,180.25 |
| Check | 7/8/2005 | 8516 | WRBW | -SPLIT- | | 3,230.00 | -618,410.25 |
| Check | 7/8/2005 | 8517 | WRIC | -SPLIT- | | 1,020.00 | -619,430.25 |
| Check | 7/8/2005 | 8518 | WSDM | -SPLIT- | | 221.00 | -619,651.25 |
| Check | 7/8/2005 | 8519 | WTHI | -SPLIT- | | 2,040.00 | -621,691.25 |
| Check | 7/8/2005 | 8520 | WTOL | -SPLIT- | 0.00 | 722.50 | -622,413.75 |

Page 164

ITV00351

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 7/8/2005 | 8521 | WTTG | -SPLIT- | | 1,105.00 | -623,518.75 |
| Check | 7/8/2005 | 8522 | WTVK | -SPLIT- | | 1,020.00 | -624,538.75 |
| Check | 7/8/2005 | 8523 | WTXF | -SPLIT- | | 1,105.00 | -625,643.75 |
| Check | 7/8/2005 | 8524 | WUHF | -SPLIT- | | 595.00 | -626,238.75 |
| Check | 7/8/2005 | 8525 | WUTV | -SPLIT- | | 2,805.00 | -629,043.75 |
| Check | 7/8/2005 | 8526 | WVNY | -SPLIT- | | 340.00 | -629,383.75 |
| Check | 7/8/2005 | 8527 | WWOR | -SPLIT- | | 13,600.00 | -642,983.75 |
| Check | 7/8/2005 | 8528 | XUPN | -SPLIT- | | 1,381.25 | -644,365.00 |
| Check | 7/8/2005 | 8529 | Media Fusion Marketing | -SPLIT- | | 255.00 | -644,620.00 |
| Check | 7/8/2005 | 8530 | Fairway Media | -SPLIT- | | 45,368.75 | -689,988.75 |
| Check | 7/8/2005 | 8531 | PAX | -SPLIT- | | 68,382.50 | -758,371.25 |
| Check | 7/8/2005 | 8532 | KDVR | -SPLIT- | | 382.50 | -758,753.75 |
| Check | 7/8/2005 | 8533 | KECY | -SPLIT- | | 722.50 | -759,476.25 |
| Check | 7/8/2005 | 8534 | KEVN | -SPLIT- | | 382.50 | -759,858.75 |
| Check | 7/8/2005 | 8535 | KGMB | -SPLIT- | | 1,992.17 | -761,850.92 |
| Check | 7/8/2005 | 8536 | KGMC | -SPLIT- | | 297.50 | -762,148.42 |
| Check | 7/8/2005 | 8537 | KITV | -SPLIT- | | 309.89 | -762,458.31 |
| Check | 7/8/2005 | 8538 | KMVU | -SPLIT- | | 42.50 | -762,500.81 |
| Check | 7/8/2005 | 8539 | KNIN | -SPLIT- | | 467.50 | -762,968.31 |
| Check | 7/8/2005 | 8540 | KNSD | -SPLIT- | | 382.50 | -763,350.81 |
| Deposit | 7/8/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 225,000.00 | | -538,350.81 |
| Deposit | 7/14/2005 | | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 200,000.00 | | -338,350.81 |
| Deposit | 7/14/2005 | | KNWA | -SPLIT- | | 1,105.00 | -339,455.81 |
| Check | 7/14/2005 | 8543 | KDOC TV | -SPLIT- | | 2,550.00 | -342,005.81 |
| Check | 7/15/2005 | 8544 | Direct Marketing Concepts, ... | Due to Direct Marketing Concept | 150,000.00 | | -192,005.81 |
| Deposit | 7/15/2005 | | AUCT | Due to Direct Marketing Concept | 0.00 | | -192,005.81 |
| Check | 7/15/2005 | 8545 | CDMA | -SPLIT- | | 1,105.00 | -193,110.81 |
| Check | 7/15/2005 | 8546 | CONE | -SPLIT- | | 4,420.00 | -197,530.81 |
| Check | 7/15/2005 | 8547 | CORT | -SPLIT- | | 24,650.00 | -222,180.81 |
| Check | 7/15/2005 | 8548 | CTLG | -SPLIT- | | 1,232.50 | -223,413.31 |
| Check | 7/15/2005 | 8549 | Food Network | -SPLIT- | | 5,950.00 | -229,363.31 |
| Check | 7/15/2005 | 8550 | FSAZ | -SPLIT- | | 1,997.50 | -231,360.81 |
| Check | 7/15/2005 | 8551 | FSNM | -SPLIT- | | 807.50 | -232,168.31 |
| Check | 7/15/2005 | 8552 | FSRM | -SPLIT- | | 1,615.00 | -233,783.31 |
| Check | 7/15/2005 | 8553 | FSSW | -SPLIT- | | 3,867.50 | -237,650.81 |
| Check | 7/15/2005 | 8554 | FSW2 | -SPLIT- | | 2,337.50 | -239,988.31 |
| Check | 7/15/2005 | 8555 | FSWE | -SPLIT- | | 3,400.00 | -243,388.31 |
| Check | 7/15/2005 | 8556 | GOOD | -SPLIT- | | 1,572.50 | -244,960.81 |
| Check | 7/15/2005 | 8557 | HLCC | -SPLIT- | | 1,190.00 | -246,150.81 |
| Check | 7/15/2005 | 8558 | INSP | -SPLIT- | | 3,145.00 | -249,295.81 |
| Check | 7/15/2005 | 8559 | KASY | -SPLIT- | | 510.00 | -249,805.81 |
| Check | 7/15/2005 | 8560 | KDFX | -SPLIT- | | 297.50 | -250,103.31 |
| Check | 7/15/2005 | 8561 | KDVR | -SPLIT- | | 255.00 | -250,358.31 |

ITV00352

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|------|------|-----|------|-------|-------|--------|---------|
| Check | 7/15/2005 | 8563 | KECY | -SPLIT- | | 340.00 | -250,698.31 |
| Check | 7/15/2005 | 8564 | KEVN | -SPLIT- | | 382.50 | -251,080.81 |
| Check | 7/15/2005 | 8565 | KGMB | -SPLIT- | | 1,992.17 | -253,072.98 |
| Check | 7/15/2005 | 8566 | KGMC | -SPLIT- | | 297.50 | -253,370.48 |
| Check | 7/15/2005 | 8567 | KJRH | -SPLIT- | | 1,423.75 | -254,794.23 |
| Check | 7/15/2005 | 8568 | KLTV | -SPLIT- | | 743.75 | -255,537.98 |
| Check | 7/15/2005 | 8569 | KNIN | -SPLIT- | | 510.00 | -256,047.98 |
| Check | 7/15/2005 | 8570 | KOBB | -SPLIT- | | 255.00 | -256,302.98 |
| Check | 7/15/2005 | 8571 | KOIN | -SPLIT- | | 2,550.00 | -258,852.98 |
| Check | 7/15/2005 | 8572 | KOLD | -SPLIT- | | 2,550.00 | -261,402.98 |
| Check | 7/15/2005 | 8573 | KPNZ | -SPLIT- | | 722.50 | -262,125.48 |
| Check | 7/15/2005 | 8574 | KPRC | -SPLIT- | | 6,290.00 | -268,415.48 |
| Check | 7/15/2005 | 8575 | KRON-TV | -SPLIT- | | 6,120.00 | -274,535.48 |
| Check | 7/15/2005 | 8576 | KSAS | -SPLIT- | | 127.50 | -274,662.98 |
| Check | 7/15/2005 | 8577 | KSCC | -SPLIT- | | 127.50 | -274,790.48 |
| Check | 7/15/2005 | 8578 | KSTU | -SPLIT- | | 170.00 | -274,960.48 |
| Check | 7/15/2005 | 8579 | KTBU | -SPLIT- | | 3,038.75 | -277,999.23 |
| Check | 7/15/2005 | 8580 | KTLA (WB) | -SPLIT- | | 2,167.50 | -280,166.73 |
| Check | 7/15/2005 | 8581 | KTVN | -SPLIT- | | 488.75 | -280,655.48 |
| Check | 7/15/2005 | 8582 | KUTP | -SPLIT- | | 850.00 | -281,505.48 |
| Check | 7/15/2005 | 8583 | KUWB | -SPLIT- | | 212.50 | -281,717.98 |
| Check | 7/15/2005 | 8584 | KZTV | -SPLIT- | | 935.00 | -282,652.98 |
| Check | 7/15/2005 | 8585 | MALL | -SPLIT- | | 510.00 | -283,162.98 |
| Check | 7/15/2005 | 8586 | STUF | -SPLIT- | | 425.00 | -283,587.98 |
| Check | 7/15/2005 | 8587 | TRAV | -SPLIT- | | 5,015.00 | -288,602.98 |
| Check | 7/15/2005 | 8588 | TTMC | -SPLIT- | | 382.50 | -288,985.48 |
| Check | 7/15/2005 | 8589 | WBDT | -SPLIT- | | 1,168.75 | -290,154.23 |
| Check | 7/15/2005 | 8590 | WBRC | -SPLIT- | | 1,275.00 | -291,429.23 |
| Check | 7/15/2005 | 8591 | WCIU | -SPLIT- | | 1,615.00 | -293,044.23 |
| Check | 7/15/2005 | 8592 | WDAF | -SPLIT- | | 1,275.00 | -294,319.23 |
| Check | 7/15/2005 | 8593 | WDCA | -SPLIT- | | 2,635.00 | -296,954.23 |
| Check | 7/15/2005 | 8594 | WFLD | -SPLIT- | | 5,525.00 | -302,479.23 |
| Check | 7/15/2005 | 8595 | WFOX | -SPLIT- | | 531.25 | -303,010.48 |
| Check | 7/15/2005 | 8596 | WFTX | -SPLIT- | | 1,870.00 | -304,880.48 |
| Check | 7/15/2005 | 8597 | WITI | -SPLIT- | | 1,891.25 | -306,771.73 |
| Check | 7/15/2005 | 8598 | WIZE | -SPLIT- | | 16,000.30 | -322,772.03 |
| Check | 7/15/2005 | 8599 | WJBK | -SPLIT- | | 5,610.00 | -328,382.03 |
| Check | 7/15/2005 | 8600 | WKBT | -SPLIT- | | 403.75 | -328,785.78 |
| Check | 7/15/2005 | 8601 | WLNS | -SPLIT- | | 255.00 | -329,040.78 |
| Check | 7/15/2005 | 8602 | WLNY-TV | -SPLIT- | | 6,970.00 | -336,010.78 |
| Check | 7/15/2005 | 8603 | WMCN | -SPLIT- | | 1,275.00 | -337,285.78 |
| Check | 7/15/2005 | 8604 | WOFL | -SPLIT- | | 1,530.00 | -338,815.78 |
| Check | 7/15/2005 | 8605 | WOGX | -SPLIT- | | 658.75 | -339,474.53 |

ITV00353

# ITV Direct
## General Ledger
### As of September 30, 2005

Accrual Basis

| Type | Date | Num | Name | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|
| Check | 7/15/2005 | 8606 | WPLG | -SPLIT- | | 318.75 | -339,793.28 |
| Check | 7/15/2005 | 8607 | WPTA | -SPLIT- | | 573.75 | -340,367.03 |
| Check | 7/15/2005 | 8608 | WPWR | -SPLIT- | | 1,933.75 | -342,300.78 |
| Check | 7/15/2005 | 8609 | WRBW | -SPLIT- | | 765.00 | -343,065.78 |
| Check | 7/15/2005 | 8610 | WTOL | -SPLIT- | | 212.50 | -343,278.28 |
| Check | 7/15/2005 | 8611 | WTTG | -SPLIT- | | 425.00 | -343,703.28 |
| Check | 7/15/2005 | 8612 | WTVK | -SPLIT- | | 1,020.00 | -344,723.28 |
| Check | 7/15/2005 | 8613 | WTVT | -SPLIT- | | 2,550.00 | -347,273.28 |
| Check | 7/15/2005 | 8614 | WUHF | -SPLIT- | | 595.00 | -347,868.28 |
| Check | 7/15/2005 | 8615 | WUTV | -SPLIT- | | 2,805.00 | -350,673.28 |
| Check | 7/15/2005 | 8616 | WWNY | -SPLIT- | | 722.50 | -351,395.78 |
| Check | 7/15/2005 | 8617 | WWOR | -SPLIT- | | 11,475.00 | -362,870.78 |
| Check | 7/15/2005 | 8618 | XLPN | -SPLIT- | | 1,381.25 | -364,252.03 |
| Check | 7/15/2005 | 8619 | Fairway Media | -SPLIT- | | 34,140.25 | -398,392.28 |
| Check | 7/15/2005 | 8620 | PAX | -SPLIT- | | 53,167.50 | -451,559.78 |
| Check | 7/15/2005 | 8621 | AUCT | -SPLIT- | | 1,423.75 | -452,983.53 |
| Deposit | 7/19/2005 | | Direct Marketing Concepts, … | -SPLIT- | 100,000.00 | | -352,983.53 |
| Deposit | 7/20/2005 | | Direct Marketing Concepts, … | -SPLIT- | 531.25 | | -352,452.28 |
| Deposit | 7/22/2005 | | Direct Marketing Concepts, … | Due to Direct Marketing Concept | 75,000.00 | | -277,452.28 |
| Deposit | 7/25/2005 | | Direct Marketing Concepts, … | Due to Direct Marketing Concept | 100,000.00 | | -177,452.28 |
| Deposit | 7/26/2005 | | Direct Marketing Concepts, … | Due to Direct Marketing Concept | 100,000.00 | | -77,452.28 |
| Deposit | 7/28/2005 | | Direct Marketing Concepts, … | Due to Direct Marketing Concept | 75,000.00 | | -2,452.28 |
| Deposit | 7/29/2005 | | Direct Marketing Concepts, … | Due to Direct Marketing Concept | 10,000.00 | | 7,547.72 |
| Deposit | 8/31/2005 | | | Bank Service Charges | | 4.34 | 7,543.38 |
| Bill Pmt -Check | 9/12/2005 | 8622 | Leo H. Bonarrigo, CPA | Accounts Payable | | 5,000.00 | 2,543.38 |
| Check | 9/24/2005 | | ITV Direct | Client FUNDS ACCOUNT | 1,000.00 | | 3,543.38 |
| Check | 9/26/2005 | | Commonwealth of Massa… | Penalty | | 490.00 | 3,053.38 |
| Check | 9/28/2005 | | Massachusetts Department… | Tax Payment | | 23.34 | 3,030.04 |
| **Total Checking - Beverly National** | | | | | **30,132,579.64** | **30,129,549.60** | **3,030.04** |
| | | | | | | | |
| **Client FUNDS ACCOUNT** | | | | | | | 0.00 |
| Deposit | 1/27/2005 | | Alena Group | Client Media Funding | 24,584.90 | | 24,584.90 |
| Check | 2/21/2005 | TRAN… | ITV Direct | Checking - Beverly National | | 24,584.09 | 0.81 |
| Deposit | 3/11/2005 | | ITV Direct | ITV Direct | 25,000.00 | | -24,999.19 |
| Deposit | 3/11/2005 | | Alena Group | Client Media Funding | 25,000.00 | | 0.81 |
| Deposit | 3/29/2005 | | Alena Group | Client Media Funding | 33,130.10 | | 33,130.91 |
| Deposit | 3/31/2005 | | ITV Direct | Checking - Beverly National | | 33,130.00 | 0.91 |
| Check | 3/31/2005 | | Direct Marketing Concepts… | Checking - Beverly National | | | 0.91 |
| Deposit | 7/13/2005 | | Direct Marketing Concepts… | Due to Direct Marketing Concept | 1,000.00 | | 1,000.91 |
| Check | 9/24/2005 | | ITV Direct | Checking - Beverly National | | 1,000.00 | 0.91 |
| **Total Client FUNDS ACCOUNT** | | | | | **83,715.00** | **83,714.09** | **0.91** |

ITV00354

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DIRECT MARKETING CONCEPTS, INC., | ) |
| ITV DIRECT, INC., DIRECT | ) |
| FULFILLMENT, LLC, DONALD | ) |
| BARRETT, and ROBERT MAIHOS, | ) |
| | ) |
| Defendants. | ) |

C.A. No. 05-11907-JLT

## AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### EXHIBIT J



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 • 978-922-2100 Member FDIC

| | |
|---|---|
| Last statement: April 30, 2005 | Page 1 of 8 |
| This statement: May 31, 2005 | 2-8000216-16 |
| Total days in statement period: 31 | (601) |

ITV DIRECT, INC
HOLD MAIL/FWD TO CUMMINGS CTR

Direct inquiries to:
Deposit Operations, 978-922-2100

Beverly National Bank
240 Cabot Street
Beverly, MA  01915-4588

*HOME RENOVATIONS, COLLEGE TUITION, VACATION, CAR, DEBT CONSOLIDATION... YOU CAN MAKE IT HAPPEN WITH A HOME EQUITY FROM BEVERLY NATIONAL. CHOOSE EITHER A LOW-RATE HOME EQUITY LINE OF CREDIT OR FIXED-RATE LOAN. CALL FOR DETAILS. AND DON'T FORGET, THERE'S STILL TIME TO CONTRIBUTE TO YOUR IRA. CALL JIM WILLIAMS FOR RETIREMENT PLAN OPTIONS.*

## Ultimate Bus Success

| | | | |
|---|---|---|---|
| Account number | 2-8000216-16 | Beginning balance | $188,019.70 |
| Enclosures | 601 | Total additions | 1,747,757.62 |
| Low balance | $49,488.22 | Total subtractions | 1,886,289.10 |
| | | Ending balance | $49,488.22 |

## CHECKS

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 6793 | 05-02 | 11,560.00 | 7007 * | 05-05 | 1,572.50 |
| 6891 * | 05-03 | 619.78 | 7008 | 05-04 | 2,358.75 |
| 6894 * | 05-03 | 127.50 | 7009 | 05-05 | 1,020.00 |
| 6908 * | 05-03 | 297.50 | 7010 | 05-06 | 2,550.00 |
| 6937 * | 05-02 | 170.00 | 7011 | 05-04 | 680.00 |
| 6939 * | 05-02 | 2,550.00 | 7014 * | 05-06 | 1,275.00 |
| 6940 | 05-02 | 425.00 | 7016 * | 05-06 | 595.00 |
| 6964 * | 05-02 | 935.00 | 7017 | 05-02 | 7,225.00 |
| 6965 | 05-06 | 595.00 | 7018 | 05-05 | 340.00 |
| 6975 * | 05-04 | 680.00 | 7019 | 05-05 | 191.25 |
| 6980 * | 05-04 | 935.00 | 7021 * | 05-05 | 191.25 |

