UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., </br></br>        Plaintiff, </br></br>v. </br></br>DIRECT MARKETING CONCEPTS, INC., et al., </br></br>        Defendants. | ) </br> ) </br> ) </br> ) </br> ) </br> )  CIVIL ACTION NO. 05-CV-11907-JLT </br> ) </br> ) </br> ) </br> ) </br> ) |

**DEFENDANT DIRECT MARKETING CONCEPTS, INC.'S
OPPOSITION TO CAPPSEALS, INC.'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

The defendant Direct Marketing Concepts, Inc. ("DMC"), hereby submits this opposition to the motion of the Plaintiff Cappseals, Inc. ("Cappseals") for Partial Summary Judgment against defendant Direct Marketing Concepts, Inc. ("DMC"), For the reasons set forth below, Cappseals cannot establish that it is entitled to judgment as a matter of law on the basis of undisputed facts. Indeed, as demonstrated herein, DMC is entitled to judgment as a matter of law on the claims raised by Cappseals' summary judgment motion.

**<u>PRELIMINARY STATEMENT</u>**

Having intervened and obtained judgment against the defendant ITV Direct, Inc. ("ITV") as a reach and apply defendant in a related case before this Court (the "Related Action"), Cappseals has filed another suit against ITV and Direct Fulfillment LLC, and has now included DMC, Donald Barrett and Robert Maihos, asserting claims of fraudulent transfer under Mass. Gen. L. c. 109A (Counts I & II), alter ego (Count III), declaratory judgment (Count IV), constructive trust (Count V), and reach and apply (Count VI). In the instant summary judgment motion, Cappseals first asks this Court to declare that DMC is a co-obligor of the same debt that

resulted in the judgment against ITV. Remarkably, no such claim is found in the complaint either in the declaratory judgment count or otherwise, nor is there a single allegation in the complaint that so much as hints at any such claim. In the alternative, Cappseals asks the Court to declare (this time under Count V—Constructive Trust) that DMC and ITV are alter egos.

Even if the co-obligor claim were pled, that claim and the alter ego claim fail for a number of reasons. First, both of these causes of action asserted against DMC are necessarily based on the same underlying claim and debt that was asserted by Cappseals against ITV as a reach and apply defendant in the Related Case. Cappseals asserted a breach of contract claim against Healthy Solutions based on its own contract with Healthy Solutions, and a reach and apply claim against ITV to attach funds alleged due Healthy Solutions under Healthy Solutions' contract with ITV. Obviously, in this case, the co-obligor claim asserted against DMC is necessarily based on the very same debt, contracts and invoices that were in dispute in the Related Action. Thus, in this case, Cappseals' co-obligor and alter ego claims are by their nature derivative of any claims that Healthy Solutions could have asserted against DMC.

The problem for Cappseals is that Healthy Solutions, which is <u>not</u> a party in the present action, has no viable claims against DMC. Healthy Solutions reached a settlement with ITV in the Related Case, a settlement in which the parties exchanged full mutual releases by which, in pertinent part, Healthy Solutions absolutely and unconditionally released ITV and its affiliates. Certainly, Cappseals must concede that ITV and DMC are affiliates. In connection with the settlement, the parties also dismissed with prejudice their respective claims in the Related Case, a dismissal that, in and of itself, would bar any further claims that were or could have been raised by Healthy Solutions in the Related Case. Thus, as Healthy Solutions could not assert either a

2

co-obligor claim or alter ego claim against DMC, there is no legal basis for Cappseals to assert the very same claims.

Similarly, having taken judgment against ITV, the doctrine of merger bars Cappseals from seeking to assert the liability against DMC based on the same underlying claim on which the Healthy Solutions' judgment and Cappseals' judgment were predicated. Under the merger doctrine, when a claim has been reduced to a judgment it ceases to exist as an independent liability. Accordingly, there simply is no underlying obligation upon which Healthy Solutions, and derivatively Cappseals, could base liability, even if Cappseals had included Healthy Solutions in the present action.

