# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CAPPSEALS, INC., ) | |
|   ) | |
| Plaintiff, ) | |
|   ) | |
| v. ) | CIVIL ACTION NO. 05-CV-11907-JLT |
|   ) | |
| DIRECT MARKETING CONCEPTS, INC., et al., ) | |
|   ) | |
| Defendants. ) | |

## DEFENDANT DIRECT MARKETING CONCEPTS, INC.'S
## STATEMENT OF MATERIAL FACTS IN DISPUTE

Defendant Direct Marketing Concepts, Inc. ("DMC"), pursuant to Local Rule 56.1, submits the following statement of material facts as to which there exists a genuine issue to be tried.

1.  Cappseals, Inc. ("Cappseals") obtained a Rule 54(b) judgment against ITV Direct, Inc. ("ITV") and Direct Fulfillment, LLC ("Direct Fulfillment") on its claim as a reach and apply plaintiff in a related action, which was based on a judgment obtained by Healthy Solutions, LLC ("Healthy Solutions") on its breach of contract claim against ITV and Direct Fulfillment. Cappseals did not receive judgment on any direct claim that it had against ITV or Direct Fulfillment.  (See Court's Judgments entered in C.A. 04-10421-JLT on July 28, 2005, finding in favor of Healthy Solutions, and on August 3, 2005, finding in favor of Cappseals.)

2.  The judgment entered against ITV and Direct Fulfillment in the related action and the Court's Memorandum allowing Cappseals' Motion For Summary Judgment ("Memorandum") are based in part on the Joint Stipulations of Fact entered into by the parties in the related action with regard to product ordered by ITV for which ITV failed to pay Healthy

Solutions. DMC was not a party to the related action and none of the stipulations related to DMC. (See Court's Memorandum and Stipulations of Fact, attached to the Affidavit of Scott Silverman ("Silverman Aff.") as Exhibits A and C, respectively.)

3. In its Memorandum, the Court made no finding whatsoever with regard to DMC, and found only that ITV failed to pay any of the invoices sent to it by Healthy Solutions. (Court's Memorandum, p. 2.) There has been no judgment entered against DMC.

4. DMC and ITV are separate business entities. They were incorporated several years apart and maintain separate bank accounts and separate accounting systems. They maintain separate general ledgers and file separate tax returns. (Affidavit of Wayne Callahan ("Callahan Aff."), ¶ 3, filed herewith; Affidavit of Donald Barrett ("Barrett Aff."), ¶ 2, filed herewith.)

5. DMC and ITV have separate business purposes. DMC was formed for the purpose of searching out products and people that it believes will work well together in an infomercial, and providing the administrative services in connection with selling such products via infomercials. Initially, DMC did not have the capacity to purchase media or produce infomercials, and had secured the services of an outside company in Pennsylvania for this purpose. Prior to its involvement with the Supreme Greens product ("Supreme Greens" or "the Product"), ITV was established for the purpose of purchasing the media and producing the infomercials for future products located by DMC. (Barrett Aff., ¶ 2.)

6. Thereafter, in April 2003, ITV entered into a contract with Healthy Solutions for the rights to air an infomercial promoting Supreme Greens and to become a distributor of the Product (the "Distribution Agreement"). DMC was not a party to the Distribution Agreement and DMC never had any contract of any kind with Healthy Solutions. (Barrett Aff., ¶ 3.)

2

7. In connection with the promotion of Supreme Greens, ITV purchased millions of dollars of media. The funds for the purchase of this media were provided from several sources, including advances of funds from DMC. DMC also provided administrative services to ITV, including telephone answering services, credit card processing services and customer service. All of these transactions were subject to appropriate and detailed accounting, maintained on each company's general ledgers and accounting systems. (Barrett Aff., ¶ 4; Callahan Aff., ¶ 5.)

8. The business plan and forecast for ITV anticipated that ITV would repay all amounts owed to DMC during the course of running the infomercial program, likely after six to eight months. Given the extraordinary up-front expense of running a major advertising promotion, it is quite typical that companies will run at a significant loss early in the history of the program, with the expectation that future sales will result in a profit. However, because the airing of the Supreme Greens advertising was unexpectedly cut short by the intervention of the Federal Trade Commission and the Food and Drug Administration investigations, the Supreme Greens show never recouped these extraordinary up front costs. (Barrett Aff., ¶ 5; Callahan Aff., ¶ 6.)

9. As security for the advances of funds provided to ITV, the value of the inventory of Supreme Greens product was carried on the books of DMC. Again, the expectation was that this inventory would be moved to the books of ITV once DMC had recovered its advanced funds and overhead expenses. That never occurred. (Callahan Aff., ¶ 7.)

10. In addition, as sales of the Supreme Greens product were made by ITV, the proceeds of those sales were credited to DMC to repay the advanced funds and overhead expenses incurred by DMC for providing telephone answering services, credit card processing and customer service. Once again, the forecast was for ITV to begin generating a profit at some

3

point several months after the commencement of the advertising. That never occurred. (Callahan Aff., ¶ 8.)

11. All of these transactions were properly recorded in the books of ITV and DMC, and all of the supporting records have been maintained. At no time has any "fraudulent" transfer occurred, nor have any funds been improperly removed from either company. To the contrary, both companies have been subject to a federal court order since 2004 prohibiting any such improper or non-business transfers. None have occurred. Likewise, there has not been any commingling of assets of either company. (Callahan Aff., ¶ 9.)

12. As set forth in the Distribution Agreement between ITV and Healthy Solutions, ITV ordered and received the Supreme Greens product from Healthy Solutions. Any purchase orders that were issued by DMC were issued by mistake, as ITV was the only company that had a contract with Healthy Solutions to purchase Supreme Greens. Confirming Healthy Solutions' understanding of its contractual relationship with ITV, at no time did Healthy Solutions ever take action against DMC to seek payment for the Supreme Greens product, and Healthy Solutions never sued DMC in the related case for payment for the Product. Rather, Healthy Solutions brought claims against ITV for payment for the Product. (Barrett Aff., ¶ 7.) In addition, Cappseals never sued DMC in the related case for payment for the Product. (Barrett Aff., ¶ 6.)

13. ITV, Direct Fulfillment, and their affiliates entered into a settlement agreement with Healthy Solutions and its affiliates of all claims that these parties raised against each other, including the claims that were raised in the actions pending in the U.S. District Court for the District of Massachusetts entitled *FTC v. Direct Marketing Concepts, Inc*. and *ITV Direct, Inc. v. Healthy Solutions, Inc., et al.* On September 9, 2005, the parties also executed and exchanged

mutual releases, which released all claims that the Healthy Solutions parties had against ITV and its affiliates, including DMC.  (Barrett Aff., ¶ 8 and Exhibit B.)

>Respectfully submitted,
>DIRECT MARKETING CONCEPTS, INC.
>
>By its attorney(s),
>
> /s/ Susan W. Gelwick
>Peter S. Brooks, BBO #058980
>Susan W. Gelwick, BBO #567115
>Christopher F. Robertson, BBO #642094
>SEYFARTH SHAW LLP
>Two Seaport Lane, Suite 300
>Boston, MA 02210-2028
>Telephone:    (617) 946-4800
>Telecopier:    (617) 946-4801

Dated:  December 2, 2005

5