UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DIRECT MARKETING CONCEPTS, INC., ITV DIRECT, INC., DIRECT FULFILLMENT, LLC, DONALD BARRETT, and ROBERT MAIHOS, <br><br> Defendants. | CIVIL ACTION NO. 05-11907-JLT |

**CAPPSEALS, INC.'S SUBMISSION OF**
**PROPOSED MEMORANDUM AND DECISION**

Pursuant to the Court's Order of May 3, 2006, plaintiff Cappseals, Inc. hereby presents its proposed Memorandum and Decision attached hereto as **Exhibit A**.

                         Cappseals, Inc.
                         By its attorneys,


                         /s/ Scott A. Silverman
                         Daniel J. Kelly, BBO # 553926
                         dkelly@ghlaw.com
                         Scott A. Silverman, BBO # 638087
                         ssilverman@ghlaw.com
                         Gadsby Hannah LLP
                         225 Franklin Street
                         Boston, MA  02110
                         (617) 345-7000

May 23, 2006

B0463654v1

## CERTIFICATE OF SERVICE

      I hereby certify that true and accurate copies of the foregoing *Cappseals, Inc.'s Submission of Proposed Memorandum and Decision* was served on the foregoing attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

<u>Via electronic notification:</u>

Peter S. Brooks            pbrooks@seyfarth.com
Susan W. Gelwick        sgelwick@seyfarth.com
Christopher F. Robertson      crobertson@seyfarth.com

                                                    /s/ Scott Silverman
                                                    Scott A. Silverman

DATED: May 23, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| DIRECT MARKETING CONCEPTS, INC., ITV DIRECT, INC., DIRECT FULFILLMENT, LLC, DONALD BARRETT, and ROBERT MAIHOS, | ) ) ) ) ) ) |
| Defendants. | ) ) ) ) |

Civil Action No. 05-11907-JLT

**<u>MEMORANDUM</u>**

Dated:_____

TAURO, J.

This court issued a judgment in favor of plaintiff, Cappseals, Inc. ("Cappseals") for $1,041,684.49 against defendant ITV Direct, Inc. ("ITV") on August 3, 2005 (the "Judgment") based upon ITV's failure to pay for six shipments of a health supplement called "Supreme Greens" (hereinafter "goods").[1]  Cappseals initiated this action to recover the Judgment from Direct Marketing Concepts, Inc. ("DMC"), an entity that is related to the Judgment debtor, ITV, because the Judgment has not been satisfied and ITV seems financially incapable of paying. Cappseals argues that DMC is responsible for the Judgment because it has operated as the alter ego of ITV.  Alternatively, Cappseals argues that DMC is a co-obligor of the debt recognized by the Judgment.

---

[1] In the proceeding <u>ITV Direct, Inc. v. Healthy Solutions, LLC et al</u>, C.A. No. 04-CV10421-JLT (the "ITV Action").

The Judgment was issued due to the non-payment of six shipments of the goods that ITV received from a company named Healthy Solutions between December 2003 and February 2004. These shipments resulted from a "standing" purchase order numbered 1101 that was issued on November 21, 2003 by **both** DMC and ITV, for the production and delivery of 50,000 units of the goods per week ("Purchase Order 1101").[2]  Healthy Solutions, however, did not manufacture the goods. Rather, pursuant to Purchase Order 1101, and at the request of Healthy Solutions, Cappseals manufactured and delivered the goods to ITV and DMC. Healthy Solutions issued six (6) detailed invoices to DMC and ITV for the Shipments under Purchase Order 1101(collectively the "Invoices").[3]  It is undisputed that neither DMC nor ITV paid any of the Invoices.

It is also undisputed that in 2003 and 2004, DMC's financial records show that it purchased the goods from Healthy Solutions, recorded the goods in its inventory, and sold the goods, recognizing the sales as revenue.[4]  Finally, DMC recognized each and every one of the Invoices for the goods and the specific amounts owed to Healthy Solutions for the delivery of the goods as an indebtedness or "accounts payable" on its books and records.[5]

The facts show that ITV and DMC were intentionally - not accidentally - operated as a common enterprise. It is undisputed that both DMC and ITV are owned and controlled by the same two individuals.[6]  It is also undisputed that both DMC and ITV operate from the same offices in Beverly, Massachusetts.[7]  DMC and ITV have historically shared the same telephone

