UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., )<br>)<br>         Plaintiff, )<br>)<br>v. )<br>)<br>DIRECT MARKETING CONCEPTS, INC., et )<br>al., )<br>)<br>         Defendants. ) | CIVIL ACTION NO. 05-CV-11907-JLT |

**DIRECT MARKETING CONCEPTS INC.'S SUBMISSION OF
<u>PROPOSED MEMORANDUM AND DECISION</u>**

Pursuant to the Court's Order of May 3, 2006, defendant Direct Marketing Concepts, Inc.

("DMC") hereby submits its proposed Memorandum and Decision attached hereto as Exhibit A.

                                      Respectfully submitted,
                                      DIRECT MARKETING CONCEPTS, INC.

                                      By its attorney(s),

                                      <u>/s/ Susan W. Gelwick</u>
                                      Peter S. Brooks, BBO #058980
                                      Susan W. Gelwick, BBO #567115
                                      CHRISTOPHER F. ROBERTSON, BBO #642094
                                      Seyfarth Shaw LLP
                                      Two Seaport Lane, Suite 300
                                      Boston, MA 02210-2028
                                      Telephone:    (617) 946-4800
                                      Telecopier:    (617) 946-4801

Dated: June 13, 2006

2

**CERTIFICATE OF SERVICE**

     I hereby certify this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those as non-registered participants on June 13, 2006.

                                           /s/ Susan W. Gelwick

Dated: June 13, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DIRECT MARKETING CONCEPTS, INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> )  CIVIL ACTION NO. 05-CV-11907-JLT <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM**

Dated: _____

TAURO, J.

Cappseals, Inc. ("Cappseals") commenced this action against the defendants ITV Direct, Inc. ("ITV"), Direct Marketing Concepts, Inc. ("DMC"), Direct Fulfillment, Inc. ("Direct Fulfillment") Donald Barrett ("Barrett") and Robert Maihos ("Maihos") in an attempt to collect on a judgment entered in favor of Cappseals and against ITV and Direct Fulfillment in another action that was pending before this Court, ITV Direct, Inc. v. Healthy Solutions, LLC, et al., C.A. No. 04-CV10421-JLT ("First Action"). The judgment was based on ITV's failure to pay for six shipments of a health supplement called "Supreme Greens" that it had ordered from an entity named Healthy Solutions, LLC ("Healthy Solutions"). Cappseals manufactured Supreme Greens under a contract it had with Healthy Solutions and intervened in the First Action to bring claims against Healthy Solutions for the price of the goods it manufactured, and to bring a reach and apply claim against ITV based on Healthy Solutions' claim for the cost of the goods sold and delivered.

On July 28, 2005, this Court entered final judgment under Fed. R. Civ. P. 54(b) in favor of Healthy Solutions and against ITV and Direct Fulfillment in the amount of $1,086,672.80.

Based on the judgment entered in favor of Healthy Solutions on its claim for goods sold and delivered, on August 3, 2005, this Court entered final judgment pursuant to Fed. R. Civ. P. 54(b) in favor of Cappseals and against ITV and Direct Fulfillment in the amount of $1,041,684.49 on Cappseals' claim to reach and apply (the "Judgment").[1]

DMC was not a party to the First Action, the Court made no findings whatsoever with regard to DMC, and no judgment was entered against DMC in the First Action.  At no time did Healthy Solutions ever take action against DMC to seek payment for the Supreme Greens product.  In addition, Cappseals never sued DMC in the First Action for payment for the product.

After Cappseals obtained its Judgment, ITV, Direct Fulfillment, and their affiliates entered into a settlement agreement with Healthy Solutions and its affiliates of all claims that these parties raised against each other, including the claims that were raised in the action pending in the U.S. District Court for the District of Massachusetts entitled *FTC v. Direct Marketing Concepts, Inc*. and *ITV Direct, Inc. v. Healthy Solutions, Inc., et al.* ("FTC Action").  On September 9, 2005, the parties also executed and exchanged mutual releases, which released all claims that the Healthy Solutions parties had against ITV and its affiliates, including DMC.

