UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C. A. No. 05-CV11907-JLT |
| ) | |
| DIRECT MARKETING CONCEPTS, INC. ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## CAPPSEALS, INC.'S PRETRIAL MEMORANDUM AND STATUS REPORT

Pursuant to the Court's Order dated September 19, 2006 and Local Rule 16.5(D) of the United States District Court for the District of Massachusetts, plaintiff Cappseals, Inc. ("Cappseals" or "Plaintiff") hereby submits its portions of the Status Report.

**1.  ADDITIONAL MATTERS TO AID IN DISPOSITION OF ACTION.**

Cappseals has commenced supplementary process proceedings against ITV Direct in the Related Action Pursuant to M.G.L. c. 224, § 14 et seq. (the "Proceedings"). Magistrate Judge Dein is conducting the Proceedings and ITV Direct will present further evidence at an examination of defendant Donald Barrett scheduled for November 20, 2006. If as a result of the Proceedings ITV Direct is ordered to pay the Judgment in whole or in part or the parties settle the Related Action, the present action may become moot prior to trial.

Because Magistrate Judge Dein is already familiar with many of the facts that will be evaluated in the present matter, Cappseals requests that this matter, including any trial, be referred to Magistrate Judge Dein for adjudication. Neither party has made a jury demand.

B0485352v1

2.  **SUMMARY OF EVIDENCE OFFERED BY THE PLAINTIFF.**

Cappseals expects to offer the following evidence at trial:

A.  **Cappseals Commences This Action To Enforce the Judgment.**

Cappseals holds a judgment against defendant ITV Direct, Inc. ("ITV Direct" or "ITV") in the amount of $1,041,684.49 (the "Judgment") granted by this Court in the matter of *ITV Direct, Inc. v. Healthy Solutions, LLC et al., C.A. No. 0410421-JLT* (the "Related Action").[1] ITV Direct has failed to pay the Judgment and has theoretically ceased operations in favor of related entities, including Direct Marketing Concepts, Inc. ("DMC"). Accordingly, Cappseals commenced this action against the defendants ITV Direct, DMC, Donald Barrett ("Barrett") and Robert Maihos ("Maihos")(collectively "Defendants") in an effort to collect the Judgment. Cappseals' Amended Complaint seeks recovery based on several theories including: (1) Fraudulent Transfer pursuant to M.G.L. c. 109A (Counts I and II); (2) Alter Ego (Count III); (3) Declaratory Judgment pursuant to 28 U.S.C. § 2201 (Count IV); (4) Constructive Trust (Count V); (5) Reach and Apply (Count VI); and (6) violation of M.G.L. c. 93A.

B.  **DMC And ITV Direct Both Ordered The Goods Manufactured By Cappseals.**

The Judgment arose from ITV Direct's failure to pay for goods sold that it received and sold for a profit. Between December 2003 and February 2004 ITV Direct received seven shipments of a health supplement called Supreme Greens with MSM (the "Product") that it ordered from a company named Healthy Solutions d/b/a Direct Business Concepts (a party to the Related Action). These shipments resulted from a "standing" purchase order numbered 1101 that was issued on November 21, 2003 by both DMC and ITV Direct, for the production and delivery of 50,000 units of the Product per week ("Purchase Order 1101"). Cappseals was

---

[1] As discussed herein, the parties are engaged in supplementary process hearings pursuant to M.G.L. c. 224, § 14 et seq. in the Related Action as defined herein. Accordingly, Cappseals reserves the right to present additional evidence and witnesses that arise as a result of those hearings.

engaged to manufacture all of the Product shipped, delivered and accepted pursuant to Purchase Order 1101. At the time that Defendants stopped payment on the goods delivered under Purchase Order 1101, they had already received several shipments pursuant to a prior "standing" purchase order (numbered 1078) issued on October 8, 2003 requesting 160,000 bottles of the goods per month ("Purchase Order 1078").

