UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPPSEALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 05-CV-11907-JLT |
| ) | |
| DIRECT MARKETING CONCEPTS, INC., et ) al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS DIRECT MARKETING CONCEPTS, INC.,
ITV DIRECT, INC., DONALD BARRETT AND ROBERT MAIHOS'
PRETRIAL MEMORANDUM AND STATUS REPORT**

Pursuant to Local Rule 16.5(D) of the United States District Court for the District of Massachusetts, defendants Direct Marketing Concepts, Inc., ITV Direct, Inc., Donald Barrett and Robert Maihos hereby submit this Pretrial Memorandum.

**1.    SUMMARY OF THE EVIDENCE**

   **A.    Defendants' Evidence**

The Defendants expect to offer the following evidence at trial:

Plaintiff Cappseals, Inc. is in the business of manufacturing dietary supplements, among other products. In or about early 2003, Cappseals entered into an agreement with a non-party to this action, Healthy Solutions LLC ("Healthy Solutions"), under which it agreed to produce a dietary supplement known as "Supreme Greens with MSM" ("Supreme Greens") that Healthy Solutions had developed. At no time did Cappseals ever have an agreement or contract with any of the Defendants. Its only agreement was with Healthy Solutions.

On April 4, 2003, ITV Direct entered into an exclusive "Distribution Agreement" with Healthy Solutions for the manufacture and distribution of Supreme Greens ("Distribution

Agreement").  The Distribution Agreement provided that ITV Direct would produce an infomercial for the product featuring Alejandro Guerrero of Healthy Solutions and that ITV Direct would be the exclusive distributor of Supreme Greens in connection with the infomercial. The Distribution Agreement made no mention of Cappseals or any other specific manufacturer of the product other than Healthy Solutions and it created no obligation to any party other than Healthy Solutions.

Between April 4, 2003 and February 6, 2004, ITV Direct issued purchase orders to Healthy Solutions for the purchase of Supreme Greens in varying quantities.  ITV Direct's only relationship in connection with its purchases of Supreme Greens was with Healthy Solutions.  At no time did ITV Direct have any relationship, contractual or otherwise, with Cappseals.  ITV Direct never ordered any product from Cappseals, never issued a purchase order to Cappseals, never received an invoice from Cappseals, and never paid any money to Cappseals.  The only manufacturer of the product specified in the Distribution Agreement is Healthy Solutions, and Healthy Solutions' decision to order product from Cappseals was entirely its own and was not directed by or influenced by ITV Direct or any of the Defendants in any way.  Healthy Solutions' choice of Cappseals was never approved by ITV Direct or any of the Defendants.

After certain disputes arose between the Defendants and Healthy Solutions, ITV Direct sued Healthy Solutions in this Court and refused to make additional payments under the Distribution Agreement until the litigation was resolved.  <u>ITV Direct, Inc. v. Healthy Solutions, LLC, et al.</u>, Civ. Act. No. 04-10421-JLT.  Healthy Solutions counterclaimed against ITV Direct, but never sought to add any of the other defendants, including Direct Marketing Concepts, Inc. or any individuals.  Having failed to receive payment from Healthy Solutions for its manufacturing costs, Cappseals intervened in the action and sought payment directly from ITV

Direct through a reach and apply action against ITV Direct. Cappseals never sued or joined Direct Marketing Concepts or either of the individual defendants in the action.

During the course of the prior litigation, Healthy Solutions and all of the Defendants in the present action reached a settlement and dismissed all of their existing and possible claims against each other with prejudice. Subsequent to that dismissal, Cappseals obtained a judgment against ITV Direct in the amount of $1,041,684.49. Prior to receiving that judgment, Cappseals never joined or sought any remedy against any of the other Defendants in this action. Instead, only after determining that ITV Direct has insufficient assets to pay the judgment in full, Cappseals brought the present action, seeking to enforce its previously obtained judgment against the previously unnamed third-parties Direct Marketing Concepts, Inc. and its principals, Donald Barrett and Robert Maihos, under theories of fraudulent transfer, alter ego, piercing the corporate veil, and reach and apply.