ITV00165



## BEVERLY NATIONAL BANK
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC                                              Page 2 of 8
May 31, 2005                                                 2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 7033 | 05-05 | 1,381.25 | 7092 | 05-04 | 8,000.16 |
| 7034 | 05-06 | 255.00 | 7096 * | 05-05 | 191.25 |
| 7036 * | 05-09 | 297.50 | 7097 | 05-05 | 9,137.50 |
| 7037 | 05-03 | 1,360.00 | 7098 | 05-04 | 2,465.00 |
| 7038 | 05-02 | 23,545.00 | 7100 * | 05-09 | 382.50 |
| 7043 * | 05-06 | 127.50 | 7101 | 05-05 | 935.00 |
| 7044 | 05-04 | 170.00 | 7102 | 05-11 | 318.75 |
| 7045 | 05-04 | 3,459.00 | 7103 | 05-05 | 1,360.00 |
| 7046 | 05-04 | 255.00 | 7104 | 05-04 | 1,190.00 |
| 7047 | 05-10 | 3,591.25 | 7105 | 05-04 | 1,105.00 |
| 7049 * | 05-02 | 5,355.00 | 7106 | 05-02 | 998.75 |
| 7050 | 05-05 | 765.00 | 7107 | 05-02 | 1,126.25 |
| 7051 | 05-09 | 2,975.00 | 7110 * | 05-16 | 595.00 |
| 7052 | 05-05 | 106.25 | 7112 * | 05-06 | 552.50 |
| 7053 | 05-04 | 3,187.50 | 7113 | 05-02 | 1,678.75 |
| 7054 | 05-06 | 1,827.50 | 7115 * | 05-09 | 2,635.00 |
| 7055 | 05-05 | 1,275.00 | 7116 | 05-06 | 255.00 |
| 7057 * | 05-11 | 170.00 | 7117 | 05-05 | 2,592.50 |
| 7058 | 05-03 | 3,400.00 | 7118 | 05-05 | 1,466.25 |
| 7059 | 05-06 | 1,317.50 | 7119 | 05-06 | 595.00 |
| 7060 | 05-04 | 510.00 | 7120 | 05-17 | 1,487.50 |
| 7061 | 05-09 | 22,525.00 | 7122 * | 05-11 | 1,275.00 |
| 7062 | 05-03 | 15,632.35 | 7124 * | 05-03 | 340.00 |
| 7064 * | 05-03 | 8,075.00 | 7125 | 05-02 | 3,400.00 |
| 7065 | 05-04 | 212.50 | 7126 | 05-02 | 1,423.75 |
| 7066 | 05-04 | 1,232.50 | 7127 | 05-02 | 68,773.50 |
| 7067 | 05-03 | 6,800.00 | 7133 * | 05-03 | 6,469.00 |
| 7068 | 05-04 | 403.75 | 7139 * | 05-11 | 16,575.04 |
| 7069 | 05-02 | 5,100.00 | 7140 | 05-10 | 1,402.50 |
| 7070 | 05-02 | 106.25 | 7141 | 05-10 | 531.25 |
| 7071 | 05-09 | 297.50 | 7142 | 05-11 | 2,465.00 |
| 7072 | 05-11 | 1,700.00 | 7143 | 05-11 | 2,125.00 |
| 7073 | 05-05 | 1,147.50 | 7144 | 05-10 | 1,020.00 |
| 7075 * | 05-04 | 722.50 | 7145 | 05-09 | 5,000.00 |
| 7076 | 05-05 | 467.50 | 7146 | 05-09 | 6,205.00 |
| 7077 | 05-06 | 276.25 | 7147 | 05-10 | 1,700.00 |
| 7078 | 05-05 | 3,272.50 | 7148 | 05-10 | 935.00 |
| 7079 | 05-05 | 6,162.50 | 7149 | 05-09 | 39,100.00 |
| 7081 * | 05-04 | 1,020.00 | 7150 | 05-10 | 2,167.50 |
| 7082 | 05-11 | 318.75 | 7151 | 05-12 | 3,973.75 |

ITV00166



# BEVERLY NATIONAL BANK
### —— EARNING YOUR TRUST SINCE 1802 ——
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC
May 31, 2005

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 7161 * | 05-09 | 1,572.50 | 7209 | 05-12 | 127.50 |
| 7162 | 05-10 | 2,358.75 | 7211 * | 05-11 | 5,440.00 |
| 7163 | 05-12 | 2,550.00 | 7212 | 05-12 | 1,275.00 |
| 7164 | 05-11 | 340.00 | 7213 | 05-12 | 977.50 |
| 7165 | 05-05 | 1,020.00 | 7214 | 05-05 | 3,060.00 |
| 7166 | 05-12 | 595.00 | 7215 | 05-05 | 765.00 |
| 7167 | 05-05 | 3,506.25 | 7216 | 05-06 | 212.50 |
| 7168 | 05-13 | 382.50 | 7217 | 05-17 | 170.00 |
| 7169 | 05-12 | 6,970.00 | 7218 | 05-10 | 6,800.00 |
| 7170 | 05-11 | 1,105.00 | 7219 | 05-12 | 1,062.50 |
| 7171 | 05-12 | 616.25 | 7221 * | 05-24 | 2,210.00 |
| 7172 | 05-11 | 510.00 | 7222 | 05-18 | 170.00 |
| 7173 | 05-11 | 255.00 | 7223 | 05-16 | 9,180.00 |
| 7174 | 05-05 | 658.75 | 7224 | 05-10 | 2,380.00 |
| 7175 | 05-12 | 616.25 | 7225 | 05-10 | 15,632.35 |
| 7176 | 05-05 | 1,700.00 | 7226 | 05-10 | 212.50 |
| 7177 | 05-05 | 1,020.00 | 7227 | 05-09 | 10,008.75 |
| 7178 | 05-11 | 783.90 | 7228 | 05-09 | 16,150.00 |
| 7179 | 05-13 | 780.00 | 7229 | 05-09 | 3,400.00 |
| 7180 | 05-18 | 148.75 | 7230 | 05-10 | 403.75 |
| 7181 | 05-11 | 340.00 | 7231 | 05-16 | 9,000.32 |
| 7182 | 05-09 | 501.50 | 7232 | 05-09 | 2,550.00 |
| 7183 | 05-05 | 297.50 | 7233 | 05-16 | 127.50 |
| 7184 | 05-11 | 1,445.00 | 7234 | 05-05 | 680.00 |
| 7185 | 05-23 | 3,761.25 | 7235 | 05-05 | 344.25 |
| 7186 | 05-12 | 935.00 | 7236 | 05-11 | 722.50 |
| 7187 | 05-13 | 1,700.00 | 7237 | 05-13 | 1,997.50 |
| 7188 | 05-05 | 616.25 | 7238 | 05-05 | 1,020.00 |
| 7189 | 05-09 | 1,147.50 | 7239 | 05-11 | 233.75 |
| 7190 | 05-11 | 233.75 | 7240 | 05-11 | 191.25 |
| 7191 | 05-10 | 1,615.00 | 7241 | 05-06 | 1,360.00 |
| 7192 | 05-09 | 765.00 | 7242 | 05-11 | 276.25 |
| 7193 | 05-05 | 191.25 | 7243 | 05-12 | 2,507.50 |
| 7194 | 05-05 | 289.00 | 7244 | 05-11 | 12,240.00 |
| 7195 | 05-11 | 3,272.50 | 7245 | 05-05 | 714.00 |
| 7196 | 05-16 | 148.75 | 7246 | 05-16 | 106.25 |
| 7197 | 05-10 | 191.25 | 7247 | 05-11 | 12,218.75 |
| 7198 | 05-05 | 2,975.00 | 7248 | 05-11 | 3,697.50 |
| 7199 | 05-10 | 531.25 | 7249 | 05-12 | 998.75 |
| 7200 | 05-16 | 1,530.00 | 7250 | 05-11 | 3,272.50 |



BEVERLY NATIONAL BANK
—EARNING YOUR TRUST SINCE 1802—
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC
May 31, 2005

Page 4 of 8
2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 7259 | 05-12 | 191.25 | 7307 | 05-13 | 1,381.25 |
| 7260 | 05-10 | 2,975.00 | 7308 | 05-13 | 8,925.00 |
| 7261 | 05-13 | 127.50 | 7309 | 05-16 | 1,190.00 |
| 7262 | 05-11 | 3,995.00 | 7310 | 05-13 | 8,500.00 |
| 7263 | 05-05 | 595.00 | 7311 | 05-13 | 2,677.50 |
| 7264 | 05-16 | 382.50 | 7312 | 05-13 | 1,105.00 |
| 7265 | 05-13 | 935.00 | 7313 | 05-12 | 2,295.00 |
| 7266 | 05-13 | 701.25 | 7314 | 05-23 | 5,482.50 |
| 7267 | 05-13 | 1,530.00 | 7315 | 05-23 | 6,502.50 |
| 7268 | 05-12 | 212.50 | 7316 | 05-18 | 1,572.50 |
| 7269 | 05-09 | 3,825.00 | 7317 | 05-18 | 2,358.75 |
| 7270 | 05-10 | 998.75 | 7318 | 05-16 | 595.00 |
| 7271 | 05-12 | 616.25 | 7319 | 05-12 | 1,020.00 |
| 7272 | 05-05 | 1,020.00 | 7320 | 05-17 | 1,360.00 |
| 7273 | 05-27 | 174.25 | 7321 | 05-12 | 765.00 |
| 7274 | 05-17 | 255.00 | 7322 | 05-12 | 4,780.75 |
| 7275 | 05-05 | 1,615.00 | 7323 | 05-13 | 595.00 |
| 7276 | 05-05 | 1,785.00 | 7325 * | 05-17 | 1,445.00 |
| 7277 | 05-16 | 552.50 | 7326 | 05-16 | 807.50 |
| 7278 | 05-12 | 1,785.00 | 7327 | 05-12 | 340.00 |
| 7279 | 05-05 | 1,530.00 | 7328 | 05-12 | 850.00 |
| 7280 | 05-05 | 2,210.00 | 7329 | 05-12 | 127.50 |
| 7281 | 05-16 | 2,635.00 | 7330 | 05-12 | 1,423.75 |
| 7282 | 05-16 | 255.00 | 7331 | 05-16 | 616.25 |
| 7283 | 05-16 | 510.00 | 7332 | 05-12 | 3,400.00 |
| 7284 | 05-11 | 1,466.25 | 7333 | 05-13 | 170.00 |
| 7285 | 05-17 | 1,402.50 | 7334 | 05-13 | 599.45 |
| 7286 | 05-05 | 318.75 | 7335 | 05-17 | 510.00 |
| 7287 | 05-13 | 935.00 | 7336 | 05-13 | 170.00 |
| 7288 | 05-10 | 6,120.00 | 7337 | 05-12 | 212.50 |
| 7289 | 05-05 | 2,273.75 | 7338 | 05-18 | 501.50 |
| 7290 | 05-11 | 46,716.00 | 7339 | 05-13 | 595.00 |
| 7291 | 05-12 | 1,296.25 | 7340 | 05-25 | 2,061.25 |
| 7292 | 05-10 | 255.00 | 7341 | 05-12 | 85.00 |
| 7293 | 05-02 | 3,500.00 | 7342 | 05-23 | 595.00 |
| 7294 | 05-18 | 8,287.52 | 7343 | 05-17 | 1,955.00 |
| 7295 | 05-18 | 1,402.50 | 7344 | 05-12 | 616.25 |
| 7296 | 05-18 | 531.25 | 7345 | 05-19 | 297.50 |
| 7297 | 05-18 | 2,465.00 | 7346 | 05-17 | 255.00 |
| 7298 | 05-18 | 3,825.00 | 7347 | 05-18 | 956.25 |

ITV00168



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC.
May 31, 2005

Page 5 of 8
2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 7356 | 05-20 | 850.00 | 7407 | 05-19 | 595.00 |
| 7357 | 05-12 | 233.75 | 7408 | 05-16 | 191.25 |
| 7358 | 05-16 | 1,530.00 | 7409 | 05-16 | 8,000.16 |
| 7359 | 05-12 | 255.00 | 7411 * | 05-12 | 1,593.75 |
| 7360 | 05-11 | 297.50 | 7412 | 05-12 | 531.25 |
| 7361 | 05-26 | 4,398.75 | 7413 | 05-24 | 446.25 |
| 7362 | 05-12 | 2,210.00 | 7414 | 05-23 | 488.75 |
| 7363 | 05-12 | 552.50 | 7415 | 05-11 | 8,627.50 |
| 7364 | 05-11 | 4,165.00 | 7416 | 05-19 | 106.25 |
| 7365 | 05-19 | 765.00 | 7417 | 05-13 | 127.50 |
| 7367 * | 05-12 | 42.50 | 7418 | 05-16 | 2,465.00 |
| 7368 | 05-19 | 531.25 | 7419 | 05-19 | 2,805.00 |
| 7369 | 05-12 | 2,125.00 | 7420 | 05-12 | 595.00 |
| 7370 | 05-16 | 1,466.25 | 7421 | 05-18 | 382.50 |
| 7371 | 05-17 | 1,020.00 | 7422 | 05-24 | 935.00 |
| 7373 * | 05-12 | 765.00 | 7423 | 05-13 | 1,296.25 |
| 7374 | 05-12 | 106.25 | 7424 | 05-12 | 340.00 |
| 7375 | 05-17 | 127.50 | 7425 | 05-13 | 1,317.50 |
| 7376 | 05-20 | 3,400.00 | 7426 | 05-16 | 42.50 |
| 7377 | 05-12 | 297.50 | 7427 | 05-17 | 935.00 |
| 7378 | 05-20 | 1,317.50 | 7428 | 05-17 | 1,253.75 |
| 7379 | 05-18 | 510.00 | 7429 | 05-12 | 1,020.00 |
| 7380 | 05-18 | 3,315.00 | 7430 | 05-24 | 1,530.00 |
| 7382 * | 05-13 | 871.25 | 7431 | 05-12 | 1,615.00 |
| 7383 | 05-17 | 15,632.35 | 7432 | 05-23 | 552.50 |
| 7384 | 05-19 | 20,187.50 | 7433 | 05-12 | 127.50 |
| 7385 | 05-18 | 212.50 | 7435 * | 05-12 | 4,420.00 |
| 7386 | 05-18 | 616.25 | 7436 | 05-16 | 2,635.00 |
| 7387 | 05-16 | 11,028.75 | 7437 | 05-16 | 255.00 |
| 7388 | 05-17 | 3,910.00 | 7438 | 05-12 | 2,040.00 |
| 7389 | 05-17 | 5,100.00 | 7439 | 05-23 | 2,252.50 |
| 7390 | 05-18 | 403.75 | 7440 | 05-12 | 1,466.25 |
| 7391 | 05-20 | 4,500.16 | 7441 | 05-17 | 1,487.50 |
| 7392 | 05-17 | 2,550.00 | 7442 | 05-12 | 510.00 |
| 7393 | 05-16 | 297.50 | 7443 | 05-12 | 318.75 |
| 7394 | 05-12 | 114.75 | 7444 | 05-20 | 1,530.00 |
| 7395 | 05-16 | 722.50 | 7445 | 05-17 | 1,020.00 |
| 7396 | 05-16 | 531.25 | 7446 | 05-16 | 5,100.00 |
| 7397 | 05-18 | 276.25 | 7447 | 05-11 | 3,697.50 |
| 7398 | 05-23 | 1,806.25 | 7448 | 05-19 | 66,966.00 |



**BEVERLY NATIONAL BANK**
— Earning Your Trust Since 1802 —
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC.
May 31, 2005

Page 6 of 8
2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 7459 | 05-26 | 106.25 | 7511 | 05-19 | 1,700.00 |
| 7460 | 05-26 | 501.50 | 7512 | 05-26 | 807.50 |
| 7461 | 05-19 | 148.75 | 7513 | 05-19 | 892.50 |
| 7463 * | 05-27 | 170.00 | 7514 | 05-26 | 276.25 |
| 7464 | 05-26 | 1,041.25 | 7515 | 05-31 | 2,465.00 |
| 7465 | 05-19 | 382.50 | 7516 | 05-31 | 595.00 |
| 7466 | 05-27 | 1,530.00 | 7517 | 05-27 | 977.50 |
| 7467 | 05-19 | 616.25 | 7518 | 05-26 | 13,302.50 |
| 7468 | 05-25 | 892.50 | 7520 * | 05-25 | 807.50 |
| 7469 | 05-24 | 1,487.50 | 7521 | 05-25 | 2,847.50 |
| 7470 | 05-23 | 765.00 | 7522 | 05-25 | 7,500.00 |
| 7471 | 05-19 | 191.25 | 7523 | 05-26 | 595.00 |
| 7472 | 05-19 | 212.50 | 7524 | 05-31 | 276.25 |
| 7473 | 05-19 | 63.75 | 7525 | 05-18 | 8,000.16 |
| 7474 | 05-25 | 4,590.00 | 7526 | 05-19 | 531.25 |
| 7476 * | 05-25 | 127.50 | 7528 * | 05-26 | 488.75 |
| 7477 | 05-19 | 935.00 | 7529 | 05-31 | 3,400.00 |
| 7478 | 05-25 | 233.75 | 7530 | 05-26 | 255.00 |
| 7479 | 05-27 | 1,530.00 | 7531 | 05-25 | 7,225.00 |
| 7480 | 05-25 | 255.00 | 7532 | 05-19 | 595.00 |
| 7481 | 05-26 | 3,612.50 | 7533 | 05-31 | 382.50 |
| 7482 | 05-19 | 2,210.00 | 7534 | 05-27 | 1,870.00 |
| 7483 | 05-19 | 276.25 | 7535 | 05-31 | 595.00 |
| 7484 | 05-26 | 4,760.00 | 7536 | 05-25 | 1,742.50 |
| 7485 | 05-25 | 765.00 | 7537 | 05-26 | 1,020.00 |
| 7486 | 05-26 | 3,060.00 | 7538 | 05-26 | 1,572.50 |
| 7487 | 05-26 | 106.25 | 7539 | 05-19 | 297.50 |
| 7489 * | 05-25 | 3,187.50 | 7541 * | 05-19 | 1,615.00 |
| 7490 | 05-26 | 1,083.75 | 7542 | 05-27 | 552.50 |
| 7491 | 05-26 | 1,742.50 | 7543 | 05-31 | 1,062.50 |
| 7492 | 05-19 | 637.50 | 7546 * | 05-19 | 1,020.00 |
| 7493 | 05-19 | 106.25 | 7547 | 05-31 | 1,870.00 |
| 7494 | 05-27 | 3,400.00 | 7548 | 05-26 | 765.00 |
| 7495 | 05-27 | 1,062.50 | 7549 | 05-26 | 425.00 |
| 7496 | 05-25 | 510.00 | 7550 | 05-31 | 1,402.50 |
| 7498 * | 05-25 | 318.75 | 7551 | 05-19 | 255.00 |
| 7499 | 05-24 | 15,632.35 | 7552 | 05-19 | 420.75 |
| 7500 | 05-24 | 14,777.25 | 7553 | 05-27 | 1,105.00 |
| 7501 | 05-25 | 212.50 | 7554 | 05-26 | 1,742.50 |
| 7502 | 05-23 | 6,460.00 | 7555 | 05-25 | 1,423.75 |
| 7503 | 05-25 | 16,330.00 | 7556 | 05-31 | 68,286.75 |