Finally, even if everything else is ignored, Cappseals is not entitled to judgment as a matter of law on its alter ego claim. Cappseals' summary judgment motion fails to present any evidence upon which this Court could find as a matter of law that either of the tests applied in Massachusetts to pierce the corporate veil are satisfied. To disregard the corporate structure in Massachusetts requires either an active and pervasive control of related business entities that results in fraudulent or injurious consequence, or a confused intermingling of activity of two or more corporations which presents a serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting. For these reasons, Cappseals' summary judgment motion must be denied.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Procedural History**

On August 3, 2005, Cappseals obtained a judgment pursuant to Fed. R. Civ. P. 54(b) against ITV and Direct Fulfillment, LLC ("Direct Fulfillment") in the related action before this Court on its claim as a reach and apply plaintiff . The Related Action was originally filed by

ITV on March 3, 2004 against Healthy Solutions, LLC and its officers and affiliates (the "Healthy Solutions Defendants"), seeking, *inter alia*, damages for breach of contract, conversion, misrepresentation, violation of Mass. Gen. L. Ch. 93A, as a result of a contract entered into between ITV and Healthy Solutions for the marketing and distribution of a dietary supplement known as Supreme Greens. (See ITV's Complaint in Related Action.) ITV amended its complaint in August of 2004 and asserted claims against the Healthy Solutions Defendants for fraud and indemnification based on the Healthy Solutions Defendants' fraudulent representations about a dietary supplement known as Supreme Greens and the clinical and documentary support for the product's health benefits. (See ITV's Amended Complaint.)

On April 19, 2004, the Healthy Solutions Defendants answered ITV's complaint and filed a counterclaim against ITV and Direct Fulfillment for breach of contract, account stated, and conversion, among other causes of action. (See Healthy Solutions Counterclaim.) Cappseals intervened in the action and asserted claims for breach of contract against Healthy Solutions, and a reach and apply claim against ITV and Direct Fulfillment, LLC, by which it sought to reach any judgment obtained by Healthy Solutions against ITV and Direct Fulfillment, LLC and apply it to the debt Healthy Solutions owed to Cappseals. (See Cappseals' Complaint in Intervention in Related Action.)

After the Court denied the original parties' joint motion to voluntarily dismiss the action, on June 6, 2005, Cappseals moved for summary judgment on its reach and apply claims against ITV and Direct Fulfillment based on Healthy Solutions' claim for breach of contract for goods sold to ITV. The Healthy Solutions Defendants never themselves moved for summary judgment on this claim. On July 20, 2005, this Court allowed Cappseals' summary judgment motion on Healthy Solutions' counterclaim, finding that ITV had failed to pay certain invoices that were

4

sent to it by Healthy Solutions. (Court's Memorandum, p. 2, attached to the Affidavit of Scott Silverman ("Silverman Aff.") as Exhibit A.) On July 28, 2005, this Court entered final judgment under Fed. R. Civ. P. 54(b) in favor of Healthy Solutions and against ITV and Direct Fulfillment in the amount of $1,086,672.80. Based on the judgment entered in favor of Healthy Solutions on its claim for goods sold and delivered, on August 3, 2005, the Court entered final judgment pursuant to Fed. R. Civ. P. 54(b) in favor of Cappseals and against ITV and Direct Fulfillment in the amount of $1,041,684.49 on Cappseals' claim to reach and apply. (See Judgment in Related Action.) DMC was not a party to the Related Action, the Court made no findings whatsoever with regard to DMC, and no judgment was entered against DMC in the Related Action.