---

[2] Purchase Order 1101, (Silverman Aff., Ex. D).
[3] Invoices, (Silverman Aff., Ex. E).
[4] DMC's General Ledger, (Prague Aff., Ex. O); Callahan Aff., ¶ 7 ("the value of the inventory of Supreme Greens product was carried on the books of DMC").
[5] DMC's General Ledger, (Prague Aff., Ex. O).
[6] Barrett Dep., pp. 6 – 7, (Silverman Aff., Ex. K); see also DMC's Statement of Material Facts in Dispute [# 16].
[7] 2004 Tax Returns for DMC and ITV, (Prague Aff., Exs. H & N).

and fax numbers. Also undisputed is that ITV had no salaried employees or compensated officers to conduct its operations.[8]

Financial records demonstrate that ITV's only material source of revenue was DMC, and ITV engaged in no material activity other than acting as a conduit for DMC to purchase media.[9] More specifically, the financial records show that DMC periodically transferred money to ITV, and ITV purchased media to promote the sale of the goods on DMC's behalf on the same day or shortly after the lump sum transfers were made to ITV.[10]

Finally, ITV's financial records also demonstrate that DMC and ITV abandoned this "pass-through" function on or around July 20, 2005, the date this Court issued its summary judgment memorandum in the ITV Action.[11] Subsequently, DMC began directly making the media purchases itself while ITV ceased all meaningful business activity.[12] None of these facts have been disputed by DMC.[13]

## DISCUSSION

**A.     Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and…the moving

---

[8] ITV's 2003 – 04 Tax Returns and 2003 – 05 General Ledger Entries, (Prague Aff., Exs. E, H, K & L)
[9] ITV's Profit and Loss Statement, Balance Sheet and General Ledger, (Prague Aff., Exs. D, F & L).
[10] ITV's Profit and Loss Statement, Balance Sheet and General Ledger, (Prague Aff., Exs. D, F & L).
[11] ITV's General Ledger, (Prague Aff., L).
[12] DMC's General Ledger, (Prague Aff., Ex P).
[13] See generally, DMC's Statement of Material Facts in Dispute [# 16]. DMC does not oppose any of the twenty one factual allegations contained within Cappseals' Rule 56.1 statement. Rather, DMC provides two different "explanations" to respond to the facts highlighted by Cappseals. First, DMC asserts it issued Purchase Order 1101 by mistake. Opposition at 7. Even viewing the evidence in the light most favorable to DMC, its position is inconsistent with the evidence presented. For example, DMC paid for the purchases of Supreme Greens it received by checks issued from its own account. DMC General Ledger, (Prague Aff., Ex. O). Second, DMC asserts that the references to the goods within its records are part of a loan that it made to ITV. However, the Balance Sheets, General Ledger and the Tax Returns clearly indicate that no loan or other liability existed as between ITV and DMC and **DMC** identified the purchases as indebtedness on its books and records in the amounts owed to Healthy Solutions. Prague Aff. ¶ 18. Although DMC's accountant Wayne Callahan states in his affidavit that sales of the goods were made by ITV, Callahan Aff., ¶ 8, he testified in his deposition that DMC in fact made these sales.

party [has demonstrated an] entitle[ment] to a judgment as a matter of law."[14]  Under this standard, the "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists.  Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[15]  In deciding whether to allow a motion for summary judgment, a court "must view the entire record in the light most favorable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."[16]  "Summary judgment procedure is properly regarded not as a disfavored shortcut but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just speedy and inexpensive determination of every action.'"[17]

**B.   Alter Ego Liability**

Cappseals asks the Court to enforce the Judgment against DMC by disregarding ITV's corporate form and declaring DMC the "alter ego" of ITV.  "The doctrine of corporate disregard is an equitable tool that authorizes courts, in rare situations, to ignore corporate formalities, where such disregard is necessary to provide a meaningful remedy for injuries and to avoid injustice."[18]  The circumstances of this case require such a remedy.

Under the doctrine of corporate disregard, a "corporation… controlling [another] corporation and directing, or participating actively in its operations may become subject to

---

Callahan Depo., pp. 126 - 28, (Antonelli Aff., Ex F).  Moreover, DMC's financial records indisputably show that DMC, not ITV, sold the Supreme Greens product.  Prague Affidavit, ¶ 19.
[14] Fed. R. Civ. P. 56(c).
[15] Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996) (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).
[16] Mullin v. Raytheon Co., 164 F.3d 696, 698 (1st Cir. 1999) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).
[17] Celotex v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).
[18] Attorney General v. M.C.K., Inc., 432 Mass. 546, 555 (2000).