Cappseals asserts that ITV and Direct Fulfillment do not have sufficient assets to satisfy Cappeals' Judgment.  As a result, Cappseals commenced this action, claiming that ITV and Direct Fulfillment fraudulently transferred assets to DMC in order to avoid satisfying the judgment held by Cappseals.  Cappseals also alleges that DMC is an alter ego of ITV and is responsible for the judgment entered against ITV.  Cappseals has now moved for partial summary judgment as to some of its claims against DMC.  In this motion, Cappseals first asks this Court to declare that DMC is a co-obligor of the same debt that resulted in the judgment

---

[1] See Judgment in First Action.

against ITV, although no such claim is found in Cappseals' complaint, nor is there a single allegation in the complaint that so much as hints at any such claim. In the alternative, Cappseals asks this Court to find that DMC and ITV are alter egos.

## DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and . . . the moving party [has demonstrated an] entitle[ment] to a judgment as a matter of law."[2] Under this standard, the "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[3] In deciding whether to allow a motion for summary judgment, a court "'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'"[4]

### A.   The Co-Obligor And Alter Ego Claims Are Barred.

Cappseals asserts for the first time on summary judgment that DMC is a co-obligor on the same debt that resulted in the Judgment against ITV. According to Cappseals, DMC issued an identical purchase order to Healthy Solutions to the one issued by ITV, which gave rise to Cappseals' right to payment in the First Action on the goods shipped to ITV. Thus, Cappseals asserts that DMC is a party to the contract recognized by this Court and is equally liable for the payment of the Judgment. In the alternative, Cappseals asks this Court to disregard the corporate form of ITV and enforce the Judgment against DMC as the alter ego of ITV. Even if Cappseals

---

[2] Fed. R. Civ. P. 56(c).
[3] Blackie v. Main, 75 F.3d 716, 721 (1st Cir. 1996)(quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)).
[4] Mullin v. Raytheon Co., 164 F.3d 696, 698 (1st Cir. 1999) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

3

had pled its co-obligor claim against DMC, both Cappseals' co-obligor and alter ego claims are necessarily based on the same underlying claim and debt that was asserted against ITV as a reach and apply defendant in the First Action in which the Judgment was entered.

In its intervenor complaint in the First Action, Cappseals asserted a breach of contract claim against Healthy Solutions for the debt arising from its contract with Healthy Solutions, and a reach and apply claim against ITV to attach funds that ITV allegedly owed Healthy Solutions on Healthy Solutions' breach of contract claims against ITV. Cappseals received a judgment against Healthy Solutions, and on the basis of its reach and apply claim, a judgment allowing it to reach the debt ITV alleged owed Healthy Solutions. Cappseals' judgment against ITV was not based on any direct liability between Cappseals and ITV.

It is well established that the reach and apply statute does not create substantive rights. Its function is wholly procedural so as to provide a means for the application of assets of the debtor in satisfaction of the plaintiff's claim.[5] The rights of a reach and apply plaintiff like Cappseals are said to be derivative of the debtor's rights and subject to the same defenses (and logically to the same claims) the reach and apply defendant has against the debtor.[6] Thus, Cappseals' co-obligor and alter ego claims are by their nature derivative of any claims that Healthy Solutions could have asserted against DMC and are subject to the same defenses.

What is fatal to Cappseals' co-obligor and alter ego claims is that Healthy Solutions is not a party to the present action and has no viable claims against DMC. ITV and Healthy Solutions have dismissed their claims in the First Action with prejudice and have exchanged mutual general releases that include within their ambit DMC. Pursuant to the terms of the release, Healthy Solutions released and forever discharged ITV and its affiliates, officers and

---

[5] Blumenthal v. Blumenthal, 303 Mass. 275, 278-79 (1939).
[6] Polito v. Galluzzo, 337 Mass. 360, 363 (1958); Mamber v. Levin, 4 Mass. App. Ct. 157, 161 (1976); Morse v. The Employers' Liability Assurance Corp., Ltd., 3 Mass. App. Ct. 712 (1975) (rescript).