C.   **Healthy Solutions Billed Both DMC And ITV Direct For The Product.**

Pursuant to Purchase Order 1101, at the request of Healthy Solutions, Cappseals manufactured and delivered the Product to ITV Direct. Healthy Solutions issued seven (7) invoices to DMC and ITV Direct for the Shipments under Purchase Order 1101. The invoices, numbered 20 through 26, were made in the amounts of: (1) $300,024 for the December 19, 2003 shipment of the Product; (2) $300,078.00 for the December 29, 2003 shipment of the Product; (3) $185,472.00 for the January 5, 2004 shipment of the Product; (4) $323,712.00 for the January 14, 2004 shipment of the Product; (5) $376,146.00 for the January 21, 2004 shipment of the Product; (6) $318,216.00 for the January 29, 2004 shipment of the Product; and (6) $318,240.00 for the February 5, 2004 shipment of the Product (collectively the "Invoices"). The total price of the goods delivered in response to Purchase Order 1101 and invoiced by Healthy Solutions was $2,121,942.00. All of these Invoices referenced Purchase Order 1101. DMC paid the initial invoice (No. 20). However, neither DMC nor ITV Direct paid the final six Invoices. Furthermore, Cappseals was never paid for the Product which it manufactured.

D.   **DMC Carried The Revenue And Costs Of The Product On Its Own Books.**

After post-judgment discovery in the Related Action, ITV Direct and DMC produced records disclosing their financial status as well as financial information relating to their sales of the Product. The records indicate that the Product inventory was eventually transferred on to the books and records of DMC which was credited for making payment for the Product to Healthy

Solutions d/b/a Direct Business Concepts.  DMC provided the detail on $4,647,698.61 in costs *it* incurred in acquiring the Product.  DMC's records reveal entries that identically match the Invoices identified above including the Invoice numbers, dates and the $1,821,864.00 owed for shipments pursuant to Purchase Order 1101.  The financial records also reveal that the debts owed pursuant to the Invoices (Numbers 21 through 26) were associated with Purchase Order 1101, and, a notation indicating the invoices were "not paid" by DMC.

Finally, the revenues and profits generated from sales of the Product have solely been attributed to DMC in its financial records.  In fact, DMC's records indicate that it generated revenues exceeding $16 million associated with sales of the Product through June 2004.  ITV Direct and DMC by all accounts continue to sell, market and promote health supplements and bring in millions of dollars annually from these operations.  ITV also continues to sell and promote the Product.

While DMC has generated significant assets through sales of the Product, at the same time, ITV Direct has served as nothing more than a "pass-through" entity.  ITV Direct's and DMC's financial records indicate that the strategy implemented by the Defendants left ITV Direct with no material assets.

E.     **The Defendants Manipulate The Financial Assets Of ITV Direct And DMC.**

Until approximately July of 2005, the Defendants were transacting business through ITV Direct.  However, concurrent with the Court's issuance of the Judgment (and associated summary judgment decision), ITV Direct's operations essentially stopped from an accounting perspective.  ITV Direct's general ledger shows that on average ITV Direct recorded 398 transactions per month during May, June and July, 2005.  From July 20, 2005 – the date of the summary judgment Memorandum – through the printing of the General Ledger on September 30, 2005 (2 ½ months) ITV Direct recorded a *total* of 9 transactions.  ITV Direct's bank statements

tell a similar story with it averaging $1.8 million flowing in and out of its accounts during the months of May, June and July, 2005 whereas that number dropped to $100,000 in August. ITV Direct's 2006 financial records show that it has no business activity whatsoever. In short, ITV Direct financial records show that after this Court issued the Judgment, ITV Direct stopped doing business.

F.     **ITV Direct And DMC Are Operated As A Single Entity.**

The liquidation of ITV Direct's bank accounts is not the end of the ITV Direct story. Rather, ITV Direct has apparently continued operations - advertising and selling products, filing lawsuits, producing infomercials, and funding new ventures for its principals while using funds held in DMC's name. At the same time ITV Direct's intellectual property continues to generate what the defendants represent to be "hundreds of millions" of dollars in revenue each year for the defendants. However, no consideration appears to have ever been paid to ITV Direct for the use of its marks.