**2.     AGREED FACTS[1]**

    a.     ITV Direct, Inc. is a Massachusetts corporation with its principal place of business in Beverly, Massachusetts.

    b.     Direct Marketing Concepts, Inc. is a Massachusetts corporation with its principal place of business in Beverly Massachusetts.

    c.     Healthy Solutions, LLC d/b/a Direct Business Concepts, is a California limited liability company with its principal place of business at 9528 Miramar Road, No. 100, San Diego, California.

    d.     Health Solutions, Inc. is a California corporation with a principal place of business at 16843 Valley Boulevard, Suite 540 E., Fontana, California.

---

[1] These were factual allegations that the parties admitted in the various pleadings in this action.

e.  Cappseals is a Washington corporation with its principal place of business in Vancouver, Washington.

f.  In or about April 2003, an agreement was finalized between Healthy Solutions and ITV Direct, whereby ITV Direct would become the exclusive infomercial distributor of Supreme Greens.

g.  Direct Marketing Concepts was not a party to the Distribution Agreement.

h.  Cappseals never had any agreement or contract with ITV Direct, Direct Marketing Concepts or the individual defendants.

i.  In April 2004, ITV Direct sued Healthy Solutions in the District of Massachusetts and Healthy Solutions brought counterclaims for payment of Supreme Greens product manufactured by Cappseals.

j.  Cappseals intervened in the action and sought payment from ITV Direct for its manufacturing costs through a claim for reach and apply.

k.  Cappseals never sued Direct Marketing Concepts or the individual defendants in its intervention complaint.

l.  Cappseals obtained judgment against ITV Direct in the amount of $1,041,684.49.

m.  Prior to obtaining judgment against ITV Direct, Cappseals never sought to add Direct Marketing Concepts or the individual defendants as parties to the action nor sought a judgment against Direct Marketing Concepts or the individual defendants.

**3.  CONTESTED FACTS**

a.  The parties contest whether there have been any improper transfers of assets between the Defendants.

b.  The parties contest whether any of the defendants are alter egos of the other defendants.

c.  The parties contest whether there are facts demonstrating that the officers and directors of the corporate defendants should be deemed liable for the debts of ITV Direct.

**4.  JURISDICTIONAL QUESTIONS**

The parties are unaware of any jurisdictional questions.

**5.  QUESTIONS RAISED BY PENDING MOTIONS**

Currently, there are no pending motions.

**6.  ISSUES OF LAW**

a.  All of Cappseals' claims are barred by the Massachusetts Supreme Judicial Court's decision in Williams v. Investors Syndicate, 327 Mass. 124 (1951). In that case, the SJC held that under Massachusetts law a plaintiff may not pursue a claim against a principal of an agent when the plaintiff has already reduced its claim against the agent to a judgment. In Williams, as here, the plaintiff argued, and the court found, that the plaintiff had delivered products to one party that was acting merely as a "straw" for another party, and that certain transactions between the agent and the principal were designed to defraud creditors. The SJC held that the action against the principal was subject to dismissal because the plaintiff, with knowledge of the existence of the principal, proceeded to judgment against the agent. "[P]laintiff cannot stand on the judgment against the agent as valid and binding and treat such judgment as a cause of action against the principal." Williams, 327 Mass. at 127 (quoting Old Ben Coal Co. v. Universal Coal Co., 248 Mich. 486, 227 N.W. 794 (1929)).