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC
May 31, 2005

Page 7 of 8
2-8000216-16

| Number | Date | Amount |
|---|---|---|
| 7565 | 05-27 | 2,125.00 |
| 7566 | 05-24 | 510.00 |
| 7567 | 05-25 | 8,287.52 |
| 7568 | 05-25 | 1,402.50 |
| 7569 | 05-25 | 531.25 |
| 7570 | 05-25 | 2,465.00 |
| 7571 | 05-25 | 2,125.00 |
| 7572 | 05-25 | 510.00 |
| 7573 | 05-23 | 20,655.00 |
| 7574 | 05-23 | 680.00 |
| 7575 | 05-25 | 935.00 |
| 7576 | 05-25 | 31,705.00 |
| 7577 | 05-26 | 913.75 |
| 7578 | 05-23 | 956.25 |
| 7579 | 05-23 | 5,100.00 |
| 7580 | 05-25 | 4,250.00 |
| 7581 | 05-24 | 5,695.00 |
| 7582 | 05-23 | 1,232.50 |
| 7583 | 05-27 | 1,360.00 |
| 7584 | 05-31 | 5,482.50 |
| 7585 | 05-31 | 6,502.50 |
| 7586 | 05-24 | 1,572.50 |
| 7587 | 05-24 | 6,321.00 |
| 7588 | 05-24 | 983.00 |
| 7589 | 05-31 | 34,363.50 |
| 7590 | 05-23 | 1,000.00 |
| 7596 * | 05-24 | 19,524.50 |
| 7598 * | 05-31 | 26,520.00 |
| 7599 | 05-31 | 170.00 |
| 7603 * | 05-31 | 595.00 |
| 7604 | 05-27 | 1,020.00 |
| 7607 * | 05-27 | 3,973.75 |
| 7610 * | 05-31 | 42.50 |
| 7611 | 05-31 | 935.00 |
| 7616 * | 05-27 | 1,700.00 |
| 7618 * | 05-27 | 1,700.00 |
| 7620 * | 05-27 | 1,700.00 |
| 7626 * | 05-27 | 148.75 |
| 7629 * | 05-31 | 85.00 |
| 7632 * | 05-27 | 297.50 |

| Number | Date | Amount |
|---|---|---|
| 7641 | 05-27 | 212.50 |
| 7642 | 05-27 | 208.25 |
| 7643 | 05-27 | 765.00 |
| 7644 | 05-31 | 212.50 |
| 7648 * | 05-27 | 2,975.00 |
| 7654 * | 05-27 | 276.25 |
| 7657 * | 05-31 | 1,190.00 |
| 7658 | 05-27 | 85.00 |
| 7661 * | 05-31 | 1,615.00 |
| 7662 | 05-27 | 1,466.25 |
| 7664 * | 05-27 | 212.50 |
| 7665 | 05-27 | 106.25 |
| 7668 * | 05-27 | 148.75 |
| 7679 * | 05-31 | 361.25 |
| 7681 * | 05-27 | 680.00 |
| 7682 | 05-27 | 114.75 |
| 7684 * | 05-31 | 2,061.25 |
| 7686 * | 05-31 | 340.00 |
| 7690 * | 05-27 | 714.00 |
| 7695 * | 05-31 | 1,062.50 |
| 7696 | 05-31 | 3,315.00 |
| 7697 | 05-31 | 3,000.00 |
| 7699 * | 05-31 | 8,000.16 |
| 7700 | 05-27 | 573.75 |
| 7701 | 05-27 | 531.25 |
| 7707 * | 05-27 | 595.00 |
| 7711 * | 05-26 | 4,080.00 |
| 7712 | 05-31 | 2,061.25 |
| 7714 * | 05-26 | 2,252.50 |
| 7715 | 05-26 | 2,125.00 |
| 7716 | 05-27 | 2,040.00 |
| 7718 * | 05-27 | 1,615.00 |
| 7719 | 05-27 | 3,570.00 |
| 7721 * | 05-31 | 127.50 |
| 7722 | 05-27 | 446.25 |
| 7726 * | 05-31 | 1,487.50 |
| 7727 | 05-27 | 352.75 |
| 7730 * | 05-26 | 17,935.00 |
| 7733 * | 05-25 | 101,753.50 |
| 7741 * | 05-31 | 12,580.00 |



**BEVERLY NATIONAL BANK**
—— Earning Your Trust Since 1802 ——
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC.                                          Page 8 of 8
May 31, 2005                                              2-8000216-16

| Date  | Description         | Additions  |
|-------|---------------------|------------|
| 05-04 | Telephone Transfer  | 175,000.00 |
| 05-05 | Telephone Transfer  | 150,000.00 |
| 05-10 | Telephone Transfer  | 125,000.00 |
| 05-12 | Telephone Transfer  | 125,000.00 |
| 05-16 | Telephone Transfer  | 175,000.00 |
| 05-17 | Telephone Transfer  | 75,000.00  |
| 05-18 | Telephone Transfer  | 150,000.00 |
| 05-20 | Telephone Transfer  | 160,000.00 |
| 05-24 | Deposit             | 7,757.62   |
| 05-24 | Telephone Transfer  | 180,000.00 |
| 05-26 | Telephone Transfer  | 200,000.00 |
| 05-27 | Telephone Transfer  | 75,000.00  |

**DAILY BALANCES**

| Date  | Amount     | Date  | Amount     | Date  | Amount     |
|-------|------------|-------|------------|-------|------------|
| 04-30 | 188,019.70 | 05-11 | 80,615.61  | 05-23 | 242,805.79 |
| 05-02 | 196,397.45 | 05-12 | 127,530.86 | 05-24 | 347,209.06 |
| 05-03 | 146,391.32 | 05-13 | 78,636.41  | 05-25 | 102,996.79 |
| 05-04 | 270,873.16 | 05-16 | 174,330.93 | 05-26 | 225,441.38 |
| 05-05 | 350,308.31 | 05-17 | 176,111.08 | 05-27 | 254,741.13 |
| 05-06 | 331,289.56 | 05-18 | 272,559.40 | 05-31 | 49,488.22  |
| 05-09 | 168,645.40 | 05-19 | 153,292.90 |       |            |
| 05-10 | 232,644.30 | 05-20 | 301,695.24 |       |            |

ITV00172



## BEVERLY NATIONAL BANK
### EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

Last statement: May 31, 2005
This statement: June 30, 2005
Total days in statement period: 30

Page 1 of 8
2-8000216-16
(578)

Direct inquiries to:
Deposit Operations, 978 922-2100

ITV DIRECT, INC
HOLD MAIL/FWD TO CUMMINGS CTR

Beverly National Bank
240 Cabot Street
Beverly, MA  01915-4588

*HOME RENOVATIONS, COLLEGE TUITION, VACATION, CAR, DEBT CONSOLIDATION... YOU CAN MAKE IT HAPPEN WITH A HOME EQUITY FROM BEVERLY NATIONAL. CHOOSE EITHER A LOW-RATE HOME EQUITY LINE OF CREDIT OR FIXED-RATE LOAN. CALL FOR DETAILS. AND DON'T FORGET, THERE'S STILL TIME TO CONTRIBUTE TO YOUR IRA. CALL JIM WILLIAMS FOR RETIREMENT PLAN OPTIONS.*

## Ultimate Bus Success

| | | | | |
|---|---|---|---|---|
| Account number | 2-8000216-16 | Beginning balance | $49,488.22 |
| Enclosures | 578 | Total additions | 2,115,442.50 |
| Low balance | $60,927.33 | Total subtractions | 2,027,708.18 |
| | | Ending balance | $137,222.54 |

### CHECKS

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 7160 | 06-14 | 552.50 | 7597 * | 06-02 | 1,190.00 |
| 7381 * | 06-01 | 6,800.00 | 7600 * | 06-01 | 1,572.50 |
| 7450 * | 06-02 | 319.00 | 7601 | 06-02 | 1,402.50 |
| 7457 * | 06-01 | 255.00 | 7602 | 06-02 | 212.50 |
| 7462 * | 06-03 | 2,061.25 | 7606 * | 06-02 | 935.00 |
| 7475 * | 06-07 | 297.50 | 7608 * | 06-02 | 595.00 |
| 7497 * | 06-02 | 2,635.00 | 7609 | 06-02 | 191.25 |
| 7519 * | 06-01 | 1,147.50 | 7612 * | 06-02 | 340.00 |
| 7527 * | 06-20 | 63.75 | 7613 | 06-02 | 42.50 |
| 7540 * | 06-02 | 1,530.00 | 7614 | 06-03 | 1,700.00 |
| 7544 * | 06-06 | 5,270.00 | 7615 | 06-01 | 425.00 |

ITV00173



**BEVERLY NATIONAL BANK**
—EARNING YOUR TRUST SINCE 1802—
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC                                    Page 2 of 8
June 30, 2005                                      2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 7628 | 06-03 | 2,061.25 | 7709 | 06-02 | 935.00 |
| 7630 * | 06-03 | 658.75 | 7710 | 06-06 | 701.25 |
| 7631 | 06-02 | 807.50 | 7713 * | 06-02 | 1,615.00 |
| 7633 * | 06-06 | 255.00 | 7717 * | 06-03 | 1,530.00 |
| 7635 * | 06-02 | 297.50 | 7720 * | 06-06 | 552.50 |
| 7636 | 06-01 | 106.25 | 7723 * | 06-08 | 255.00 |
| 7638 * | 06-01 | 1,062.50 | 7724 | 06-01 | 1,317.50 |
| 7639 | 06-01 | 2,295.00 | 7725 | 06-02 | 1,402.50 |
| 7645 * | 06-02 | 4,590.00 | 7728 * | 06-08 | 1,530.00 |
| 7646 | 06-07 | 148.75 | 7729 | 06-01 | 1,020.00 |
| 7647 | 06-03 | 255.00 | 7731 * | 06-02 | 2,273.75 |
| 7649 * | 06-03 | 233.75 | 7734 * | 06-02 | 733.52 |
| 7650 | 06-03 | 765.00 | 7735 | 06-08 | 8,287.50 |
| 7651 | 06-02 | 255.00 | 7736 | 06-08 | 1,190.00 |
| 7652 | 06-01 | 297.50 | 7737 | 06-08 | 531.25 |
| 7653 | 06-09 | 2,953.75 | 7738 | 06-08 | 6,250.00 |
| 7655 * | 06-03 | 5,440.00 | 7739 | 06-10 | 2,465.00 |
| 7659 * | 06-03 | 170.00 | 7740 | 06-10 | 2,125.00 |
| 7660 | 06-03 | 127.50 | 7742 * | 06-08 | 1,190.00 |
| 7663 * | 06-07 | 743.75 | 7743 | 06-08 | 46,325.00 |
| 7666 * | 06-08 | 170.00 | 7744 | 06-08 | 212.50 |
| 7667 | 06-03 | 3,400.00 | 7745 | 06-08 | 4,866.25 |
| 7669 * | 06-03 | 807.50 | 7746 | 06-08 | 5,533.50 |
| 7670 | 06-02 | 510.00 | 7747 | 06-01 | 3,952.50 |
| 7671 | 06-01 | 15,632.35 | 7748 | 06-08 | 9,350.00 |
| 7672 | 06-01 | 9,367.00 | 7749 | 06-01 | 1,211.25 |
| 7673 | 06-02 | 467.50 | 7750 | 06-01 | 12,367.50 |
| 7674 | 06-02 | 616.25 | 7751 | 06-10 | 4,717.50 |
| 7675 | 06-02 | 403.75 | 7752 | 06-10 | 5,015.00 |
| 7676 | 06-02 | 4,500.16 | 7753 | 06-08 | 1,275.00 |
| 7677 | 06-02 | 127.50 | 7754 | 06-08 | 1,402.50 |
| 7678 | 06-01 | 2,550.00 | 7755 | 06-08 | 212.50 |
| 7680 * | 06-02 | 297.50 | 7756 | 06-08 | 297.50 |
| 7683 * | 06-01 | 127.50 | 7757 | 06-06 | 1,020.00 |
| 7685 * | 06-01 | 510.00 | 7758 | 06-09 | 1,020.00 |
| 7687 * | 06-02 | 276.25 | 7759 | 06-06 | 3,973.75 |
| 7688 | 06-02 | 2,805.00 | 7760 | 06-10 | 467.50 |
| 7689 | 06-02 | 595.00 | 7761 | 06-08 | 191.25 |
| 7691 * | 06-01 | 531.25 | 7762 | 06-13 | 127.50 |
| 7692 | 06-03 | 19,741.25 | 7763 | 06-08 | 807.50 |
| 7694 * | 06-01 | 2,295.00 | 7764 | 06-06 | 1,275.00 |

ITV00174



**BEVERLY NATIONAL BANK**
——EARNING YOUR TRUST SINCE 1802——
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC                                          Page 3 of 8
June 30, 2005                                            2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 7772 | 06-06 | 148.75 | 7846 | 06-10 | 361.25 |
| 7773 | 06-16 | 3,761.25 | 7847 | 06-10 | 297.50 |
| 7774 | 06-08 | 340.00 | 7848 | 06-06 | 114.75 |
| 7775 | 06-10 | 743.75 | 7849 | 06-09 | 807.50 |
| 7776 | 06-10 | 85.00 | 7850 | 06-13 | 722.50 |
| 7777 | 06-06 | 616.25 | 7851 | 06-17 | 722.50 |
| 7778 | 06-08 | 1,572.50 | 7852 | 06-14 | 510.00 |
| 7779 | 06-14 | 255.00 | 7853 | 06-06 | 340.00 |
| 7780 | 06-09 | 850.00 | 7854 | 06-09 | 2,800.00 |
| 7781 | 06-06 | 616.25 | 7855 | 06-10 | 340.00 |
| 7782 | 06-08 | 1,317.50 | 7856 | 06-10 | 276.25 |
| 7783 | 06-09 | 765.00 | 7857 | 06-09 | 11,645.00 |
| 7784 | 06-06 | 144.50 | 7858 | 06-06 | 714.00 |
| 7785 | 06-06 | 212.50 | 7859 | 06-09 | 340.00 |
| 7786 | 06-06 | 208.25 | 7860 | 06-06 | 892.50 |
| 7787 | 06-09 | 4,590.00 | 7862 * | 06-09 | 13,515.00 |
| 7789 * | 06-06 | 531.25 | 7863 | 06-09 | 403.75 |
| 7790 | 06-06 | 467.50 | 7864 | 06-09 | 2,847.50 |
| 7791 | 06-13 | 233.75 | 7866 * | 06-06 | 318.75 |
| 7793 * | 06-09 | 3,166.25 | 7867 | 06-14 | 595.00 |
| 7794 | 06-06 | 2,210.00 | 7868 | 06-02 | 10,599.84 |
| 7795 | 06-06 | 276.25 | 7869 | 06-06 | 531.25 |
| 7796 | 06-10 | 4,080.00 | 7871 * | 06-16 | 191.25 |
| 7797 | 06-06 | 3,145.00 | 7872 | 06-13 | 6,587.50 |
| 7798 | 06-08 | 1,190.00 | 7873 | 06-13 | 1,593.75 |
| 7799 | 06-06 | 3,655.00 | 7874 | 06-08 | 4,420.00 |
| 7800 | 06-06 | 340.00 | 7875 | 06-06 | 701.25 |
| 7801 | 06-10 | 531.25 | 7876 | 06-16 | 382.50 |
| 7803 * | 06-10 | 1,062.50 | 7878 * | 06-09 | 3,867.50 |
| 7804 | 06-10 | 1,275.00 | 7879 | 06-08 | 2,167.50 |
| 7805 | 06-10 | 1,742.50 | 7880 | 06-09 | 1,955.00 |
| 7806 | 06-06 | 765.00 | 7881 | 06-07 | 2,635.00 |
| 7807 | 06-06 | 106.25 | 7882 | 06-13 | 255.00 |
| 7809 * | 06-10 | 3,400.00 | 7884 * | 06-06 | 1,615.00 |
| 7810 | 06-06 | 148.75 | 7886 * | 06-08 | 1,615.00 |
| 7811 | 06-10 | 1,062.50 | 7887 | 06-17 | 467.50 |
| 7812 | 06-08 | 255.00 | 7888 | 06-13 | 1,062.50 |
| 7813 | 06-14 | 2,953.75 | 7889 | 06-06 | 722.50 |
| 7814 | 06-14 | 306.00 | 7890 | 06-06 | 892.50 |
| 7815 | 06-08 | 1,572.50 | 7891 | 06-13 | 2,210.00 |
| 7816 | 06-07 | 15,632.35 | 7892 | 06-13 | 255.00 |