**B.     Factual Background**

Both DMC and ITV are Massachusetts corporations, although DMC was formed as an S-Corporation and ITV was formed as a C-Corporation. DMC and ITV are separate business entities and have separate business purposes. The two companies were incorporated several years apart and maintain separate bank accounts and separate accounting systems. They also maintain separate general ledgers and file separate tax returns. (See Statement of Disputed Facts, ¶ 4.)[1]

DMC was formed for the purpose of searching out products and people that it believes will work well together in an infomercial, and providing the administrative services in connection with selling such products via infomercials. Initially, DMC did not have the capacity to purchase media or produce infomercials, and had secured the services of an outside company in Pennsylvania for this purpose. Prior to its involvement with the Supreme Greens product

---

[1] Citations to specific paragraphs of the "Statement of Disputed Facts" refer to ITV's and Direct Fulfillment, LLC's Statement of Material Facts In Dispute and the portions of the record referenced therein, which is being filed herewith.

5

("Supreme Greens" or "the Product"), ITV was established for the purpose of purchasing the media and producing the infomercials for future products located by DMC. (Statement of Disputed Facts, ¶ 5.)

Thereafter, in April 2003, ITV entered into a contract with Healthy Solutions for the rights to air an infomercial promoting Supreme Greens and to become a distributor of the Product (the "Distribution Agreement"). DMC was not a party to the Distribution Agreement and never had any contract of any kind with Healthy Solutions. (Statement of Disputed Facts, ¶ 6.) In connection with the promotion of Supreme Greens, ITV purchased over $8 million of media for the infomercials. The funds for the purchase of this media were provided from several sources, including advances of funds from DMC. DMC also provided administrative services to ITV, including telephone answering services, credit card processing services and customer service. All of these transactions were subject to appropriate and detailed accounting, maintained on each company's general ledgers and accounting systems. (Statement of Disputed Facts, ¶ 7.)

The business plan and forecast for ITV anticipated that ITV would repay all amounts owed to DMC during the course of running the infomercial program, likely after six to eight months. Given the extraordinary up-front expense of running a major advertising promotion, it is quite typical that companies will run at a significant loss early in the history of the program, with the expectation that future sales will result in a profit. However, because the airing of the Supreme Greens advertising was unexpectedly cut short by the intervention of the Federal Trade Commission ("FTC") and the Food and Drug Administration investigations, the Supreme Greens show never recouped these extraordinary up front costs. (Statement of Disputed Facts, ¶ 8.) As security for the advances of funds provided to ITV, the value of the inventory of Supreme

6

Greens product was carried on the books of DMC. Again, the expectation was that this inventory would be moved to the books of ITV once DMC had recovered its advanced funds and overhead expenses. That never occurred. (Statement of Disputed Facts, ¶ 9.)

In addition, as sales of the Supreme Greens product were made by ITV, the proceeds of those sales were credited to DMC to repay the advanced funds and overhead expenses incurred by DMC for providing telephone answering services, credit card processing and customer service. Once again, the forecast was for ITV to begin generating a profit at some point several months after the commencement of the advertising. That never occurred. (Id., ¶ 10.)

All transactions were properly recorded in the books of ITV and DMC, and all of the supporting records have been maintained. At no time has any "fraudulent" transfer occurred, nor have any funds been improperly removed from either company. To the contrary, both companies have been subject to a federal court order since 2004 prohibiting any such improper or non-business transfers.[2] None have occurred. Likewise, there has not been any commingling of assets of either company. (Statement of Disputed Facts, ¶ 11.)

As set forth in the Distribution Agreement between ITV and Healthy Solutions, ITV ordered and received the Supreme Greens product from Healthy Solutions. Any purchase orders that were issued by DMC were issued by mistake, as ITV was the only company that had a contractual relationship with Healthy Solutions to purchase Supreme Greens. Confirming Healthy Solutions' understanding of its contract with ITV, at no time did Healthy Solutions ever take action against DMC to seek payment for the Supreme Greens product, and Healthy Solutions never sued DMC in the Related Action for payment for the Product. Rather, Healthy

---

[2] Since June of 2004, DMC and ITV have been operating under the terms of a preliminary injunction order entered by U.S. District Judge O'Toole in an action brought by the FTC against DMC, ITV and others. Pursuant to that order, DMC and ITV are required to provide financial reporting to the FTC on a monthly basis to reflect certain transfers of assets or certain expenditures made by either company.