…liability on principles of agency or causation."[19] Corporate disregard may be appropriate when "there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting."[20] In such circumstances, "in imposing liability upon one or more of a group of closely identified corporations, a court need not consider with nicety which of them ought to be held liable for the act of one corporation for which the plaintiff deserves payment."[21]

In *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 618 (1968), the Massachusetts Supreme Judicial Court set the standard for deciding when to disregard the corporate form with respect to related corporate entities.[22] In addition, under Massachusetts law there are "twelve factors to be considered" by a court when dealing with the issue of corporate disregard with respect to both related corporate entities and individual defendants.[23] The relevant factors are: (1) common ownership; (2) pervasive control; (3) confused intermingling of business, activity, assets or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.[24] However, these factors "serve only to frame the veil piercing analysis. Overarching the point-

---

[19] My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618 (1968).
[20] My Bread Baking, 353 Mass. at 619.
[21] Id. (internal citations and quotations omitted).
[22] See Birbara v. Locke, 99 F.3d 1233, 1240 (1st Cir.1996).
[23] Attorney General v. M.C.K., Inc., 432 Mass. 546, 555 (2000); see also Birbara, 99 F.3d at 1240.
[24] Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 16 (1st Cir. 1985); Evans v. Multicon Constr. Corp., 30 Mass. App. Ct. 728, 733 (1991); M.C.K., Inc., 432 Mass. at 555 f.n. 19.

by-point analysis are equitable considerations."[25]  Moreover, some of these factors "may seem better suited" to an analysis of individual defendants than to related corporate defendants.[26]

Applying the legal standard for the doctrine of corporate disregard under Massachusetts law, the Court finds and rules as follows.

### 1.  *My Bread Baking* Analysis

The undisputed facts demonstrate that like the circumstances in *My Bread*, DMC and its principals "exercise[ed]…pervasive control in the activities of" ITV.[27]  There is common ownership and control, common offices and contact information.  The entities have a shared workforce paid for by DMC, and ITV has been funded solely by payments from DMC that are used to pay for DMC related expenses.  More relevant to the present dispute, DMC's financial records show that it purchased and sold the goods, recognizing the sales and the significant revenues associated with the sales.[28]

On these facts, it can be said that ITV was nothing more than an "agent or department" of DMC.[29]  Under such circumstances, a court "will look through the form to the realities of the relation between the corporations and will hold that in such cases the [related entity] is a mere agent or department for carrying on the business of the [related] corporation."[30]  Therefore, because DMC and its principals pervasively controlled the activities of ITV and because "there is no just reason to delay payment for goods delivered, accepted, and re-sold,"[31] in these unique circumstances the Court "need not consider with nicety which of them ought to be held liable for

---

[25] George Hyman Const. Co. v. Gateman, 16 F. Supp. 2d 129, 150 (D. Mass. 1998).
[26] George Hyman Const. Co., 16 F. Supp. 2d at 150.
[27] My Bread Baking, 353 Mass. at 619.
[28] DMC General Ledger, (Prague Aff., Ex. O); Callahan Aff., ¶ 7 ("the value of the inventory of Supreme Greens product was carried on the books of DMC").
[29] Commonwealth v. Beneficial Finance, 360 Mass. 188, 292 (1971).
[30] Beneficial Finance, 360 Mass. at 292.
[31] ITV Direct, Inc. v. Healthy Solutions, LLC, 379 F. Supp. 2d 130, 134 (D. Mass. 2005), *aff'd by* ITV Direct, Inc. v. Healthy Solutions, LLC, 2006 U.S. App. LEXIS 9587 (1st Cir. 2006).

the act of [either] corporation for which [Cappseals] deserves payment.[32]  Consequently, it is appropriate in this case to disregard ITV's corporate form to hold DMC liable for the Judgment.