directors from, *inter alia*, "all debts, demands, actions, causes of action, contracts, claims, suits, judgments, damages and liabilities of any kind or nature whatsoever, in law or in equity, whether known or unknown . . . which the Healthy Solutions Parties raised or could have raised in connection with, arising from, or related to" the First Action and FTC Action (the "Release").[7] It is undisputed that DMC and ITV are affiliates. Because the actual release language includes affiliates of ITV, the release must be construed to include any claims that Healthy Solutions had against DMC, including any claim based on DMC's obligations under Invoice 1101 or any claim based on piercing the corporate veil.[8] Thus, as Healthy Solutions would be barred from asserting claims against DMC, the only claims that Cappseals could possibly assert against DMC are claims that are not derivative of Healthy Solutions' claims. Neither the co-obligor nor the piercing the corporate veil claims is independent.

Since the co-obligor and alter ego claims asserted by Cappseals are strictly derivative of the claims of Healthy Solutions, as they were in the First Action against ITV, and as Healthy Solutions has released all of its claims, including those potentially against DMC, Cappseals' claims on which it now seeks summary judgment are barred by the Release.

The same result follows from the stipulation of dismissal with prejudice filed by Healthy Solutions and ITV in the First Action ("Stipulation"). A dismissal with prejudice is a final judgment on the merits and precludes relitigation of any claim that was or could have been

---

[7] Release at Exhibit B to Affidavit of Donald Barrett.
[8] Hermes Automation Technology, Inc. v. Hyundai Electronics Industries Co., Ltd., 915 F.2d 739, 746 (1st Cir. 1990) (Under Massachusetts law, whether release agreement provides for release of particular entity is generally determined by intent of parties to agreement.); see also Atlas Tack Corp. v. Crosby, 41 Mass. App. Ct. 429, 431 (1996), 424 Mass. 1101 (rev. denied), citing Naukeag Inn, Inc. v. Rideout, 351 Mass. 353, 356 (1996) (General releases may release future claims between the parties that were unknown at the time the release was executed.).

5

litigated in the prior action.[9] A final judgment is conclusive on parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action.[10] There is an identity of claims so long as the original claims litigated and the newly asserted claims are derived from the same transaction or series of connected transactions.[11] Thus, there is an identity of claims where the claims arise out of a common nucleus of operative facts, such as Healthy Solutions claims in the First Action and Cappseals' co-obligor and alter ego claims here.[12]

Cappseals argues that, notwithstanding the Release and Stipulation entered between Healthy Solutions and ITV and its affiliates, it is not barred from raising an alter ego claim against DMC. Cappseals asserts that a judgment creditor has a right to raise an alter ego claim in a second suit in order to collect a judgment from a party not named in the prior judgment. This is not a case, however, where Cappseals has alleged in its complaint and has established a summary judgment record of a scheme on the part of ITV to avoid paying the judgment by transferring assets to another entity or person or by the payment of distributions by ITV to shareholders. Indeed, both ITV and DMC have been under an order in the FTC Action since June 2004 requiring the financial reporting of transfers and expenditures, and Cappseals makes no claim of any evidence in that action that either company has secreted assets.[13]

Cappseals' argument centers on <u>pre-judgment conduct</u>; that is (i) that DMC sent the same purchase order as ITV to Healthy Solutions for the purchase of Supreme Greens and thus was a