At all times relevant to this matter, Barrett and Maihos have controlled the assets and operations of ITV Direct and DMC and orchestrated their odd relationship to avoid payment of the judgment and other debts of ITV Direct. They are the sole shareholders of the corporations. Barrett and Maihos also loaned and withdrew monies from ITV Direct and DMC during the relevant time periods. Financial records show that in 2003, DMC compensated its two shareholders Maihos and Barrett a total of $780,000, and distributed to Messrs. Maihos and Barrett an additional $844,217. In 2004, DMC compensated its two shareholders $1,024,000 and distributed to Messrs. Maihos and Barrett $1,388,653. *In these two years, they received $4 million despite the fact that Cappseals remained unpaid for goods sold and delivered.*

In addition to the overwhelming evidence of financial intermingling regarding the Product, ITV Direct and DMC are generally operated as a single business entity. The companies

-5-

share common principals, stockholders, place of business, and attorneys which collectively contradict any real corporate "separation." This is confirmed in a recent lawsuit against the Federal Trade Commission ("FTC") filed jointly by DMC, ITV Direct and Donald Barrett on October 11, 2005 wherein the parties state that the principal place of business for DMC and ITV Direct is the same, 55 Cherry Hill Drive, Beverly Massachusetts, a fact that belies any argument that DMC and ITV Direct are separate.[2] ITV Direct also recently filed a lawsuit against an industry association and other individuals in February 2006, based upon its involvement in business activities that are actually conducted by DMC.

### G. Damages.

Cappseals was awarded the Judgment on August 3, 2005 in the amount of $1,041,684.49 ("Judgment Amount"). In addition to the Judgment Amount, Cappseals is entitled to post judgment interest pursuant to 28 U.S.C. § 1961. Accordingly, Cappseals currently seeks total damages in this action equal to the Judgment Amount plus post-judgment interest accrued until the Judgment is satisfied. Additionally, Cappseals seeks a multiplication of its damages through a punitive award under G.L. c. 93A, as well as reasonable costs and attorneys fees incurred pursuing the debt owed by DMC and ITV Direct.

### 3. FACTS ESTABLISHED BY PLEADINGS.

Most if not all of the factual issues in this matter are contested.

### 4. CONTESTED FACTS.

Cappseals states that the inclusion of any issue within this section shall not serve as an admission or acknowledgement that such issue is relevant to the issues that will be litigated at the time of trial. Cappseals specifically reserves, and does not waive, its right to assert that any of

---

[2] See *Direct Marketing Concepts, Inc., et al, v. the Federal Trade Commission*, Civil Action No. 05-11930GAO, Complaint, ¶¶ 2-3.

B0485352v1

-7-

the issues identified herein are irrelevant during the trial of this matter or through an appropriate motion in limine.

      1.      Whether DMC received the Product after issuing Purchase Order 1101 and later resold it.

      2.      The source of payment for shipments made under Purchase Order 1101 and Purchase Order 1078.

      3.      The amounts of revenue DMC received as a result of selling the Product.

      4.      ITV Direct's business purpose and operations, including but not limited to its business activities, employees, revenues, expenses, assets, inventory, working capital and income.

      5.      DMC's business purpose and operations, including but not limited to its business activities, employees, revenues, expenses, assets, inventory, working capital and income.

      6.      ITV Direct's observance of corporate formalities such as shareholder meetings and issuance of dividends.

      7.      DMC's observance of corporate formalities such as shareholder meetings and issuance of dividends.

      8.      The ownership, management and/or control structure of DMC and ITV Direct.

      9.      The extent to which DMC and its shareholders, officers, directors, employees or agents performed services for ITV Direct.

      10.      The facts and circumstances surrounding ITV Direct's cessation of all material business activities after the July 20th Memorandum of Decision in the Related Action

was issued.

11. The accuracy, completeness and veracity of DMC's and ITV Direct's financial and other business records.

12. The facts and circumstances surrounding ITV Direct's filing of its lawsuit against the Electronic Retailing Association in the matter *ITV Direct, Inc. v. The Elec. Retailing Ass'n, et al.*, No. 1:06-cv-10239-GAO (D. Mass. filed February 10, 2006)(the "ERA Lawsuit").

13. The accuracy, completeness and veracity of the allegations in the ERA Lawsuit.

14. The facts and circumstances surrounding ITV Direct's filing of its lawsuit against the Federal Trade Commission in the matter *Direct Mktg. Concepts, Inc., et al. v. Fed. Trade Comm'n*, No. 1:05-cv-11930-GAO (D. Mass. filed November 23, 2005).

15. The accuracy, completeness and veracity of the allegations in the FTC Lawsuit

16. The facts and circumstances concerning DMC's or any other person's use of intellectual property that is owned and/or registered to ITV Direct.