Here, Cappseals has repeatedly argued and admitted that DMC was well known to both Healthy Solutions and Cappseals well before judgment entered against ITV Direct. In fact,

Cappseals argues that DMC actually issued the subject invoices to Healthy Solutions and cites to both purchase orders received by and invoices issued by Healthy Solutions that it claims identify DMC as the actual purchaser of the goods. Notwithstanding admitting this knowledge by both itself and Healthy Solutions, Cappseals voluntarily chose to pursue a judgment only against ITV Direct, Inc. and allowed judgment to enter against that entity. Under the clear holding of Williams and its progeny, that election precludes any action against the Defendants as a matter of law.

      b.     The claims of Healthy Solutions and Cappseals have already been reduced to judgment in the Related Action. As such, all of these claims have merged into the judgment and no longer have an independent vitality. "The doctrine of merger is that a cause of action, when reduced to a judgment, has ceased to exist as an independent liability, and has changed its nature and is transmuted into the obligation created by the judgment, which is different in kind and essential characteristics from the initial cause of action. It has been said that 'a judgment is an absolute merger of a debt by simple contract, so that no action can afterwards be maintained upon the original promise.'" Frost v. Thompson, 219 Mass. 360, 367 (1914); see also Moore v. Justices of Municipal Court of City of Boston, 291 Mass. 504, 505 (1935); Lonnqvist v. Lammi, 242 Mass. 574, 577-78 (1922). (plaintiff could not recover on original debt, because debt merged into judgment). Because Healthy Solutions and Cappseals have obtained judgments in the Related Action, no underlying claims based on the same obligations exist and DMC is entitled to judgment as a matter of law on the co-obligor and alter ego claims.

      c.     Healthy Solutions and ITV Direct dismissed their claims in the Related Action with prejudice and have exchanged mutual general releases that include within their ambit Direct Marketing Concepts and the individual defendants. The mutual releases embrace any claims that

Healthy Solutions potentially had against Direct Marketing Concepts, including any claim based on Direct Marketing Concepts' obligations under Invoice 1101 or any claim based on piercing the corporate veil. Since the co-obligor and alter ego claims asserted by Cappseals are derivative of the claims of Healthy Solutions, as they were in the Related Action against ITV, they are barred by the release (and the stipulation of dismissal filed in the Related Action). See Hermes Automation Technology, Inc. v. Hyundai Electronics Industries Co., Ltd., 915 F.2d 739 (1st Cir. 1990).

It is well established that the reach and apply statute does not create *substantive* rights. Its function is wholly *procedural* so as to provide a means for the application of assets of the debtor in satisfaction of the plaintiff's claim. Blumenthal v. Blumenthal, 303 Mass. 275, 278-79 (1939). The rights of a reach and apply plaintiff like Cappseals are said to be derivative of the debtor's rights and subject to the same defenses (and logically to the same claims) the reach and apply defendant has against the debtor. Polito v. Galluzzo, 337 Mass. 360, 363 (1958); Mamber v. Levin, 4 Mass. App. Ct. 157, 161 (1976); Morse v. The Employers' Liability Assurance Corp., Ltd., 3 Mass. App. Ct. 712 (1975) (rescript). Accordingly, as Cappseals' claims based on a co-obligor theory and alter ego theory are strictly derivative of Healthy Solutions' claims, and as Healthy Solutions has released all of its claims, including those potentially against Direct Marketing Concepts and the individual defendants, Cappseals is barred from asserting those claims in the present action.

d.     The cases are clear that piercing the corporate veil is available only in rare circumstances. Evans v. Multicon Const. Corp., 30 Mass. App. Ct. 728, 732 (1991); Hiller Cranberry Products, Inc. v. Koplovsky Foods, Inc., 165 F.3d 1, 10 (1st Cir. 1999); My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 233 N.E.2d 748 (1968). In determining

7

whether either of these prongs are met, courts weigh twelve criteria: (1) common ownership; (2) pervasive control; (3) confused intermingling or business activity assets or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporations for transactions of the dominant shareholders; (12) use of the corporation in promoting fraud.  Evans, 30 Mass. App. Ct. at 733 citing Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F.2d 10, 14016 (1st Cir. 1985).