**BEVERLY NATIONAL BANK**
——— EARNING YOUR TRUST SINCE 1802———
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC                                    Page 4 of 8
June 30, 2005                                      2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 7900 | 06-16 | 1,105.00 | 7950 | 06-20 | 929.67 |
| 7901 | 06-13 | 680.00 | 7951 | 06-17 | 1,317.50 |
| 7902 | 06-09 | 13,430.00 | 7952 | 06-16 | 212.50 |
| 7903 | 06-08 | 1,423.75 | 7953 | 06-15 | 1,190.00 |
| 7904 | 06-16 | 48.00 | 7954 | 06-09 | 148.75 |
| 7905 | 06-06 | 51,838.75 | 7955 | 06-20 | 1,360.00 |
| 7908 * | 06-09 | 680.00 | 7956 | 06-22 | 2,061.25 |
| 7909 | 06-15 | 8,287.52 | 7957 | 06-15 | 743.75 |
| 7910 | 06-15 | 1,402.50 | 7958 | 06-21 | 233.75 |
| 7911 | 06-15 | 531.25 | 7959 | 06-09 | 2,805.00 |
| 7912 | 06-15 | 2,465.00 | 7960 | 06-09 | 233.75 |
| 7913 | 06-15 | 3,825.00 | 7961 | 06-17 | 637.50 |
| 7914 | 06-13 | 14,705.00 | 7962 | 06-16 | 913.75 |
| 7915 | 06-15 | 1,190.00 | 7963 | 06-09 | 616.25 |
| 7916 | 06-14 | 48,875.00 | 7964 | 06-15 | 170.00 |
| 7917 | 06-13 | 2,082.50 | 7965 | 06-15 | 765.00 |
| 7918 | 06-15 | 3,060.00 | 7966 | 06-09 | 212.50 |
| 7919 | 06-16 | 2,847.50 | 7967 | 06-09 | 208.25 |
| 7920 | 06-13 | 2,868.75 | 7968 | 06-15 | 4,590.00 |
| 7921 | 06-10 | 1,976.25 | 7969 | 06-09 | 106.25 |
| 7922 | 06-13 | 4,675.00 | 7970 | 06-16 | 127.50 |
| 7923 | 06-20 | 5,865.00 | 7971 | 06-09 | 467.50 |
| 7924 | 06-14 | 7,395.00 | 7972 | 06-16 | 233.75 |
| 7925 | 06-13 | 3,060.00 | 7973 | 06-21 | 3,463.75 |
| 7926 | 06-14 | 7,055.00 | 7974 | 06-09 | 276.25 |
| 7927 | 06-13 | 2,465.00 | 7975 | 06-15 | 4,760.00 |
| 7928 | 06-13 | 3,145.00 | 7976 | 06-09 | 2,805.00 |
| 7929 | 06-15 | 212.50 | 7977 | 06-09 | 340.00 |
| 7930 | 06-15 | 1,402.50 | 7978 | 06-17 | 106.25 |
| 7931 | 06-15 | 212.50 | 7979 | 06-20 | 446.25 |
| 7932 | 06-15 | 595.00 | 7980 | 06-09 | 765.00 |
| 7933 | 06-16 | 595.00 | 7981 | 06-09 | 106.25 |
| 7934 | 06-09 | 4,483.75 | 7982 | 06-17 | 3,400.00 |
| 7935 | 06-22 | 467.50 | 7983 | 06-09 | 148.75 |
| 7936 | 06-15 | 191.25 | 7984 | 06-16 | 1,317.50 |
| 7937 | 06-16 | 255.00 | 7985 | 06-14 | 3,145.00 |
| 7938 | 06-15 | 63.75 | 7986 | 06-24 | 174.25 |
| 7939 | 06-16 | 1,678.75 | 7987 | 06-22 | 20,315.00 |
| 7940 | 06-16 | 191.25 | 7988 | 06-15 | 1,338.75 |
| 7941 | 06-21 | 743.75 | 7989 | 06-14 | 26,963.70 |
| 7942 | 06-16 | 170.00 | 7990 | 06-15 | 467.50 |

ITV00176



**BEVERLY NATIONAL BANK**
— EARNING YOUR TRUST SINCE 1802 —
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC                                    Page 5 of 8
June 30, 2005                                      2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 7998 | 06-16 | 2,550.00 | 8050 | 06-07 | 21,590.00 |
| 7999 | 06-15 | 361.25 | 8051 | 06-08 | 4,500.00 |
| 8000 | 06-20 | 297.50 | 8052 | 06-08 | 3,400.00 |
| 8001 | 06-09 | 114.75 | 8053 | 06-09 | 425.00 |
| 8002 | 06-16 | 255.00 | 8054 | 06-22 | 16,575.04 |
| 8003 | 06-16 | 722.50 | 8055 | 06-22 | 1,402.50 |
| 8004 | 06-17 | 1,275.00 | 8056 | 06-22 | 531.25 |
| 8005 | 06-20 | 510.00 | 8057 | 06-22 | 2,465.00 |
| 8006 | 06-09 | 1,020.00 | 8058 | 06-22 | 2,125.00 |
| 8007 | 06-15 | 340.00 | 8060 * | 06-22 | 1,190.00 |
| 8008 | 06-15 | 276.25 | 8061 | 06-20 | 25,925.00 |
| 8009 | 06-17 | 977.50 | 8062 | 06-20 | 382.50 |
| 8010 | 06-09 | 595.00 | 8063 | 06-22 | 1,530.00 |
| 8011 | 06-16 | 11,538.75 | 8064 | 06-21 | 2,698.75 |
| 8013 * | 06-15 | 722.50 | 8065 | 06-20 | 2,868.75 |
| 8014 | 06-15 | 3,272.50 | 8066 | 06-17 | 1,976.25 |
| 8015 | 06-16 | 595.00 | 8067 | 06-20 | 4,845.00 |
| 8017 * | 06-13 | 18,600.00 | 8068 | 06-24 | 3,400.00 |
| 8018 | 06-09 | 531.25 | 8069 | 06-21 | 2,465.00 |
| 8020 * | 06-16 | 2,975.00 | 8070 | 06-21 | 1,020.00 |
| 8021 | 06-16 | 956.25 | 8071 | 06-21 | 5,673.75 |
| 8022 | 06-15 | 2,890.00 | 8072 | 06-27 | 2,252.50 |
| 8023 | 06-09 | 786.25 | 8073 | 06-24 | 1,870.00 |
| 8024 | 06-22 | 382.50 | 8074 | 06-22 | 1,147.50 |
| 8025 | 06-16 | 5,695.00 | 8075 | 06-22 | 1,402.50 |
| 8026 | 06-14 | 1,615.00 | 8076 | 06-22 | 212.50 |
| 8027 | 06-14 | 1,296.25 | 8077 | 06-23 | 595.00 |
| 8028 | 06-14 | 1,742.50 | 8078 | 06-22 | 1,020.00 |
| 8030 * | 06-09 | 1,615.00 | 8079 | 06-24 | 467.50 |
| 8031 | 06-09 | 1,785.00 | 8080 | 06-22 | 807.50 |
| 8032 | 06-17 | 552.50 | 8081 | 06-21 | 340.00 |
| 8033 | 06-20 | 765.00 | 8082 | 06-23 | 616.25 |
| 8034 | 06-09 | 595.00 | 8083 | 06-29 | 297.50 |
| 8035 | 06-20 | 2,635.00 | 8084 | 06-21 | 340.00 |
| 8036 | 06-15 | 255.00 | 8085 | 06-23 | 191.25 |
| 8037 | 06-09 | 1,020.00 | 8086 | 06-24 | 2,213.52 |
| 8038 | 06-09 | 552.50 | 8087 | 06-23 | 170.00 |
| 8039 | 06-15 | 1,466.25 | 8088 | 06-21 | 599.45 |
| 8040 | 06-21 | 85.00 | 8090 * | 06-23 | 807.50 |
| 8041 | 06-14 | 1,487.50 | 8091 | 06-27 | 1,062.50 |
| 8042 | 06-09 | 255.00 | 8092 | 06-24 | 595.00 |

ITV00177



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC
June 30, 2005

Page 6 of 8
2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 8100 | 06-21 | 765.00 | 8151 * | 06-24 | 552.50 |
| 8101 | 06-21 | 212.50 | 8152 | 06-24 | 1,062.50 |
| 8102 | 06-22 | 4,590.00 | 8153 | 06-22 | 2,635.00 |
| 8103 | 06-23 | 63.75 | 8154 | 06-27 | 255.00 |
| 8104 | 06-23 | 233.75 | 8155 | 06-22 | 765.00 |
| 8105 | 06-27 | 3,591.25 | 8156 | 06-20 | 1,466.25 |
| 8106 | 06-20 | 5,440.00 | 8157 | 06-27 | 170.00 |
| 8107 | 06-23 | 1,912.50 | 8158 | 06-21 | 1,020.00 |
| 8108 | 06-23 | 1,126.25 | 8159 | 06-29 | 1,402.50 |
| 8109 | 06-22 | 765.00 | 8160 | 06-21 | 361.25 |
| 8110 | 06-21 | 1,466.25 | 8161 | 06-27 | 1,105.00 |
| 8111 | 06-27 | 573.75 | 8162 | 06-21 | 680.00 |
| 8112 | 06-24 | 2,210.00 | 8163 | 06-23 | 12,750.00 |
| 8113 | 06-23 | 1,062.50 | 8164 | 06-15 | 36,167.50 |
| 8114 | 06-21 | 1,445.00 | 8166 * | 06-22 | 2,847.50 |
| 8115 | 06-24 | 216.75 | 8167 | 06-22 | 595.00 |
| 8116 | 06-22 | 8,840.00 | 8168 | 06-22 | 32,555.00 |
| 8117 | 06-23 | 871.25 | 8169 | 06-22 | 2,252.50 |
| 8118 | 06-21 | 31,264.70 | 8170 | 06-22 | 5,440.00 |
| 8119 | 06-22 | 467.50 | 8171 | 06-21 | 6,545.00 |
| 8120 | 06-22 | 616.25 | 8172 | 06-22 | 2,677.50 |
| 8121 | 06-20 | 4,101.25 | 8173 | 06-22 | 2,380.00 |
| 8122 | 06-20 | 5,100.00 | 8174 | 06-24 | 276.25 |
| 8123 | 06-22 | 403.75 | 8175 | 06-23 | 510.00 |
| 8124 | 06-22 | 2,550.00 | 8176 | 06-23 | 467.50 |
| 8125 | 06-23 | 361.25 | 8179 * | 06-23 | 786.25 |
| 8126 | 06-24 | 297.50 | 8180 | 06-28 | 1,190.00 |
| 8127 | 06-23 | 127.50 | 8181 | 06-27 | 637.50 |
| 8128 | 06-27 | 3,102.50 | 8182 | 06-24 | 510.00 |
| 8129 | 06-27 | 1,275.00 | 8183 | 06-23 | 340.00 |
| 8130 | 06-29 | 510.00 | 8184 | 06-22 | 6,205.00 |
| 8131 | 06-22 | 935.00 | 8185 | 06-23 | 1,381.25 |
| 8133 * | 06-23 | 18,870.00 | 8186 | 06-23 | 191.25 |
| 8134 | 06-23 | 3,931.25 | 8187 | 06-23 | 382.50 |
| 8135 | 06-22 | 3,272.50 | 8188 | 06-24 | 4,526.25 |
| 8136 | 06-09 | 3,500.00 | 8189 | 06-24 | 3,017.50 |
| 8137 | 06-23 | 595.00 | 8190 | 06-22 | 170.00 |
| 8138 | 06-20 | 9,300.00 | 8191 | 06-22 | 3,825.00 |
| 8140 * | 06-30 | 488.75 | 8192 | 06-22 | 850.00 |
| 8141 | 06-21 | 3,400.00 | 8193 | 06-21 | 5,843.75 |
| 8142 | 06-28 | 680.00 | 8194 | 06-22 | 573.75 |

ITV00178



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC
June 30, 2005

Page 7 of 8
2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 8202 | 06-22 | 14,450.00 | 8234 | 06-29 | 9,435.00 |
| 8203 | 06-22 | 7,565.00 | 8235 | 06-29 | 1,020.00 |
| 8204 | 06-27 | 2,443.75 | 8238 * | 06-29 | 382.50 |
| 8205 | 06-21 | 6,630.00 | 8240 * | 06-30 | 1,190.00 |
| 8206 | 06-23 | 3,655.00 | 8244 * | 06-29 | 318.75 |
| 8207 | 06-24 | 510.00 | 8245 | 06-28 | 1,912.50 |
| 8208 | 06-23 | 340.00 | 8246 | 06-29 | 12,240.00 |
| 8209 | 06-29 | 2,592.50 | 8247 | 06-30 | 1,317.50 |
| 8210 | 06-23 | 361.25 | 8248 | 06-30 | 127.50 |
| 8211 | 06-27 | 1,870.00 | 8249 | 06-29 | 127.50 |
| 8212 | 06-21 | 680.00 | 8250 | 06-30 | 9,137.50 |
| 8213 | 06-23 | 5,100.00 | 8254 * | 06-29 | 2,040.00 |
| 8214 | 06-23 | 3,187.50 | 8256 * | 06-29 | 2,167.50 |
| 8215 | 06-22 | 14,182.25 | 8259 * | 06-28 | 24,528.45 |
| 8216 | 06-20 | 81,227.50 | 8260 | 06-29 | 4,398.75 |
| 8217 | 06-20 | 72,254.25 | 8261 | 06-29 | 382.50 |
| 8218 | 06-21 | 31,705.00 | 8265 * | 06-29 | 2,380.00 |
| 8219 | 06-28 | 4,441.25 | 8269 * | 06-29 | 531.25 |
| 8220 | 06-29 | 1,423.75 | 8270 | 06-30 | 5,610.00 |
| 8221 | 06-29 | 297.50 | 8272 * | 06-30 | 2,231.25 |
| 8222 | 06-28 | 20,400.00 | 8279 * | 06-29 | 4,760.00 |
| 8223 | 06-29 | 1,232.50 | 8281 * | 06-30 | 765.00 |
| 8224 | 06-29 | 3,463.75 | 8284 * | 06-30 | 1,020.00 |
| 8225 | 06-27 | 4,398.75 | 8285 | 06-30 | 1,870.00 |
| 8226 | 06-27 | 3,485.00 | 8288 * | 06-29 | 2,082.50 |
| 8227 | 06-28 | 5,780.00 | 8289 | 06-24 | 20,166.25 |
| 8228 | 06-29 | 5,270.00 | 8290 | 06-24 | 56,285.00 |
| 8229 | 06-27 | 9,605.00 | 8291 | 06-27 | 1,360.00 |
| 8230 | 06-27 | 6,715.00 | 8336 * | 06-30 | 6,630.00 |
| 8231 | 06-27 | 8,670.00 | 8337 | 06-30 | 57,035.00 |
| 8232 | 06-28 | 1,572.50 | | | |
| 8233 | 06-29 | 1,190.00 | | | |

* Skip in check sequence

**DEBITS**

| Date | Description | Subtractions |
|---|---|---|
| 06-02 | Service Charge | 20.00 |
| | STOP PAY CHARGE | |
| 06-15 | Service Charge | 20.00 |
| | STOP PAY CHARGE | |
| 06-16 | Service Charge | 20.00 |

ITV00179



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC                                     Page 8 of 8
June 30, 2005                                       2-8000216-16

## CREDITS

| Date | Description | Additions |
|------|-------------|-----------|
| 06-01 | Telephone Transfer | 100,000.00 |
| 06-02 | Telephone Transfer | 60,000.00 |
| 06-03 | Deposit | 20,400.00 |
| 06-06 | Telephone Transfer | 200,000.00 |
| 06-07 | Deposit | 42.50 |
| 06-07 | Telephone Transfer | 150,000.00 |
| 06-08 | Telephone Transfer | 100,000.00 |
| 06-09 | Telephone Transfer | 100,000.00 |
| 06-10 | Telephone Transfer | 150,000.00 |
| 06-14 | Telephone Transfer | 135,000.00 |
| 06-15 | Telephone Transfer | 150,000.00 |
| 06-17 | Telephone Transfer | 300,000.00 |
| 06-21 | Telephone Transfer | 215,000.00 |
| 06-23 | Telephone Transfer | 150,000.00 |
| 06-27 | Telephone Transfer | 160,000.00 |
| 06-30 | Telephone Transfer | 125,000.00 |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 05-31 | 49,488.22 | 06-10 | 349,836.23 | 06-22 | 144,255.51 |
| 06-01 | 78,567.62 | 06-13 | 273,092.71 | 06-23 | 216,076.76 |
| 06-02 | 80,456.08 | 06-14 | 274,334.81 | 06-24 | 116,578.49 |
| 06-03 | 60,927.33 | 06-15 | 232,059.89 | 06-27 | 220,393.49 |
| 06-06 | 172,173.08 | 06-16 | 183,543.14 | 06-28 | 159,888.79 |
| 06-07 | 281,168.23 | 06-17 | 472,110.64 | 06-29 | 99,645.04 |
| 06-08 | 242,888.48 | 06-20 | 237,487.97 | 06-30 | 137,222.54 |
| 06-09 | 240,763.73 | 06-21 | 331,310.07 | | |

ITV00180



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

Last statement: June 30, 2005
This statement: July 31, 2005
Total days in statement period: 31

Page 1 of 5
2-8000216-16
(333)

Direct inquiries to:
Deposit Operations, 978-922-2100

ITV DIRECT, INC
55 CHERRY HILL DR
BEVERLY MA 01915-1053

Beverly National Bank
240 Cabot Street
Beverly, MA 01915-4588

*SUMMER IS A GREAT TIME TO REVIEW YOUR FINANCIAL PLANNING GOALS. JIM WILLIAMS, V.P/INVESTMENT CONSULTANT CAN HELP YOU BE SURE YOU'RE ON TRACK TO ACHIEVE THEM. CALL JIM AT 978-720-1114 TO SCHEDULE A COMPLIMENTARY, NO-OBLIGATION MEETING. IDENTITY THEFT IS ON THE RISE. LEARN HOW TO PROTECT YOURSELF AND FIND OUT ABOUT IDENTITY THEFTSHEILD(TM) SERVICE. PLEASE SEE THE ENCLOSED PAMPHLET FOR MORE INFORMATION.*