Solutions brought claims against ITV and Direct Fulfillment, LLC for payment for the Product. Direct Fulfillment was a company that was established to fulfill customer orders and ship the Product. In addition, Cappseals never sued DMC in the Related Action for payment for the Product. (Statement of Disputed Facts, ¶ 12.)

ITV, Direct Fulfillment, LLC and their affiliates entered into a settlement agreement with Healthy Solutions, LLC and its affiliates of all claims that these parties raised against each other, including the claims that were raised in the actions pending in the U.S. District Court for the District of Massachusetts entitled *FTC v. Direct Marketing Concepts, Inc*. and *ITV Direct, Inc. v. Healthy Solutions, Inc., et al.* On September 9, 2005, the parties also executed and exchanged mutual releases, which released all claims that the Healthy Solutions parties had against ITV and its affiliates, including DMC. (Statement of Disputed Facts, ¶ 13.)

## LEGAL ARGUMENT

**A.    Summary Judgment Standard**

Summary judgment is only available when there are no disputed facts and the party moving for summary judgment is entitled to judgment as a matter to law. [cite]. The district court must resolve all genuine factual disputes in favor of the party opposing the motion and draw all reasonable inferences derived from the facts in that party's favor. Atlantic Fish Spotters Ass'n v. Evans, 321 F.3d 220, 223 (1st Cir.2003). At the summary judgment stage, there is "no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." Greenburg v. Puerto Rico Mar. Shipping Authority, 835 F.2d 932, 936 (1st Cir.1987). When hearing a motion for summary judgment, it is the responsibility of the trial judge to determine whether a reasonable trier of fact could find for the nonmoving party based on the admissible evidence, and to refrain

8

from invading the province of the jury by weighing the evidence or making credibility determinations. Mahan v. Boston Water & Sewer Comm'n., 179 F.R.D. 49, 56 (D.Mass.1998).

B.  **DMC Is Entitled To Judgment As A Matter Of Law On Cappseals' Co-Obligor And Alter Ego Claims Because Of The Settlement And Mutual Releases By And Between ITV And Healthy Solutions.**

Healthy Solutions and ITV have dismissed their claims in the Related Action with prejudice and have exchanged mutual general releases that include within their ambit DMC. In pertinent part, the Healthy Solution parties released and forever discharged "the ITV Parties and all of their respective **affiliates**, officers, directors . . . of and from any and all debts, demands, actions, causes of actions, contracts, claims, suits, judgments, damages and liabilities of any kind or nature whatsoever, in law or in equity, whether known or unknown, . . . which the Healthy Solutions Parties raised or could have raised in connection with, arising from, or related to the Lawsuits." (emphasis added). (See Exhibit B to Barrett Aff.) Cappseals cannot dispute that DMC and ITV are affiliates. Accordingly, the mutual releases embrace any claims that Healthy Solutions potentially had against DMC, including any claim based on DMC's obligations under Invoice 1101 or any claim based on piercing the corporate veil. Since the co-obligor and alter ego claims asserted by Cappseals are derivative of the claims of Healthy Solutions, as they were in the Related Action against ITV, they are barred by the release (and the stipulation of dismissal filed in the Related Action).

The reach of a general release to include nonparties was discussed extensively by the First Circuit in Hermes Automation Technology, Inc. v. Hyundai Electronics Industries Co., Ltd., 915 F.2d 739 (1st Cir. 1990). In that case, the plaintiffs sued the defendant Hyundai Electronics Industries ("HEI") after they had settled a previous state lawsuit against Hyundai Electronics America ("HEA"). HEA served as the marketing arm of HEI. Sixty percent of the stock of HEA was owned by HEI, the remaining forty percent by another Hyundai affiliate. The