### 2. The Factor Analysis

In addition to considering whether corporate disregard is appropriate under the "general analysis in *My Bread*," the Court may also consider the list of twelve factors to ultimately determine whether or not to disregard ITV's corporate form.[33]

#### (a) Common Ownership and Control.

As discussed above, with respect to the first and second factors, the parties do not dispute that both DMC and ITV are owned and controlled by the same two individuals.  Thus the first and second factors weigh in favor of Cappseals.[34]

#### (b) Confused Intermingling of Business, Activity, Assets or Management.

With respect to the third factor, the facts show that DMC and ITV operated as a common enterprise whose own CEO regarded the two companies as one.[35]  DMC and ITV share the same office address in Beverly, Massachusetts.  It is undisputed that ITV's own financial records show that it had no salaried employees or compensated officers nor did it have any material assets or liabilities.  ITV's only material source of revenue was DMC, and ITV engaged in no material activity other than acting as a conduit for DMC to purchase media.  Finally, acting as a common enterprise, the entities simply eliminated the functions of ITV on or around July 20, 2005, the date the Court issued the summary judgment memorandum in the ITV Action. Subsequently, DMC began directly making the media purchases itself.

---

[32] Id. (internal citations and quotations omitted).
[33] Birbara v. Locke, 99 F.3d 1233, 1240 (1st Cir. 1996).
[34] See My Bread, 353 Mass. at 620; see also Evans, 30 Mass. App. Ct. at 733 – 34; M.C.K., Inc., 432 Mass. at 555 n. 20.
[35] Barrett Dep., pp. 6-7, 10-11, 13, (Silverman Aff., Ex. K).

As detailed above, it is also undisputed that DMC's financial records show that it purchased the goods, recognized them as inventory, sold the goods, recognized the sales as revenue, and identified the invoices and amounts owed to Healthy Solutions as an indebtedness or "accounts payable" on its books and records. The records also show that DMC has borne the cost of litigation related to the goods.[36]

These facts show that ITV and DMC were operated and controlled as "a common enterprise"[37] such that ITV was nothing more than an "agent or department" of DMC.[38]

### (c) Thin Capitalization.

The pertinent question with respect to the fourth factor is whether ITV was "too thin" to operate.[39] It is undisputed that ITV had no employees, assets, or income other than that periodically transferred from DMC to purchase media. According to DMC's owner, ITV was formed because he "liked the name more" than DMC.[40] In this respect, ITV was not sufficiently capitalized as a separate entity capable of operating independently from DMC.[41] As a result, Cappseals has not been paid for manufacturing and delivering the goods that DMC subsequently re-sold. Unlike some other cases, this *is* a situation where DMC "form[ed] a subsidiary with minimal capitalization for the purpose of engaging in risky activities."[42]

### (d) Nonobservance of Corporate Formalities and Absence of Corporate Records.

It appears that corporate records for both DMC and ITV were available and that ITV and DMC filed separate tax returns. Notably, however, only one individual, engaged on retainer and

---

[36] DMC's 2003 – 04 Tax Returns and ITV's Financial Records, (Prague Aff., Exs. M, N, D, G & L).
[37] M.C.K., Inc., 432 Mass. at 556.
[38] Commonwealth v. Beneficial Finance, 360 Mass. 188, 292 (1971).
[39] Evans, 30 Mass. App. Ct. at 734.
[40] Barrett Dep., pp. 6 – 7, (Silverman Aff., Ex. K).
[41] See George Hyman Const. Co., 16 F. Supp. 2d at 153.
[42] Birbara, 99 F.3d at 1240 - 1241.

paid by DMC, prepared and filed both DMC's and ITV's tax returns.[43] One accounting system was used to prepare both companies' financial records.[44] Both companies issued identical purchase orders for the same goods.

### (e) No Payment of Dividends or Distribution of Profits.

With respect to the seventh factor, "corporations in the normal course should be paying dividends, or at a minimum making conscious decisions not to do so."[45] The fact that ITV did not pay any dividends is unsurprising because ITV's financial records show that ITV neither operated at a loss nor made any substantial profits during the period 2003 through September 30, 2005.[46] As discussed above, this is because virtually all of the revenue ITV received from DMC was used to purchase media for DMC. ITV was simply a pass-through for DMC for the purpose of purchasing media.

### (f) Insolvency at the Time of the Litigated Transaction.

In these circumstances, it is appropriate to look at ITV's financial situation "prospectively to determine whether a transfer left [the] corporation with so little capital that the business' ability to continue operations was affected."[47] ITV's financial records indicate that subsequent to the Court's issuance of the Judgment, ITV was left with no financial assets to continue purchasing media for DMC, let alone satisfy the outstanding Judgment.