---

[9] <u>United States v. Cunan</u>, 156 F.3d 110, 114 (1st Cir. 1998); <u>Department of Revenue v. LaFratta</u>, 408 Mass. 688, 693 (1990) <u>citing Boyd v. Jamaica Plain Coop. Bank</u>, 7 Mass. App. Ct. 153, 157 n.8 (1979).
[10] <u>Bagley v. Moxley</u>, 407 Mass. 633, 635 (1990).
[11] <u>TLT Const. Corp. v. A. Anthony Tappe and Associates, Inc.</u>, 48 Mass. App. Ct. 1, 7 (Mass. App. 1999); <u>Saint Louis v. Baystate Medical Center</u>, 568 N.E.2d 1181, 1185-86 (1991).
[12] <u>See Saint Louis</u>, 568 N.E.2d at 1186 (*citing* Restatement (Second) of Judgments §24 comment b). "[I]t is irrelevant that the new claims may express different forms of liability for the same conduct." <u>See Bagley</u>, 407 Mass. at 636. (preclusion applies even though claimant is prepared in second action to present different evidence or legal theories) (citations omitted); <u>TLT Const,</u> 48 Mass. App. Ct. at 7. ("The statement of a different form of liability is not a different cause of action provided it grows out of the same transaction, act, agreement, and seeks redress for the same wrong.").
[13] <u>See</u> Affidavit of Wayne Callahan, ¶9

co-obligor to Healthy Solutions and (ii) that ITV acted merely as a pass-through entity for DMC. None of these issues concerns post-judgment conduct aimed at avoiding the payment of Cappseals' judgment. The most that Cappseals alleges is that, after the judgment, ITV supposedly ceased doing business. ITV and DMC offered evidence that this cessation of ITV's business was a result of the FTC Action.[14]

In any event, Cappseals has not submitted competent and undisputed evidence establishing a post-judgment scheme by the defendants to divert assets from ITV to avoid paying Cappseals' judgment. Although Cappseals has asserted a fraudulent transfer claim in its complaint, it has not sought summary judgment on that claim and it will not be addressed here. Because Cappseals alter-ego claim is not grounded in any post-judgment conduct by ITV or DMC, but rather, is grounded in allegations that are based on the same underlying debt and breach of contract claim that were at issue between Healthy Solutions and ITV in the First Action, its cause of action is extinguished by the Release and Stipulation signed by ITV and Healthy Solutions.

Next, Cappseals argues that DMC is not entitled to assert the defense that Cappseals' co-obligor and alter ego claims are barred by the Release and Stipulation in the First Action because this defense contradicts the earlier representation made in the Stipulation that no rights would be affected. Accordingly, Cappseals asks the Court to refuse to enforce the Release. Cappseals' argument fails for a number of reasons. First, final judgment was entered in favor of Cappseals and against ITV on its reach and apply claim under Rule 54(b) before the filing of the Stipulation. Thus, Cappseals' derivative "rights" as a reach-and-apply plaintiff were already established in the Judgment and could not have been impaired by the Release and Stipulation. Second, DMC was not a party in the First Action. Nothing prevented Cappseals from bringing

---

[14] See Affidavit of Wayne Callahan, ¶6; Affidavit of Donald Barrett, ¶5.

7

DMC into the First Action and asserting its co-obligor and alter ego theories in that action before it sought summary judgment against ITV on its reach and apply claim. Cappseals chose to pursue and take a judgment against ITV; having done so, it may not now proceed to prosecute a derivative claim that was released by Healthy Solutions.

Accordingly, it is DMC that is entitled to summary judgment on Cappseals' co-obligor and alter-ego claims, as Cappseals is barred by the Release and Stipulation from raising these claims in this action.

### B.   Co-Obligor and Alter Ego Claims are Merged Into Judgment.

Similarly, the alter ego and the co-obligor claims on which Cappseals seeks summary judgment are also barred by the merger doctrine. The claims of Healthy Solutions and Cappseals have already been reduced to judgment in the First Action. As such, both of these claims have merged into the judgment and no longer have an independent vitality. "The doctrine of merger is that a cause of action, when reduced to a judgment, has ceased to exist as an independent liability, and has changed its nature and is transmuted into the obligation created by the judgment, which is different in kind and essential characteristics from the initial cause of action. It has been said that 'a judgment is an absolute merger of a debt by simple contract, so that no action can afterwards be maintained upon the original promise.'"[15]

It is the facts surrounding the transaction or occurrence that operate to constitute the cause of action, not the legal theory upon which the litigant relies.[16] The co-obligor and alter ego claims now advanced by Cappseals arise out of the same operative facts and obligations from

---

[15] Frost v. Thompson, 219 Mass. 360, 367 (1914); see also Moore v. Justices of Municipal Court of City of Boston, 291 Mass. 504, 505 (1935); Lonnqvist v. Lammi, 242 Mass. 574, 577-78 (1922) (plaintiff could not recover on original debt, because debt merged into judgment).