17. ITV Direct's, DMC's and any other person's use of the website located at www.itvdirect.com ("Website") including any license agreements pertaining to that use.

18. The accuracy and veracity of the content, including the text, descriptive and graphical content, and pages on the Website.

19. Any defendant's involvement with and/or control of the content on any of the websites located at the following addresses: http://www.itvdirect.com/, http://www.tryalmightycleanse.com/, http://www.flexprotex.com/, http://www.tryricenshine.com, http://www.tryseavegg.com/, http://www.naturalcures.com/,

http://trycorcal.com, http://www.itvventures.com, http://www.joinitvnow.com/, http://www.theitveffect.net/, http://homebusinesspas.com/, http://www.timingsperfect.com/, http://www.itv-ventures.us/, http://www.itvdownline.com/, http://www.clubitv.com/, http://itvbusiness.tv/ .

      20.    The source of monies used to pay ITV Direct's operating expenses, including its legal, accounting and advertising obligations.

      21.    The facts and circumstances surrounding the advertising, sale, and or marketing of the products "Almighty Cleanse," "FlexProtex," "Rice n' Shine," "SeaVegg," "ITV™ Total Living Membership," "Natural Cures™," "Dr. Duarte Disease Prevention Series," "Coral Calcium".

      22.    The defendants' efforts to avoid payment of the Judgment.

      23.    The defendants' practice and/or policy of disputing legitimate debts.

      24.    The terms of any loan agreement between ITV Direct and DMC or any of the individual defendants.

**5.    JURISDICTIONAL QUESTIONS.**

Cappseals is unaware of any jurisdictional questions.

**6.    QUESTIONS RAISED BY PENDING MOTIONS.**

Currently there are no motions pending before the Court.

**7.    ISSUES OF LAW.[3]**

      1.    Whether DMC's issuance of the purchase order to Healthy Solutions and DMC's subsequent conduct related thereto created an enforceable contractual obligation for the

---

[3] Plaintiff has not been presented with the defendants' status report and can not respond to the legal arguments they will make. To the extent defendants raise arguments that were included in their summary judgment filings, Plaintiffs also incorporate herein by reference the legal positions asserted in the various filings it submitted during the summary judgment process including but not limited to Cappseals' Reply Brief (Docket Nos. 19 & 20), and its Proposed Order (Docket No. 33).

-9-

B0485352v1

goods sold as against DMC. *See ITV Direct, Inc. v. Healthy Solutions, LLC,* 445 F.3d 66, 72-73 (1st Cir. 2006)(contract for goods sold arose under purchase order); *see also Travenol Laboratories, Inc. v. Zotal, Ltd*, 394 Mass. 95, 97-98 (1985)(same).

      2.      Whether DMC is liable for ITV Direct's debt under Purchase Order 1101 (and the resulting Judgment) because DMC is ITV Direct's alter ego. Under Massachusetts Law, alter ego liability amongst related corporations is appropriate where:

> . . . there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.

*My Bread v. Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968).

      3.      Under Massachusetts law, a court should consider twelve factors to determine whether or not to establish liability amongst related entities and persons on the basis of the alter ego doctrine. These include the following:

> (1) common ownership;
> (2) pervasive control;
> (3) confused intermingling of business assets;
> (4) thin capitalization;
> (5) nonobservance of corporate formalities;
> (6) absence of corporate records;
> (7) no payment of dividends;
> (8) insolvency at the time of the litigated transaction;
> (9) siphoning away of corporation's funds by dominant shareholder;
> (10) nonfunctioning of officers and directors;
> (11) use of the corporation for transactions of the dominant shareholders; and
> (12) use of the corporation in promoting fraud.

B0485352v1

*Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 14-16 (1st Cir. 1985); *Birbara v. Locke*, 99 F.3d 1233, 1240 (1st Cir.1996).

    4.    Whether defendants' actions in avoiding payment of the Judgment support a claim for a knowing and willful violation of M.G.L. c. 93A. *See Can-Four Corp. v. Atlantic Telephone Sys.*, 63 Mass. App. Ct. (2005)(unpublished)("Intentional fraud including a conveyance with actual intent to…defraud [a] creditor, contrary to G.L. c. 109A… can constitute the basis of a willful or knowing violation of c. 93A."), *citing McEvoy v. Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 714 (1990)(original quotations omitted)

**8.    REQUESTED AMENDMENTS TO THE PLEADINGS.**

Cappseals has not requested any further amendments to the pleadings.