      There is no evidence that there was any confused intermingling of business activities. DMC and ITV are separate business entities that maintain separate general ledgers and file separate tax returns.  All transactions have been properly recorded and there has been no fraudulent transfers, secretion of assets or any destruction or alteration of financial records. There is no evidence that ITV and DMC were in any way used to promote fraud.  There were no claims of fraud made by Healthy Solutions or Cappseals in the Related Action.  Indeed, the only claim of fraud was brought by ITV Direct against the Healthy Solutions defendants based on certain misrepresentations that induced ITV Direct to enter into the Distribution Agreement with Health Solutions.  There is no evidence that even suggests that Direct Marketing Concepts or ITV Direct were created for a fraudulent purpose or were otherwise used to perpetrate a fraud on Healthy Solutions or, for that matter, Cappseals.  Rather, the evidence establishes a routine and reasonable business transaction between two related entities.  Nor, given the conflict and ongoing litigation with the FTC, is it in any way unusual that ITV's business activities were substantially reduced.  Finally, it is also significant that since June 2004, both Direct Marketing Concepts and ITV Direct have been subject to an injunction that requires them to provide

financial reporting to the FTC on a monthly basis, including reports on transfers and expenditures. Thus, there is oversight with respect to the transfer of assets made by either company. There has been no allegation in the FTC action that either company is acting improperly by secreting assets. In addition, there is no evidence sufficient to pierce the corporate veil as to the individual defendants. See Johnson v. Koplovsky Foods, Inc., 5 F.Supp.2d 48 (D. Mass. 1998); Brown Rudnick, Freed & Gesmer v. Board of Assessors, 389 Mass. 298, 303 n. 8 (1983).

  e. There is no basis for a finding of liability under Chapter 93A. "Because litigation under Chapter 93A is 'rampant,' the courts have developed a rigorous test for assessing such claims." Johnson v. Koplovsky Foods, Inc., 5 F.Supp.2d 48, 55 (D. Mass. 1998) (quoting Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1513 (1st Cir. 1989). The plaintiff must show that the defendants' actions were "immoral, unethical, oppressive or unscrupulous." Id. PMP Assoc., Inc. v. Globe Newspaper Co., 366 Mass. 593 (1975). Here, it is undisputed that none of the Defendants had any direct relationship whatsoever with the Plaintiff, in contract or otherwise. As such, any Chapter 93A claim is without basis. Johnson, 5 F.Supp.2d at 56 (refusing to find Chapter 93A liability where defendants "were not responsible for payment under the contracts nor alleged to have personally made any misrepresentation").

**7. AMENDMENTS TO THE PLEADINGS**

There are no requested amendments to the pleadings.

**8. ADDITIONAL MATTERS TO AID IN DISPOSITION OF ACTION**

The Defendants may move for summary judgment on the liability of the Defendants based upon the holding of the Massachusetts Supreme Judicial Court in Williams v. Investors Syndicate, 327 Mass. 124 (1951), in which the Court held that the reduction to judgment of a

claim in contract against an alleged agent of a principal bars a subsequent claim for that judgment against the principal.

**9.     LENGTH OF TRIAL**

The probable length of trial is 4 days, although Defendants may seek to dismiss certain aspects of the case after the Plaintiff introduces its evidence, which could shorten the time necessary for the defense.

**10.    WITNESSES**

   a.    *Fact Witnesses*:

1. Donald Webb, c/o Cappseals, Inc., 12607 NE 95th Street, #A-100, Vancouver, WA 98682;

2. Harry Anderson, III c/o Cappseals, Inc., 12607 NE 95th Street, #A-100, Vancouver, WA 98682;

3. Donald Barrett, c/o Seyfarth Shaw LLP, Two Seaport Lane, Boston, MA;

4. Robert Maihos, c/o Seyfarth Shaw LLP, Two Seaport Lane, Boston, MA;

5. Michael Sciucco, c/o Seyfarth Shaw LLP, Two Seaport Lane, Boston, MA;

6. Wayne Callahan, c/o Seyfarth Shaw LLP, Two Seaport Lane, Boston, MA;

7. Alejandro Guerrero, c/o Healthy Solutions, LLC and Health Solutions, Inc., 9528 Miramar Road, Suite 100, San Diego, CA 92126;