## Ultimate Bus Success

| | | |
|---|---|---|
| Account number | 2-8000216-16 | Beginning balance | $137,222.54 |
| Enclosures | 333 | Total additions | 1,475,531.25 |
| Low balance | $33,366.36 | Total subtractions | 1,579,387.43 |
| | | Ending balance | $33,366.36 |

### CHECKS

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 7732 | 07-05 | 150.00 | 8255 * | 07-05 | 1,147.50 |
| 7870 * | 07-08 | 722.50 | 8257 * | 07-01 | 1,105.00 |
| 8019 * | 07-06 | 446.25 | 8258 | 07-01 | 2,040.00 |
| 8029 * | 07-05 | 170.00 | 8262 * | 07-05 | 63.75 |
| 8089 * | 07-05 | 619.78 | 8264 * | 07-08 | 3,973.75 |
| 8139 * | 07-06 | 743.75 | 8266 * | 07-05 | 2,550.00 |
| 8150 * | 07-05 | 255.00 | 8267 | 07-08 | 255.00 |
| 8178 * | 07-06 | 850.00 | 8268 | 07-01 | 6,991.25 |
| 8236 * | 07-01 | 318.75 | 8271 * | 07-05 | 1,785.00 |
| 8237 | 07-05 | 297.50 | 8274 * | 07-05 | 1,827.50 |

ITV00181



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC.                                    Page 2 of 5
July 31, 2005                                       2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 8287 | 07-01 | 25,925.00 | 8344 | 07-14 | 607.75 |
| 8293 * | 07-11 | 16,575.00 | 8345 | 07-14 | 34,000.00 |
| 8294 | 07-07 | 29,000.00 | 8346 | 07-13 | 1,232.50 |
| 8295 | 07-07 | 1,989.00 | 8347 | 07-12 | 39,100.00 |
| 8296 | 07-07 | 6,077.50 | 8348 | 07-12 | 318.75 |
| 8297 | 07-11 | 1,181.50 | 8349 | 07-15 | 1,253.75 |
| 8298 | 07-07 | 21,250.00 | 8350 | 07-11 | 1,593.75 |
| 8299 | 07-06 | 49,300.00 | 8351 | 07-12 | 3,655.00 |
| 8300 | 07-06 | 1,317.50 | 8352 | 07-11 | 3,910.00 |
| 8301 | 07-06 | 4,760.00 | 8353 | 07-18 | 2,210.00 |
| 8302 | 07-07 | 2,826.25 | 8354 | 07-13 | 1,955.00 |
| 8303 | 07-08 | 1,785.00 | 8355 | 07-13 | 892.50 |
| 8304 | 07-07 | 765.00 | 8356 | 07-12 | 1,955.00 |
| 8305 | 07-11 | 5,976.51 | 8357 | 07-12 | 2,231.25 |
| 8306 | 07-13 | 297.50 | 8358 | 07-22 | 2,337.50 |
| 8307 | 07-13 | 309.89 | 8359 | 07-15 | 3,400.00 |
| 8308 | 07-13 | 1,572.50 | 8360 | 07-13 | 1,572.50 |
| 8309 | 07-11 | 1,912.50 | 8361 | 07-13 | 1,190.00 |
| 8310 | 07-13 | 340.00 | 8362 | 07-13 | 3,145.00 |
| 8311 | 07-13 | 488.75 | 8363 | 07-14 | 510.00 |
| 8312 | 07-11 | 255.00 | 8364 | 07-15 | 318.75 |
| 8313 | 07-08 | 1,742.50 | 8365 | 07-11 | 5,652.50 |
| 8314 | 07-13 | 21,250.00 | 8366 | 07-14 | 297.50 |
| 8315 | 07-11 | 15,632.35 | 8367 | 07-18 | 382.50 |
| 8316 | 07-13 | 9,250.00 | 8368 | 07-13 | 382.50 |
| 8317 | 07-07 | 42,000.00 | 8369 | 07-15 | 1,992.17 |
| 8318 | 07-12 | 425.00 | 8370 | 07-14 | 297.50 |
| 8319 | 07-11 | 4,101.25 | 8371 | 07-19 | 309.89 |
| 8320 | 07-14 | 10,500.00 | 8372 | 07-19 | 85.00 |
| 8321 | 07-18 | 2,890.00 | 8373 | 07-13 | 127.50 |
| 8323 * | 07-08 | 425.00 | 8374 | 07-13 | 510.00 |
| 8324 | 07-07 | 17,000.00 | 8375 | 07-20 | 382.50 |
| 8325 | 07-11 | 10,710.00 | 8376 | 07-15 | 255.00 |
| 8327 * | 07-07 | 637.50 | 8377 | 07-14 | 850.00 |
| 8328 | 07-15 | 127.50 | 8378 | 07-13 | 722.50 |
| 8329 | 07-05 | 2,167.50 | 8379 | 07-12 | 12,750.00 |
| 8330 | 07-07 | 331.50 | 8380 | 07-14 | 6,120.00 |
| 8331 | 07-22 | 255.00 | 8381 | 07-13 | 722.50 |
| 8332 | 07-13 | 6,035.00 | 8382 | 07-13 | 127.50 |
| 8333 | 07-07 | 680.00 | 8383 | 07-12 | 361.25 |
| 8334 | 07-25 | 1,402.50 | 8384 | 07-13 | 3,145.00 |

ITV00182



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC
July 31, 2005

Page 3 of 5
2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 8392 | 07-15 | 1,657.50 | 8442 | 07-20 | 4,080.00 |
| 8393 | 07-13 | 212.50 | 8443 | 07-21 | 599.25 |
| 8394 | 07-22 | 8,372.50 | 8444 | 07-19 | 15,300.00 |
| 8395 | 07-13 | 786.25 | 8445 | 07-22 | 977.50 |
| 8396 | 07-12 | 15,632.35 | 8446 | 07-19 | 29,920.00 |
| 8397 | 07-12 | 16,000.00 | 8447 | 07-20 | 998.75 |
| 8398 | 07-13 | 425.00 | 8448 | 07-20 | 1,381.25 |
| 8399 | 07-12 | 3,761.25 | 8449 | 07-18 | 1,593.75 |
| 8400 | 07-12 | 5,270.00 | 8450 | 07-18 | 4,845.00 |
| 8401 | 07-13 | 382.50 | 8451 | 07-26 | 2,210.00 |
| 8402 | 07-14 | 10,500.00 | 8452 | 07-19 | 4,250.00 |
| 8404 * | 07-21 | 1,636.25 | 8453 | 07-18 | 2,932.50 |
| 8405 | 07-13 | 2,380.00 | 8454 | 07-19 | 1,955.00 |
| 8406 | 07-13 | 850.00 | 8455 | 07-19 | 2,231.25 |
| 8407 | 07-14 | 1,615.00 | 8456 | 07-26 | 2,231.25 |
| 8408 | 07-18 | 1,275.00 | 8457 | 07-26 | 3,570.00 |
| 8409 | 07-14 | 3,187.50 | 8458 | 07-22 | 1,572.50 |
| 8410 | 07-13 | 531.25 | 8459 | 07-22 | 1,190.00 |
| 8411 | 07-13 | 1,105.00 | 8460 | 07-20 | 3,145.00 |
| 8412 | 07-15 | 1,062.50 | 8461 | 07-25 | 510.00 |
| 8413 | 07-18 | 382.50 | 8462 | 07-28 | 1,445.00 |
| 8414 | 07-11 | 9,900.00 | 8463 | 07-21 | 297.50 |
| 8415 | 07-15 | 233.75 | 8465 * | 07-26 | 255.00 |
| 8416 | 07-13 | 8,500.00 | 8466 | 07-25 | 637.50 |
| 8417 | 07-13 | 5,100.00 | 8467 | 07-27 | 1,445.00 |
| 8418 | 07-20 | 170.00 | 8468 | 07-29 | 3,060.00 |
| 8419 | 07-15 | 403.75 | 8469 | 07-21 | 722.50 |
| 8420 | 07-13 | 255.00 | 8470 | 07-25 | 4,250.00 |
| 8421 | 07-13 | 5,355.00 | 8471 | 07-21 | 765.00 |
| 8422 | 07-14 | 1,275.00 | 8472 | 07-20 | 6,120.00 |
| 8423 | 07-15 | 1,020.00 | 8473 | 07-22 | 1,317.50 |
| 8424 | 07-19 | 1,211.25 | 8474 | 07-19 | 127.50 |
| 8426 * | 07-15 | 2,401.25 | 8475 | 07-28 | 3,485.00 |
| 8427 | 07-15 | 1,020.00 | 8476 | 07-22 | 3,867.50 |
| 8428 | 07-13 | 221.00 | 8477 | 07-25 | 488.75 |
| 8429 | 07-14 | 340.00 | 8478 | 07-25 | 1,360.00 |
| 8430 | 07-26 | 595.00 | 8479 | 07-20 | 1,147.50 |
| 8431 | 07-18 | 2,805.00 | 8480 | 07-25 | 722.50 |
| 8432 | 07-15 | 12,750.00 | 8481 | 07-25 | 807.50 |
| 8433 | 07-13 | 2,082.50 | 8482 | 07-22 | 722.50 |
| 8434 | 07-25 | 382.50 | 8484 * | 07-22 | 786.25 |



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC.                                                    Page 4 of 5
July 31, 2005                                                      2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 8493 | 07-25 | 2,380.00 | 8548 | 07-26 | 24,650.00 |
| 8494 | 07-25 | 212.50 | 8549 | 07-27 | 1,232.50 |
| 8495 | 07-25 | 1,615.00 | 8550 | 07-28 | 5,950.00 |
| 8496 | 07-22 | 1,275.00 | 8551 | 07-27 | 1,997.50 |
| 8497 | 07-27 | 2,040.00 | 8552 | 07-26 | 807.50 |
| 8498 | 07-26 | 5,503.75 | 8553 | 07-27 | 1,615.00 |
| 8499 | 07-25 | 531.25 | 8554 | 07-27 | 3,867.50 |
| 8500 | 07-25 | 1,870.00 | 8557 * | 07-26 | 1,572.50 |
| 8501 | 07-25 | 1,062.50 | 8558 | 07-27 | 1,190.00 |
| 8502 | 07-25 | 212.50 | 8559 | 07-27 | 3,145.00 |
| 8503 | 07-25 | 212.50 | 8560 | 07-29 | 510.00 |
| 8504 | 07-22 | 1,508.75 | 8561 | 07-28 | 297.50 |
| 8505 | 07-22 | 8,500.00 | 8562 | 07-27 | 255.00 |
| 8506 | 07-21 | 5,610.00 | 8564 * | 07-27 | 382.50 |
| 8507 | 07-27 | 170.00 | 8565 | 07-29 | 1,992.17 |
| 8508 | 07-27 | 1,360.00 | 8566 | 07-29 | 297.50 |
| 8509 | 07-22 | 4,760.00 | 8567 | 07-29 | 1,423.75 |
| 8511 * | 07-20 | 1,615.00 | 8569 * | 07-26 | 510.00 |
| 8512 | 07-22 | 956.25 | 8570 | 07-28 | 255.00 |
| 8514 * | 07-21 | 318.75 | 8571 | 07-27 | 2,550.00 |
| 8515 | 07-22 | 233.75 | 8573 * | 07-28 | 722.50 |
| 8516 | 07-20 | 3,230.00 | 8574 | 07-27 | 6,290.00 |
| 8517 | 07-27 | 1,020.00 | 8575 | 07-27 | 6,120.00 |
| 8518 | 07-21 | 221.00 | 8576 | 07-26 | 127.50 |
| 8519 | 07-21 | 2,040.00 | 8577 | 07-26 | 127.50 |
| 8520 | 07-25 | 722.50 | 8578 | 07-27 | 170.00 |
| 8521 | 07-27 | 1,105.00 | 8579 | 07-28 | 3,038.75 |
| 8522 | 07-21 | 1,020.00 | 8580 | 07-29 | 2,167.50 |
| 8523 | 07-22 | 1,105.00 | 8581 | 07-29 | 488.75 |
| 8524 | 07-25 | 595.00 | 8582 | 07-27 | 850.00 |
| 8525 | 07-26 | 2,805.00 | 8583 | 07-29 | 212.50 |
| 8526 | 07-19 | 340.00 | 8584 | 07-28 | 935.00 |
| 8527 | 07-26 | 13,600.00 | 8585 | 07-27 | 510.00 |
| 8528 | 07-20 | 1,381.25 | 8586 | 07-27 | 425.00 |
| 8529 | 07-28 | 255.00 | 8587 | 07-26 | 5,015.00 |
| 8530 | 07-20 | 45,368.75 | 8588 | 07-27 | 382.50 |
| 8531 | 07-15 | 68,382.50 | 8589 | 07-29 | 1,168.75 |
| 8532 | 07-20 | 382.50 | 8590 | 07-28 | 1,275.00 |
| 8534 * | 07-20 | 382.50 | 8591 | 07-27 | 1,615.00 |
| 8535 | 07-22 | 1,992.17 | 8594 * | 07-27 | 5,525.00 |
| 8536 | 07-22 | 297.50 | 8595 | 07-27 | 531.25 |



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC                                      Page 5 of 5
July 31, 2005                                        2-8000216-16

| Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|
| 8606 * | 07-27 | 318.75 | 8617 | 07-28 | 11,475.00 |
| 8607 | 07-29 | 573.75 | 8618 | 07-27 | 1,381.25 |
| 8608 | 07-27 | 1,933.75 | 8619 | 07-28 | 34,140.25 |
| 8609 | 07-27 | 765.00 | 8620 | 07-22 | 53,167.50 |
| 8612 * | 07-28 | 1,020.00 | 8621 | 07-27 | 1,423.75 |
| 8616 * | 07-26 | 722.50 | * Skip in check sequence | | |

**DEBITS**

| Date | Description | Subtractions |
|------|-------------|--------------|
| 07-21 | Telephone Transfer | 150,000.00 |

**CREDITS**

| Date | Description | Additions |
|------|-------------|-----------|
| 07-01 | Telephone Transfer | 125,000.00 |
| 07-06 | Telephone Transfer | 175,000.00 |
| 07-08 | Telephone Transfer | 225,000.00 |
| 07-13 | Telephone Transfer | 200,000.00 |
| 07-15 | Telephone Transfer | 150,000.00 |
| 07-18 | Telephone Transfer | 100,000.00 |
| 07-21 | Deposit | 531.25 |
| 07-21 | Telephone Transfer | 150,000.00 |
| 07-22 | Telephone Transfer | 75,000.00 |
| 07-25 | Telephone Transfer | 100,000.00 |
| 07-26 | Telephone Transfer | 100,000.00 |
| 07-28 | Telephone Transfer | 75,000.00 |

**DAILY BALANCES**

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 06-30 | 137,222.54 | 07-12 | 138,458.30 | 07-21 | 82,312.35 |
| 07-01 | 217,363.79 | 07-13 | 216,243.66 | 07-22 | 43,956.58 |
| 07-05 | 195,344.01 | 07-14 | 137,239.66 | 07-25 | 92,144.08 |
| 07-06 | 294,269.01 | 07-15 | 189,771.24 | 07-26 | 127,841.58 |
| 07-07 | 171,606.01 | 07-18 | 269,753.74 | 07-27 | 43,692.53 |
| 07-08 | 386,151.01 | 07-19 | 170,023.85 | 07-28 | 46,897.28 |
| 07-11 | 251,418.15 | 07-20 | 97,518.85 | 07-29 | 33,366.36 |

ITV00185



**BEVERLY NATIONAL BANK**
EARNING YOUR TRUST SINCE 1802
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

Last statement: July 31, 2005
This statement: August 31, 2005
Total days in statement period: 31

Page 1 of 2
2-8000216-16
(22)

Direct inquiries to:
Deposit Operations, 978 922-2100

ITV DIRECT, INC
55 CHERRY HILL DR
BEVERLY MA 01915-1053

Beverly National Bank
240 Cabot Street
Beverly, MA 01915-4588

*SUMMER IS A GREAT TIME TO REVIEW YOUR FINANCIAL PLANNING GOALS. JIM WILLIAMS, V.P./INVESTMENT CONSULTANT CAN HELP YOU BE SURE YOU'RE ON TRACK TO ACHIEVE THEM. CALL JIM AT 978-720-1114 TO SCHEDULE A COMPLIMENTARY, NO-OBLIGATION MEETING. IDENTITY THEFT IS ON THE RISE. LEARN HOW TO PROTECT YOURSELF AND FIND OUT ABOUT IDENTITY THEFTSHIELD(TM) SERVICE. PLEASE SEE THE ENCLOSED PAMPHLET FOR MORE INFORMATION.*

## Ultimate Bus Success

| | | | |
|---|---|---|---|
| Account number | 2-8000216-16 | Beginning balance | $33,366.36 |
| Enclosures | 22 | Total additions | 110,000.00 |
| Low balance | $-84,526.03 | Total subtractions | 135,759.23 |
| | | Ending balance | $7,607.13 |

### CHECKS

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 8263 | 08-08 | 765.00 | 8592 * | 08-01 | 1,275.00 |
| 8322 * | 08-09 | 2,975.00 | 8593 | 08-02 | 2,635.00 |
| 8483 * | 08-01 | 6,290.00 | 8600 * | 08-24 | 403.75 |
| 8510 * | 08-03 | 1,275.00 | 8603 * | 08-03 | 1,275.00 |
| 8513 * | 08-02 | 1,211.25 | 8605 * | 08-02 | 658.75 |
| 8533 * | 08-02 | 722.50 | 8610 * | 08-01 | 212.50 |
| 8537 * | 08-01 | 309.89 | 8611 | 08-03 | 425.00 |
| 8555 * | 08-01 | 2,337.50 | 8613 * | 08-01 | 2,550.00 |
| 8556 | 08-01 | 3,400.00 | 8614 | 08-02 | 595.00 |
| 8563 * | 08-02 | 340.00 | 8615 | 08-01 | 2,805.00 |

ITV00186



**BEVERLY NATIONAL BANK**
—EARNING YOUR TRUST SINCE 1802—
240 Cabot Street, Beverly, MA 01915 · 978-922-2100 Member FDIC

ITV DIRECT, INC.                                    Page 2 of 2
August 31, 2005                                     2-8000216-16

| Date | Description | Subtractions |
|------|-------------|-------------|
| 08-31 | Maintenance Fee | 4.34 |

## CREDITS

| Date | Description | Additions |
|------|-------------|-----------|
| 08-01 | Telephone Transfer | 10,000.00 |
| 08-03 | Telephone Transfer | 100,000.00 |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 07-31 | 33,366.36 | 08-03 | 12,498.97 | 08-19 | 8,015.22 |
| 08-01 | 21,636.47 | 08-08 | 11,733.97 | 08-24 | 7,611.47 |
| 08-02 | -84,526.03 | 08-09 | 8,758.97 | 08-31 | 7,607.13 |

ITV00187

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DIRECT MARKETING CONCEPTS, INC., ) | C.A. No. 05-11907-JLT |
| ITV DIRECT, INC., DIRECT ) | |
| FULFILLMENT, LLC, DONALD ) | |
| BARRETT, and ROBERT MAIHOS, ) | |
| ) | |
| Defendants. ) | |

**AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**EXHIBIT K**

8/23/2004 Barrett, Donald

VOLUME:   I
PAGES:   141
EXHIBITS:   33 - 36

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - x

ITV DIRECT, INC.