9

settlement agreement between Hermes and HEA contained essentially two ambiguous provisions on the scope of the release.  First, § 8.3 of the settlement agreement provided that the agreement was binding upon and shall inure to the benefit of the parties, hereto, their respective agents, employees, representatives, officers, directors, divisions, subsidiaries, affiliates, assigns, heirs, successors in interest, and shareholders.  On the other hand, § 5.1, the actual release provision, only purported to release HEA and its corporate successors or predecessors.  As the Court recognized, whether a release applies to non-parties is determined by the intent of the parties.  Id. at 746-47.  While the Court noted that the language in § 8.3 could be construed to fully release HEI as an affiliate and shareholder, because the actual release language in § 5.1 named only HEA and its corporate successors or predecessors, the Court determined that the issue could not be determined as a matter of law and remanded the case to give the plaintiff the opportunity to give extrinsic evidence on what claims were intended to be released.  Id. at 748-49.

In this case, unlike the situation in Hermes, because the actual release language includes affiliates of ITV, the release must be construed to include any claims that Healthy Solutions had against DMC arising out of the same operative set of facts as its claims against ITV.  Thus, as Healthy Solutions would be barred from asserting claims against DMC, the only claims that Cappseals could possibly assert against DMC are claims that are not derivative of Healthy Solutions' claims.  Neither the co-obligor nor the piercing the corporate veil claims are independent.

As noted, both the co-obligor and alter ego claims against DMC are necessarily based on the same underlying debt and breach of contract claims that were at issue between Healthy Solutions and ITV in the Related Action.  In its intervenor complaint, Cappseals asserted a breach of contract claim against Healthy Solutions for the debt arising from its contract with

10

Healthy Solutions, and, in addition, asserted a reach and apply claim against ITV based on what ITV allegedly owed Healthy Solutions on Healthy Solutions' breach of contract claims against ITV. Cappseals received a judgment against Healthy Solutions, and on the basis of its reach and apply claim, a judgment allowing it to reach the debt ITV alleged owed Healthy Solutions. Cappseals' judgment against ITV was not based on any direct liability between Cappseals and ITV.

It is well established that the reach and apply statute does not create *substantive* rights. Its function is wholly *procedural* so as to provide a means for the application of assets of the debtor in satisfaction of the plaintiff's claim. Blumenthal v. Blumenthal, 303 Mass. 275, 278-79 (1939). The rights of a reach and apply plaintiff like Cappseals are said to be derivative of the debtor's rights and subject to the same defenses (and logically to the same claims) the reach and apply defendant has against the debtor. Polito v. Galluzzo, 337 Mass. 360, 363 (1958); Mamber v. Levin, 4 Mass. App. Ct. 157, 161 (1976); Morse v. The Employers' Liability Assurance Corp., Ltd., 3 Mass. App. Ct. 712 (1975) (rescript).

Accordingly, as Cappseals' claims based on a co-obligor theory and alter ego theory are strictly derivative of Healthy Solutions' claims, and as Healthy Solutions has released <u>all</u> of its claims, including those potentially against DMC,[3] Cappseals is barred from asserting those claims in the present action.

---

[3] The same result follows from the stipulation of dismissal with prejudice filed by Healthy Solutions and ITV in the Related Action. A dismissal with prejudice is a final judgment on the merits and precludes relitigation of any claim that was or could have been litigated in the prior action. United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998); Department of Revenue v. LaFratta, 408 Mass. 688, 693 (1990) citing Boyd v. Jamaica Plain Coop. Bank, 7 Mass. App. Ct. 153, 157 n.8 (1979). A final judgment is conclusive on parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action. Bagley v. Moxley, 407 Mass. 633, 635 (1990). There is an identity of claims so long as the original claims litigated and the newly asserted claims are derived from the same transaction or series of connected transactions. TLT Const. Corp. v. A. Anthony Tappe and Associates, Inc., 48 Mass. App. Ct. 1, 7 (Mass. App. 1999); Saint Louis v. Baystate Medical Center, 568 N.E.2d 1181, 1185-86 (1991). Thus, there is an identity of claims where the claims arise out of a common nucleus of operative facts. Saint Louis, 568 N.E.2d at 1186 (the two complaints dealt with a natural grouping or common