### (g) Siphoning Away of Corporation's Assets.

Corporate disregard is particularly appropriate in "a case of financial misconduct of the subsidiary involving such manipulation as asset-stripping or asset-siphoning which depletes the

---

[43] DMC's and ITV's 2003 – 04 Tax Returns, (Prague Aff., Exs. E, H, J & M); Callahan Aff., ¶¶ 1 – 2.
[44] ITV General Ledger, (Prague Aff., Ex. K.) and DMC General Ledger, (Prague Aff., Ex. P).
[45] George Hyman Const. Co., 16 F. Supp. 2d at 154.
[46] ITV's 2003 – 04 Profit and Loss Statements, (Prague Aff., Exs. D, G).
[47] George Hyman Const. Co., 16 F. Supp. 2d at 154 (quoting Barrett v. Continental Ill. Nat'l Bank & Trust Co., 882 F.2d 1, 4-5 (1st Cir. 1989)(stating insolvency standard in fraudulent conveyance context).

resources of the subsidiary."[48]  ITV's bank records demonstrate that after the Court's summary judgment decision and the Judgment were issued in the Related Action, ITV's business activities ceased for all practical purposes.[49]  Consequently, ITV was left with no material assets.

**(h)  Nonfunctioning of Officers and Directors.**

ITV's financial records show that it had no salaried employees or compensated officers during 2003 through September 30, 2005.[50]

**(i)  Use of the Corporation for Transactions of the Dominant Shareholders.**

For purposes of its summary judgment motion, DMC is not seeking to disregard ITV's form to hold its individual shareholders liable for the Judgment.  Accordingly, this factor is to a large extent inapplicable to this analysis.

**(j)  Use of the Corporation in Promoting Fraud.**

Although Cappseals has alleged that the defendants committed fraud in violation of M.G.L. c. 109A, §§ 5-6, this claim is not at issue for purposes of summary judgment.  However, even without an allegation of fraud, under these circumstances and in order to "prevent gross inequity" the court is still "warranted in carefully scrutinizing the corporate form, regardless of whether actual fraud has been shown."[51]

**C.    Co-Obligor Liability**

Purchase Order 1101 created an enforceable contract obligation with respect to the goods manufactured by Cappseals.[52]  Both DMC and ITV issued identical purchase orders to Healthy Solutions requesting the Product.  DMC received the benefits of Purchase Order 1101 and as a

---

[48] Birbara, 99 F.3d at 1241 (original quotes and citations omitted).
[49] ITV General Ledger and Bank Statements, (Silverman Aff., Exs. I, J).
[50] ITV's 2003 – 04 Tax Returns and 2003 – 05 General Ledger, (Prague. Aff., Exs. E, H, K, L).
[51] M.C.K., Inc., 432 Mass. at 557.
[52] ITV Direct, Inc. v. Healthy Solutions, LLC, 379 F. Supp. 2d 130, 134 (D. Mass. 2005), aff'd by ITV Direct, Inc. v. Healthy Solutions, LLC, 2006 U.S. App. LEXIS 9587 (1st Cir. 2006).

party to Purchase Order 1101 is liable for its failure to pay for the goods manufactured, delivered and accepted under Purchase Order 1101.[53]

The plain language of the purchase order, and DMC's actions subsequent to *its* issuance of Purchase Order 1101, show that DMC was a party to the contract recognized by the Court and is equally liable for the payment obligation memorialized by the Judgment. To the extent there is any dispute over DMC's role in ordering, accepting, promoting and re-selling the goods, its actions subsequent to the issuance of Purchase Order 1101 support DMC's expectation to be bound to pay for the goods.[54]

The statements contained in DMC's supporting affidavits that attempt to distance DMC from the transaction giving rise to the debt for the goods either contradict prior deposition testimony or are belied by DMC's own financial records. Accordingly, DMC creates no genuine dispute of material fact that would allow it to resist summary judgment.