[16] TLT Const. Corp. v. A. Anthony Tappe and Associates, Inc., 48 Mass. App. Ct. 1, 7 (Mass. App. 1999) ("The statement of a different form of liability is not a different cause of action provided it grows out of the same transaction, act, agreement, and seeks redress for the same wrong.").

8

which Cappseals chose to take its reach and apply Judgment; as those claims have no independent viability, they are subject to the merger doctrine. Thus, Cappseals cannot avoid application of the merger doctrine by relying on an alter ego claim that is derived from the same transaction which gave rise to its Judgment.

Because Healthy Solutions and Cappseals have obtained judgments in the First Action, no underlying claims based on the same obligations exist, and DMC is entitled to judgment as a matter of law on Cappseals' co-obligor and alter ego claims on this basis as well.

      C.      <u>Alter Ego Claim Raises Factual Disputes.</u>

Alternatively, even if DMC and ITV were not entitled to judgment as a matter of law on Cappseals' alter ego claim on the basis of the Stipulation and Release of claims by Healthy Solutions or on the merger doctrine, it is evident from Cappseals' summary judgment pleadings that there are disputed issues of fact on its alter ego claim that preclude summary judgment. As the First Circuit has noted in <u>Crane v. Green & Freedman Baking Co.</u>, 134 F.3d 17 (1st Cir. 1998), the legal standard for piercing the corporate veil is fact intensive and among the most confusing in corporate law.[17] "Even where veil-piercing is decided by a judge rather than a jury, the courts have held that the question, while equitable, is one of fact."[18] Thus, whether ITV and DMC are alter egos, and whether Cappseals is entitled to pierce ITV's corporate veil, are determinations of fact based upon all of the evidence, under the standards articulated in <u>Evans v. Multicon Const. Corp.</u>, 30 Mass. App. Ct. 728, 732 (1991) and <u>Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc.</u>, 754 F.2d 10, 14-16 (1st Cir. 1985).

---

[17] <u>Id.</u> at 21
[18] <u>Id.</u> (citations omitted).

The cases are clear that piercing the corporate veil is available only in rare circumstances.[19] Disregarding the corporate structure to impose liability is only available "when (1) there is an active and pervasive control of related business entities by the same controlling persons <u>and</u> there is a fraudulent or injurious consequence by reason of the relationship among those business entities; or (2) there is a 'confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting."[20] In determining whether either of these prongs are met, courts weigh twelve criteria: (1) common ownership; (2) pervasive control; (3) confused intermingling or business activity assets or management ; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporations for transactions of the dominant shareholders; (12) use of the corporation in promoting fraud.[21] The factors are examined to form an opinion whether the overall structure and operation misleads. "There is present in the cases which have look through the corporate form an element of dubious manipulation and contrivance, finagling, such that corporate identities are confused and third parties cannot be quite certain with what they are dealing."[22]

---

[19] <u>Evans v. Multicon Const. Corp.</u>, 30 Mass. App. Ct. 728, 732 (1991); <u>Hiller Cranberry Products, Inc. v. Koplovsky Foods, Inc.</u>, 165 F.3d 1, 10 (1st Cir. 1999); <u>My Bread Baking Co. v. Cumberland Farms, Inc.</u>, 353 Mass. 614, 233 N.E.2d 748 (1968).

[20] <u>Evans</u>, 30 Mass. App. Ct. at 732-33.  See also <u>George Hyman Const. Co. v. Gateman</u>, 16 F. Supp. 2d 129, 149 (D. Mass. 1998).

[21] <u>Evans</u>, 30 Mass. App. Ct. at 733 citing <u>Pepsi-Cola Metropolitan Bottling Co.</u>, 754 F.2d at 14-16.

[22] <u>Id.</u>, 30 Mass. App. Ct. at 736.