**9.    LENGTH OF TRIAL.**

The probable length of trial will be ten (10) full days.

**10.    WITNESSES.**

Cappseals hereby submits its witness list in the above referenced matter. Cappseals reserves the right to supplement this list to add witnesses to rebut testimony presented during the trial by other witnesses proffered by any of the defendants. Cappseals reserves the right to call, separately and independently from the defendants, any witness listed by the defendants. Cappseals also reserves its right to amend, supplement, edit and revise its witness list after the conclusion of the supplementary process hearing has concluded in the related matter.

    a.    **Cappseals' Fact Witnesses:**

        (1)    Donald Webb, c/o Cappseals, Inc., 12607 NE 95th Street, #A-100, Vancouver, WA 98682;

        (2)    Harry Anderson, III c/o Cappseals, Inc., 12607 NE 95th Street, #A-100, Vancouver, WA 98682;

        (3)    Kevin Trudeau, c/o Shop America (USA), LLC, 1462 Elmhurst Road, Elk Grove Village, IL 60007-6417;

(4) Federal Trade Commission;

(5) Donald Barrett, c/o ITV Direct and DMC, 55 Cherry Hill Drive, Beverly, MA;

(6) Robert Maihos, c/o ITV Direct and DMC, 55 Cherry Hill Drive, Beverly, MA;

(7) Michael Sciucco, c/o ITV Direct and DMC, 55 Cherry Hill Drive, Beverly, MA;

(8) Eileen Barrett, c/o ITV Direct and DMC, 55 Cherry Hill Drive, Beverly, MA;

(9) Wayne Callahan, c/o ITV Direct and DMC, 55 Cherry Hill Drive, Beverly, MA;

(10) Angelo Tillis, c/o ITV Direct and DMC, 55 Cherry Hill Drive, Beverly, MA;

(11) William Tarmey, 16 Willow Street, Beverly MA 01915;

(12) Peter Brooks, c/o Seyfarth Shaw LLP, Two Seaport Lane, Suite 300, Boston MA;

(13) Kimberly York, Charlestown, MA;

b. **Expert Witnesses:**

(1) Andrew Prague, CPA, Wellesley Massachusetts.

**11. PROPOSED LIST OF EXHIBITS.**

Some of the documents identified below will only be offered for the purpose of establishing notice. Accordingly, the inclusion of any document within Cappseals' list of potential exhibits should not be taken as an admission or acknowledgement that Cappseals concedes the truth of any matter discussed therein. Cappseals reserves the right to use, separately and independently from the defendants, any exhibit identified within their lists. However, Cappseals does not waive its right to object to the admissibility of any document identified within the exhibit lists of the defendants.

1. The July 20, 2005 Memorandum of Decision allowing Cappseals' Motion

for Summary Judgment in the matter *ITV Direct, Inc. v. Healthy Solutions, LLC et al*, C.A. No. 04-CV10421-JLT;

      2.      The Judgment in the Related Action;

      3.      The Joint Stipulations of Fact filed in the Related Action;

      4.      Purchase Orders for Supreme Greens that were issued by ITV Direct or Direct Marketing Concepts;

      5.      Invoices for Supreme Greens that were issued to ITV Direct or Direct Marketing Concepts;

      6.      Packing Lists and Slips for Supreme Green Capsules;

      7.      Bills of Lading and Shipping Orders for Supreme Green Capsules;

      8.      Any and all pleadings and the docket in the matter *Direct Mktg. Concepts, Inc., et al. v. Fed. Trade Comm'n*, No. 1:05-cv-11930-GAO (D. Mass. filed November 23, 2005);

      9.      Any and all pleadings and the docket in the matter *ITV Direct, Inc. v. The Elec. Retailing Ass'n, et al.*, No. 1:06-cv-10239-GAO (D. Mass. filed February 10, 2006);

      10.      Any and all pleadings and the docket in the matter *ITV Direct, Inc. v. Healthy Solutions, LLC, et al.*, No. 04-cv 10421-JLT (D. Mass. filed March 2, 2004);