8. Gregory Geremesz, c/o Healthy Solutions, LLC and Health Solutions, Inc., 9528 Miramar Road, Suite 100, San Diego, CA 92126;

9. Michael Howell, c/o Healthy Solutions, LLC and Health Solutions, Inc., 9528 Miramar Road, Suite 100, San Diego, CA 92126;

10. Eileen Barrett, c/o Seyfarth Shaw LLP, Two Seaport Lane, Boston, MA.

   b.    *Expert Witnesses*:

   None.

**11.    PROPOSED TRIAL EXHIBITS**

Plaintiffs' Proposed List of Exhibits:

1. Product Licensing and Marketing Agreement between Healthy Solutions, LLC and Guerrero, dated April 4, 2003

2. Distribution Agreement between ITV Direct and Healthy Solutions, LLC, dated April 4, 2003

3. Correspondence, including emails, between Alex Guerrero and Donald Barrett

4. Correspondence, including emails, between Alex Guerrero and Eileen Barrett

5. Letter from E. Barrett to Dr. Guerrero, dated January 9, 2004 and copy of cancelled check to Direct Business Concepts for $7500

6. Correspondence, including emails between E. Barrett and G. Geremesz

7. Correspondence, including emails, between E. Barrett and C. Brown

8. Purchase Orders from ITV Direct for the purchase of Supreme Greens

9. Invoices from Direct Business Concepts to ITV Direct for the sale of Supreme Greens

10. Label for Supreme Greens with MSM distributed by Health Solutions

11. Supreme Greens Media Costs by month for January 2003-June 2004, prepared by Wayne P. Callahan

12. Letters exchanged between ITV Direct and the FDA

13. Letters exchanged between Defendants or their counsel and the Federal Trade Commission

14. Letter from counsel for Cappseals to counsel for Healthy Solutions, dated March 25, 2004

15. Email from E. Barrett to G. Geremesz, dated November 12, 2003 regarding trademark application

16. Healthy Solutions' Trademark Application

17. Report prepared for the FTC regarding Supreme Greens accounting and supporting work papers.

18. Pleadings, affidavits and other documents filed with the court in the present litigation, in <u>ITV Direct, Inc. v. Healthy Solutions, et al.</u>, Civ. Act. No. 04-10421 (JLT) or in <u>FTC v. Direct Marketing Concepts, Inc., et al.</u>, Civ. Act. No. 04-11136 (GAO)

19. Deposition transcripts and exhibits from the depositions of Messrs. Guerrero, Geremesz, Howell, Bernabei, Barrett, and Maihos

20. Financial documents prepared by ITV Direct, Inc. and Direct Marketing Concepts, Inc. regarding balance sheets, profit and loss statements, general ledgers and financial transactions

21. Documents filed with the Massachusetts Secretary of State regarding the corporate status of the Defendants.

22. Pleadings in the action filed by Cappseals against ITV Direct, Inc. in the Massachusetts Superior Court, Essex County

        Respectfully submitted,

        ITV DIRECT, INC.

        By their attorney(s),

        /s/ Christopher F. Robertson
        Peter S. Brooks, BBO #058980
        Christopher F. Robertson, BBO #642094
        Susan W. Gelwick, BBO #567115
        Seyfarth Shaw LLP
        Two Seaport Lane, Suite 300
        Boston, MA 02210-2028
        Telephone:   (617) 946-4800
        Telecopier:   (617) 946-4801

Dated: October 31, 2006

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 31, 2006.

        /s/ Christopher F. Robertson
        Christopher F. Robertson