    Plaintiff

    Vs.

HEALTHY SOLUTIONS, LLC, ET AL

    Defendants

CIVIL ACTION

NO. 04-CV-10421-JLT

- - - - - - - - - - - - - - - - x

AND RELATED ACTIONS

- - - - - - - - - - - - - - - - x

DEPOSITION OF DONALD BARRETT

taken on behalf of the Defendants pursuant to the

Federal Rules of Civil Procedure, before Carole M.

Wallace, Certified Shorthand Reporter and Notary Public,

at the offices of Posternak, Blankstein & Lund, LLP, 800

Boylston Street, Boston, Massachusetts  02210, on

Monday, August 23, 2004, commencing at 9:58 a.m.

HENNESSEY CORP. D/B/A ROBERT H. LANGE CO.

50 Congress Street - Boston, Massachusetts  02109

Tel: (617) 523-1874          Fax: (617) 523-7343

---

8/23/2004 Barrett, Donald

```
1                        I N D E X
2    Witness            Direct  Cross  Redirect  Recross
3    DONALD BARRETT        5     137
4
5
6
7                        * * * *
8
9
10
11                     E X H I B I T S
12   No.          Description                        Ident.
13   33     Answer and Crosscomplaint of . . . . .    24
            Direct Marketing Concepts
14
     34     Affidavit of Donald Barrett  . . . . .     26
15
     35     Bates No. ITV 288 - 290, ITV 395 . . .    119
16
     36     Fax and transcript of final version  .    131
17          done 9/10/03
18
19
20
21
22
23
24
```

---

8/23/2004 Barrett, Donald

```
1    APPEARANCES:
2
3    Peter S. Brooks, Esq.
     Seyfarth Shaw LLP
4    Two Seaport Lane
     Boston, Massachusetts   02210
5    617 946-4800
     On behalf of the Plaintiff
6
     Michael Sciucco, Esq.
7    100 Cummings Center
     Suite 506E
8    Beverly, Massachusetts  01915
     978 299-2553
9    On behalf of the Plaintiff
10   Becky V. Christensen, Esq.
     Levin & O'Connor
11   384 Forest Avenue - Suite 13
     Laguna Beach, California  92651
12   949 497-7676
     On behalf of the Defendants
13
14   VIDEOGRAPHER:
15   Stephen Hartman, CLVS
     Hennessey Corp. d/b/a Robert H. Lange Co.
16   50 Congress Street
     Boston, Massachusetts   02109
17
18       ATTORNEY CHRISTENSEN RETAINED THE ORIGINAL EXHIBITS
19
20
21
22
23
24
```

---

8/23/2004 Barrett, Donald

```
1           THE VIDEOGRAPHER:  We are now recording
2    and on the record.  My name is Stephen Hartman, a
3    Certified Legal Video Specialist for Hennessey
4    Corp., DBA Robert H. Lange Co.  Our business address
5    is Fifty Congress Street, Suite 525, Boston,
6    Massachusetts  02109.  Today is August 23, 2004.
7    The time is 9:58.
8           This is the deposition of Donald Barrett
9    in the matter of ITV, Direct, Plaintiff Vs. Healthy
10   Solutions, LLC et al, Defendants and Related Cases
11   in the United States District Court, District of
12   Massachusetts, case number 04-CV-10421-JLT.  This
13   deposition is being taken at 800 Boylston Street,
14   Boston, Massachusetts on behalf of the defendants.
15   The court reporter is Carole Wallace.
16          Will counsel please state their
17   appearances and the court reporter will administer
18   the oath.
19          MS. CHRISTENSEN:  Becky Christensen of
20   Levin & O'Connor for defendants Healthy Solutions
21   LLC, Health Solutions, Inc., Alejandro Guerrero,
22   Greg Geremesz and Michael Howell.
23          MR. BROOKS:  I'm Peter Brooks and I
24   represent ITV and Direct Marketing Concepts.
```

1        DONALD BARRETT,
2    having been satisfactorily identified by the
3    production of his driver's license and duly sworn by
4    the Notary Public, was examined and testified as
5    follows:
6        DIRECT EXAMINATION BY MS. CHRISTENSEN
7    Q    Please state your full legal name.
8    A    Full legal name is Donald William Barrett, Jr.
9    Q    What is your home address?
10   A    It is Nine Tall Tree Drive Beverly, Massachusetts
11       01905.
12   Q    Have you ever had your deposition taken before?
13   A    Yes.
14   Q    How many times, approximately?
15   A    I can't -- Approximately three or four times.
16   Q    You understand that you are giving testimony under
17       oath today, is that right?
18   A    Yes.
19   Q    Even though we are in a conference room, it would be
20       the same as if you were in a courtroom?
21   A    Absolutely.
22   Q    Is there any reason that you can't give your very
23       best testimony today?
24   A    No, I can give my very best testimony today.

1    Q    Please tell me whether you are employed.
2    A    Yes, I am employed.
3    Q    What do you do?
4    A    I own a company called ITV Direct and Direct
5       Marketing Concepts along with my business partner.
6    Q    What do you do for ITV Direct?
7    A    I host the infomercial aspect of the direct response
8       business.
9    Q    Do you have any title for your work at ITV Direct?
10   A    My title is president and CEO.
11   Q    Are you a shareholder?
12   A    Yes, I am.
13   Q    What percentage of the shares do you own?
14   A    I believe fifty percent.
15   Q    You mentioned a business partner. Who is that?
16   A    His name is Robert Maihos, M A I H O S.
17   Q    What percentage of shares does he own?
18   A    The other fifty percent.
19   Q    What about Direct Marketing Concepts, what do you do
20       for them?
21   A    The same thing.
22   Q    What you say "the same thing," would you describe
23       your duties for me.
24   A    The Direct Marketing Concepts was the original

1    company that we started. ITV Direct was a company
2    that I started to actually produce the infomercials.
3    Direct Marketing Concepts doesn't produce the
4    infomercials any more, they are mainly the company
5    that answers the telephones.
6    Q    Do you have a title at Direct Marketing Concepts?
7    A    It would be the same, president and CEO.
8    Q    Do you own some shares in Direct Marketing Concepts?
9    A    Exact same as Direct Marketing Concepts. Same as
10       ITV Direct, rather.
11   Q    So that would be fifty percent ownership for you and
12       fifty percent for Mr. Maihos?
13   A    Correct.
14   Q    You mentioned that you were the host for the
15       infomercials. Do you have any operational
16       responsibilities?
17   A    I do, but I really don't pay attention to the
18       day-to-day operations.
19   Q    Do you have general oversight duties?
20   A    Yes, I oversee things.
21   Q    Describe for me if you would for ITV Direct the
22       ultimate decision making authority as a general
23       proposition.
24   A    Explain the question.

1    Q    Ultimately who makes the decisions for ITV Direct,
2       Inc.?
3    A    Ultimately me and my partner, Robert Maihos.
4    Q    How about for Direct Marketing Concepts?
5    A    That would be the same.
6    Q    You mentioned a moment ago that Direct Marketing
7       Concepts was the first of the two companies?
8    A    Correct.
9    Q    Would you describe for me when it was founded and
10       how it was built.
11   A    How it was built?
12   Q    Why don't we start with when it was founded.
13   A    I think it was started in 2002. I'm not a hundred
14       percent sure. Around that time period. And it was
15       started out of my mom's house. I had six telephones
16       in a garage. There was a little room over the
17       garage and I had six telephones and that's where I
18       started the company.
19   Q    Did you start in the infomercial business or what
20       were you selling?
21   A    Yes, I started in the infomercial business and
22       although I wasn't producing shows at the time, I
23       would get shows from other companies, put my 800
24       number on their shows, buy the product from them

1    wholesale and they would let me use their
2    infomercial per se.  And I could make those
3    infomercial work because I didn't have any overhead
4    so to say.  I worked out of mom's house, I bought my
5    own media, I answered my own phone calls, so I could
6    make shows work that frankly other people couldn't
7    make work.
8    Q    What was your first product, do you remember?
9    A    The first product -- And we didn't produce the first
10    shows.  The first show was a program called
11    Dr. Mortar's Dynamic Health.  It was a tape series.
12    Q    What kind of product was that?
13    A    Audio tape series.
14    Q    What other products were you selling from Direct
15    Marketing Concepts in the beginning?
16    A    Ultra Body Toddy.
17    Q    What was that?
18    A    That was a nutritional product.  It was 300
19    nutrients in it.  It was the Ultra Body Toddy.  The
20    name pretty much says it all.  It has everything in
21    it.
22    Q    Who created that nutritional supplement?
23    A    A could company Supra Life out of San Diego,
24    California.  Supra Life.  I'm not sure if they are

1    still in business.
2    Q    Who was the owner of Supra Life, if you recall?
3    A    I don't know.  The president's name was Mike Lewis,
4    and I'm not sure who owned the company.
5    Q    What other products do you recall from the beginning
6    of Direct Marketing Concepts?
7    A    Those are the basic products that we started with.
8    I ran the Dr. Mortar show for the first year or two.
9    Q    You mentioned at that time that you did not actually
10    produce the infomercials yourself.  When, if ever,
11    did Direct Marketing Concepts begin to produce
12    infomercials itself?
13    A    I believe the very first show I did was with Alex
14    Guerrero, the very first show I produced.
15    Q    I want to make sure I understand this.  ITV Direct
16    essentially produces the infomercials, and Direct
17    Marketing Concepts answers the phone, places the
18    orders, that sort of thing, is that a fair
19    statement?
20    A    I really came up with ITV Direct because I liked the
21    name more.  I kind of weaseled, not weaseled but
22    said ITV Direct, we can use that it for the
23    production end of it and we'll use Directing
24    Marketing Concepts for the back end of the business.

1    I liked the ITV name.  It incorporated TV.  I just
2    liked the name better.  That's frankly why I did it.
3    Q    When did you form ITV Direct, Inc., if you recall?
4    A    2003, maybe.  2003, yes, it's 2004 now.
5    Q    You mentioned that the first show that you produced
6    was probably the Supreme Greens infomercial, is that
7    right?
8    A    Yes, probably.
9    Q    So was the --
10    A    I think it was the very first slow.
11    Q    Was the studio and the equipment in that for filming
12    the infomercials, was all that new at that time?
13    A    It was new, but we rented some of it.  We didn't own
14    all the equipment, and I'm not sure we own all of it
15    to this day.  But we rented some of the equipment
16    and we had the studio location at that time, yes.
17    Q    Do you know a person by the name of Ted Reed?
18    A    Yes.
19    Q    Who is Ted Reed?
20    A    Ted Reed is someone that we hired to do our, produce
21    or infomercials.  I originally met him when I was
22    doing Direct Marketing Concepts, and he also had a
23    business within the Cummings Center which is the
24    building that I'm in.  It has 500 different

1    businesses.  And Ted Reed was with a company called
2    Counter Productions.  I went over to him and asked
3    him if he would be interested in producing, helping
4    me produce infomercials because he had experience,
5    alleged experience in the industry.
6    Q    So is he an employee of ITV Direct?
7    A    Not at first.
8    Q    Was it originally a contract kind of arrangement?
9    A    Originally he had his own company, and I just paid
10    him for the project, like I just paid him like a
11    1099.  He had his own company.  I hired his company
12    to do the show.  Then when it became apparent that
13    the only business he had was us, I said, Ted, why
14    don't we take over your company's expenses and you
15    work for our company.
16    Q    When did that change occur, do you recall?
17    A    I would think right around the time when I did the
18    show with Alex Guerrero because that is when we
19    started producing our own infomercials.
20    Q    Does he still work for you?
21    A    No.
22    Q    When did he leave your employ?
23    A    Well, about six months ago I started doing a lot of
24    filming down in Universal Studios, Florida, when I

8/23/2004 Barrett, Donald

1  was working with a company called Ideal Health which
2  I'm sure we'll get into.  They had a studio call UIX
3  Studios in Universal, Florida, and it was a much
4  nicer studio.  And we can do a lot, better
5  production, more protection value out of the studio
6  than we could out of our little studio in Beverly.
7  So I basically told Ted, I remember we severed our
8  relationship.  It was the beginning of the year.
9  Q   2004?
10 A   Beginning of this year.  I said come this year,
11     because it was a tremendous amount of overhead.  I'm
12     not the numbers guy of the business, but Bob told me
13     it cost about a half million dollars to operate the
14     studio, and I thought it was extremely high.  So we
15     decided just to do our shows at Universal Studios.
16 Q   So Mr. Reed then --
17 A   -- went back to his own company.
18 Q   Is the name of it Counter Productions?
19 A   Yes.
20 Q   So you built the business from six telephones in the
21     garage, and how large is ITV Direct now?
22 A   We have about 200 employees give or takes.
23 Q   Is that ITV Direct, or is that Direct Marketing
24     Concepts?

8/23/2004 Barrett, Donald

1  A   Both.  I'm not sure which.  I think everyone is paid
2      out of Direct Marketing Concepts.
3  Q   Of that 200, can you give me a sense of roughly how
4      many of those are people who answer the telephones
5      in the call center?
6  A   I would say about 170 of them answer the telephones;
7      based on the 200, I would say 170 answer the phones.
8  Q   Give me an idea what the other thirty people do by
9      position or department, what is more convenient for
10     you?
11 A   We have media buyers, about five media buyers, we
12     have, who answer the phones.  Product fulfillment,
13     so we have probably 15 people in fulfillment, and
14     the rest are management.
15 Q   When you say "product fulfillment," what does that
16     include?
17 A   Shipping the product.
18 Q   Does that include ordering as well?
19 A   No.
20 Q   Who handles the product ordering?
21 A   Eileen Barrett which is now Eileen Maihos.  She
22     married my partner Bob which is a whole other
23     deposition.
24 Q   Eileen Barrett Maihos -- I'm sorry, how do you say

8/23/2004 Barrett, Donald

1  the last name?
2  A   Maihos, M I A -- M A I H O S.
3  Q   Eileen Barrett Maihos is your sister?
4  A   Correct.
5  Q   And she is now the wife of your partner, Robert
6      Maihos?
7  A   Correct.
8  Q   We've talked about product fulfillment and media and
9      the call center and your sister Eileen Barrett
10     Maihos with product ordering.  Is there any other
11     significant divisions there in the company?
12 A   Divisions?
13 Q   Or departments.
14 A   Return department.  We have a customer service, but
15     I incorporated the customer service because those
16     are the people who answer the telephones when I was
17     giving you the number.  We have customer service
18     people.  That's it.
19 Q   How does -- Is customer service separate from people
20     who answer the telephones?
21 A   It's in a separate location, yes.
22 Q   What is it they do as opposed to taking orders?
23 A   They handle -- Well, they do take some orders
24     because some have built up a clientele or built up a

8/23/2004 Barrett, Donald

1  rapport with our customers, but they do sell some
2  product but mostly it's canceling orders if people
3  want to freeze their order or whatever the case may
4  be, they handle all the different aspects of
5  customer service.  Kathy Radcliffe is the manager of
6  that department.  She handles all the day-to-day
7  operations there.  I'm hardly ever there.
8  Q   They were included in the 170 number with the call
9      center?
10 A   Yes.
11 Q   Just give me a rough idea how many customer service
12     folks there are.
13 A   I'd say twenty.
14 Q   About twenty.  Do you have an accounting department?
15 A   Not a department.  We have someone that writes the
16     checks, and we have a CPA who overlooks that.
17 Q   Who is the CPA?
18 A   Wayne Callahan and Leo Bonarigo.
19 Q   Can you spell that for me?
20 A   I can't.
21 Q   Mr. Bonarigo is also a CPA?
22 A   Mr. Bonarigo is the CPA.  Wayne works for him.  We
23     hired their firm to do our books, I guess.
24 Q   So Mr. Callahan and Mr. Bonarigo are not direct

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CAPPSEALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DIRECT MARKETING CONCEPTS, INC., | ) | |
| ITV DIRECT, INC., DIRECT | ) | C.A. No. 05-11907-JLT |
| FULFILLMENT, LLC, DONALD | ) | |
| BARRETT, and ROBERT MAIHOS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**AFFIDAVIT OF SCOTT SILVERMAN IN SUPPORT OF CAPPSEALS INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**EXHIBIT L**

RECEIPT #: 67088
AMOUNT $: 250
SUMMONS ISSUED: 5/1
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. ___
DATE 9-23-05

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DIRECT MARKETING CONCEPTS, INC.,          )
ITV DIRECT, INC., and DONALD BARRETT,     )
                                          )
          Plaintiffs,                     )          Civil Action No.
                                          )
vs.                                       )
                                          )
THE FEDERAL TRADE COMMISSION,             )
an agency of the federal government,      )
                                          )          **05 - 11930 GAO**
          Defendant.                      )
                                          )          MAGISTRATE JUDGE Bowler

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Direct Marketing Concepts, Inc., ITV Direct, Inc. and Donald Barrett

(collectively "Plaintiffs"), through their undersigned counsel, allege as follows:

### INTRODUCTION

1.       Plaintiffs bring this action against the Federal Trade Commission ("Defendant,"

"FTC," or "Commission") for declaratory and injunctive relief and damages under: (a) the First

and Fifth Amendments to the United States Constitution; and (b) the Administrative Procedures

Act ("APA"). Plaintiffs' rights are being infringed by final agency action undertaken by

Defendant, including Defendant's interpretation and implementation of the Federal Trade

Commission Act (the "FTC Act") in a manner that violates due process, equal protection under

the law, and unlawfully restrains Plaintiffs commercial speech. Specifically, the FTC is engaged

in a concerted effort to damage Plaintiffs and suppress and restrain the Plaintiffs' constitutionally

protected commercial speech by applying an undefined and arbitrary standard to that speech in

violation of the Fifth Amendment and the APA. The FTC is applying its standards unequally,

because it specifically has targeted Plaintiffs for enforcement – while allowing other entities

making similar claims to continue their advertising – in an effort to shut down Plaintiffs' operations by any means possible, in clear violation of Plaintiffs' civil rights. Upon information and belief, the FTC's actions are motivated in part by Mr. Barrett's public criticisms of the FTC and its procedures, including his comments in several advertisements that the FTC is supporting conventional drug companies, while penalizing companies that advertise alternative remedies and dietary supplements. In its zeal to shut down Mr. Barrett and his companies, the FTC has ignored its own procedures for reviewing commercial speech in favor of seeking an outright ban on any speech by the Plaintiffs in violation of the First Amendment.