C.   **DMC Is Entitled To Judgment As A Matter Of Law On Cappseals' Co-Obligor And Alter Ego Claims Because Of The Doctrine Of Merger.**

The claims of Healthy Solutions and Cappseals have already been reduced to judgment in the Related Action. As such, all of these claims have merged into the judgment and no longer have an independent vitality. "The doctrine of merger is that a cause of action, when reduced to a judgment, has ceased to exist as an independent liability, and has changed its nature and is transmuted into the obligation created by the judgment, which is different in kind and essential characteristics from the initial cause of action. It has been said that 'a judgment is an absolute merger of a debt by simple contract, so that no action can afterwards be maintained upon the original promise.'" Frost v. Thompson, 219 Mass. 360, 367 (1914); see also Moore v. Justices of Municipal Court of City of Boston, 291 Mass. 504, 505 (1935); Lonnqvist v. Lammi, 242 Mass. 574, 577-78 (1922).   (plaintiff could not recover on original debt, because debt merged into judgment). In this respect, Cappseals' position is similar to that in Lonnqvist. In that case, the plaintiffs sued and recovered judgment against one Frank Lammi for a debt owed for making certain repairs on his property. The plaintiff did not sue Ida Lammi, who owned the property in common with Frank Lammi. The judgment against Frank Lammi was unsatisfied. The Lammi property went into foreclosure and the plaintiffs made a claim to the excess of money in the hands of the mortgagee. Ida Lammi demurred to the complaint, and the SJC upheld the demurrer. In pertinent part, the Court noted that the plaintiffs could not recover on their original debt. "They have elected to hold Frank Lammi by taking judgment against him alone. [internal

---

nucleus of operative facts) (*citing* Restatement (Second) of Judgments §24 comment b).   "[I]t is irrelevant that the new claims may express different forms of liability for the same conduct." See Bagley, 407 Mass. at 636.   (preclusion applies even though claimant is prepared in second action to present different evidence or legal theories) (citations omitted); TLT Const, 48 Mass. App. Ct. at 7. ("The statement of a different form of liability is not a different cause of action provided it grows out of the same transaction, act, agreement, and seeks redress for the same wrong.").   Thus, it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which the litigant relies.

12

citations]. They cannot recover in this suit on the original debt, because that has been merged in the judgment and under the circumstances herein disclosed that defense is open on demurrer. [internal citations]. The plaintiffs cannot recover against Ida Lammi on the judgment because she is not a party to it." Id. at 577-78.

Because Healthy Solutions and Cappseals have obtained judgments in the Related Action, no underlying claims based on the same obligations exist and DMC is entitled to judgment as a matter of law on the co-obligor and alter ego claims.

**D.    Cappseals Is Not Entitled To Summary Judgment On Its Alter Ego Claim.**

Even if DMC is not entitled to judgment as a matter of law on Cappseals' alter ego claims on the basis of the settlement and release of claims by Healthy Solutions, it is evident from Cappseals summary judgment pleadings that there are disputed issues of fact on its alter ego claim that preclude summary judgment.

The cases are clear that piercing the corporate veil is available only in rare circumstances. Evans v. Multicon Const. Corp., 30 Mass. App. Ct. 728, 732 (1991); Hiller Cranberry Products, Inc. v. Koplovsky Foods, Inc., 165 F.3d 1, 10 (1st Cir. 1999); My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 233 N.E.2d 748 (1968). Disregarding the corporate structure to impose liability is only available "when (1) there is an active and pervasive control of related business entities by the same controlling persons and there is a fraudulent or injurious consequence by reason of the relationship among those business entities; or (2) there is a 'confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." Evans, 30 Mass. App. Ct. at 732-33 (emphasis in original). See also