**D.     DMC's Defenses**

This Court will not apply the doctrine of merger nor enforce ITV's release of Healthy Solutions so as to allow DMC to prevent Cappseals' from collecting on the Judgment issued by this Court in the ITV Action. Contrary to DMC's assertions, the doctrine of merger does not apply to this situation. Equitable concerns qualify the application of the merger doctrine where its effect frustrates the "ends of justice."[55]

---

[53] ITV Direct, Inc. v. Healthy Solutions, LLC, 2006 U.S. App. LEXIS 9587 (1st Cir. 2006); Travenol Laboratories, Inc. v. Zotal, Ltd, 394 Mass. 95, 474 N.E.2d 1070 1073 (1985); See also G.L. c. 106, § 2-201.

[54] *See* C.K. Smith & Co. v. Charest, 348 Mass. 314 (1965) (quoting Canadian Club Beverage Co. v. Canadian Club Corp., 268 Mass. 561, 569 (1929); see also Eldridge v. Provident Cos., 2001 Mass. Super. LEXIS 82 (Mass. Super. Ct., March 13, 2001, Filed)(subsequent conduct is entitled to great weight when determining the parties' intentions).

[55] United States v. Ringley, 750 F. Supp. 750, 757 (D. Va. 1990)("The doctrine of merger may be carried no further than the ends of justice require… It would be inequitable for the partners to elude payment…based upon their merger argument."); see also Orix Credit Alliance v. Horten, 965 F. Supp. 481, 485 (D.N.Y. 1997)(doctrine should not be applied in "rigid or technical manner"); Cutler Hardware Co. v. Hacker, 238 F. 146, 147 (5th Cir. 1916) (merger in judgment is the "general rule, yet according to recognized exceptions the judgment will be construed as a new form of the old debt when justice and equity require.");

Similarly, the release between Healthy Solutions and ITV does not bar Cappseals' claims against DMC.[56] First Cappseals' right to enforce the Judgment is not derivative of any right held by Healthy Solutions. Second, the fact that DMC was not a party to the Judgment does not affect Cappseals' right to pursue recovery from DMC.[57]

## CONCLUSION

The undisputed facts demonstrate that DMC and ITV were operated as a common enterprise to promote and sell the goods. It is undisputed that ITV had no material assets, employees, or officers to accomplish this task. It is also undisputed that Cappseals manufactured and delivered the goods that were ultimately sold by DMC. These facts demonstrate that ITV was "availed of, to carry out the objectives and purposes of DMC."[58] At the same time, DMC issued the same purchase order that gave rise to liability for payment of the goods and therefore is equally liable for payment. DMC creates no genuine dispute of material fact that would allow it to resist summary judgment.[59] Mere allegations or conjecture that are unsupported in the record are insufficient to raise a genuine issue of material fact.[60] DMC's conclusory and unsupported statement that there is "no evidence" of a confused intermingling of business activities is not supported by the facts presented to the Court.

---

[56] When ITV and Healthy Solutions filed their Stipulation of Dismissal in the ITV Action, they specifically represented that "*this compromise, release and settlement in no way affects the rights of any other party*" (emphasis added). (ITV Action , #153, ¶4)
[57] H.H. Robertson Co., Cupples Prods. v. V.S. DiCarlo Gen. Contractors, 994 F.2d 476, 478 (8th Cir. 1993)(The "fact that [alter egos] were not themselves either judgment debtors or parties in the original action is irrelevant."); Cupples Prods. v. V.S. DiCarlo Gen. Contractors, 994 F.2d 476, 478 (8th Cir. 1993)(The "fact that [alter egos] were not themselves either judgment debtors or parties in the original action is irrelevant."); accord Data Gen. Corp. v. Grumman Data Sys. Corp., 886 F. Supp. 927, 931 (D. Mass. 1994); see also Alman v. Danin, 801 F.2d 1, 3-5 (1st Cir. 1986)(upholding summary judgment against alter ego shareholders).
[58] My Bread Baking, 353 Mass. at 618.
[59] See Collins v. Martella, 17 F.3d 1, 3 n. 3 (1st Cir.1994)(original quotes and citations omitted).
[60] See Horta v. Sullivan, 4 F.3d 2, 11 (1st Cir.1993).

-13-

Under Massachusetts law equitable considerations warrant that in this rare circumstance, ITV's corporate form be penetrated to reach DMC.  Cappseals motion is, therefore, ALLOWED.

AN ORDER WILL ISSUE.


/S/ Joseph L. Tauro

United States District Judge

B0463373v1