Of the twelve factors listed in Evans and Pepsi-Cola, Cappseals engages in a cursory discussion of six: common ownership, pervasive control, confused intermingling of assets, non-observance of corporate formalities, siphoning of assets and use of the corporation to promote fraud. Cappseals did not adduce any evidence or make any argument on the remaining criteria.

Other than common ownership and control (there is no dispute that Donald Barrett and Robert Maihos own and control ITV and DMC), Cappseals' proffered evidence of the other four factors it discusses is insufficient to demonstrate its right to judgment as a matter of law on its alter ego claim. On "confused intermingling," for example, Cappseals relies on certain observations made by the District Court in the FTC Action. The District Court in the FTC Action hardly credited the allegations relied on by Cappseals to establish intermingling of assets, and they certainly do not constitute undisputed findings of fact by the District Court for the purposes of summary judgment in this action.

On non-observance of corporate formalities, the only evidence relied on by Cappseals is some evidence that both ITV and DMC issued purchase orders to Healthy Solutions. Such evidence, which is disputed by the evidence submitted by DMC, hardly establishes that ITV and DMC did not appropriately observe corporate formalities.[23] In any event, the evidence is clear that Healthy Solutions was not confused by the purchase orders. Contrary to Cappseals' assertion that Healthy Solutions believed both ITV and DMC were liable for payment, Healthy Solutions did not sue DMC on the debt and never took any steps to collect the debt from DMC.

As for siphoning assets, Cappseals' complaint is that ITV's business ceased after the Judgment was issued in the First Action; however, it does not present any admissible and concrete evidence of improper payments by ITV to Barrett, Maihos or any other third party. Finally, as to promoting fraud, the only evidence claimed by Cappseals is the so-called deceptive

---

[23] Affidavit of Donald Barrett, ¶¶ 6-7.

11

advertising of Supreme Greens that is currently at issue in the FTC Action.  As the First Circuit has made clear, the fraudulent or injurious consequences must deal with the intercorporate relationship, not some unrelated issue.[24]  Whether consumers were deceived by the Supreme Greens infomercials has absolutely nothing to do with the relationship between ITV and DMC or whether any financial misconduct has occurred between the two entities.

Cappseals' argument that ITV was merely a pass-through for DMC rests on its contention that the financial records show no evidence of loans or liability on the part of ITV to DMC with respect to the advance of funds to pay for the media buys.  DMC disputes this contention with evidence establishing that at the time ITV entered into the distribution agreement with Healthy Solutions (in April 2003), the business plan and forecast for ITV anticipated that ITV would repay all amounts owed to DMC.  The evidence also establishes that because the Supreme Greens infomercial was cut short by the intervention of the FTC and FDA, the Supreme Greens infomercials never recouped the upfront costs lent by DMC.[25]  Contrary to Cappseals' position, there is evidence in the record demonstrating that, well before Cappseals initiated the instant action against DMC, ITV owed DMC significant funds for the Supreme Greens infomercials, and properly recorded a liability.[26]

There are twelve factors to be considered in reaching a determination that it is appropriate to pierce a corporate veil, and other than common ownership and control, Cappseals fails to provide competent, undisputed and unequivocal evidence to establish the other ten factors.  The cases are clear that piercing the corporate veil is justified only in rare circumstances.  And while, as the Appeals Court noted in Evans, the exercise of weighing the factors is not merely a matter

---

[24] Birbara v. Locke, 99 F.3d 1233, 1240 (1st Cir. 1996)
[25] Affidavit of Donald Barrett, ¶¶ 3, 5.
[26] See Accounting report from the FTC Action, attached to the Silverman Affidavit as Exhibit F, at ITV 00567 and ITV 00546.

of counting, the lack of concrete and pertinent evidence on so many factors forecloses judgment as a matter of law on Cappseals' alter ego claim.

Cappseals' Motion is therefore DENIED and judgment as a matter of law will enter in favor of DMC on Cappseals' co-obligor and alter ego claims.

AN ORDER WILL ISSUE.

/s/ Joseph L. Tauro
United States District Judge