      11.      Any and all pleadings and the docket in the matter *ITV Direct, Inc., et al., v. Healthy Solutions*, et al., No. 05-2323 (1st Cir. filed September 2, 2005);

      12.      Documents from the United States Patent and Trademark Office ("USPTO") certifying applications and registrations of trademarks by the defendants for the marks SUPREME GREENS WITH MSM, ITV DIRECT®, E8 DAILY®, and SILVER FROM THE SEA;

B0485352v1

13. Documents concerning the domain name registry information and ownership of <itvdirect.com>;

14. DMC's bank statements from Beverly National Bank;

15. ITV Direct's bank statements from Beverly National Bank;

16. The accounting report prepared by Pannell Kerr Forster PC regarding the finances of ITV Direct and DMC in the matter Federal Trade Commission v. Direct Marketing Concepts, Inc. et al, Civil Action No. 04-11136-GAO, including all exhibits and attachments thereto;

17. DMC's internal accounting record labeled "find report for all transactions", bates numbered ITV00291;

18. Profit and Loss Statements of ITV Direct;

19. Balance Sheets of ITV Direct;

20. The text, descriptive and graphical content, and pages displayed and located at http://www.itvdirect.com/, http://www.tryalmightycleanse.com/, http://www.flexprotex.com/, http://www.tryricenshine.com, http://www.itvventures.com, http://www.tryseavegg.com/, http://www.naturalcures.com/, http://trycorcal.com, http://www.joinitvnow.com/, http://www.theitveffect.net/, http://homebusinesspas.com/, http://www.timingsperfect.com/, http://www.itv-ventures.us/, http://www.itvdownline.com/, http://www.clubitv.com/, http://itvbusiness.tv/ ;

21. Any infomercials that have been filmed or televised concerning the products "Almighty Cleanse," "FlexProtex," "Rice n' Shine," "SeaVegg," "ITV™ Total Living Membership," "Natural Cures™," "Dr. Duarte Disease Prevention Series," "Coral Calcium";

22. The transcript from the August 23, 2004 deposition of Donald Barrett in

-14-

the Related Action;

23. The transcript from the October 20, 2005 deposition of Wayne Callahan in the Related Action and this current matter;

24. The transcript from the August 24, 2004 deposition of Robert Maihos in the Related Action;

25. Any and all affidavit filed by the defendants in the current action, the Related Action or the FTC Action;

26. The transcript from the supplementary process hearings in the Related Action;

27. Any and all federal and state income tax returns filed by ITV Direct or DMC;

28. ITV's general ledger;

29. DMC's general ledger;

30. Massachusetts Annual Reports for Domestic and Foreign Corporations for ITV and DMC;

31. Massachusetts Business or Manufacturing Corporation Excise Returns for ITV and DMC;

32. Invoices or bills concerning services rendered to or on behalf of ITV Direct by Wayne Callahan; and

33. All invoices, bills and time entry descriptions concerning legal services performed by the law firm Seyfarth Shaw on behalf of ITV Direct.

B0485352v1

                        CAPPSEALS, INC.
                        By its attorneys,

                        /s/ Scott A. Silverman
                        Daniel J. Kelly BBO# 553926
                        dkelly@ghlaw.com
                        Scott A. Silverman, BBO #638087
                        ssilverman@ghlaw.com
                        Peter Antonelli, BBO # 661526
                        pantonelli@ghlaw.com
                        McCarter & English, LLP
                        225 Franklin Street
                        Boston, MA  02110
                        (617) 345-7000

October 31, 2006

## CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing was served on the attorneys of record pursuant to Fed. R. Civ. P. 5 as follows:

<u>Via electronic notification:</u>

Peter S. Brooks        pbrooks@seyfarth.com

Susan W. Gelwick      sgelwick@seyfarth.com

Christopher F. Robertson     crobertson@seyfarth.com

                                        /s/ Scott A. Silverman
                                        Daniel J. Kelly BBO# 553926
                                        dkelly@ghlaw.com
                                        Scott A. Silverman, BBO #638087
                                        ssilverman@ghlaw.com
                                        Peter Antonelli, BBO # 661526
                                        pantonelli@ghlaw.com
                                        McCarter & English, LLP
                                        225 Franklin Street
                                        Boston, MA 02110
DATED:  October 31, 2006          (617) 345-7000

B0485352v1