## THE PARTIES

2.      The plaintiff, Direct Marketing Concepts, Inc. ("DMC"), is a Massachusetts corporation with a principal place of business at 55 Cherry Hill Drive, Beverly, Massachusetts.

3.      The plaintiff, ITV Direct, Inc. ("ITV"), is a Massachusetts corporation with a principal place of business at 55 Cherry Hill Drive, Beverly, Massachusetts.

4.      The plaintiff, Donald Barrett is a citizen of Massachusetts with a principal residence in Beverly, Massachusetts. Mr. Barrett is the President and owner of DMC and ITV.

5.      Defendant, the Federal Trade Commission, is an agency of the federal government, created by Congress and operated under the Federal Trade Commission Act (15 U.S.C.§ 41 *et seq.*). Defendant's principal place of business is located on Northwest Pennsylvania Avenue at 6th Street, in Washington, D.C.

## JURISDICTION, VENUE AND STANDING

6.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because federal questions are raised under 5 U.S.C. § 704, and the Declaratory Judgment Act, 26 U.S.C. § 2201, as well as the First and Fifth Amendments to the United States Constitution.

7.      Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(e).

2

8.    Plaintiff has standing to bring this action because (a) Defendant's unlawful interpretation and implementation of Sections 5 and 12 of the FTC Act have unduly burdened and until enjoined will continue to unduly burden Plaintiffs' rights of due process and free speech; (b) Defendant has engaged and is continuing to engage in a pattern of conduct under Defendant's unlawful interpretation and implementation of Sections 5 and 12 of the FTC Act in order to unfairly damage Plaintiffs and suppress Plaintiffs' protected speech; (c) Defendant's attempt to evade its own procedures for enforcement of the FTC Act constitutes a denial of Plaintiffs' right to due process; and (d) Plaintiff is uncertain about its rights and obligations under Sections 5 and 12 of the FTC Act necessitating declaratory relief to vindicate Plaintiffs' rights and avoid prosecution of Plaintiffs exercise of a fundamental liberty, while providing certainty to Plaintiff and other advertisers under Sections 5 and 12 of the FTC Act.

9.    Defendant's requirement of compliance with an incomprehensible, so-called "competent and reliable scientific evidence" standard before a dietary supplement claim can be advertised constitutes final agency action under Sections 5 and 12 of the FTC Act.  Defendant's requirement is a definitive statement of Commission policy by which the rights and obligations of advertisers, including Plaintiffs, are determined, and from which legal consequences flow. Defendant bases its law enforcement actions on its vague standard, treats its vague standard as controlling, submits this standard to courts in support of equitable relief, refuses to engage in rulemaking to elaborate its standard, expects compliance with its vague standard, refuses to change how its vague standard is implemented, and takes coercive action against advertisers that make product claims in commercial speech the Defendant alleges do not meet this standard.

10.    Defendant's unconstitutionally vague regulatory approach governing dietary supplement claims is unlawful and is ripe for adjudication.  This action presents substantial, threshold questions of law pertaining to the validity of Defendant's actions against Plaintiffs and

3

continuing efforts to circumvent Plaintiffs' due process and First Amendment rights. Plaintiffs

challenge Defendant's opinion of its own powers and the propriety of its coercive tactics to

compel advertisers, including Plaintiffs, to comply with the federal government's view of

protected commercial speech under the First Amendment. These actions are not occurring in the

abstract, but exist in the context of a real and concrete controversy relating to Plaintiffs' current

advertisements.

    11.    Defendant's selective enforcement of its vague standard to directly target Mr.

Barrett and his companies for engaging in protected speech and criticizing the FTC is damaging

and continues to damage Plaintiffs' liberty and property.

## GENERAL ALLEGATIONS

    12.    Plaintiffs' business is to advertise and sell various consumer products, including

dietary supplements, through television advertisements. Among other products, Plaintiffs sell a

popular dietary supplement known as "Sea Vegg™" as well as a supplement known as "Flex

Protex™." Advertisements for Sea Vegg™ discuss the positive health benefits of seaweed and

sea vegetation. While not making any direct curative claims, during the advertisement the

subjects of diabetes, fibromyalgia, arthritis and cancer, among other topics, are discussed.

Advertisements for Flex Protex™ similarly do not make any direct curative claims, but do

discuss the possible benefits of the products' ingredients in connection with joint pain and

cartilage damage, as well as inflammation and arthritis.

    13.    Plaintiffs market and sell Sea Vegg™ and Flex Protex™ for use in conjunction

with proper diet and exercise, and an overall healthy lifestyle. Plaintiffs do not suggest that Sea

Vegg™ or Flex Protex™ should completely replace traditional medication and do not suggest

that consumers should refrain from consulting with their doctors or other medical professionals,

nor is it suggested that traditional drugs or other medications are ineffective. These are central

themes of Plaintiffs' advertisements for Sea Vegg™ and Flex Protex™. In addition, the Sea Vegg™ and Flex Protex™ advertising expressly disclaims that the product is designed to treat, prevent or cure any disease, but rather may help in increasing overall health and lowering the risks of certain diseases or symptoms through a healthy diet.

14.     Sea Vegg™ has become one of the leading supplement products in the United States and maintains a loyal customer base that continues to order the product. Flex Protex™ has been sold by a publicly traded nutrition company, Nutracea, for many years. Nutracea has spent many years and millions of dollars developing their products and conducting studies and research in connection with their products' ingredients. Numerous customers have telephoned or written to the Plaintiffs to state that the Plaintiffs' products have substantially benefited them in leading a healthier lifestyle.

15.     Attached as Exhibits 1 is the Declaration of Stefan Kraan. Dr. Kraan is a Phycologist at the Martin Ryan Institute, National University of Ireland and is a leading researcher in the area of sea vegetation. Dr. Kraan has spent his career reviewing the vast amounts of scientific literature regarding the ingredients contained within Sea Vegg™, the health benefits of these ingredients, and the claims made by Plaintiffs in their advertisements concerning the product. Dr. Kraan has concluded that sea vegetation in general and Sea Vegg™ in particular has vast and wide-ranging health benefits, including in the treatment of degenerative diseases, including cancer. These conclusions are supported by volumes of published scientific literature available in academic publications, the National Institutes of Health, the National Library of Medicine and other leading medical journals.

16.     As set forth in the attached Declarations by Dr. Kraan, as well as the scientific literature and studies, the statements set forth in the advertising for Sea Vegg™ are not false, misleading or deceptive, and are substantiated by clinical studies and scientific literature.

5

BOI 15734090.2

17.    Likewise, prior to running any advertising for Flex Protex™, Plaintiffs discussed the product in detail with the scientific personnel at Nutracea, including two Ph.D.'s on staff, and obtained a vast amount of scientific literature concerning the product and its ingredients, including several double-blind studies and similar materials, demonstrating the effectiveness of the active ingredients in the product. Plaintiffs rely on experienced personnel, including doctors and medical experts, to search the scientific and medical literature for ingredients that have been tested, studied, and observed to be safe and to produce positive effects upon the health and well being of consumers.

18.    All of Plaintiffs advertising is subject to thorough review procedures that ensure that the advertising is supported by significant scientific literature. This literature is maintained by Plaintiffs and is available for review upon request by any government official, including the staff of the FTC. Plaintiffs invest substantial sums to continually investigate, locate, and select supplements that have the best possible scientific support. In addition Plaintiffs and their manufacturers invest substantial sums to assure that its products are manufactured to very high standards so that its products meet or exceed the quality and other characteristics of the compounds identified in the scientific literature, which support the products' efficacy. For example, the manufacturer of Flex Protex™ has spent millions of dollars developing and testing their products. Quality control is of critical importance to Plaintiffs.

19.    Plaintiffs are so confident in their products that for *every* product they bring to market and develop, a 100% money-back guarantee is offered to every consumer. All a consumer need do if dissatisfied with the product for any reason is to return the unused portion within 90 days for a full refund. Plaintiffs always honor and fulfill their 100% money-back guarantee.

6

20.    The Sea Vegg™ and Flex Protex™ advertisements and all related claims for Sea
Vegg™ and Flex Protex™ are not false or misleading.  Plaintiff possessed a reasonable basis for
making its product claims at the time they were made and it continues to review scientific
sources for further substantiation.  Plaintiffs have consulted with a number of medical experts
and doctors, who support the health benefits of each of these products.

21.    As confirmed by Dr. Kraan and other doctors consulted by ITV, scientific
literature available to the public and the government adequately substantiates Plaintiffs' product
claims for Sea Vegg™.  As confirmed by the vast amount of scientific literature compiled in
connection with Flex Protex™, including double-blind clinical studies, the advertising for Flex
Protex™ is fully substantiated.

22.    Congress has published the following findings of fact concerning dietary
supplements:

2.    the importance of nutrition and the benefits of dietary supplements to
health promotion and disease prevention have been documented
increasingly in scientific studies;

3(A).    there is a link between the ingestion of certain nutrients or dietary
supplements and the prevention of chronic diseases such as cancer, heart
disease and osteoporosis;

5.    preventative health measures, including education, good nutrition, and
appropriate use of safe nutritional supplements will limit the incidence of
chronic diseases, and reduce long-term health care expenditures;

7.    there is a growing need for emphasis on the dissemination of information
linking nutrition and long-term good health;

8.    consumers should be empowered to make choices about preventive health
care programs based on data from scientific studies of health benefits
related to particular dietary supplements;

12.    the nutritional supplement industry is an integral part of the economy of the
United States;

13.    although the Federal Government should take swift action against products
that are unsafe or adulterated, the Federal Government should not take any
actions to impose unreasonable regulatory barriers limiting or slowing the
flow of safe products and accurate information to consumers …

7

14.    dietary supplements are safe within a broad range of intake, and safety problems with the supplements are relatively rare; and

15(B). a rational Federal framework must he established to supersede the current *ad hoc* patchwork regulatory policy on dietary supplements.

21 U.S.C.A. § 321, at p.169, Congressional Finding Nos. 2, 3(A), 5, 7, 8, 12, 13, 14, and 15(B).

23.    Notwithstanding the foregoing, the FTC has undertaken numerous efforts to shut down the operations of Plaintiffs and suppress completely their commercial speech concerning dietary supplements. In May 2004, the FTC filed a lawsuit in federal court in Massachusetts related to two prior advertisements aired by Plaintiffs. These advertisements are entirely unrelated to the Sea Vegg™ and Flex Protex™ advertisements. The Sea Vegg™ and Flex Protex™ advertising was not filmed, nor had it aired, at the time the FTC brought its lawsuit against Plaintiffs.

24.    Before the FTC's lawsuit was filed, Plaintiffs had agreed to cease running both of the subject advertisements and had requested that the FTC meet with them to discuss any issues the FTC staff had with the claims made in those advertisements. Plaintiffs explained to the FTC that it wished to better understand why the claims were problematic so that Plaintiffs' future advertising would not run afoul of the FTC's vague and undefined standards. The FTC refused such a meeting, opting instead to seek immediately to shut down Plaintiffs' operations, put hundreds of employees out of work, and completely prevent any future commercial speech through an asset freeze and the appointment of a receiver.

25.    In connection with its original lawsuit, the FTC's request for a receiver and asset freeze was denied. In subsequent conversations with the FTC staff, they have admitted that they were extremely disappointed with the Court's decision and believed that Plaintiffs, and particularly Mr. Barrett, should be prohibited entirely from airing any further advertising for dietary supplements. Since the denial of the FTC's request, the FTC staff have continued to

8

monitor the Plaintiffs' advertising, seeking any opportunity to completely suppress any further speech by Plaintiffs by whatever means possible.  These selective enforcement efforts have resulted in numerous contacts with third-party vendors, including banks and credit card companies, dozens of anonymous calls to Plaintiffs' call center, and coordination and communication with an ostensibly "independent" trade association, leading to the expulsion of the Plaintiffs from that association for refusing to cease its advertising of the Sea Vegg™ advertisements.

26.    Despite the fact that the Sea Vegg™ advertising was running for several months, the FTC did not contact Plaintiffs directly to raise any concerns with the advertising.  The FTC likewise never requested that Plaintiffs provide the wealth of substantiation in their possession for review in accordance with their regular procedures and policies.  Similarly, the FTC never directly contacted Plaintiffs concerning the Flex Protex™ advertisements or sought substantiation for that advertising.

27.    In addition, rather that supply Plaintiff with opinions from its experts before challenging the advertising, Defendant made clear that it was simply going to rely upon an unconstitutionally vague "competent and reliable scientific evidence" standard to assert its position that the Sea Vegg™ and Flex Protex™ advertisements violate Sections 5 and 12 of the FTC Act.  Using this subjective standard, Defendant asserted that if Plaintiffs did not abandon their Sea Vegg™ and Flex Protex™ advertisements, they would take whatever action necessary to control *all* future speech by Plaintiffs and effectively shut the Plaintiffs' business down.

28.    Instead of following it procedures as set forth in the FTC Act, the FTC has chosen to attack the Sea Vegg™ and Flex Protex™ advertising by again seeking the appointment of a receiver to take over Plaintiffs' operations, oversee all advertising in connection with the Sea Vegg™ and Flex Protex™ products, and "review and approve" all future advertising for any

BOI 15734090.2

other dietary supplements that might be marketed by Plaintiffs *before* such advertising is allowed

to be disseminated. The receiver proposed by the FTC as the gatekeeper of Plaintiffs' speech is

not an expert in medicine or dietary supplements, but rather is an accountant with expertise only

in the winding up of corporate affairs and liquidating companies. Not only would the receiver

impose a clear prior restraint on Plaintiffs' protected commercial speech in violation of their

rights under the First Amendment, the receiver would also accomplish Defendant's main goal:

shutting the Plaintiffs' operations down completely.

     29.    Upon information and belief, the FTC has also contacted a number of major

media outlets, notifying them of the FTC's litigation with Plaintiffs and warning them that in

their view the advertising for Sea Vegg™ and Flex Protex™, among other products marketed by

Plaintiffs, violates the FTC Act. In addition, Plaintiffs also believe that the FTC has coordinated

with the Plaintiffs' industry trade association to notify hundreds of additional media outlets that

the Sea Vegg™ and Flex Protex™ advertisements are misleading, in an effort to subvert its own

procedures and halt the airing of the advertisements without affording Plaintiffs any opportunity

to provide substantiation or defend the advertising in an open forum. These direct and indirect

contacts by the FTC have resulted in certain media outlets refusing to run Plaintiffs' advertising,

and have effected a restraint on Plaintiffs' protected commercial speech without providing them

due process.

     30.    Defendant's most current efforts to restrain the Plaintiffs' rights of free speech are

part of a larger pattern of conduct undertaken by Defendant to shut down Plaintiffs' operations

entirely. Rather than evaluate each form of speech published by Plaintiffs separately as required

under the First and Fifth Amendments, as well as the APA and the FTC's own policies and

procedures, Defendant has engaged in a series of acts designed to choke off any and all such

speech *before* it is made, in an admitted effort to stop such speech entirely, whether or not in

violation of the FTC's interpretation of its own rules and regulations.

31.     In pleadings filed with the court, the FTC has admitted that it is frustrated with the

progress of its efforts to suppress entirely Plaintiffs' commercial speech. As a result, Defendant

has sought to avoid its regular processes as set forth in the FTC Act, because in their view such

processes will "take too much time" and allow Plaintiffs' business operations to continue. In

connection with the Flex Protex™ program, the FTC has gone as far as admitting that it has

conducted *no* independent scientific research or studies, nor has Defendant consulted with any

experts or reviewed the materials in the possession of the Plaintiffs, including well-controlled

double-blind studies and related materials. The FTC is therefore seeking alternative means of

restraint for the sole purpose of stopping Plaintiffs' protected speech without due process of law.

32.     As justification for the FTC's evasion of its own procedures for providing

advertisers such as Plaintiffs their due process and violating Plaintiffs First Amendment rights,

the FTC has claimed that the Plaintiffs' advertising lacks "competent and reliable scientific

evidence," a standard which is undefined and appears to be entirely subjective in the eyes of the

FTC. Prior to claiming that such "evidence" does not exist, the FTC *never* requested any such

data or evidence from Plaintiffs, leading to the necessary conclusion that they did not review,

and had no intention of reviewing, any of these materials prior to applying their arbitrary

substantiation standard.

33.     In response to the FTC's attempts to block and control all of Plaintiffs' future

speech, including the advertising for Sea Vegg™ and Flex Protex™, Plaintiffs offered to provide

the volumes of scientific literature, as well as expert testimony in support of the claims in the

advertising. Plaintiffs also offered to submit the advertising to the FTC for review by the FTC

staff, in an effort to understand what aspects of the advertising were problematic in light of the

11

submitted substantiation. Plaintiffs offered these steps in an effort to assure that accurate

information was communicated. The FTC has repeatedly rejected these offers by Plaintiffs, and

never reviewed *any* of these materials before seeking to restrain all speech by Plaintiffs. The

conclusion is inescapable that the FTC has determined that any advertising by Plaintiffs is *de

facto* violative of the law, regardless of the content or support.