George Hyman Const. Co. v. Gateman, 16 F. Supp. 2d 129, 149 (D. Mass. 1998). In determining whether either of these prongs are met, courts weigh twelve criteria: (1) common ownership; (2) pervasive control; (3) confused intermingling or business activity assets or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporations for transactions of the dominant shareholders; (12) use of the corporation in promoting fraud. Evans, 30 Mass. App. Ct. at 733 citing Pespsi-Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F.2d 10, 14016 (1st Cir. 1985). The exercise is, as the Appeal Court noted in Evans, not a matter of counting. The factors are examined to form an opinion whether the overall structure and operation misleads. "There is present in the cases which have look through the corporate form an element of dubious manipulation and contrivance, finagling, such that corporate identities are confused and third parties cannot be quite certain with what they are dealing."[4] 30 Mass. App. Ct. at 736.

     In the first instance, Cappseals attempts to fit this case within the "confused intermingling" prong by arguing that "[i]n reponse to its receipt of Purchase Order 1101 issued by both DMC and ITV, **and believing that both DMC and ITV were liable for payment on the subsequent invoices**, Healthy Solutions procured the goods." Cappseals Memo. at 15 (emphasis in original). Obviously, Cappseals' bald conclusion rests on pure speculation. Cappseals offers no evidence that Healthy Solutions was in any way confused or believed that DMC was liable on its contract claims. Cappseals offers no affidavits or pertinent deposition

---

[4] Cappseals does not adduce any evidence on numerous criteria used by the courts. There is no argument made that either ITV or DMC were thinly capitalized, that there is an absence of corporate records, that there were no payment of dividends or that either entity was insolvent at the time of the transaction between ITV and Healthy Solutions.

testimony to support this speculation. Indeed, based on the evidence, the only reasonable inference is to the contrary. The Distribution Agreement was between Healthy Solutions and ITV. Healthy Solutions never sought payment from DMC for the Supreme Greens product. (See Barrett Aff., ¶ 6.) Healthy Solutions did not seek to assert claims against DMC in the Related Action, even though, following Cappseals' lead, it did join Direct Fulfillment, LLC. Indeed, Cappseals itself did not seek to assert claims against DMC. In the Related Action, Cappseals asserted claims only against ITV and Direct Fulfillment, LLC. In sum, there is no competent evidence that Healthy Solutions was in any way confused that it was dealing with DMC.

There is also no evidence that there was any confused intermingling of business activities.[5] DMC and ITV are separate business entities. DMC was formed for the purpose of searching out products and people that it believes will work well together in an infomercial, and providing the administrative services in connection with selling such products via infomercials. (Barrett Aff., ¶ 2.) Initially, DMC did not have the capacity to purchase media or produce infomercials, and had secured the services of an outside company in Pennsylvania for this purpose. (Id.) ITV was then established for the purpose of purchasing the media and producing the infomercials for future products located by DMC. (Id.) The companies were incorporated several years apart and maintain separate bank accounts and separate accounting systems. (Callahan Aff., ¶ 3). They maintain separate general ledgers and file separate tax returns. (Id.; Callahan Aff., ¶ 3). All transactions have been properly recorded and there has been no

---

[5] That DMC and ITV are owned by common principals is not dispositive. As the SJC noted in My Bread Baking, common ownership of stock together with common management, standing alone, do not give rise to liability on the part of one corporation for the acts of another corporation. 233 N.E. at 751-52.

fraudulent transfers, secretion of assets or any destruction or alteration of financial records.[6] (Callahan Aff., ¶ 4).