     34.    Worse still, it appears that the expert eventually retained by the FTC to review the

Sea Vegg™ advertisements agrees with many of the conclusions of Dr. Kraan and the other

experts consulted by Plaintiffs, and also agrees that sea vegetation may have many of the claimed

health benefits discussed in Plaintiffs' advertising for the product. It is likely that the FTC's

"experts" will equally agree with the scientific literature submitted in connection with Flex

Protex™. Nonetheless, for the sake of expediency, the FTC staff has unilaterally determined that

such testimony and literature does not, and cannot, meet its vague definition of "competent and

reliable scientific evidence."

     35.    Defendant unconstitutionally determines on a case-by-case basis the requirements

of its arbitrary "competent anti reliable scientific evidence" standard. Thus, an advertiser is not

provided a means to avoid unlawful (or mistaken) prosecution under the Defendant's existing

regulatory approach. Moreover, as exemplified in this case, the FTC's vague standard of

conduct allows the FTC to selectively target certain companies and individuals for enforcement

without providing a unified standard of conduct with which such targeted parties can defend

themselves. Thus, the FTC's "standard" provides it the means to violate its selective target's

civil rights.

     36.    Defendant's interpretation and implementation of Sections 5 and 12 of the FTC

Act to require so-called "competent and reliable scientific evidence," is a vague regulatory

scheme designed to suppress protected commercial speech. Defendant's regulatory scheme is

12

unlawful because its "competent and reliable scientific evidence" doctrine: (a) violates the due process rights of advertisers, including Plaintiffs' due process rights under the Fifth Amendment; (b) operates as a "prior restraint" on protected commercial speech in violation of the First Amendment; (c) is not the "least restrictive" alternative to regulate commercial speech under Sections 5 and 12 of the FTC Act; (d) is an arbitrary, capricious and otherwise unlawful method of protecting consumers; and (e) is contrary to the intent of Congress as expressed in DSHEA and established case law.

37.    By refusing to adopt clear requirements for advertisers, and refusing to provide advertisers with an outlet for protected speech that does not meet Defendant's vague substantiation standard, Defendant has determined it is more important to suppress and restrain accurate information supported by credible evidence than to adopt clear standards for such speech, in violation of the teachings of *Pearson v Shalala*, 164 F.3d 650 (D.C. Cir. 1999). The obligations of Defendant to provide clear standards under Sections 5 and 12 are rooted in the congressional and constitutional precepts that disclosure of accurate – although possibly controversial – information to consumers is more likely to enhance consumer welfare than the government's suppression of lawful commercial speech.

38.    Defendant fails to advance the objectives of Sections 5 and 12 of the FTC Act by using its arbitrary and vague substantiation standard to engage in selective attempts to suppress all speech by certain targeted individuals and entities, and circumvent its own congressionally mandated processes and procedures under the FTC Act for the sake of expediency. Defendant has utilized its unconstitutional standard as part of a pattern of conduct whose sole aim is to shut down Plaintiffs' operations entirely, in an effort to restrain and suppress all of Plaintiffs' speech, whether or not in violation of any law. These acts are all in violation of Plaintiffs due process rights guaranteed by the United States Constitution.

13

39.    In addition to the suppression of Plaintiffs' protected speech, Defendant's application of an arbitrary and capricious, self-imposed and interpreted regulatory scheme governing dietary supplements is imposing an unreasonable barrier limiting or slowing the flow of safe products and accurate information to consumers. This barrier is directly contrary to the congressional findings in Dietary Supplement Health and Education Act ("DSHEA") and the teachings of *Pearson*. Defendant's prior substantiation requirements themselves create an unconstitutional prior restraint on speech, unlawfully shifting the burden to advertisers to surmise what is adequate substantiation *before* they can engage in commercial speech without fear of prosecution. Absent a defined standard and uniform enforcement, the FTC's arbitrary and vague requirements necessarily chill protected speech.

40.    Defendant has provided no guidance as to what disclaimers are sufficient in the event that an advertiser possesses and relies upon significant substantiation in connection with health-related claims, but the FTC disagrees with the advertiser's evidence. In effect, the FTC has concluded that if it disagrees with an advertiser's substantiation, *no* amount of disclaimers are sufficient. This conclusion flies in the face of *Pearson* and its progeny.

41.    Given the nature and finality of Defendant's demands and the imminent threat to Plaintiff's First Amendment rights to commercial speech, Plaintiffs seek a declaratory judgment that Defendant cannot lawfully suppress Plaintiff's advertised claims for Sea Vegg™ and Flex Protex™ under Sections 5 and 12 of the FTC Act on the basis of the unconstitutionally vague "competent and reliable scientific evidence" doctrine. Plaintiffs also seek a declaratory judgment that the FTC cannot deny Plaintiffs their due process and First Amendment rights by suppressing all future speech while avoiding the procedures required under the FTC Act for challenging commercial speech.

14

42.    Plaintiff possessed a reasonable basis to make the product claims in the Sea Vegg™ and Flex Protex™ advertisements, and engages in significant efforts to assure that it possesses a reasonable basis for all of its other advertising. Consequently, the United States Constitution protects Plaintiffs' commercial speech and prohibits Defendant from suppressing Plaintiffs' advertised claims based on a Constitutionally vague "competent and reliable scientific evidence" standard.

43.    Defendant cannot seek to suppress and restrain all future commercial speech by Plaintiffs, nor can the Defendant lawfully institute law enforcement action against Plaintiff based upon an unconstitutionally vague advertising substantiation standard for the reasons set out below, including without limitation: (1) the First and Fifth Amendments, and APA, prohibit Defendant from trying to suppress Plaintiffs' commercial speech with an unconstitutionally vague standard of liability; and (2) the First and Fifth Amendments, and APA, prohibit Defendant from suppressing all of Plaintiffs' future commercial speech without following the FTC's procedures on a case-by-case basis, where less restrictive alternatives are available.

44.    A preliminary and permanent injunction should issue to prohibit Defendant from enforcing its unconstitutionally vague "competent and reliable evidence" standard against Plaintiff and require Defendant to adhere to the Constitution and its own procedures in challenging Plaintiffs' protected commercial speech.

## COUNT I
### Declaratory Relief and Damages for Violation
### of the Due Process Clause of the Fifth Amendment

45.    Plaintiffs incorporate the preceding paragraphs by reference, as though fully set forth in this paragraph.

46.    Defendant has sought to prohibit all commercial speech by the Plaintiffs, through direct and indirect contacts with third parties, and through the appointment of a receiver with the

15

power to control all such speech. Plaintiffs cannot be deprived of their exercise of a fundamental liberty, the right to commercial speech, without due process of law.

47.    Plaintiffs' commercial speech is a liberty and property interest under the Due Process Clause of the Fifth Amendment to the U.S. Constitution. It is speech that Plaintiff desires to communicate to consumers, that may lead consumers to purchase dietary supplement products that Plaintiff sells to consumers. Plaintiffs' liberty and property interests may not be deprived without due process of law.

48.    Defendant's attempts to suppress all future protected speech by the Plaintiffs violate Plaintiff's rights of due process because Defendant's basis for suppressing such speech, and undefined and arbitrary "competent and reliable scientific evidence" standard is unconstitutionally vague. Moreover, Defendant's implementation of its unconstitutional standard as to Plaintiffs would delegate legislative authority to third parties with unlimited power to suppress speech under this undefined and unconstitutionally vague standard.

49.    Before seeking to suppress all future speech by Plaintiff under the so-called "competent and reliable scientific evidence" standard, Defendant has refused to advise Plaintiff in clear and defined manner what specific quantum of evidence is required under the law, or why Plaintiffs' commercial speech does not satisfy Defendant's unconstitutionally vague standard. Defendant has then sought to use the Plaintiffs' alleged violation of this unconstitutionally vague standard to interfere with and shut down Plaintiffs' business entirely.

50.    Defendant refuses to promulgate through its notice-and-comment rulemaking procedures any rule that: (a) Sections 5 and/or 12 of the FTC Act requires "competent and reliable scientific evidence"; (b) defines this advertising substantiation standard; or (c) adopts any concrete objective criteria to determine what the standard requires.

16

51.    Defendant refuses to adopt any prescreening procedure to determine whether proposed claims satisfy Sections 5 and 12 of the FTC Act and provide a means to correct a perceived risk of confusion with qualifications and disclaimers, before Defendant threatens to bring, and brings, coercive law enforcement action, including action to suppress all future commercial speech, under its advertising substantiation program.

52.    In other words, Defendant unlawfully refuses to adopt a quantifiable and measurable substantiation standard for dietary supplements, either by substantive or procedural rule.  In addition, Defendant has created a regulatory scheme that unlawfully relies upon subjective analysis by non-governmental third party "consultants" and "experts" who have been shown to be no more qualified than the experts relied upon by Plaintiffs.  These experts then opine, with the force of law, on whether the advertiser's proffered scientific support for an alleged product claim constitutes "competent and reliable scientific evidence."  Although Congress lawfully may delegate to the federal judiciary the power to interpret and apply standards for commercial speech on a case-by-case basis, it is unconstitutional for Defendant to rely on third party consultants with professed expertise in scientific evidence, whose subjective opinions are then used to suppress commercial speech of which Defendant does not approve. This conduct is especially egregious where no guidance is provided about whether and what type of disclaimers may suffice to prevent confusion or implied deception.

53.    It is also unlawful and a violation of the Plaintiffs due process rights under the First and Fifth Amendments for Defendant to use its unconstitutionally vague substantiation protocol to selectively target Plaintiffs, seek to put them out of business and suppress all of their future commercial speech, regardless of content, the reasonableness of that speech or the scientific substantiation for that speech.

17

54.    As a result of the Defendant's violation of the Fifth Amendment, Plaintiffs are

being threatened with imminent and unlawful federal government action by the Defendant.

Plaintiffs have also suffered injury to their business and damages.

55.    Defendant will continue to cause the same or similar harm to Plaintiff if the Court

does not enjoin Defendant from doing so.  Therefore, a declaratory judgment enjoining

Defendant unlawful conduct is appropriate, necessary, and in the public interest.  Plaintiffs are

also entitled to damages in an amount to be determined at trial.

## COUNT II
### Declaratory Relief and Damages for Violation
### of the Right of Free Speech Under the First Amendment

56.    Plaintiffs incorporate the preceding paragraphs by reference, as though fully set

forth in this paragraph.

57.    Commercial speech is protected under the First Amendment of the United States

Constitution.

58.    The Sea Vegg™ and Flex Protex™ advertisements, among other advertising by

Plaintiffs, constitutes protected commercial speech.

59.    Plaintiffs are entitled to the full protection of the First Amendment of the United

States Constitution against Defendant's efforts to suppress completely their commercial speech.

60.    Plaintiff's rights under the First Amendment are violated because: Defendant has

engaged in a concerted and targeted effort to shut down Plaintiffs' operations to suppress all

future commercial speech; (b) Defendant has not and cannot articulate a "compelling" reason

why it must adhere to its vague substantiation standard, without any procedures protecting the

First Amendment rights of advertisers from mistaken or unlawful agency action; (c) Defendant

cannot prove that the burden it has imposed and seeks to impose on Plaintiff's commercial

speech is "necessary" to protect consumers from confusion; and (d) Defendant cannot prove that

18

its regulatory scheme governing dietary supplements is the "least restrictive" means to protect consumers from confusion.

61.    Defendant's acts and practices cannot survive even intermediate level scrutiny. Defendant cannot articulate a "substantial" (let alone a "legitimate") reason for its adherence to the unconstitutionally vague "competent and reliable scientific evidence" standard, which has no procedural safeguards and is being used selectively by the FTC to target those individuals and entities that may criticize the agency and its procedures. Defendant cannot prove that its conduct advances its stated interest under Sections 5 and 12 of the FTC Act in a "direct or material" way. Defendant cannot prove that there is not a "far less restrictive" way to protect consumers from confusion other than its selective enforcement of its vague and arbitrary substantiation protocol.

62.    As a result of Defendant's violation of the First Amendment, Plaintiff has been subject to and is being threatened by Defendant with unlawful federal government action. Plaintiffs have also suffered injury to their business and damages.

63.    Defendant will continue to cause the same or similar harm to Plaintiffs if the Court does not enjoin Defendant from relying on the unconstitutionally vague "competent and reliable scientific evidence" standard. Therefore, Plaintiffs seek both a preliminary and permanent injunction against Defendant. Plaintiffs are also entitled to damages in an amount to be determined at trial.

## COUNT III
### Declaratory Relief for Violation of the Administrative Procedure Act

64.    Plaintiff incorporates the preceding paragraphs by reference, as though fully set forth in this paragraph.

65.    The APA requires Defendant to define its advertising substantiation standard before threatening advertisers with law enforcement action under Sections 5 and/or 12 of the

19

FTC Act. Defendant cannot circumvent the rulemaking process through *ad* and *post hoc*
enforcement of an unconstitutionally vague benchmark of "competent and reliable scientific"
evidence. Rather, if the Defendant seeks to impose a substantive benchmark of "competent and
reliable scientific evidence" under its "reasonable-basis" test, it first must define that benchmark
with specificity.

66.  Pursuant to the APA (*e.g.* 5 U.S.C. § 706(2)(A)). Defendant may not pursue an
official action that is arbitrary, capricious, an abuse of discretion, or is contrary to law.

67.  Whether by substantive or procedural rule, the APA requires Defendant to define
its advertising substantiation standard before threatening advertisers with law enforcement action
under Sections 5 and/or 12 of the FTC Act.

68.  Defendant has violated the APA because what constitutes "competent and reliable
scientific evidence" is not sufficiently defined. Defendant has not adopted concrete principles to
bind its actions when investigating and prosecuting advertisers under its unconstitutionally vague
advertising substantiation program. Defendant has failed to adopt and present discernible and
consistent evaluative criteria for reviewing claims supported by credible scientific evidence.
Defendant's arbitrary regulation of commercial speech, by the very nature of Defendant's
unlawful program, has been subject to little or no meaningful judicial review.

69.  Defendant has also violated the APA by admittedly avoiding its own procedures
in its efforts to shut down Plaintiffs' business and suppress *all* future commercial speech by
Plaintiffs.

70.  As a result of the Defendant's violations of the APA, Plaintiffs have been subject
to and currently are threatened with imminent and unlawful agency action. Plaintiffs have also
suffered injury to their business and damages.

BO1 15734090.2

71.    Defendant will continue to cause the same or similar harm to Plaintiffs if the Court does not enjoin Defendant from doing so.

## COUNT IV
## Injunctive Relief

72.    Plaintiffs incorporate the preceding paragraphs by reference as though fully set forth in this paragraph.

73.    Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs are entitled to the entry of a preliminary injunction enjoining Defendant's activities in connection with Plaintiffs' advertising for Sea Vegg™ and Flex Protex™, pending conclusion of this action for declaratory relief.

74.    Plaintiffs already have suffered and will continue to suffer irreparable harm as a result of Defendant's unconstitutional and unlawful acts.  If Defendant's conduct is permitted to continue against Plaintiff, Plaintiff will suffer further irreparable harm.

75.    Absent injunctive relief Defendant is likely to continue to injure Plaintiff by imposing its vague and constitutionally infirm advertising substantiation requirement in connection with existing and future advertising, as well as by evading its required procedures under the APA.

76.    In balancing the harm suffered by Plaintiffs should this Court not enter an injunction prior to resolution of the declaratory judgment action, as against the interests of Defendant, the interests of Plaintiffs substantially outweigh Defendant's interests.

77.    For the specific reasons discussed above, including the presumption of ongoing irreparable harm from constitutional violations and general constitutional disfavor of restrictions on commercial speech, especially a complete restriction on all such speech, overly broad agency

21

action, and deprivation of liberty and property without due process of law, the public interest is served by entry of the injunction.

78.     There is a substantial likelihood that the Plaintiffs will prevail in this action for declaratory judgment thereby precluding Defendant from enforcing its unconstitutionally vague, overly restrictive, arbitrary and capricious, and selective regulatory scheme against them.

79.     The constitutional questions in this case are so significant, and the apparent abuse of power by the FTC so serious, that an injunction to maintain the *status quo* is critical.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that judgment enter as follows:

I.      That the Court issue a Preliminary and Permanent Injunction restraining Defendant from preventing Plaintiffs' advertising claims about its product Sea Vegg™ and Flex Protex™ until Defendant adequately clarifies and defines its "competent and reliable scientific evidence" standard;

II.     That the Court render a Declaratory Judgment declaring that Defendant's current standards and protocols for demonstrating advertising substantiation suppress speech and are void for vagueness, and therefore are invalid and unconstitutional under the First and Fifth Amendments of the United States Constitution;

III.    That the Court issue a Preliminary and Permanent Injunction restraining Defendant from evading its own procedures for reviewing Plaintiffs' advertising and requiring Defendant to provide Plaintiffs the opportunity to submit substantiation prior to any restraint on their commercial speech;

IV.     That the Court retain jurisdiction of this matter for the purpose of enforcing the Court's Order;

V.      That the Court award Plaintiffs damages in an amount to be determined at trial;

VI.   That the Court award Plaintiffs their costs and expenses of this action, including

their reasonable attorneys' fees;

VII.   That the Court grant such other and further relief as it deems appropriate.

**JURY DEMAND**

Plaintiffs demand a jury trial on all claims for relief and all issues so triable.

DIRECT MARKETING CONCEPTS, INC., ITV
DIRECT, INC. and DONALD BARRETT,

By their attorneys,

Peter S. Brooks, BBO #058980
Christopher F. Robertson, BBO #642094
Susan W. Gelwick, BBO #567115
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
Telecopier:    (617) 946-4801

Of Counsel:

Michael Sciucco, BBO #659651
Direct Marketing Concepts, Inc.
55 Cherry Hill Drive
Beverly, Massachusetts 01915
(978) 299-2200

Dated: September 23, 2005

23