There is no evidence that ITV and DMC were in any way used to promote fraud. Incredibly, on this issue Cappseals' only so-called evidence of "fraud" is to allude to the FTC litigation and specifically Judge O'Toole's preliminary injunction order. The claims asserted in that case by the FTC concern whether the advertising by DMC and ITV of the Supreme Greens product contained unfounded claims of health benefits and whether there was sufficient disclosure of the terms and conditions of the auto-ship program, whereby customers would automatically receive periodic shipments of product. The injunction issued by Judge O'Toole required certain additional disclosures by both companies on the health benefits of Supreme Greens and on the autoship program. The FTC action, of course, did not involve any of the issues that were raised among ITV, Healthy Solutions or Cappseals in the Related Action. There are no claims of fraud made by Healthy Solutions or Cappseals in the Related Action. Indeed, the only claim of fraud was brought by ITV against the Healthy Solutions defendants based on certain misrepresentations that induced ITV to enter into the Distribution Agreement with Health Solutions. Nothing in the FTC action or the Related Action evidences or even suggests that DMC or ITV were created for a fraudulent purpose or were otherwise used to perpetrate a fraud on Healthy Solutions or, for that matter, Cappseals.

After all is said and done, Cappseals' main complaint is that there were assets transferred from DMC to ITV and that, after this Court issued its judgments in the Related Case, "ITV's business activities ceased for all practical purposes." Cappseals' Memo. at 17-18.

---

[6] Cappseals' only allegation as to the lack of corporate formalities is its assertion that the "simple fact that both ITV and DMC sent Purchase Order 1101 to Healthy Solutions demonstrates the defendants' failure to properly observe corporate formalities. Cappseals Memo. at 17. How one propostion follows the other is a mystery that Cappseals does not attempt to explain.

16

Neither allegation has any traction.  In connection with the promotion of Supreme Greens, ITV purchased millions of dollars of media.  (Callahan Aff., ¶ 5.)  The funds for the purchase of this media were provided from several sources, including advances of funds from DMC.  It was anticipated that ITV would repay all amounts owed to DMC during the course of running the infomercial program, likely after six to eight months.  (Id.)  Given the extraordinary up-front expense of running a major advertising promotion, ITV ran at a significant loss early in the history of the program.  Because the airing of the Supreme Greens advertising was unexpectedly cut short by the intervention of the Federal Trade Commission and the Food and Drug Administration investigations, ITV never recouped these extraordinary up front costs from the Supreme Greens show.  (Id.)

As security for the advances of funds provided to ITV, the value of the inventory of Supreme Greens product was carried on the books of DMC.  Again, the expectation was that this inventory would be moved to the books of ITV once DMC had recovered its advanced funds and overhead expenses.  That never occurred.  (Id., ¶ 7.)  In addition, as sales of the Supreme Greens product were made by ITV, the proceeds of those sales were credited to DMC to repay the advanced funds and overhead expenses incurred by DMC for providing telephone answering services, credit card processing and customer service.  Once again, the forecast was for ITV to begin generating a profit at some point several months after the commencement of the advertising.  That never occurred.  (Id., ¶ 8.)

Thus, contrary to the suggestion by Cappseals that there was some unusual or improper transfer of assets from ITV to DMC, the evidence establishes a routine and reasonable business transaction between two related entities.  Nor, given the conflict and ongoing litigation with the FTC, is it in any way unusual that ITV's business activities were substantially reduced.  It is also

17

significant that since June 2004, both DMC and ITV have been subject to an injunction that requires them to provide financial reporting to the FTC on a monthly basis, including reports on transfers and expenditures. Thus, there is oversight with respect to the transfer of assets made by either company. There has been no allegation in the FTC action that either company is acting improperly by secreting assets.

In sum, the "evidence" put forth by Cappseals as the basis for its piercing the corporate veil theory is woefully inadequate to impose liability on DMC as a matter of law.

CONCLUSION

Based on the foregoing, Cappseals' motion for partial summary judgment against DMC must be denied.

                    Respectfully submitted,
                    DIRECT MARKETING CONCEPTS, INC.

                    By its attorney(s),

                     /s/ Susan W. Gelwick
                    Peter S. Brooks, BBO #058980
                    Susan W. Gelwick, BBO #567115
                    Christopher F. Robertson, BBO #642094
                    SEYFARTH SHAW LLP
                    Two Seaport Lane, Suite 300
                    Boston, MA 02210-2028
                    Telephone:    (617) 946-4800
                    Telecopier:    (617) 946-4801

Dated: December 2, 2005